1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                        SAN JOSE DIVISION

11

12   THOMAS DAVIDSON, ET AL.,              Case No. 16-CV-04942-LHK

13              Plaintiffs,                **ORDER GRANTING MOTION TO
                                           DISMISS ALL 10 CLAIMS WITH
14        v.                               LEAVE TO AMEND**

15   APPLE, INC.,                          Re: Dkt. No. 54

16              Defendant.

17

18        Plaintiffs bring this putative class action against Defendant Apple, Inc. ("Apple" or

19   "Defendant"), and alleges violations of various state consumer fraud statutes, common law fraud,

20   and breach of express and implied warranty.  ECF No. 43 (Second Amended Class Action

21   Complaint, or "SACC").  Before the Court is Defendant's motion to dismiss.  ECF No. 54 ("Def.

22   Mot.").[1]  Having considered the submissions of the parties, the relevant law, and the record in this

23   case, the Court hereby DENIES Defendant's motion to dismiss as to Article III standing to bring

24   claims for fraud, but GRANTS Defendant's motion to dismiss otherwise.  All 10 claims are

25   _____

26   [1] As discussed further in the procedural history below, the parties have selected 10 claims, out of
     the 22 claims that are alleged in the SACC, to litigate first.  Accordingly, the instant motion to
27   dismiss addresses only the 10 claims selected by the parties, and this Order is limited to those
     claims.
28                                              1

United States District Court
Northern District of California

1   dismissed with leave to amend.

2   **I.     BACKGROUND**

3   **A.     Factual Background**

4          Defendant is the designer, manufacturer, marketer, and seller of the iPhone smartphone.

5   SACC ¶ 25.  The iPhone utilizes a touchscreen for users to interact with the device, and use of the

6   touchscreen is required to send text messages, capture video, browse the internet, and access

7   applications, among other functions.  *Id.* ¶ 26–28.  Defendant released the iPhone 6 and iPhone 6

8   Plus on September 19, 2014.  *Id.* ¶ 25.  The iPhone 6 and 6 Plus both have a larger touchscreen

9   than Defendant's prior iPhone models.  *Id.* ¶ 30.

10          According to Plaintiffs, the iPhone 6 and 6 Plus "suffer from a material manufacturing

11   defect that causes the touchscreen to become unresponsive to users' touch inputs" (hereinafter,

12   the "touchscreen defect").  *Id.* ¶ 31.  Plaintiffs allege that the touchscreen defect is caused by a

13   defect in the iPhone's external casing.  *Id.* ¶ 33.  Specifically, "[t]he materials used in the

14   iPhone's external casing are insufficient and inadequate to protect their internal parts in light of

15   reasonable and foreseeable use by consumers."  *Id.*  Accordingly, Plaintiffs contend that regular

16   use of the iPhone results in a "failure of the solder to adhere" to the touchscreen controller chips

17   ("touch IC chips") that are located inside of the iPhone's logic board.  *Id.* ¶ 39.  This renders the

18   touch IC chips, which are responsible for converting touches into actions in the iPhone software,

19   "unable to recognize the user's touches on the touchscreen."  *Id.*  According to Plaintiffs, prior

20   iPhone designs contained either a "metal 'shield'" over the logic board, or an "'underfill' that was

21   injected under the touch IC chips."  *Id.* ¶¶ 43–44.  By contrast, the iPhone 6 and 6 Plus "fail to

22   incorporate underfill or a shield over the logic board."  *Id.*  Thus, the iPhone 6 and 6 Plus "are

23   more susceptible to failure from manufacturing defects with the external casing, such that

24   foreseeable and reasonable use by consumers leads in many cases" to the touchscreen defect.  *Id.*

25   ¶ 45.

26          "Apple conducts extensive pre-release durability testing on all of its products," including

27   "five methods of testing the iPhones" prior to release.  *Id.* ¶ 53.  Specifically, "Apple uses a [1]

28
Case No. 16-CV-04942-LHK
ORDER GRANTING MOTION TO DISMISS ALL 10 CLAIMS WITH LEAVE TO AMEND

United States District Court
Northern District of California

'three-point bending test' to test the iPhone's ability to handle reasonable force;" [2] "a 'pressure-point cycling test' that expands substantial force on the iPhones' display and casing;" [3] "'torsion testing,' whereby the iPhones are twisted and torqued in various situations;" [4] "'sit tests' whereby an Apple engineer takes an iPhone and sits down thousands of times;" and [5] "real-life user studies." *Id.* ¶ 57.  Plaintiffs allege that "[t]hrough this extensive pre-release testing that specifically evaluated the iPhones durability," Apple should have known of the touchscreen defect, which "results from the reasonable, foreseeable use by consumers." *Id.* Plaintiffs also state that Defendant's "decision to forego protective casings and underfills on the iPhones would have immediately alerted it to the failure of the internal components of the iPhones." *Id.* ¶ 59.

On September 25, 2014, shortly after the release of the iPhone 6 and 6 Plus, Defendant issued a statement regarding the durability and performance of the iPhone 6 and 6 Plus.  This statement was in response to widespread reports that the iPhone 6 and 6 Plus "ben[t] under normal use." *Id.*  ¶ 60.  Specifically, on September 25, 2014, Defendant stated that "iPhones are designed, engineered and manufactured to be both beautiful and sturdy," and Defendant chose the iPhone's "high-quality materials and construction very carefully for their strength and durability." *Id.* ¶ 60.  According to Plaintiffs, "[t]his statement is demonstrably false because the iPhone suffer from the Touchscreen Defect described herein" and because Defendant knew that the iPhone 6 and 6 Plus were "not durable, not fit for their intended use as smartphones, and would fail under normal and foreseeable use by consumers." *Id.* ¶ 61.

Plaintiffs allege that, from November 22, 2014 until the filing of the instant complaint, there have been "hundreds, if not more, complaints regarding the Touchscreen Defect on Apple's website" and third-party websites. *Id.* ¶¶ 48–49.  Plaintiffs state that Defendant concealed the alleged touchscreen defect and, "[h]ad consumers known of the defect, they would have paid less for the iPhones than the amounts they actually paid, or would not have purchased the iPhones at all." *Id.* ¶ 66.

**B.      Procedural History**

Case No. 16-CV-04942-LHK
ORDER GRANTING MOTION TO DISMISS ALL 10 CLAIMS WITH LEAVE TO AMEND

United States District Court
Northern District of California

1      On August 27, 2016, Plaintiffs Thomas Davidson, Jun Bai, and Todd Cleary filed a

2   putative class action complaint against Defendant that alleged causes of action under (1)

3   California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750; (2) Unfair

4   Competition Laws ("UCL"), Cal. Bus. & Prof. Code § 17200; (3) False Advertisement Law

5   ("FAL"), Cal. Bus. & Prof. Code § 17500; (4) common law fraud; (5) negligent

6   misrepresentation; (6) unjust enrichment; (7) breach of implied warranty; (8) violation of the

7   Magnusson-Moss Warranty Act ("Magnusson-Moss Act"), 15 U.S.C. § 2301; and (9) violation of

8   the Song-Beverly Consumer Warranty Act ("Song-Beverly Act"), Cal. Civ. Code § 1790.  *See*

9   ECF No. 1.

10      On October 7, 2016, Plaintiffs filed a First Amended Class Action Complaint that added

11   several named Plaintiffs and added causes of action under the consumer fraud statutes of Illinois,

12   New Jersey, Florida, Connecticut, Texas, Colorado, Michigan, New York, and Washington.  *See*

13   ECF No. 20.  On December 2, 2016, Plaintiffs filed the SACC, which added a Utah Plaintiff and

14   a cause of action under Utah's consumer fraud statute.  *See* SACC.

15      According to the SACC, each named Plaintiff purchased either an iPhone 6 or 6 Plus.  *See*

16   *id.* ¶¶ 8–20.  "Apple provided Plaintiffs and the Class Members with" an express warranty that

17   warranted the iPhone "against defects in materials and workmanship when used normally in

18   accordance with Apple's published guidelines for a period of ONE (1) YEAR from the date of

19   original retail purchase by the end-user purchaser."  *Id.* ¶ 27; *see also* ECF No. 55 (Request for

20   Judicial Notice, or "RJN"), Ex. A ("Limited Warranty").[2]  At various times after Plaintiffs'

21   purchased an iPhone 6 or 6 Plus, each of the named Plaintiffs experienced the touchscreen defect

22   _____

23   [2] Defendant asks for judicial notice of Defendant's One (1) Year Limited Warranty – iOS for
    Apple Branded Products ("Limited Warranty").  ECF No. 55.  Under the doctrine of

24   incorporation by reference, the Court may consider documents whose contents are alleged in the
    complaint, provided that the complaint "necessarily relies" on the documents, the documents'

25   authenticity is uncontested, and the documents' relevance is uncontested.  *Coto Settlement v.
    Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).  Plaintiffs do not oppose Defendant's request for

26   judicial notice.  Plaintiffs' SACC "necessarily relies" on the Limited Warranty because the SACC
    quotes from the limited warranty and Plaintiffs bring a claim for breach of express warranty,

27   which depends on the contents of the Limited Warranty.  Accordingly, the Court GRANTS
    Defendant's request for judicial notice.

28
                                                                          4
    Case No. 16-CV-04942-LHK
    ORDER GRANTING MOTION TO DISMISS ALL 10 CLAIMS WITH LEAVE TO AMEND

1    at issue.  *See* SACC ¶¶ 8–20.  Below is a chart summarizing the relevant details of each of the

2    named Plaintiffs:

3

| Name | State | Date of Purchase | Date of Malfunction |
|------|-------|------------------|---------------------|
| Todd Cleary | California | October 25, 2014 | "After the Limited Warranty expired" |
| Thomas Davidson | Pennsylvania | December 2014 | August 2016 |
| Adam Benelhachemi | Illinois | June 2015 | December 2015 |
| Michael Pajaro | New Jersey | September 2014 | July 2016 |
| John Borzymowski | Florida | September 2014 | February 2016 |
| Brooke Corbett | Connecticut | February 2015 | April 2016 |
| Taylor Brown | Texas | November 2014 | January 2016 |
| Justin Bauer | Colorado | March 2015 | November 2015 |
| Heirloom Estate Services | Michigan | November 2014 | December 2015 |
| Kathleen Baker | New York | September 26, 2014 | June 2016 |
| Matt Muilenberg | Washington | No Date | No Date |
| William Bon | Washington | No Date | No Date |
| Jason Petty | Utah | October 14, 2014 | March 2016 |

18   Plaintiffs seek to represent a Nationwide Class of "All persons or entities in the United States that

19   purchased an Apple iPhone 6 or 6 Plus."  SACC ¶ 76.  Alternatively, Plaintiffs seek to represent

20   state sub-classes.  *Id.* ¶ 77.

21          Given the breadth of the SACC, the parties agreed at the November 30, 2016 initial case

22   management conference to each select 5 causes of action—for a total of 10 causes of action—to

23   litigate for purposes of the instant motion to dismiss.  *See* ECF No. 44.  On December 5, 2016,

24   the parties selected the following 10 causes of action: (1) New Jersey Consumer Fraud Act

25   ("NJCFA"), N.J. Stat. Ann. § 56:8-1; (2) Florida Deceptive and Unfair Trade Practices Act

26   ("FDUTPA"), Fla. Stat. § 501.201; (3) Washington Consumer Protection Act ("WCPA"), Wash.

United States District Court
Northern District of California

1   Rev. Code § 19.86.010; (4) Illinois Consumer Fraud and Deceptive Trade Practices Act

2   ("ICFDTPA"), Ill. Comp. Stat. § 505; (5) Texas Deceptive Trade Practices Act ("TDTPA"), Tex.

3   Bus. & Com. Code § 17.41; (6) Colorado Consumer Protection Act ("CCPA"), Colo. Rev. Stat. §

4   6-1-105; (7) Common Law Fraud; (8) Breach of Express Warranty; (9) Breach of Implied

5   Warranty; (10) Magnusson-Moss Act.  *See* ECF No. 44, at 1–2.  The parties did not select any

6   California statutory claims.  *See id.*

7        On January 6, 2017, Defendant filed the instant motion to dismiss.  *See* Def. Mot.  On

8   February 3, 2017, Plaintiffs filed an opposition.  ECF No. 58 ("Pl. Opp.").  On February 17,

9   2017, Defendant filed a Reply.  ECF No. 64 ("Reply").

10  **II.     LEGAL STANDARD**

11  **A.     Rule 12(b)(6)**

12       Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a

13  short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint

14  that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6).  Rule 8(a) requires a

15  plaintiff to plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl.*

16  *Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff

17  pleads factual content that allows the court to draw the reasonable inference that the defendant is

18  liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility

19  standard is not akin to a probability requirement, but it asks for more than a sheer possibility that

20  a defendant has acted unlawfully."  *Id.* (internal quotation marks omitted).  For purposes of ruling

21  on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and

22  construe[s] the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St.*

23  *Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

24       The Court, however, need not accept as true allegations contradicted by judicially

25  noticeable facts, *see Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look

26  beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6)

27  motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir.

28  

Case No. 16-CV-04942-LHK
ORDER GRANTING MOTION TO DISMISS ALL 10 CLAIMS WITH LEAVE TO AMEND

1    1995).  Nor must the Court "assume the truth of legal conclusions merely because they are cast in

2    the form of factual allegations."  *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per

3    curiam) (internal quotation marks omitted).  Mere "conclusory allegations of law and

4    unwarranted inferences are insufficient to defeat a motion to dismiss."  *Adams v. Johnson*, 355

5    F.3d 1179, 1183 (9th Cir. 2004).

6    **B.      Rule 9(b)**

7           Claims sounding in fraud are subject to the heightened pleading requirements of Rule 9(b)

8    of the Federal Rules of Civil Procedure, which requires that a plaintiff alleging fraud "must state

9    with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b); *see Kearns v. Ford*

10   *Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).  To satisfy the heightened standard under Rule

11   9(b), the allegations must be "specific enough to give defendants notice of the particular

12   misconduct which is alleged to constitute the fraud charged so that they can defend against the

13   charge and not just deny that they have done anything wrong."  *Semegen v. Weidner*, 780 F.2d

14   727, 731 (9th Cir. 1985).  Thus, claims sounding in fraud must allege "an account of the time,

15   place, and specific content of the false representations as well as the identities of the parties to the

16   misrepresentations."  *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam)

17   (internal quotation marks omitted); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106

18   (9th Cir. 2003) ("Averments of fraud must be accompanied by the who, what, when, where, and

19   how of the misconduct charged." (internal quotation marks omitted)).  The plaintiff must also set

20   forth "what is false or misleading about a statement, and why it is false."  *Ebeid ex rel. U.S. v.*

21   *Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (internal quotation marks omitted).

22   **C.      Leave to Amend**

23          If the Court determines that the complaint should be dismissed, it must then decide

24   whether to grant leave to amend.  Under Rule 15(a) of the Federal Rules of Civil Procedure, leave

25   to amend "should be freely granted when justice so requires," bearing in mind that "the

26   underlying purpose of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the

27   pleadings or technicalities."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc)

28

*United States District Court*
*Northern District of California*

7

1    (internal quotation marks omitted).  Nonetheless, a court "may exercise its discretion to deny

2    leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated

3    failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing

4    party . . . , [and] futility of amendment.'"  *Carvalho v. Equifax Info. Servs., LLC*, 629 F. 3d 876,

5    892–93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182

6    (1962)).

7    **III.    DISCUSSION**

8    **A.    Election of Common Law Causes of Action**

9         As an initial matter, the Court first addresses the parties' selection of common law causes

10   of action for purposes of the instant motion to dismiss.  As set forth above, the parties each

11   selected 5 claims—for a total of 10 claims—to litigate for purposes of the instant motion to

12   dismiss.  ECF No. 44.  In addition to other claims, Plaintiffs selected Plaintiffs' claims for

13   common law breach of express warranty and breach of implied warranty, and Defendant selected

14   Plaintiffs' claim for common law fraud.  *Id.* at 2.  However, neither party specified which state's

15   common law applied to these selected common law claims.  Moreover, the parties' motion to

16   dismiss briefing fails to set forth the elements of the common law causes of action under the law

17   of the different states at issue, and the parties fail to address salient differences, if any, under the

18   common law of different states at issue.

19        Accordingly, for purposes of resolving the instant motion to dismiss, the Court will

20   address the arguments that the parties raise in the instant briefing, but the Court will not apply the

21   common law of other states without briefing.  The parties shall file by March 21, 2017 an

22   amended selection of claims.  Plaintiffs shall select one state's common law for purposes of

23   litigating Plaintiffs' selected breach of express and implied warranty claims, and Defendant shall

24   select one state's common law for purposes of litigating Defendant's selected common law fraud

25   claim.  The remaining 7 selected causes of action shall remain the same.

26   **B.    Motion to Dismiss**

27        Defendant moves to dismiss all 10 of the selected causes of action.  Defendant asserts that

28
8

United States District Court
Northern District of California

(1) Plaintiffs lack Article III standing for Plaintiffs' claims for fraud, as well as for Plaintiffs'
requests for injunctive relief; (2) Plaintiffs' claims for fraud fail because Plaintiffs have failed to
plead fraud with particularity; (3) Plaintiffs' claims for breach of express and implied warranty
fail because Defendant did not breach the Limited Warranty and because Defendant disclaimed
implied warranties.  The Court considers each of these arguments in turn below.  Prior to turning
to Defendant's argument, however, the Court first addresses the common law causes of action at
issue in the instant motion to dismiss.

### 1. Article III Standing

The Court first considers Defendant's argument that Plaintiffs lack Article III standing.
Article III standing requires that "(1) the plaintiff suffered an injury in fact, i.e., one that is
sufficiently 'concrete and particularized' and 'actual or imminent, not conjectural or
hypothetical'; (2) the injury is 'fairly traceable' to the challenged conduct, and (3) the injury is
'likely' to be 'redressed by a favorable decision.'"  *Bates v. United Parcel Serv., Inc.*, 511 F.3d
974, 985 (9th Cir. 2007) (quoting *Lujan v. Def. of Wildlife*, 504 U.S. 555, 560–61 (1992)).
Defendant contends that Plaintiffs lack Article III standing to bring claims for fraud, and that
Plaintiffs lack Article III standing to seek injunctive relief.

### a. Plaintiffs' Article III Standing to Bring Claims for Fraud

According to Defendant, because Plaintiffs have not alleged facts that show that Plaintiffs
"actually relied" on any statement by Defendant, Plaintiffs' alleged injury is not "fairly traceable"
to Defendant's conduct, as required to satisfy Article III.  Def. Mot. at 6.  Specifically, Defendant
asserts that Plaintiffs lack standing to bring claims for fraud because "[c]ourts in the Ninth Circuit
have held that 'actual reliance is required to demonstrate causation for purposes of Article III
standing" when a plaintiff brings suit for fraudulent misrepresentations or omissions.  *Id.* (quoting
*Phillips v. Apple Inc.* ("*Phillips I*"), 2016 WL 1579693, at *6 (N.D. Cal. Apr. 19, 2016)).

As set forth above, the parties did not select any California statutory cause of action to
litigate for purposes of the instant motion to dismiss.  *See* ECF No. 44.  However, the cases relied
upon by Defendant are cases discussing Article III and statutory standing in the context of

9

United States District Court
Northern District of California

California consumer fraud statutes.  *See, e.g.*, *Phillips*, 2015 WL 1579693, at *6–7 (N.D. Cal. Apr. 19, 2016) (evaluating Plaintiffs' constitutional and statutory standing to bring claims under the UCL and FAL); *Kane v. Chobani*, 2013 WL 5289253, at *5–6 (N.D. Cal. Sept. 19, 2013) (discussing whether a plaintiff had "adequately alleged reliance" sufficient for Article III and statutory standing under the UCL and CLRA.  Importantly, "[f]or fraud-based claims under the CLRA and UCL," Plaintiff must "plead actual reliance." *Ehrlich v. BMW of N.A., LLC*, 801 F. Supp. 2d 908, 919 (C.D. Cal. Aug. 11, 2010).  As the Ninth Circuit has recognized, "California [] requires named class plaintiffs to demonstrate reliance, while some other states' consumer protection statutes do not."  *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 591 (9th Cir. 2012).  Accordingly, the Court does not read *Phillips* and *Kane* as holding that "actual reliance" is a standing requirement for *all* states' misrepresentation and omission claims, as opposed to a requirement for asserting claims under the California statutes at issue in those cases.  *See Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 947 (9th Cir. 2011) ("The existence of federal standing often turns on the nature and source of the claim asserted.") (internal quotations omitted).

The parties' briefing fails to set forth the elements of the state consumer fraud statutes at issue.  Indeed, although Plaintiffs state that "under the consumer remedy statutes pled, there is no need to show actual reliance," Plaintiffs do not cite any authority for this proposition.  *See* Pl. Opp. at 4.  Moreover, nearly all of the cases that Plaintiffs *do* cite in their opposition are cases applying California Supreme Court law in the context of California consumer fraud statutes, none of which are at issue in the instant motion to dismiss.  *See id.* at 4–10 (citing *In re Tobacco II Cases*, 207 P.3d 20 (Cal. 2009)).

Nonetheless, despite these briefing deficiencies, the Court is satisfied at this early stage of the litigation that Plaintiffs have established Article III standing.  *See Canyon Cty v. Syngenta Seeds, Inc.*, 519 F.3d 969, 975 n.7 (9th Cir. 2008) ("[P]reliminarily conclud[ing]" at the motion to dismiss stage that the plaintiffs had met the "less rigorous Article III causation threshold").  "[C]ourts have consistently held that the Article III standard for showing that an injury is 'fairly

10

United States District Court
Northern District of California

traceable' to the defendant is 'relatively modest.'" *Phillips v. Apple Inc.* ("*Phillips II*"), 2016 WL 5846992, at *8 (N.D. Cal. Oct. 6, 2016) (quoting *Bennett v. Spear*, 520 U.S. 154, 171 (1997)); *see also Barbour v. Haley*, 471 F.3d 1222, 1226 (11th Cir. 2006) ("[F]or purposes of satisfying Article III's causation requirement, we are concerned with something less than the concept of proximate cause."). The Court finds that Plaintiffs' allegations—that Plaintiffs purchased either an iPhone 6 or 6 Plus, that Defendant made misrepresentations and omissions about the touchscreen defect, and that Plaintiffs would not have bought an iPhone had they known about the alleged touchscreen defect—are sufficient, "at least at this stage of the proceedings," to meet the "less rigorous" burden of alleging that Plaintiffs' harm is "fairly traceable" to Defendant's conduct. *See Canyon*, 519 F.3d at 975 n.7.

Accordingly, the Court DENIES Defendant's motion to dismiss Plaintiffs' fraud claims on the basis of Plaintiffs' lack of Article III standing. Of course, it is a separate question whether Plaintiffs have adequately alleged *facts* sufficient to state a plausible claim for relief, and whether Plaintiffs have alleged those facts with particularity. *See Phillips II*, 2016 WL 5846992, at *8 (distinguishing the "modest" showing required for Article III standing from the question of "whether Plaintiffs have stated a plausible claim for relief"). The Court addresses *infra* in Section II.B whether Plaintiffs' allegations are sufficient to meet the pleading thresholds of Rule 8 and Rule 9(b).

### b. Article III Standing to Seek Injunctive Relief

The Court next turns to Defendant's argument that Plaintiffs lack standing to seek injunctive relief. Defendant contends that Plaintiffs lack Article III standing to seek an injunction because Plaintiffs have failed to allege that they intend to purchase another iPhone 6 or 6 Plus in the future, or even that Defendant continues to market and sell the iPhone 6 and 6 Plus. Def. Mot. at 7–8.

"The standing formulation for a plaintiff seeking prospective injunctive relief is simply one implementation of" the general standing requirements. *Bates*, 511 F.3d at 985 (internal quotation marks omitted). To establish standing for prospective injunctive relief, a plaintiff must

Case No. 16-CV-04942-LHK
ORDER GRANTING MOTION TO DISMISS ALL 10 CLAIMS WITH LEAVE TO AMEND

United States District Court
Northern District of California

United States District Court
Northern District of California

1    demonstrate that he or she "has suffered or is threatened with a concrete and particularized legal

2    harm, coupled with a sufficient likelihood that he will again be wronged in a similar way." *Id.*

3    (internal citations and quotations omitted). "As to the second inquiry, [a plaintiff] must establish

4    a 'real and immediate threat of repeated injury.'" *Id.* (quoting *O'Shea v. Littleton*, 414 U.S. 488,

5    496 (1974)). "[P]ast wrongs do not in themselves amount to [a] real and immediate threat of

6    injury necessary to make out a case or controversy." *City of Los Angeles v. Lyons*, 416 U.S. 95,

7    111 (1983).

8          In cases involving false or misleading product advertising, "where a plaintiff has no

9    intention of purchasing the product in the future, a majority of district courts have held that the

10    plaintiff has no standing to seek prospective injunctive relief." *Davidson v. Kimberly-Clark*

11    *Corp.*, 76 F. Supp. 3d 964, 970 (N.D. Cal. 2014). "This Court has consistently adopted the

12    majority position that a plaintiff must allege that he or she intends to purchase the products at

13    issue in the future to establish standing for injunctive relief." *Romero v. HP, Inc.*, 2017 WL

14    386237, at *9 (N.D. Cal. Jan. 27, 2017) (internal quotations and alterations omitted); *see also*

15    *Rahman v. Mott's LLP*, 2014 WL 325241, at *10 (N.D. Cal. Jan. 29, 2014) ("[T]he Court agrees

16    with defendant that to establish standing, plaintiff must allege that he intends to purchase the

17    products at issue in the future."). Plaintiffs' SACC contains no allegations that any of the named

18    Plaintiffs intend to purchase an iPhone 6 or 6 Plus in the future. *See generally* SACC.

19    Accordingly, Plaintiffs' allegations fall short of establishing "[a] real and immediate threat of

20    injury necessary to make out a case or controversy." *Lyons*, 416 U.S. at 111.

21          In their opposition, Plaintiffs do not contest that their SACC is devoid of any allegation

22    that Plaintiffs intend to purchase an iPhone in the future. Nonetheless, Plaintiffs contend that

23    they have standing to pursue injunctive relief because "[i]n the Joint Case Management Statement

24    and Rule 26(f) Report, Apple states that 'Apple will repair an eligible iPhone 6 Plus device for a

25    service price of $149" through Apple's "Multi-Touch Repair Program." Pl. Opp. at 9. Plaintiffs

26    state that Apple's "repair" is simply to "charge consumers for a refurbished iPhone 6 or 6 Plus

27    that still has the manufacturing defect present." *Id.* Plaintiffs thus contend that, because "[a]ll

28

12

1   Plaintiffs, other than Plaintiff Borzymowski, still own defective iPhones," Plaintiffs "are able to

2   participate in [the Multi-Touch Repair Program] and thus are able to pursue claims for injunctive

3   relief." *Id.*

4         The Court is not persuaded by Plaintiffs' reliance on Defendant's Multi-Touch Repair

5   Program.  At most, Plaintiffs' argument demonstrates that some Plaintiffs remain *eligible* to

6   participate in the Multi-Touch Repair Program.  *See* Pl. Opp. at 9.  However, the SACC remains

7   devoid of any allegations regarding Plaintiffs' *intent* to participate in the program, and thus the

8   SACC contains no allegations that Plaintiffs face "a real and immediate threat of injury." *Lyons*,

9   416 U.S. at 111.  Accordingly, Plaintiffs have failed to demonstrate standing to seek injunctive

10  relief.  *See, e.g.*, *Romero*, 2017 WL 386237, at *9 (holding a plaintiff failed to establish standing

11  for injunctive relief where the plaintiff alleged only that Defendant "continues to advertise its

12  printers in retail settings," without any allegations regarding the plaintiff's intent to purchase the

13  product again).  The Court accordingly GRANTS Defendants' motion to dismiss the SACC

14  insofar as Plaintiffs' seek prospective injunctive relief for their claims.  The Court grants

15  Plaintiffs leave to amend so that Plaintiffs can plead facts showing entitlement to injunctive

16  relief.  *See id.* (dismissing injunctive relief claims for lack of standing but granting leave to

17  amend to allege facts to establish standing for injunctive relief).

18        **2.    Fraud Claims**

19        The Court next turns to address Plaintiffs' consumer fraud claims.  As relevant to the

20  instant motion to dismiss, Plaintiffs bring claims under the (1) NJCFA, N.J. Stat. Ann. § 56:8-1;

21  (2) FDUTPA, Fla. Stat. § 501.201; (3) WCPA, Wash. Rev. Code § 19.86.010; (4) ICFDTPA, Ill.

22  Comp. Stat. § 505; (5) TDTPA, Tex. Bus. & Com. Code § 17.41; (6) CCPA, Colo. Rev. Stat. § 6-

23  1-105; and (7) common law.  Plaintiffs do not dispute that each of these claims are subject to

24  Rule 9(b)'s heightened pleading requirements for pleading fraud.  *See* Pl. Opp. at 6.  According to

25  Defendant, all of Plaintiffs' fraud claims fail because Plaintiffs have failed to meet Rule 9(b)'s

26  requirements.

27        For each of Plaintiffs' consumer fraud claims, Plaintiffs assert that Defendant engaged in

28

Case No. 16-CV-04942-LHK
ORDER GRANTING MOTION TO DISMISS ALL 10 CLAIMS WITH LEAVE TO AMEND

United States District Court
Northern District of California

fraud by (1) "representing that the iPhones have characteristics, uses, benefits, and qualities which they do not have"; and (2) "conceal[ing] or not disclos[ing]" information that a "reasonable consumer would have considered [] to be important in deciding whether to purchase Apple's iPhones or pay a lesser price." *See* SACC ¶¶ 119–20 (ICFDPA); ¶¶ 136–37 (NJCFA); ¶¶ 147–48 (FDUTPA); ¶¶ 166–67 (TDTPA); ¶¶ 178–80 (CCPA); ¶ 206 (WCPTA); ¶ 212 (common law fraud).  The Court first addresses Plaintiffs' allegations of fraud by affirmative misrepresentation, and then the Court addresses Plaintiffs' allegations of fraud by omission.

### a. Affirmative Misrepresentations

Plaintiffs allege with respect to each of their fraud claims that Defendant committed fraud by making affirmative misrepresentations about the characteristics and qualities of the iPhones. *See, e.g.*, SACC ¶¶ 119–20.  In stating a claim for fraud premised on false representations, "[t]o satisfy Rule 9(b), Plaintiff[s] must allege the 'who, what, where, when, and how' and the 'specific content of the false representations.'" *Coleman-Anacleto v. Samsung Elecs. Am., Inc.*, 2016 WL 4729302, at *14 (N.D. Cal. Sept. 12, 2016) (quoting *Swartz*, 476 F.3d at 764).

Plaintiffs' SACC refers to the "specific content" of only one statement by Defendant. Specifically, Plaintiffs state that "[o]n September 25, 2014," Defendant "issued a statement regarding the durability and performance of the iPhone 6 and 6 Plus in response to 'BendGate,'" which Plaintiffs contend "was the name for the widespread controversy over early reports that the external casing on the iPhone 6 and 6 Plus was susceptible to external stress and bending under normal use by consumers." ¶ 60.  In response to reports that certain iPhone 6 and 6 Plus phones bent, Apple released the following statement:

> Our iPhones are designed, engineered and manufactured to be both beautiful and sturdy.  iPhone 6 and iPhone 6 Plus feature a precision engineered unibody enclosure constructed from machining a custom grade of 6000 series anodized aluminum, which is tempered for extra strength.  They also feature stainless steel and titanium inserts to reinforce high stress locations and use the strongest glass in the smartphone industry.  We chose these high-quality materials and construction very carefully for their strength and durability.  We also perform rigorous tests throughout the entire development cycle including 3-point bending, pressure point cycling, sit, torsion, and user studies.  iPhone 6 and iPhone 6 Plus meet or exceed all of our high quality standards to endure

Case No. 16-CV-04942-LHK
ORDER GRANTING MOTION TO DISMISS ALL 10 CLAIMS WITH LEAVE TO AMEND

United States District Court
Northern District of California

1

everyday, real life use.

2

3

   With normal use a bend in iPhone is extremely rare and through our first six days of sale, a total of nine customers have contacted Apple with bent iPhone 6 Plus.  As with any Apple product, if you have questions please contact Apple.

4

SACC ¶ 60.  Plaintiffs' SACC asserts that this statement is "demonstrably false because the

5

iPhones suffer from the Touchscreen Defect," and because "Apple knew or should have known

6

that the iPhones were not durable, not fit for their intended use as smartphones, and would fail

7

under normal and foreseeable use by consumers."  *Id.* ¶ 61.  Other than this September 25, 2014

8

statement, Plaintiffs' SACC does not refer to any other affirmative misrepresentations by

9

Defendant.  *See generally id.*

10

   Even assuming that Defendant's September 25, 2014 statement contains actionable

11

misrepresentations relevant to the touchscreen defect alleged here—an issue that this Court does

12

not decide—Plaintiffs have failed to state a claim.  Significantly, Plaintiffs do not allege that *any*

13

of the named Plaintiffs were exposed to the September 25, 2014 statement prior to purchasing an

14

iPhone 6 or 6 Plus.  Moreover, for Plaintiffs Pajaro and Borzymowski, the SACC alleges that the

15

phones were purchased in "September 2014," so these purchases may have occurred before

16

Apple's September 25, 2014 statement.  *See generally* SACC ¶¶ 11–12; SACC ¶¶ 48–49

17

(alleging that consumers began posting complaints on Apple's website in November 2014).

18

Indeed, not only does the SACC fail to allege that Plaintiffs were exposed to the September 25,

19

2014 statement, Plaintiffs' SACC is devoid of allegations that Plaintiffs were exposed to *any*

20

representation, statement, advertisement, or even packaging prior to purchasing an iPhone 6 or 6

21

Plus.  In the absence of any allegations that Plaintiffs encountered a representation made by

22

Defendant—let alone what those representations were, when they were made, and why they were

23

false—Plaintiffs have failed to plead with particularity any affirmative misrepresentation claim.

24

*See Swartz*, 476 F. 3d at 764 ("Federal Rule of Civil Procedure 9(b) requires more specificity

25

including an account of the 'time, place, and specific content of the false representations as well

26

as the identities of the parties to the misrepresentations.'") (quoting *Edwards v. Marin Park*, 356

27

F.3d 1058, 1066 (9th Cir. 2004)).

28

15

Case No. 16-CV-04942-LHK
ORDER GRANTING MOTION TO DISMISS ALL 10 CLAIMS WITH LEAVE TO AMEND

United States District Court
Northern District of California

United States District Court
Northern District of California

Indeed, Plaintiffs appear to concede that the SACC does not adequately allege an affirmative misrepresentation by Defendant.  In Plaintiffs' opposition, Plaintiffs argue that they are relying on a theory of fraud by *omission*, and that fraud claims premised on omissions do not need to be pled with the same degree of particularity as fraud claims premised on affirmative misrepresentations.  *See* Pl. Opp. at 7.  The Court turns to address whether Plaintiffs have adequately alleged claims for fraud premised on Defendant's omissions.

### b. Fraudulent Omissions

Plaintiff alleges that Defendant committed fraud by "conceal[ing] or not disclos[ing]" that the iPhone's touchscreens were defective, which a "reasonable consumer would have considered [] to be important in deciding whether to purchase Apple's iPhones or pay a lesser price." *See, e.g.*, SACC ¶ 120.  The Ninth Circuit has explained that "nondisclosure is a claim for misrepresentation in a cause of action for fraud, [which] (as any other fraud claim) must be pleaded with particularity under Rule 9(b)." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009).

Defendant relies on *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1002 (N.D. Cal. 2009), in arguing that Plaintiffs have not adequately pled Defendant's nondisclosures and omissions.  The Court in *Marolda* held that the plaintiff failed to plead her fraud claims with particularity because the plaintiff did not identify "where the omitted information should or could have been revealed," and because the plaintiff did not "provide representative samples of advertisements, offers, or other representations" that the plaintiff saw prior to her purchase.  *Id.* at 1001.  However, subsequent to *Marolda*, district courts within the Ninth Circuit have limited *Marolda*'s reach.  *See, e.g.*, *Philips v. Ford Motor Co.* ("*Philips II*"), 2015 WL 4111448, at *12 (N.D. Cal. July 7, 2015) (declining to apply *Marolda*); *MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1096 (N.D. Cal. 2014) (same).  This is because "*Marolda* involved an alleged fraudulent omission within a particular advertisement produced by the defendant.  The plaintiff [in *Marolda*] claimed to know about the advertisement but failed to describe it to the court." *Philips II*, 2015 WL 4111448, at *12 (citing *Marolda*, 672 F. Supp. 2d at 1001).  Thus, although

Case No. 16-CV-04942-LHK
ORDER GRANTING MOTION TO DISMISS ALL 10 CLAIMS WITH LEAVE TO AMEND

1    a Plaintiff must satisfy Rule 9(b) in alleging a fraudulent omission, "the *Marolda* requirements

2    are not necessarily appropriate for all cases alleging a fraudulent omission." *Overton v. Bird*

3    *Brain, Inc.*, 2012 WL 909295, at *6 (C.D. Cal. Mar. 15, 2012).

4         The Court agrees with Plaintiffs that the *Marolda* requirements are not appropriate for the

5    instant case because Plaintiffs do not premise their fraudulent omission claims on any "particular

6    advertisement." *See Philips II*, 2015 WL 4111448, at *12.  Thus, Plaintiffs are not required to

7    "provide representative samples" to the Court or to state specifically "where the omitted

8    information should or could have been revealed." *Marolda*, 672 F. Supp. 2d at 1001.

9    Nonetheless, Plaintiffs must comply with Rule 9(b) in stating a claim for fraud premised on

10   fraudulent omissions.  *Kearns*, 567 F.3d at 1127 ("[N]ondisclosure is a claim for

11   misrepresentation in a cause of action for fraud, [which] (as any other fraud claim) must be

12   pleaded with particularity under Rule 9(b)").  For the reasons discussed below, the Court agrees

13   with Defendant that Plaintiffs have not done so.

14        This Court's decisions in *Philips v. Ford Motor Company* are instructive.  The plaintiffs

15   in *Philips* argued that "Ford actively concealed, failed to disclose, and continue[d] to fail to

16   disclose to consumers" an alleged defect in the class vehicles' power steering systems.  *Philips II*,

17   2015 WL 4111448, at *3.  The plaintiffs brought suit against Ford under a variety of state

18   consumer statutes, and asserted that Ford "fail[ed] to disclose to consumers and the public at

19   large" that the class vehicles' power steering systems were prone to failure.  *Id.*  In *Philips I*, the

20   Court granted Ford's first motion to dismiss the complaint because the plaintiffs failed to plead

21   Ford's fraudulent omissions with particularity, as required by Rule 9(b).  *See Philips v. Ford*

22   *Motor Co.* ("*Philips I*"), Case No. 14-CV-02989-LHK, ECF No. 48, at 9–10 (N.D. Cal. Feb. 13,

23   2015).  Although the Court held that the *Marolda* requirements did not apply, the Court found

24   that the plaintiffs' fraudulent omission allegations were insufficient under Rule 9(b) because the

25   plaintiffs "d[id] not specify what materials" they "viewed prior to purchasing their cars."  *Id.* at

26   10.  Rather, the plaintiffs had alleged only generally that they reviewed "Ford's promotional

27   materials and other information."  *See id.*

28

Case No. 16-CV-04942-LHK
ORDER GRANTING MOTION TO DISMISS ALL 10 CLAIMS WITH LEAVE TO AMEND

United States District Court
Northern District of California

1      The plaintiffs in *Philips* amended their complaint, and Ford again moved to dismiss on the

2  basis of the plaintiffs' failure to satisfy Rule 9(b).  *Philips II*, 2015 WL 4111448, at *3.  In

3  *Philips II*, the Court held that the plaintiffs' amended allegations met Rule 9(b) because the

4  amended complaint "allege[d] that Ford's 'television advertisements concerning the vehicles,'

5  'material concerning the Fusion on Ford's website,' 'window sticker[s],' and 'brochure

6  concerning the Fusion' did not include relevant information about the [power steering] system

7  and its possible failures.'"  *Id.* at *12.  The Court held that these amended allegations were

8  sufficient to allege the "who, what, when, and where" of Ford's fraudulent omissions.  *Id.* at *12–

9  13.

10      Plaintiffs' allegations in the SACC are even more deficient than the allegations that this

11  Court dismissed in *Philips I*.  Although the plaintiffs in *Philips I* alleged generally that they

12  reviewed "Ford's promotional materials and other information"—an allegation that this Court

13  found too vague to satisfy Rule 9(b)—Plaintiffs here do not allege that they reviewed or were

14  exposed to *any* information, advertisements, labeling, or packaging by Defendant.  *See generally*

15  SACC.  For example, with regards to Plaintiff Benelhachemi, the SACC states only that "[i]n or

16  about June 2015, Mr. Benelhachemi purchased an iPhone 6 Plus from a Best Buy store in

17  Illinois."  *Id.* ¶ 10.  Moreover, for some Plaintiffs, the SACC does not even provide the date on

18  which the Plaintiff made his or her purchase.  *See* SACC ¶ 18 ("Mr. Muilenburg purchased an

19  iPhone 6 Plus from an Apple Store.").  In sum, Plaintiffs' allegations are too vague to provide

20  Defendants with the "who, what, when, and where" of the allegedly fraudulent omissions, as

21  required by Rule 9(b).  *See Kearns*, 567 F.3d at 1127 (dismissing fraudulent omission claim

22  under Rule 9(b) where the plaintiffs' "claims of nondisclosure were couched in general pleadings

23  alleging Ford's intent to conceal from consumers that [Certified Pre-Owned vehicles] were

24  essentially the same as ordinary used vehicles").

25      Thus, because Plaintiffs have failed to plead either their fraudulent representation or their

26  fraudulent omission claims with particularity, the Court GRANTS Defendant's motion to

27  dismiss.  The Court provides leave to amend so that Plaintiffs may plead facts sufficient to satisfy

28

Case No. 16-CV-04942-LHK
ORDER GRANTING MOTION TO DISMISS ALL 10 CLAIMS WITH LEAVE TO AMEND

the heightened pleading requirements of Rule 9(b).  Because the Court dismisses all of Plaintiffs'

consumer fraud claims on this basis, the Court need not reach Defendant's remaining arguments

regarding Plaintiffs' claim under the NJCFA.

### 3.      Warranty Claims

Lastly, Defendant moves to dismiss Plaintiffs' claims for breach of express and implied

warranty, as well as Plaintiffs' claim under the Magnusson-Moss Warranty Act.  As set forth

above, Plaintiffs "do not specify whether they intend for California law, the law of each plaintiff's

home state, or some other state's law to apply" to Plaintiffs' selected breach of express and

implied warranty claims.  Def. Mot. at 5.  Defendant asserts that, under either California law or

under the law of any of the states at issue in the instant motion to dismiss, Plaintiffs' breach of

express and implied warranty claims fail.  In Plaintiffs' opposition, Plaintiffs rely on California

law, and Plaintiffs do not discuss any differences in the common law of the states at issue.  *See,*

*e.g.*, Pl. Opp. at 12 (citing Cal. Civil Code § 1670.5 and California case law); *id.* at 19 (citing Cal.

Comm. Code § 2316(2)).  Accordingly, for purposes of the instant motion to dismiss, the Court

will address Plaintiffs' warranty claims under California law, and the Court will assume—given

Plaintiffs' failure to contest the issue—that the parties' arguments apply equally to the law of each

of the states at issue.[3]  However, in future motion

### a. Breach of Express Warranty

First, Defendant moves to dismiss Plaintiffs' claim for breach of express warranty.  To

prevail on a breach of express warranty claim, Plaintiff must prove: (1) "the seller's statements

constitute an affirmation of fact or promise or a description of the goods; (2) the statement was

part of the basis of the bargain; and (3) the warranty was breached."  *Weinstat v. Dentsply Int'l,*

---

[3] The Court recognizes that "California law may only be used on a classwide basis if 'the interests of other states are not found to outweigh California's interest in having its law applied.'" *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 590 (9th Cir. 2012).  The Court defers this inquiry, however, until a later stage of the proceeding, when it has been properly briefed by the parties and when the facts of this case have been more fully developed.  *See In re Sony Grand Wega KDF—E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2s 1077, 1097 (S.D. Cal. Nov. 30, 2010) ("In a putative class action, the Court will not conduct a detailed choice-of-law analysis during the pleading stage.").

Case No. 16-CV-04942-LHK
ORDER GRANTING MOTION TO DISMISS ALL 10 CLAIMS WITH LEAVE TO AMEND

1    *Inc.*, 180 Cal. App. 4th 1213, 1227 (Cal. 2010) (internal quotation marks and citation omitted).

2        The express warranty at issue is Defendant's Limited Warranty, which provides:  "Apple

3    warrants the Apple-branded iPhone . . . against defects in **materials and workmanship** when

4    used normally in accordance with Apple's published guidelines for a period of **ONE (1) YEAR**

5    from the date of original retail purchase by the end-user purchaser."  Limited Warranty, at 1 (bold

6    emphasis added).  Defendant contends that it did not breach the Limited Warranty because:  (1)

7    the alleged touchscreen defect is a "design defect," not a "defect[] in materials and

8    workmanship"; and (2) for all but two Plaintiffs, the touchscreen defect manifested outside of the

9    1-year Limited Warranty period.  The Court addresses each argument in turn.

10                **i. Defect in "Materials and Workmanship" or Defect in "Design"**

11        As set forth above, Defendants' Limited Warranty states that Defendants warrant "against

12    defects in materials and workmanship."  Limited Warranty, at 1.  "An express warranty covering

13    'materials and workmanship' does not include design defects."  *Clark v. LG Elecs USA, Inc.*,

14    2013 WL 5816410, at *7 (S.D. Cal. Oct. 29, 2013) (internal quotation marks omitted).

15    Importantly, the Ninth Circuit has recognized that even if a complaint refers to defects in

16    "materials," the plaintiffs' chosen language is not dispositive in determining whether the alleged

17    defect is a defect in design or a defect in "materials and workmanship."  *See Troup v. Toyota*

18    *Motor Corp.*, 545 F. App'x 668, 668–69 (9th Cir. 2014) ("Despite [the complaints'] scattered

19    references to 'materials,' the gravamen of the complaint is that the Prius's defect resulted from . .

20    . a design decision.").  Thus, the Court turns to Plaintiffs' allegations in the SACC to determine

21    whether Plaintiffs allege a defect in "design" or a defect in "materials and workmanship."

22        Plaintiffs' SACC alleges that "[t]he materials used in the iPhone's external casing are

23    insufficient and inadequate to protect their internal parts," and thus "the external casing of the

24    iPhones is not sturdy, strong, or durable."  *Id.* ¶ 33, 35.  Plaintiffs further state that, unlike prior

25    versions of the iPhone, the iPhones 6 and 6 Plus "fail to incorporate underfill or a shield over the

26    logic board."  *Id.* ¶ 45.  As a result of the inadequacy of the iPhone's external casing, Plaintiffs

27    allege that the "internal components of the iPhones" are subject to "increased external stress and

28   

20

1   physical harm," which causes "the touch IC chips" to be "unable to recognize the user's touches

2   on the touchscreen." *Id.* ¶¶ 38–40.

3          The Court agrees with Defendant that the SACC, at bottom, alleges a defect in

4   Defendant's design of the iPhone 6 and 6 Plus.  "A manufacturing defect exists when an item is

5   produced in a substandard condition," and "[s]uch a defect is often demonstrated by showing the

6   product performed differently from other ostensibly identical units of the same product line."

7   *McCabe v. Am. Honda Motor Co.*, 100 Cal. App. 4th 1111, 1120 (Cal. Ct. App. 2002).  "A design

8   defect, in contrast, exists when the product is built in accordance with its intended specifications,

9   but the design itself is inherently defective."  *Id.*; *see also Bros v. Hewlett-Packard Co.*, 2007 WL

10  485979, at *4 (N.D. Cal. Feb. 12, 2007) ("Unlike defects in 'materials and workmanship,' a

11  design defect is manufactured *in accordance* with the product's intended specifications.").  The

12  crux of Plaintiffs' allegations is that the iPhone 6 and 6 Plus were "built in accordance with

13  [Defendant's] intended specifications," but that Defendant chose materials for the iPhone 6 and 6

14  Plus that are insufficient to protect the iPhone's internal components.  *McCabe*, 100 Cal. App. 4th

15  at 1120.  Indeed, the SACC contrasts the iPhone 6 and 6 Plus's design with the design of prior

16  iPhone models which incorporated either "underfill" or a metal "shield."  *See* SACC ¶¶ 33, 35.  A

17  manufacturer's choice to use a certain material to construct a product is a "design decision," not a

18  defect in "materials and workmanship."  *Troup*, 545 F. App'x at 668–69 (finding the "gravamen"

19  of plaintiff's complaint alleged a "design defect" because the plaintiff alleged that "the Prius's

20  defect resulted from the use of resin to construct the gas tanks, which is a design decision").

21  Moreover, Plaintiffs assert that Defendant's "repair" for the iPhone 6 and 6 Plus is simply to

22  "replace a broken phone with a refurbished one that is subject to the same manufacturing defect,"

23  *id.* ¶ 40, and Plaintiffs seek to represent a class of *all* purchasers of the iPhone 6 and 6 Plus.  *Id.* ¶

24  76.  This further suggests that Plaintiffs are alleging an inherent defect in the iPhone's design,

25  which is not covered by the Limited Warranty provision covering defects in "materials and

26  workmanship."  *See Sater v. Chrysler Grp.*, 2015 WL 736273, at *4 (C.D. Cal. Feb. 20, 2015)

27  (finding the plaintiffs alleged a design defect that was not covered by Chrysler's express warranty

28
    21

United States District Court
Northern District of California

1     provision covering trucks "defective in material, workmanship or factory preparation," where the

2     complaint alleged a "uniform" defect and the plaintiffs "define[d] the class as *all* purchasers . . .

3     indicating the trucks were built in the manner Chrysler intended (but the intended manner was

4     faulty)").

5        Accordingly, because the factual allegations in Plaintiffs' SACC evince only a design

6     defect, rather than a defect in "materials and workmanship," Plaintiffs have not stated a claim for

7     breach of express warranty.  The Court accordingly GRANTS Defendant's motion to dismiss

8     Plaintiffs' breach of express warranty claim.  The Court grants Plaintiffs leave to amend so that

9     Plaintiffs can "be more explicit regarding the [iPhones'] non-design based defects."  *Clark*, 2013

10    WL 2476145, at *5.

11                **ii. Defects Arising After the 1-Year Limited Warranty Period**

12        In anticipation of Plaintiffs' amendment of the SACC, the Court briefly addresses

13    Defendant's argument that, for all but two Plaintiffs, Plaintiffs cannot state a breach of express

14    warranty claim because the touchscreen defect manifested outside of the Limited Warranty

15    period.  As Plaintiffs concede, only Plaintiffs Benelhachemi and Bauer[4] experienced the

16    touchscreen defect during the 1-year Limited Warranty period.  *See* Pl. Opp. at 11.  "The general

17    rule is that an express warranty has no affect after the applicable time period has elapsed."

18    *Marchante v. Sony Corp. of Am., Inc.*, 801 F. Supp. 2d 1013, 1020 (S.D. Cal. 2011); *see also*

19    *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) ("If a manufacturer

20    determines [a product's] useful life and warrants the product for a lesser period of time, we can

21    hardly say that the warranty is implicated when the item fails after the warranty period expires.").

22    Accordingly, for all Plaintiffs except for Benelhachemi and Bauer, Plaintiffs cannot state a breach

23    of express warranty claim because Plaintiffs' touchscreen defect manifested after the expiration

24

25    [4] The Court notes that Plaintiffs' allegations regarding Bauer are inconsistent.  Plaintiffs allege
     that Bauer purchased his phone in March 2015, and that it became unresponsive in November

26    2015.  SACC ¶ 15.  However, Plaintiffs state that Bauer contacted Defendant to fix the
     touchscreen defect in July 2015, which is four months prior to the date that Bauer's iPhone

27    allegedly became unresponsive.  *Id.*

28

Case No. 16-CV-04942-LHK
ORDER GRANTING MOTION TO DISMISS ALL 10 CLAIMS WITH LEAVE TO AMEND

United States District Court
Northern District of California

United States District Court
Northern District of California

1  of the 1-year Limited Warranty.  *Clemens*, 534 F.3d at 1023 ("The repairs in this case were made

2  after the warranty period expired.  Therefore, we affirm the dismissal of the express warranty

3  claims.").

4         Plaintiffs argue that the Limited Warranty's 1-year duration provision does not bar

5  Plaintiffs' claim because the Limited Warranty's 1-year duration provision is unconscionable.  Pl.

6  Opp. at 12.  A contract provision is "unconscionable, and therefore unenforceable, only if it is

7  *both* procedurally and substantively unconscionable."  *In re iPhone Application Litig.*, 2011 WL

8  4403963, at *7 (N.D. Cal. Sept. 20, 2011) (citing *Armendariz v. Fountain Hlth. Psychare Servs.,*

9  *Inc.*, 24 Cal. 4th 83, 114 (Cal. 2000)).  "The procedural element of unconscionability focuses on

10  two factors:  oppression and surprise."  *Id.* (quoting *Aron v. U-Haul Co. of Cal.*, 143 Cal. App.

11  4th 796, 808 (Cal. Ct. App. 2006)).  "The substantive element of unconscionability focuses on the

12  actual terms of the agreement and evaluates whether they create 'overly harsh' or 'one-sided

13  results as to 'shock the conscience.'"  *Id.*

14         The Court is not persuaded by Plaintiffs' argument that the Limited Warranty's 1-year

15  duration provision is unconscionable.  With regards to procedural unconscionability, Plaintiffs

16  contend that the Limited Warranty is unconscionable because it is a contract of adhesion, and

17  because Plaintiffs were provided with the Limited Warranty only after purchase.  Pl. Opp. at 14.

18  However, "while the terms of the [Limited Warranty] are non-negotiable, Plaintiffs do not allege

19  that they lacked other options for purchasing [smartphones] or for obtaining additional warranty

20  protections from Apple itself."  *Berenblatt v. Apple*, 2010 WL 1460297, at *5.  Moreover, the

21  SACC does not allege that Plaintiffs "were 'surprised' by the terms of the express warranty," and

22  Plaintiffs do not allege "that they themselves did not receive pre-sale notice of the warranty, or

23  that they could not or did not access the warranty online" at the time of Plaintiffs' purchase.  *Id.*

24  at *4–5 (finding Apple's automatic one-year warranty was not unconscionable); *see* SACC ¶ 67

25  ("Apple provided Plaintiffs and the Class Members with the following express warranty . . . .").

26         As to substantive unconscionability, Plaintiffs assert that the Limited Warranty is

27  unconscionable because Defendant "manufactures a new [iPhone] model every two years," that

28
23

1    cellphone service providers offer phones "on two-year contracts," and Plaintiffs thus "intuit that

2    in the event of a latent problem with their phone during the life of that contract, [Defendant] will

3    make them whole, especially if [Defendant] manufactured the flaw into the iPhones in the first

4    place." Pl. Opp. at 15.  However, "a time limitation, by itself, is not unconscionable," and courts

5    have rejected unconscionability arguments in similar cases.  *Bros.*, 2006 WL 3093685, at *8

6    (rejecting unconscionability argument where the plaintiff argued "the class do[es] not have any

7    meaningful choice in the time limitations in the warranty, the express terms favor HP, and HP

8    knew that the [printers] were defective and would fail well before their useful life").

9            Importantly, Plaintiffs do not allege that Defendant "changed its standard warranty as a

10   result of knowing about the [touchscreen defect], or that [Defendant] took its alleged knowledge

11   of the [touchscreen defect] into account in setting the warranty's" 1-year duration.  *Seifi v.*

12   *Mercedes-Benz USA, LLC*, 2013 WL 5568449, at *5 (N.D. Cal. Oct. 9, 2013); *see also Fisher v.*

13   *Honda N.A., Inc.*, 2014 WL 2808188, at *9 (C.D. Cal. June 12, 2014) (rejecting

14   unconscionability challenge to duration period of limited warranty where the duration of the

15   warranty did not, "on its face, create one-sided results," and the plaintiff pleaded no facts to

16   suggest that the defendant limited the warranty because it "was aware that the defect would only

17   become manifest *after* the warranty period ended").  Rather, Plaintiffs assert that the 1-year

18   duration is unconscionable because Plaintiffs "intuit" that their iPhones should last for at least 2

19   years because of the 2-year service contracts offered by cellular service providers.  Pl. Opp. at 15;

20   *see* SACC ¶ 73.  However, Plaintiffs' "unilateral consumer expectations" based on contracts

21   offered by cellular service providers are insufficient "to unwind the express terms of [the Limited

22   Warranty's] durational limits."  *Seifi*, 2013 WL 5568449, at *4 ("A theory that would allow

23   unilateral consumer expectations based on the practices of other car manufacturers to unwind the

24   express terms of the durational limits here would render substantive unconscionability analysis

25   unworkable.").  In sum, Plaintiffs have not shown that the 1-year duration "creates overly harsh

26   or one-sided results that shock the conscience," and thus Plaintiffs have not established

27   substantive unconscionability.  *Aron*, 143 Cal. App. 4th at 808.

28
Case No. 16-CV-04942-LHK
ORDER GRANTING MOTION TO DISMISS ALL 10 CLAIMS WITH LEAVE TO AMEND

United States District Court
Northern District of California

1    Based on the allegations in the SACC, Defendant's 1-year Limited Warranty is not

2    unconscionable, and the Limited Warranty is enforceable.  Accordingly, Plaintiffs cannot state a

3    claim for breach of express warranty for the Plaintiffs whose touchscreen defect manifested after

4    the 1-year Limited Warranty expired.  *In re Sony Grand Wega KDF-E A10/A20 Series Rear*

5    *Projection HDTV Tel. Litig.*, 758 F. Supp. 2d 1077, 1099–1100 (S.D. Cal. 2010) (dismissing

6    express warranty claim "[b]ecause Plaintiffs have not alleged that the defect presented itself

7    during the Express Warranty period.").[5]  Accordingly, Plaintiffs' breach of warranty claim,

8    except to the extent that claim is alleged by Plaintiff Benelhachemi or Bauer, is dismissed for the

9    independent reason that the defect manifested in Plaintiffs' iPhones outside of the 1-Year Limited

10   Warranty.  Plaintiffs may amend the SACC to allege further facts in support of their

11   unconscionability argument.  *See Seifi*, 2013 WL 2285339, at *5 (dismissing without prejudice a

12   breach of express warranty claim premised on the unconscionability of the warranty's durational

13   limits).

### b. Breach of Implied Warranty

15   Finally, Defendant moves to dismiss Plaintiffs' claim for breach of implied warranty.[6]

16   Plaintiffs allege that Defendant provided Plaintiffs "with an implied warranty that the iPhones

17   and any parts thereof are merchantable and fit for the ordinary purpose for which they were sold."

---

[5] Plaintiffs also rely on *Hicks v. Kaufman & Broad Home Corp.*, 89 Cal. App. 4th 908 (2001), for the proposition that Plaintiffs can allege a breach of warranty claim outside of the warranty period because they allege that their iPhones contained a "latent defect" that was "substantially certain" to occur.  *See* Pl. Opp. at 17.  However, as the Court noted in *Elias v. Hewlett-Packard Company*, 903 F. Supp. 2d at 851, "multiple district courts have concluded" that the exception recognized in *Hicks* does not apply to "consumer products with limited lifespans such as computers."  *Id.*; *see also In re Sony*, 758 F. Supp. 2d at 1099 (holding that, if *Hicks* did create an exception to the general rule, "it does not apply to consumer goods such as televisions" or "other electronics."); *In re Toyota Motor Corp.*, 754 F. Supp. 1145, 1179 (C.D. Cal. 2010) (finding that *Hicks* "was shaped by the unique nature of the product that was alleged to be defective" in that case: the concrete slab foundation of a home).  Accordingly, the Court does not find Plaintiff's reliance on *Hicks* persuasive here.
[6] As set forth above, the parties elected to litigate in the instant motion to dismiss Plaintiffs' claim for common law breach of implied warranty.  The parties did not select Plaintiffs' Song-Beverly Act claim.  Accordingly, the Court does not address in this Order the law applicable to implied warranty claims under the Song-Beverly Act, and Plaintiffs' citations to cases relying on the Song-Beverly Act are inapposite.

1    SACC ¶ 238.  Plaintiffs allege that "the iPhones are not fit for their ordinary purpose as

2    smartphones" and thus Defendant "breached the implied warranty that the iPhones were of

3    merchantable quality and fit for such use."  *Id.* ¶ 241.  According to Defendant, Plaintiffs'

4    implied warranty fails because Defendant's Limited Warranty "prominently and conspicuously

5    disclaimed any implied warranties."  Def. Mot. at 19.

6              Defendant's Limited Warranty provides as follows:

7                    WARRANTY LIMITATIONS SUBJECT TO CONSUMER LAW

8                    TO THE EXTENT PERMITTED BY LAW, THIS WARRANTY
                     AND THE REMEDIES SET FORTH ARE EXCLUSIVE AND IN
9                    LIEU OF ALL OTHER WARRANTIES, REMEDIES AND
                     CONDITIONS, WHETHER ORAL, WRITTEN, STATUTORY,
10                   EXPRESS OR IMPLIED.   **APPLE DISCLAIMS ALL**
                     **STATUTORY AND IMPLIED WARRANTIES, INCLUDING**
11                   **WITHOUT    LIMITATION,    WARRANTIES    OF**
                     **MERCHANTABILITY    AND    FITNESS    FOR    A**
12                   **PARTICULAR PURPOSE** AND WARRANTIES AGAINST
                     HIDDEN OR LATENT DEFECTS, TO THE EXTENT
13                   PERMITTED BY LAW.  IN SO FAR AS SUCH WARRANTIES
                     CANNOT BE DISCLAIMED, APPLE LIMITS THE DURATION
14                   AND REMEDIES OF SUCH WARRANTIES TO THE
                     DURATION OF THIS EXPRESS WARRANTY AND, AT
15                   APPLE'S  OPTION,  THE  REPAIR  OR  REPLACEMENT
                     SERVICES DESCRIBED BELOW.   SOME STATES
16                   (COUNTRIES AND PROVINCES) DO NOT ALLOW
                     LIMITATIONS ON HOW LONG AN IMPLIED WARRANTY
17                   (OR CONDITION) MAY LAST, SO THE LIMITATION
                     DESCRIBED ABOVE MAY NOT APPLY TO YOU.
18
     Limited Warranty, at 1 (bold emphasis added).
19
              Under California law, "[a] company may disclaim the implied warranty of
20
     merchantability so long as the disclaimer 'mention[s] merchantability' and is 'conspicuous.'"
21
     *Minkler v. Apple, Inc.*, 65 F. Supp. 3d 810, 819 (N.D. Cal. 2014) (quoting Cal. Comm. Code §
22
     2316(2)).  "A company may disclaim the implied warranty of fitness as long as the disclaimer is
23
     in writing and 'conspicuous.'"  *Id.*  Plaintiffs assert that the Limited Warranty does not
24
     "conspicuous[ly]" disclaim implied warranties because (1) the disclaimer does not "stand out"
25
     from the surrounding text; (2) the Limited Warranty is not provided with the product or presented
26
     to the buyer prior to purchase; and (3) because the Limited Warranty is unconscionable.  The
27

28                                                     26

1    Court considers each argument below.

2         First, Plaintiffs argue that the Limited Warranty's disclaimer is not "conspicuous" because

3    it is not sufficiently distinguished from the surrounding text.  Pl. Opp. at 21.  However, in

4    *Minkler*, the Court found identical capitalized language to be sufficiently clear and conspicuous

5    to disclaim implied warranties.  *See id.* (finding that Apple had adequately disclaimed implied

6    warranties by stating "in clear language and capitalized formatting" that "Apple 'disclaims all

7    statutory and implied warranties, including without limitation, warranties of merchantability and

8    fitness for a particular purpose and warranties against hidden or latent defects'").  The implied

9    warranty disclaimer in Defendant's Limited Warranty is located in the second paragraph of the

10   first page of the Limited Warranty.  *See* Limited Warranty, at 1.  The disclaimer is preceded by a

11   heading and, unlike the subsequent text on the same page, the disclaimer is in all capital letters.

12   *See id*.  Accordingly, contrary to Plaintiffs' assertions, the disclaimer is sufficiently distinguished

13   from the surrounding text such that a reasonable consumer "ought to have noticed it."  *In re*

14   *Google Phone Litig.*, 2012 WL 3155571, at *8 (N.D. Cal. Aug. 2, 2012) (finding disclaimer to be

15   conspicuous, even though it was on the "fourth page of a six-page document," because "the

16   disclaimer [was] in all capital letters while the surrounding text [was] in lower case font").

17        Second, Plaintiffs argue that the Limited Warranty's disclaimer is not "conspicuous"

18   because the Limited Warranty was provided to Plaintiffs only after they purchased the product

19   and because the Limited Warranty is located on Defendant's website, rather than with the product

20   itself.  Pl. Opp. at 21.  However, as discussed above with regards to Plaintiffs' arguments that the

21   Limited Warranty is unconscionable, Plaintiffs do not allege that they "did not receive pre-sale

22   notice of the warranty," and Plaintiffs do not allege that "they could not or did not access the

23   warranty online" or at the location that they purchased the product.  *Berenblat*, 2010 WL

24   1460297, at *3; *see* SACC ¶ 67 ("Apple provided Plaintiffs and the Class Members with the

25   following express warranty . . . .").  Moreover, Plaintiffs "were able to review the warranty upon

26   purchase and to return the product if they were dissatisfied the warranty's limitations."  *Id.*; *see*

27   Limited Warranty, at 1 ("If you do not agree to the terms of the warranty, do not use the product

28

27

United States District Court
Northern District of California

United States District Court
Northern District of California

1   and return it . . . for a refund.").  Thus, based on Plaintiffs' allegations in the SACC, the Court

2   disagrees that the Limited Warranty's disclaimer is not "conspicuous."

3          Finally, Plaintiffs contend that the Limited Warranty's implied warranty disclaimer is

4   unenforceable because the entire Limited Warranty is unconscionable.  Pl. Opp. at 22–23.

5   However, Plaintiffs' argument that the Limited Warranty is unconscionable is redundant of

6   Plaintiffs' argument in Plaintiffs' breach of express warranty claim that the Limited Warranty's

7   1-Year duration provision is unconscionable.  *Id.*  As discussed above with regards to Plaintiffs'

8   breach of express warranty claim, the Limited Warranty is not unconscionable.  *See also, e.g.*,

9   *Tietsworth v. Sears, Roebuck & Co.*, 2009 WL 3320486, at *10 (N.D. Cal. Oct. 13, 2009)

10  (rejecting unconscionability argument, even where the plaintiffs "allege[d] that they were not

11  informed of the language of the warranty" before sale, where the plaintiffs could return the

12  product after purchase, and there was "no allegation that the terms of the warranty were hidden or

13  unclear to Plaintiffs" at the time they received the product).

14         In sum, "Apple's [Limited Warranty] disclaimed all implied warranties in accordance

15  with California law because it stated in clear language and capitalized formatting that Apple

16  'disclaims all statutory and implied warranties, including without limitation, warranties of

17  merchantability and fitness for a particular purpose and warranties against hidden or latent

18  defects.'"  *Minkler*, 65 F. Supp. 3d at 819.  The SACC contains no allegations that Plaintiffs did

19  not see or understand the Limited Warranty's implied warranty disclaimer, or that Plaintiffs were

20  surprised by the disclaimer's terms.  *See generally* SACC ¶¶67–74.  Accordingly, the implied

21  warranty disclaimer contained within Defendant's Limited Warranty is enforceable, and the

22  Court thus GRANTS Defendant's motion to dismiss Plaintiffs' breach of implied warranty claim.

23  The Court grants leave to amend for Plaintiff to sufficiently allege facts supporting Plaintiffs'

24  arguments that the implied warranty disclaimer is unenforceable.  *See In re Google Phone Litig.*,

25  2012 WL 3155571, at *7–8 (granting plaintiffs leave to amend their implied warranty claim

26  where the claim was based on the plaintiffs' allegations that the disclaimer was not conspicuous).

27         **c. Magnusson-Moss Act**

28
                                            28

Case No. 16-CV-04942-LHK
ORDER GRANTING MOTION TO DISMISS ALL 10 CLAIMS WITH LEAVE TO AMEND

1    Finally, Defendant moves to dismiss Plaintiffs' claim under the Magnusson-Moss Act.

2   The parties do not dispute that "claims under the Magnusson-Moss Act stand or fall with

3   [Plaintiffs'] express and implied warranty claims under state law." *Clemens*, 534 F.3d at 1022.

4   Accordingly, to the extent that Plaintiffs' Magnusson-Moss Warranty Act claim is premised on

5   Plaintiffs' common law breach of express and implied warranty claims, the Court GRANTS

6   without prejudice Defendant's motion to dismiss Plaintiffs' Magnusson-Moss Act claim.

7   **V.    CONCLUSION**

8    For the foregoing reasons, the Court denies Defendant's motion to dismiss based on

9   Article III standing to bring claims for fraud, but grants Defendant's motion to dismiss otherwise.

10  All 10 claims at issue in Defendant's motion to dismiss are DISMISSED with leave to amend.

11  Should Plaintiff elect to file an amended complaint curing the deficiencies identified in this order,

12  Plaintiff shall do so within twenty-one (21) days of the date of this order.  Failure to meet this

13  deadline, or failure to cure the deficiencies identified in this order, will result in a dismissal with

14  prejudice.  Plaintiff may not add new parties or claims without leave of the Court or stipulation of

15  the parties pursuant to Federal Rule of Civil Procedure 15.

16  **IT IS SO ORDERED.**

17

18  Dated: March 14, 2017

19                                        _____

20                                        LUCY H. KOH
                                          United States District Judge

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

Case No. 16-CV-04942-LHK
ORDER GRANTING MOTION TO DISMISS ALL 10 CLAIMS WITH LEAVE TO AMEND