1  RICHARD D. McCUNE, State Bar No. 132124
   rdm@mccunewright.com
2  DAVID C. WRIGHT, State Bar No. 177468
   dcw@mccunewright.com
3  **McCune Wright Arevalo, LLP**
   3281 East Guasti Road, Suite 100
4  Ontario, California 91761
   Telephone: (909) 557-1250
5  Facsimile: (909) 557-1275

6  STEPHEN G. LARSON, State Bar No. 145225
   slarson@larsonobrienlaw.com
7  ROBERT C. O'BRIEN, State Bar No. 154372
   robrien@larsonobrienlaw.com
8  LARSON O'BRIEN LLP
   555 S Flower St #4400
9  Los Angeles, CA  90071
   Telephone: (213) 436-4888
10 Facsimile: (213) 623-2000

11 *Attorneys for Plaintiffs and the Proposed Class*

12 *[LIST OF ADDITIONAL COUNSEL ON SIGNATURE PAGE]*

13

14              UNITED STATES DISTRICT COURT

15             NORTHERN DISTRICT OF CALIFORNIA

16

17 | THOMAS DAVIDSON, TODD CLEARY, | Case No.:  5:16-cv-4942-LHK
   | ERIC SIEGAL, MICHAEL PAJARO, JOHN |
18 | BORZYMOWSKI, BROOKE CORBETT, |
   | TAYLOR BROWN, JUSTIN BAUER, | **FOURTH AMENDED CLASS ACTION**
19 | HEIRLOOM ESTATE SERVICES, INC., | **COMPLAINT**
   | KATHLEEN BAKER, MATT |
20 | MUILENBURG, WILLIAM BON, and |
   | JASON PETTY on behalf of themselves and | 1. Violation of the California Consumer Legal
21 | all others similarly situated, |    Remedies Act (Cal. Civ. Code § 1750)
   |                                | 2. Violation of California Unfair Competition
22 |                   Plaintiffs, |    Laws (Cal. Bus. & Prof. Code § 17200)
   |                                | 3. Violation of California False Advertising Law
23 | v. |    (Cal. Bus. & Prof. Code § 17500)
   |                                | 4. Violation of Illinois Consumer Fraud and
24 | Apple, Inc., |    Deceptive Trade Practices Act (815 Ill. Comp.
   |                                |    Stat. § 505)
25 |                   Defendant. | 5. Violation of the Illinois Uniform Deceptive
   |                                |    Trade Practices Act (815 Ill. Comp. Stat. § 510)
26 |                                | 6. Violation of the New Jersey Consumer Fraud
   |                                |    Act (N.J. Stat. Ann. § 56:8-1)
27 |                                | 7. Violation of the Florida Deceptive and Unfair
   |                                |    Trade Practices Act (Fla. Stat. § 501.201, *et*
28 |                                |    *seq.*)

-1-

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

8.  Violation of the Connecticut Unfair Trade Practices Act (Conn. Gen. Stat. Ann. § 42-110b(a), *et seq.*)
9.  Violation of the Texas Deceptive Trade Practices Act (Tex. Bus. & Com. Code § 17.41, *et seq.*)
10. Violation of the Colorado Consumer Protection Act (Colo. Rev. Stat. § 6-1-105, *et seq.*)
11. Violation of the Michigan Consumer Protection Act (Mich. Comp. Laws § 445.901, *et seq.*)
12. Violation of New York General Business Law § 349
13. Violations of New York General Business Law § 350
14. Violation of the Washington Consumer Protection Act (Wash. Rev. Code § 19.86.010)
15. Common Law Fraud
16. Negligent Misrepresentation
17. Unjust Enrichment
18. Breach of Express Warranty
19. Breach of Implied Warranty
20. Breach of Written Warranty Under the Magnuson-Moss Warranty Act (15 U.S.C. § 2301, *et seq.*)
21. Violation of the Song-Beverly Consumer Warranty Act (Cal. Civ. Code § 1790)
22. Violation of Utah Consumer Sales Practices Act (Utah Code Ann. § 13-11-1, *et seq.*)

**DEMAND FOR JURY TRIAL**

Fourth Amended Class Action Complaint
Case No.:  5:16-cv-4942-LHK

Plaintiffs Thomas Davidson, Todd Cleary, Eric Siegal, Michael Pajaro, John Borzymowski, Brooke Corbett, Taylor Brown, Justin Bauer, Heirloom Estate Services, Inc., Kathleen Baker, Matt Muilenburg, William Bon, and Jason Petty ("Plaintiffs"), individually, and on behalf of all others similarly situated, by and through counsel, bring this action against Apple, Inc. ("Apple"). Plaintiffs' allegations herein are based upon personal knowledge and belief as to their own acts and upon the investigation of their counsel, including information received from 16,617 class members who have experienced the Touchscreen Defect described herein, and information and belief as to all other matters.[1]

## INTRODUCTION

1.      Plaintiffs bring this action, individually and on behalf of a class of similarly situated owners of Apple's iPhone 6 and iPhone 6 Plus (together, the "iPhones"). This action arises from Apple's concealment of a material manufacturing defect that ultimately causes iPhone touchscreens to become unresponsive and fail for their essential purpose as smartphones (the "Touchscreen Defect").

2.      Apple has long been aware of the defective iPhones. Yet, notwithstanding its longstanding knowledge of this manufacturing defect, Apple routinely has refused to repair the iPhones without charge when the defect manifests.

3.      Many other iPhone owners have communicated with Apple's employees and agents to request that Apple remedy and/or address the Touchscreen Defect and/or resultant damage at no expense. Apple has failed and/or refused to do so.

4.      As a result of Apple's unfair, deceptive and/or fraudulent business practices, owners of the iPhones, including Plaintiffs, have suffered an ascertainable loss of money and/or property and/or value. The unfair and deceptive trade practices committed by Apple were conducted in a manner giving rise to substantial aggravating circumstances.

5.      Had Plaintiffs and other Class Members known about the Touchscreen Defect at the time of purchase, they would not have bought the iPhones, or would have paid substantially less for them.

---

[1] Plaintiffs' counsel have been contacted by numerous individuals from all fifty states and, if necessary, are prepared to include class representatives from all fifty states.

Fourth Amended Class Action Complaint
Case No.: 5:16-cv-4942-LHK

6.      As a result of the Touchscreen Defect and the monetary costs associated with attempting to repair the Touchscreen Defect, Plaintiffs and the Class members have suffered injury in fact, incurred damages, and otherwise have been harmed by Apple's conduct

7.      Accordingly, Plaintiffs bring this action to redress Apple's violations of the various states' consumer fraud statutes, fraud, negligent misrepresentation, breach of implied warranty, unjust enrichment, and for violations of the federal Magnuson-Moss Warranty Act and California's Song-Beverly Consumer Warranty Act.

**THE PARTIES**

8.      Plaintiff Todd Cleary is a resident of California. In or about October 25, 2014, Mr. Cleary purchased an iPhone 6 Plus through a phone call to AT&T from California. Prior to his purchase, Mr. Cleary reviewed Apple's keynote address (described in detail below). Immediately after receiving his purchase, Mr. Cleary reviewed Apple's iPhone 6 Plus box, the documents included inside the iPhone 6 Plus box, and Mr. Cleary went through the setup process with his iPhone 6 Plus (described in detail below). In January 2016, the touchscreen on his iPhone became unresponsive. Mr. Cleary contacted Apple and was informed that Apple would not cover the repairs necessary to fix the defective touchscreen and also informed him that Apple could only upgrade him to the newest iPhone for approximately $350.00, an offer Mr. Cleary declined. In June 2016, Mr. Cleary was in the middle of a business transaction and needed a properly working smartphone, so he purchased a Samsung Galaxy S7 and discontinued using his iPhone 6 Plus. When the Touchscreen Defect manifests, Mr. Cleary is unable to send or view text messages, take pictures, capture video, play music, browse the internet, send or view emails, use GPS navigation, use the touchscreen to make and take calls, and download or use various applications, among other things. Mr. Cleary intends to participate in the "Multi-Touch Repair Program" identified below if Apple indicates that the defect in his current iPhone is not present in the refurbished iPhone he will receive through the program and Mr. Cleary intends to recoup any amounts paid under the program through this lawsuit. Mr. Cleary also saw, and relied upon, Apple's press release issued in response to "BendGate" in deciding to purchase his iPhone 6 Plus.

9.      Plaintiff Thomas Davidson is a resident of Pennsylvania. In or about December 2014, Mr. Davidson purchased an iPhone 6 from AT&T. Prior to his purchase, Mr. Davidson reviewed Apple's

-4-

press release regarding the iPhones on Apple's website (described in detail below). Immediately following his purchase, Mr. Davidson reviewed Apple's iPhone 6 box, the documents included inside the iPhone 6 box, and Mr. Davidson went through the setup process with his iPhone 6 (described in detail below). In approximately August 2016, the touchscreen on Mr. Davidson's iPhone 6 became unresponsive. Mr. Davidson went to the Apple Care website in or about August 24, 2016. After requesting that Apple fix the Touchscreen Defect, Apple informed Mr. Davidson that he needed to send his iPhone 6 to Apple for service. Mr. Davidson discovered that he would be charged $320.00 for a replacement iPhone 6 if he sent his iPhone 6 in for service. He declined to do so and has discontinued use of the iPhone as the result of the Touchscreen Defect. When the Touchscreen Defect manifests, Mr. Davidson is unable to send or view text messages, take pictures, capture video, play music, browse the internet, send or view emails, use GPS navigation, use the touchscreen to make and take calls, and download or use various applications, among other things. Mr. Davidson also saw, and relied upon, Apple's press release issued in response to "BendGate" in deciding to purchase his iPhone 6.

10.     Plaintiff Eric Siegal is a resident of Illinois. In or about December 18, 2015, Mr. Siegal purchased an iPhone 6 Plus from a Verizon store in Illinois. Immediately following his purchase, Mr. Siegal reviewed Apple's iPhone 6 Plus box, the documents included inside the iPhone 6 Plus box, and Mr. Siegal went through the setup process with his iPhone 6 Plus (described in detail below). Starting in approximately September 2016, the touchscreen on Mr. Siegal's iPhone 6 Plus became unresponsive to user inputs approximately 75% of the time. Also in approximately September 2016, Mr. Siegal went to an Apple Store near his home to complain that the touchscreen on his iPhone 6 Plus had become unresponsive. The Apple Store employee informed Mr. Siegal that it was aware of an issue with the touchscreens on iPhone 6 Plus devices not responding to user inputs but declined to provide him with a replacement device and suggested Mr. Siegal contact his carrier. Mr. Siegal went to a Verizon Store and paid a $150 deductible to replace his iPhone 6 Plus with another iPhone 6 Plus on or about September 26, 2016. The replacement iPhone 6 Plus Mr. Siegal received also had an unresponsive touchscreen immediately out of the box. Mr. Siegal contacted Verizon to replace his device again, and Verizon provided him with a replacement device on September 28, 2016. When the Touchscreen Defect manifested, Mr. Siegal was unable to send or view text messages, take pictures, capture video, play

1   music, browse the internet, send or view emails, use GPS navigation, use the touchscreen to make and

2   take calls, and download or use various applications, among other things. Mr. Siegal also saw, and relied

3   upon, Apple's press release issued in response to "BendGate" in deciding to purchase his iPhone 6 Plus.

4   Mr. Siegal's current iPhone 6 Plus began to experience the Touchscreen Defect on or about December 9,

5   2017.

6        11.    Plaintiff Michael Pajaro is a resident of New Jersey. On September 25, 2014, Mr. Pajaro

7   purchased an iPhone 6 Plus from a Best Buy store in Bridgewater, New Jersey and an iPhone 6 from an

8   Apple Store in Bridgewater, New Jersey. Prior to his purchases, Mr. Pajaro reviewed Apple's keynote

9   address, the press release regarding the iPhones on Apple's website, and all three commercials regarding

10   the iPhones (described in detail below). Immediately following his purchases, Mr. Pajaro reviewed

11   Apple's iPhone 6 and 6 Plus boxes, the documents included inside the iPhone 6 and 6 Plus boxes, and

12   Mr. Pajaro went through the setup process with his iPhone 6 and 6 Plus (described in detail below).

13   Starting in approximately July 2016, the touchscreen on his iPhone 6 Plus became unresponsive. Mr.

14   Pajaro went to the Apple Store in Bridgewater, New Jersey, and was informed that Apple would not

15   cover the repairs necessary to fix the defective touchscreen and was also informed that Apple would

16   only be able to upgrade him to the newest iPhone for approximately $350.00, an offer that Mr. Pajaro

17   declined. Currently Mr. Pajaro's iPhone 6 Plus experiences the Touchscreen Defect approximately 99%

18   of the time. When the Touchscreen Defect manifests, Mr. Pajaro is unable to send or view text

19   messages, take pictures, capture video, play music, browse the internet, send or view emails, use GPS

20   navigation, use the touchscreen to make and take calls, and download or use various applications, among

21   other things. Mr. Pajaro may participate in Apple's "Multi-Touch Repair Program" identified below if

22   this lawsuit is unsuccessful for the sole purpose of receiving a functional device to resell. Mr. Pajaro

23   also saw, and relied upon, Apple's press release issued in response to "BendGate" and, as a result,

24   decided not to return his iPhone during the fourteen day return period.

25        12.    Plaintiff John Borzymowski is a resident of Florida. On or about September 19, 2014,

26   Mr. Borzymowski purchased an iPhone 6 Plus from AT&T in Florida. Prior to his purchase, Mr.

27   Borzymowski reviewed Apple's keynote address, the press release regarding the iPhones on Apple's

28   website, and all three commercials regarding the iPhones (described in detail below). Immediately

1    following his purchase, Mr. Borzymowski reviewed Apple's iPhone 6 Plus box, the documents included

2    inside the iPhone 6 Plus box, and Mr. Borzymowski went through the setup process with his iPhone 6

3    Plus (described in detail below). Starting in approximately February 2016, his iPhone touchscreen

4    became unresponsive. Mr. Borzymowski went to the Apple Store in Altamonte Springs, Florida, and

5    was informed that Apple would not cover the repairs necessary to fix the defective touchscreen. He was

6    also informed that Apple would only repair the phone for approximately $350.00, an offer that Mr.

7    Borzymowski declined. At that time, Mr. Borzymowski's iPhone was experiencing the Touchscreen

8    Defect approximately 95% of the time and he was unable to send or view text messages, take pictures,

9    capture video, play music, browse the internet, send or view emails, use GPS navigation, use the

10   touchscreen to make and take calls, and download or use various applications, among other things. Mr.

11   Borzymowski needed a functioning device and decided to sell his iPhone to Gazelle.com, a third-party

12   reseller. Gazelle would have offered Mr. Borzymowski $275.00 for his iPhone if it was not displaying

13   symptoms of the Touchscreen Defect. As a result, Gazelle only offered Mr. Borzymowski $115.00 for

14   his iPhone, which he accepted. Mr. Borzymowski also saw, and relied upon, Apple's press release

15   issued in response to "BendGate" and, as a result, decided not to return his iPhone during the fourteen

16   day return period.

17        13.     Plaintiff Brooke Corbett is a resident of Connecticut. In or about February 2015, Ms.

18   Corbett purchased an iPhone 6 Plus from a Best Buy store in Connecticut. Prior to her purchase, Ms.

19   Corbett reviewed Apple's keynote address and the press release regarding the iPhones on Apple's

20   website (described in detail below). Immediately following her purchase, Ms. Corbett reviewed Apple's

21   iPhone 6 Plus box, the documents included inside the iPhone 6 Plus box, and Ms. Corbett went through

22   the setup process with her iPhone 6 Plus (described in detail below). Starting in approximately April

23   2016, the touchscreen on Ms. Corbett's iPhone became unresponsive. In August 2016, Ms. Corbett went

24   to the Apple Store and was informed that Apple would not cover the repairs necessary to fix the

25   defective touchscreen. She was also informed that Apple would only be able to upgrade her to the

26   newest iPhone for approximately $330.00, an offer that Ms. Corbett declined. The representative at the

27   Apple Store informed Ms. Corbett that the issue was not caused by normal wear and tear but was instead

28   the result of a defective iPhone part. From August 2016 to December 2016, Ms. Corbett's iPhone

Fourth Amended Class Action Complaint
Case No.:  5:16-cv-4942-LHK

1   experienced the Touchscreen Defect approximately 70% of the time. When the Touchscreen Defect

2   manifested, Ms. Corbett was unable to send or view text messages, take pictures, capture video, play

3   music, browse the internet, send or view emails, use GPS navigation, use the touchscreen to make and

4   take calls, and download or use various applications, among other things. Ms. Corbett was forced to

5   participate in Apple's "Multi-Touch Repair Program" on December 2, 2016, because she needed a

6   working phone and paid approximately $149 to do so. Ms. Corbett also saw, and relied upon, Apple's

7   press release issued in response to "BendGate" in deciding to purchase her iPhone 6 Plus.

8       14.   Plaintiff Taylor Brown is a resident of Texas. In or about November 2014, Mr. Brown

9   purchased an iPhone 6 Plus from a Best Buy store in Plano, Texas. Prior to his purchase, Mr. Brown

10   reviewed Apple's keynote address, the press release regarding the iPhones on Apple's website, and all

11   three commercials regarding the iPhones (described in detail below). Immediately following his

12   purchase, Mr. Brown reviewed Apple's iPhone 6 Plus box, the documents included inside the iPhone 6

13   Plus box, and Mr. Brown went through the setup process with his iPhone 6 Plus (described in detail

14   below). Starting in approximately January 2016, the touchscreen on his iPhone became unresponsive.

15   Mr. Brown went to the Apple Store in Frisco, Texas, and was informed that the logic board on his

16   iPhone was malfunctioning and Apple would not cover the repairs necessary to fix the logic board. He

17   also was informed that Apple would only be able to provide him with a refurbished iPhone for

18   approximately $300.00, an offer that Mr. Brown declined. Currently Mr. Brown's iPhone experiences

19   the Touchscreen Defect approximately 50% of the time. When the Touchscreen Defect manifests, Mr.

20   Brown is unable to send or view text messages, take pictures, capture video, play music, browse the

21   internet, send or view emails, use GPS navigation, use the touchscreen to make and take calls, and

22   download or use various applications, among other things. Mr. Brown intends to participate in the

23   "Multi-Touch Repair Program" identified below and Mr. Brown intends to recoup any amounts paid

24   under the program through this lawsuit. Mr. Brown also saw, and relied upon, Apple's press release

25   issued in response to "BendGate" in deciding to purchase his iPhone 6 Plus.

26       15.   Plaintiff Justin Bauer is a resident of Colorado. In or about March 11, 2015, Mr. Bauer

27   purchased an iPhone 6 Plus from a Best Buy store in Colorado. Prior to his purchase, Mr. Bauer

28   reviewed Apple's keynote address and all three commercials regarding the iPhones (described in detail

-8-

below). Immediately following his purchase, Mr. Bauer reviewed Apple's iPhone 6 Plus box, the documents included inside the iPhone 6 Plus box, and Mr. Bauer went through the setup process with his iPhone 6 Plus (described in detail below). In approximately July 2015, the touchscreen on Mr. Bauer's iPhone 6 Plus became unresponsive. He contacted Apple in or about November 2015. After requesting that Apple fix the Touchscreen Defect, Apple informed Mr. Bauer that Apple could not fix his iPhone and that he instead would need to take his iPhone 6 Plus to a third party for repairs. Currently, Mr. Bauer's iPhone experiences the Touchscreen Defect over 30% of the time. When the Touchscreen Defect manifests, Mr. Bauer is unable to send or view text messages, take pictures, capture video, play music, browse the internet, send or view emails, use GPS navigation, use the touchscreen to make and take calls, and download or use various applications, among other things. Mr. Bauer intends to participate in the "Multi-Touch Repair Program" identified below if Apple indicates that the defect in his current iPhone is not present in the refurbished iPhone he will receive through the program and Mr. Bauer intends to recoup any amounts paid under the program through this lawsuit. Mr. Bauer also saw, and relied upon, Apple's press release issued in response to "BendGate" in deciding to purchase his iPhone 6 Plus.

16.      Plaintiff Heirloom Estate Services is a corporation former under the laws of Michigan. In or about November 28, 2014, Plaintiff purchased an iPhone 6 Plus from an AT&T store in Grand Rapids, Michigan, for the use of its General Manager, Kyle Maxim. Prior to his purchase, Mr. Maxim reviewed Apple's keynote address (described in detail below). Immediately following his purchase, Mr. Maxim reviewed Apple's iPhone 6 Plus box, the documents included inside the iPhone 6 Plus box, and Mr. Maxim went through the setup process with his iPhone 6 Plus (described in detail below). Starting in approximately December 2015, the touchscreen on Mr. Maxim's iPhone became unresponsive. Mr. Maxim went to the Apple Store in Grand Rapids, Michigan, and was informed that the logic board on his iPhone was malfunctioning and Apple would not cover the repairs necessary to fix the logic board. At this time, Mr. Maxim's iPhone was experiencing the Touchscreen Defect approximately 70% of the time. When the Touchscreen Defect manifested, Mr. Maxim was unable to make or receive calls, send or view text messages, take pictures, capture video, play music, browse the internet, send or view emails, use GPS navigation, use the touchscreen to make and take calls, and download or use various

1  applications, among other things. Mr. Maxim took his iPhone 6 Plus to a third party that performed

2  micro soldering repairs to the logic board for $150. Mr. Maxim intends to participate in the "Multi-

3  Touch Repair Program" identified below if Apple indicates that the defect in his current iPhone is not

4  present in the refurbished iPhone he will receive through the program and Mr. Maxim intends to recoup

5  any amounts paid under the program through this lawsuit. Mr. Maxim also saw, and relied upon,

6  Apple's press release issued in response to "BendGate" in deciding to purchase his iPhone 6 Plus.

7       17.    Plaintiff Kathleen Baker is a resident of New York. On or about September 26, 2014, Ms.

8  Baker purchased an iPhone 6 from an authorized Verizon retailer, in Malta, New York. Prior to her

9  purchase, Ms. Baker reviewed Apple's keynote address, the press release regarding the iPhones on

10 Apple's website, and all three commercials regarding the iPhones (described in detail below).

11 Immediately following her purchase, Ms. Baker reviewed Apple's iPhone 6 box, the documents

12 included inside the iPhone 6 box, and Ms. Baker went through the setup process with her iPhone 6

13 (described in detail below). Starting in approximately June 2016, the touchscreen on her iPhone became

14 unresponsive. On July 8, 2016, Ms. Baker went to the Apple Store in Albany, New York, and was

15 informed that Apple would not cover the repairs necessary to fix the defective touchscreen. She was also

16 informed that Apple would only be able to upgrade her to the newest iPhone for approximately $350.00,

17 an offer that Ms. Baker declined. On September 15, 2016, Ms. Baker contacted Apple Support through

18 the internet and was again informed that Ms. Baker's only option was purchasing a replacement device.

19 Currently Ms. Baker's iPhone experiences the Touchscreen Defect approximately 70% of the time.

20 When the Touchscreen Defect manifests, Ms. Baker is unable to send or view text messages, take

21 pictures, capture video, play music, browse the internet, send or view emails, use GPS navigation, use

22 the touchscreen to make and take calls, and download or use various applications, among other things.

23 Ms. Baker intends to participate in Apple's "Multi-Touch Repair Program" and Ms. Baker intends to

24 recoup any amounts paid under the program through this lawsuit. Ms. Baker also saw, and relied upon,

25 Apple's press release issued in response to "BendGate" and, as a result, decided not to return her iPhone

26 during the fourteen day return period.

27       18.    Plaintiff Matt Muilenburg is a resident of Washington. In or about February 28, 2015,

28 Mr. Muilenburg purchased an iPhone 6 Plus from an Apple Store in Lynnwood, Washington. Prior to

-10-

purchase, Mr. Muilenburg reviewed Apple's keynote address and all three commercials regarding the iPhones (described in detail below). Immediately following his purchase, Mr. Muilenburg reviewed Apple's iPhone 6 Plus box, the documents included inside the iPhone 6 Plus box, and Mr. Muilenburg went through the setup process with his iPhone 6 Plus (described in detail below). In approximately May 2016, the touchscreen on his iPhone became unresponsive. In October 2016, Mr. Muilenburg contacted Apple about the touchscreen malfunctions by going to the Apple Store to report the issue. Mr. Muilenburg was told that his iPhone was out of the warranty period and could not be repaired under the terms of the warranty. An Apple employee then suggested that Mr. Muilenburg would have to replace the touchscreen at his own cost. Upon further inquiry, Apple offered to replace the screen but the technician warned him that the fix "may not work" and it would be better for Mr. Muilenburg to replace the phone for a $325 charge. Currently, Mr. Muilenburg's iPhone experiences the Touchscreen Defect approximately 80% of the time. When the Touchscreen Defect manifests, Mr. Muilenburg is unable to send or view text messages, take pictures, capture video, play music, browse the internet, send or view emails, use GPS navigation, use the touchscreen to make and take calls, and download or use various applications, among other things. Mr. Muilenburg also saw, and relied upon, Apple's press release issued in response to "BendGate" in deciding to purchase his iPhone 6 Plus.

19.     Plaintiff William Bon is a resident of Washington. Mr. Bon purchased an iPhone 6 Plus online directly from Apple on January 10, 2015. Prior to his purchase, Mr. Bon reviewed Apple's keynote address and the press release regarding the iPhones on Apple's website (described in detail below). Immediately following his purchase, Mr. Bon reviewed Apple's iPhone 6 Plus box, the documents included inside the iPhone 6 Plus box, and Mr. Bon went through the setup process with his iPhone 6 Plus (described in detail below). In early August 2016, the touchscreen on his iPhone became unresponsive. Mr. Bon contacted Apple about the Touchscreen Defect by going to the Apple Store to report the issue on August 21, 2016. Mr. Bon was told that his iPhone was out of the warranty period and could not be repaired under the terms of the warranty. When he went to the Apple Store, he was told by one of the employees there that the problem—that chips pull away from the motherboard—was well known and happens all the time. The employee showed him how to fix the phone temporarily by bending it in a certain fashion. Apple would not fix the phone, however, and told Mr. Bon that all he

1  could do was buy a new phone. Currently, Mr. Bon's iPhone experiences the Touchscreen Defect about

2  65% of the time. When the Touchscreen Defect manifests, Mr. Bon is unable to send or view text

3  messages, take pictures, capture video, play music, browse the internet, send or view emails, use GPS

4  navigation, use the touchscreen to make and take calls, and download or use various applications, among

5  other things. Mr. Bon intends to participate in Apple's "Multi-Touch Repair Program" if the cost to

6  participate is eliminated. Mr. Bon also saw, and relied upon, Apple's press release issued in response to

7  "BendGate" in deciding to purchase his iPhone 6 Plus.

8       20.    Plaintiff Jason Petty is a resident of Utah. In or about October 14, 2014, Mr. Petty

9  purchased an iPhone 6 Plus from a Verizon store in Utah. Immediately following his purchase, Mr. Petty

10 reviewed Apple's iPhone 6 Plus box, the documents included inside the iPhone 6 Plus box, and Mr.

11 Petty went through the setup process with his iPhone 6 Plus (described in detail below). Starting in

12 approximately March 2016, the touchscreen on his iPhone became unresponsive. Mr. Petty contacted the

13 Apple Store around March 2016, and was informed that Apple would not cover the repairs necessary to

14 fix the defective touchscreen and was also informed that Apple would only be able to upgrade him to the

15 newest iPhone, which Mr. Petty declined. Currently Mr. Petty no longer owns his iPhone 6 Plus. When

16 the Touchscreen Defect manifested, Mr. Petty was unable to send or view text messages, take pictures,

17 capture video, play music, browse the internet, send or view emails, use GPS navigation, use the

18 touchscreen to make and take calls, and download or use various applications, among other things. Mr.

19 Petty also saw, and relied upon, Apple's press release issued in response to "BendGate" in deciding to

20 purchase his iPhone. Mr. Petty sold his iPhone in August 2016 because he needed a functioning

21 smartphone.

22       21.    Defendant Apple, Inc. ("Apple") is a corporation formed under the laws of California

23 with its principal place of business located in Cupertino, California.

24                          **JURISDICTION AND VENUE**

25       22.    This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28

26 U.S.C. § 1332(d). The aggregated claims of the individual class members exceed the sum or value of

27 $5,000,000, exclusive of interest and costs; there are more than 100 putative class members defined

28

Fourth Amended Class Action Complaint
Case No.: 5:16-cv-4942-LHK

1  below; and there are numerous members of the proposed class who are citizens of a state different from

2  Apple.

3          23.     This Court has personal jurisdiction over Apple because it is incorporated under the laws

4  of the State of California, its corporate headquarters are located in Cupertino, California, it conducts

5  substantial business in the District, and because a substantial part of the acts and omissions complained

6  of occurred in the District.

7          24.     Venue as to Apple is proper in this judicial district under 28 U.S.C § 1391 because a

8  substantial part of the events or omissions giving rise to the claim occurred in this District. Apple has its

9  principal place of business in this District, it is authorized to conduct business in this District, has

10  intentionally availed itself of the laws and markets within this District, does substantial business in this

11  District, and is subject to personal jurisdiction in this District.

12                              **GENERAL ALLEGATIONS**

13      **A.     Apple's iPhone**

14          25.     Defendant Apple designs, manufactures, markets, and sells the iPhone series of

15  smartphones. The first generation of the iPhone was released on June 29, 2007. Apple then released the

16  iPhone 3G on July 11, 2008; the 3GS on June 19, 2009; the iPhone 4 on June 24, 2010; the iPhone 4s on

17  October 14, 2011; the iPhone 5 on September 21, 2012; the iPhone 5s and 5c on September 20, 2013;

18  the iPhone 6 and 6 Plus on September 19, 2014; and finally the iPhone 6s and 6s Plus on September 25,

19  2015.

20          26.     The iPhone is built around the use of a touchscreen whereby the user touches the screen

21  directly to interact with the device, as opposed to using a traditional number pad or keyboard.

22          27.     In the United States, the iPhone holds the largest share of the smartphone market. In

23  2015, the iPhone accounted for approximately 43.6% of the market share followed by Samsung with

24  approximately 27.6% of the market share.

25          28.     The iPhones are capable of sending text messages, taking pictures, capturing video,

26  playing music, browsing the internet, sending and receiving email, using GPS navigation, using the

27

28

Fourth Amended Class Action Complaint
Case No.:  5:16-cv-4942-LHK

touchscreen to make and take calls,[2] and downloading and using various applications, among other functions. The use of the touchscreen is required to operate any of these functions.

29.     The iPhones feature a glass front with curved edges and an aluminum rear that contains two plastic antenna strips.

30.     The iPhones also featured a significant change from the iPhone 5 series. The iPhone 5 series phones were approximately 4.87 inches (123.8 mm) tall and 2.31 inches (58.6 mm) wide. The iPhone 6 is approximately 5.44 inches (138.1 mm) tall and 2.64 inches (67 mm) wide and the iPhone 6 Plus is 6.22 inches (158.1 mm) tall and 3.06 inches (77.8 mm) wide.

31.     Each iPhone 6 and 6 Plus is sold in a box designed and produced by Apple. The back of the box contains various disclosures about what is included inside the box and advertises various capabilities of the iPhone 6 and 6 Plus. Apple also included at least two relevant documents inside the iPhones' boxes. The boxes for the iPhone 6 and 6 Plus are substantially identical and the only variations pertain to the dimensional differences between the two models.

32.     The iPhone 6 and 6 Plus boxes state that the iPhones are equipped with Wi-Fi, Bluetooth, NFC, and GPS technology. The boxes also represent that the battery life and charge cycles vary with use and settings and that the battery may eventually need replacement. The boxes also represent that while one gigabyte equals one billion bytes, the actual formatted capacity (i.e. the amount left for the consumer to use after Apple's iOS software is installed) is less than that value.

33.     The first document inside the iPhones' boxes is an information sheet titled "Phone Info." This sheet is a bullet point of various features of the iPhones, including information about the iPhones' battery, how to prevent hearing damage, a summary of iPhones' warranty, and the hearing aid compatibility of the iPhones.

34.     The second document inside the iPhones' boxes is a double-sided information sheet titled "iPhone 6" or "iPhone 6 Plus." The front-side of this document diagrams the hardware features of the iPhones, including depicting where the volume buttons are, the ring/silent switch, the sleep/wake button, the home button, the charging port, and instructs users to unlock their iPhone, they must use the

---

[2] If a user previously set up their iPhone to utilize Siri, they are capable of making a call using Siri but they are unable to take an incoming call with Siri or end an existing call with Siri.

touchscreen's "slide to unlock" feature. The back-side of this document instructs users how to start up the iPhones and to "follow the onscreen instructions to set up your iPhone," a website to visit to learn more about the iPhones features, and how to get support for issues that may arise with the iPhones.

35.    When the iPhones are powered on for the first time, the user must navigate the iPhones through the setup program before they can be used. The setup program greets the user, asks the user what language to set and the country of origin, and sets up the Wi-Fi network, among other things. The touchscreen must be used for each step of this process.

36.    Upon information and belief, purchasers of the iPhones are given fourteen days from the date of purchase (or from the date the product is received if purchased online) to return the iPhones if purchased directly from Apple or through an authorized reseller, such as Best Buy, Verizon, or AT&T.

**B.    Apple's Pre-Release Advertising Campaign for the iPhone 6 and 6 Plus**

37.    Apple first announced the iPhone 6 and 6 Plus during a keynote speech at its event on September 9, 2014.

38.    The keynote, delivered by CEO Tim Cook and other Apple executives, highlighted the various new features of the iPhones and outlined the reasons "[t]hey are without a doubt the best iPhones we've ever done."[3] Phil Schiller, the Senior Vice President for Worldwide Marketing, stated that the iPhones design is "[i]ncredibly unique, from the glass front, the curves around the side to meet seamlessly with the anodized aluminum back, complete with stainless steel Apple (logo), it is truly the most beautiful phone you have ever seen." The keynote discussed the increased size, higher screen resolution, the quality of the displays, the new Apple A8 chip that provides "up to 25% faster CPU performance, [and] up to 50% faster graphics performance," improvements to the battery life compared to the iPhone 5s, the wireless capabilities, and the improvements to the cameras, among other things. The keynote also included a separate speech by a video game company that discussed a new "multiplayer battle arena perfected for touch." The keynote featured a live demonstration of the game, complete with the presenter using the touchscreen of the iPhones to play the game.

---

[3] http://www.apple.com/live/2014-sept-event/ (last visited Mar. 27, 2017).

39.     After the keynote, Apple disseminated a massive media campaign touting the new features of the iPhones that included television commercials, internet advertisements, and press releases that were also rolled out on September 9, 2014.

40.     In the first paragraph of Apple's press release posted to Apple's website, it highlighted the "innovative technologies" in the new iPhones, including the "all-new dramatically thin and seamless design" and the "precision unibody enclosure of anodized aluminum that conforms seamless with the shaped glass of the display."[4] The remainder of the press release touts various features of the iPhones, including the new processor chips and performance increases, the quality of the display, the camera, and the new ApplePay feature. Tim Cook was also quoted stating the "iPhone 6 and iPhone 6 Plus are the biggest advancements in iPhone history[.] The iPhone is the most loved smartphone in the world with the highest customer satisfaction in the industry and we are making it much better in every way. Only Apple can combine the best hardware, software and services at this unprecedented level and we think customers are going to love it."

41.     Apple hired Justin Timberlake and Jimmy Fallon to star in at least two commercials that demonstrate the various features of the iPhones with commentary from the two celebrities. One such commercial shows them navigating and discussing the iPhones' camera features, presentation software, health application, playing games, and shows them sending messages all using the touchscreen.[5] Another focuses on them navigating and discussing the features of the health application while using the touchscreen.[6]

42.     Another commercial displays the exterior design of the iPhones with no commentary. The entire one minute video is dedicated to displaying external hardware, including the aluminum exterior casing of the iPhones, undoubtedly to emphasize the larger size and sleek design of the iPhones.[7]

---

[4] http://www.apple.com/pr/library/2014/09/09Apple-Announces-iPhone-6-iPhone-6-Plus-The-Biggest-Advancements-in-iPhone-History.html (last visited Mar. 27, 2017).
[5] https://www.youtube.com/watch?v=glDAEdDb-KQ (last visited Mar. 27, 2017).
[6] https://www.youtube.com/watch?v=ysD2cly5ccM (last visited Mar. 27, 2017).
[7] https://www.youtube.com/watch?v=J79puEmds0w (last visited Mar. 27, 2017).

-16-

C.      **The Touchscreen Defect**

43.      Unbeknownst to consumers, the iPhones suffer from a material manufacturing defect that causes the touchscreen to become unresponsive to users' touch inputs and thus renders unusable or inert all of the functions identified in paragraph 28.

44.      Often, the defect is immediately preceded by the display of a flickering gray bar across the top of the iPhones' display.

45.      Upon information and belief, the Touchscreen Defect is caused by a manufacturing defect in the iPhone's external casing. The materials used in the iPhone's external casing are insufficient and inadequate to protect their internal parts in light of reasonable and foreseeable use by consumers.

46.      Apple has stated that the "iPhones are designed, engineered and manufactured to be both beautiful and sturdy. iPhone 6 and iPhone 6 Plus feature a precision engineered unibody enclosure constructed from machining a custom grade of 6000 series anodized aluminum, which is tempered for extra strength. They also feature stainless steel and titanium inserts to reinforce high stress locations and use the strongest glass in the smartphone industry. We chose these high-quality materials and construction very carefully for their strength and durability."[8]

47.      However, the external casing of the iPhones is not sturdy, strong, or durable because it suffers from a manufacturing defect and substandard materials.

48.      The motherboard located inside the iPhones (which Apple calls the "logic board") contains two touchscreen controller chips (referred to as the "touch IC chips"). A diagram of the logic board with red boxes around the touch IC chips is included below.

//

//

//

//

//

//

---

[8] *See* http://www.theverge.com/2014/9/25/6844943/apple-says-iphone-bending-extremely-rare (last visited Oct. 4, 2016).

-17-

1
2
3
4
5
6
7
8
9
10



11   49.   The touch IC chips are responsible for converting the touches on the touchscreen into
12   actions in Apple's iPhone software, iOS.

13   50.   From the first day of use, the Touchscreen Defect exposes the internal components of the
14   iPhones to increased external stress and physical harm.

15   51.   Upon information and relief, the defect causes significant decreased strength and
16   durability directly over the touchscreen controller chips on the logic board. The touch IC chips are
17   delicate circuits and regular and anticipated use results in exposure to the manufacturing defect, i.e. a
18   failure of the solder to adhere the touch IC chips to the logic board.

19   52.   The touch IC chips are soldered to the logic board via a number of small solder balls.
20   Over time, as the iPhones flex and bend during normal use, the solder balls crack and start to lose
21   contact with the logic board.

22   53.   Once the solder failure manifests, the touch IC chips are unable to recognize the user's
23   touches on the touchscreen because there is no electrical contact between the touch IC chips and the
24   logic board. Thus the iPhones are incapable of recognizing when a user is touching the screen once the
25   solders fail.

26   54.   This weakness in the external casing of the iPhones led to the widely publicized
27   "BendGate" (discussed below) where numerous users were reporting that their iPhones were bending in
28   the days immediately following the release of the iPhones.

-18-

55.     The iPhones do not need to be visibly bent for the Touchscreen Defect to occur. This is because the decreased strength and durability in the external casing causes the soldering on the touch IC chips to fail even if the casing does not permanently bend or deform. The defect causes the iPhones to bend and flex under normal, everyday use that places severe stress on the soldering that adheres the touch IC chips to the logic board, which then causes the soldering to fail. The stress applied to the logic board as a result of the bending external casing is known as mechanical flexion pressure.

56.     The soldering that attaches the touch IC chips to the logic board is the most delicate hardware inside the iPhones and, as such, the touch IC chips are the first hardware component to fail as a result of the defect in the external casing.

57.     The replacement of the touchscreen on the iPhones fails to remedy the underlying defect with the touchscreen controller chips. The only way to truly remedy the defect is to provide a replacement device without the manufacturing defect present. Indeed, as journalists have reported, Apple has charged hundreds of dollars to replace a broken phone with a refurbished one that is subject to the same manufacturing defect that caused the Touchscreen Defect in the first place.[9]

58.     Numerous consumers have contacted Plaintiffs' counsel and reported paying for expensive out-of-pocket repairs to have the touch IC chips re-soldered. Unfortunately, this is only a temporary fix for the Touchscreen Defect because after a few months of normal and foreseeable use, the Touchscreen Defect resurfaces.

59.     Previous and successive versions of the iPhones have implemented other logic board designs that would mitigate, but not prevent, the Touchscreen Defect from occurring in the iPhones.

60.     The previous iPhone 5s incorporated a metal "shield" – pictured below – that provides protection to the logic board in the event of structural stress caused by manufacturing defects in the external casing.

---

[9] *See* http://motherboard.vice.com/read/iphone-6-plus-touch-disease-touch-ic-engineering-flaw (last visited Oct. 4, 2016).

Fourth Amended Class Action Complaint
Case No.:  5:16-cv-4942-LHK

1
2
3
4
5
6
7
8
9
10



11      61.     In addition, the iPhone 5c used an "underfill" that was injected under the touch IC chips

12  that cured into a superglue type substance. The underfill reinforces the touch IC chips and provides

13  protection to the touch IC chips in the event of structural stress on the logic board caused by

14  manufacturing defects in the external casing.

15      62.     By contrast, the iPhones do not incorporate underfill or a shield over the logic board. In

16  short, this means that the iPhone 6 and 6 Plus are more susceptible to failure from manufacturing defects

17  in the external casing, meaning that foreseeable and reasonable use by consumers leads in many cases to

18  the Touchscreen Defect. A photo of the iPhone 6 Plus logic board is below.

19
20
21
22
23
24
25
26
27
28



Fourth Amended Class Action Complaint
Case No.:  5:16-cv-4942-LHK

63.     Current Apple employees have estimated that the Touchscreen Defect accounts for approximately 11% of *all* iPhone-related service issues at four large Apple Stores and over 33% off all iPhone 6 Plus-related problems at those stores.[10]

### D.     Apple's Knowledge of the Touchscreen Defect

64.     Plaintiffs' experiences are by no means isolated or outlying occurrences. Indeed, the internet is replete with examples of blogs and other websites where consumers have complained of the exact same Touchscreen Defect within the iPhones.

65.     Complaints on Apple's website regarding the Touchscreen Defect date at least as far back as September 18, 2014, where a user posted in a thread titled "iPhone 6 touchscreen problems."[11] In response to this post, 713 users clicked the "I have this question too" button on the forum post and the forum post has nine pages worth of other posts complaining about touchscreen issues. The original poster complained that the "touchscreen becomes completely unresponsive now and then" but notes the hardware buttons continued to function. On September 21, 2014, the original poster commented again that the Apple Store employee confirmed the issues were hardware related and provided him with a replacement device. On September 23, 2014, the original poster commented again that a customer service representative from Apple contacted him regarding the forum post on Apple's website and to ensure the replacement device was working properly for him. On October 2, 2014, another user posted the that he or she "took mine into Apple and the staff agreed that it was a hardware defect and replaced it. Some people have claimed this is from an iCloud restore, however I have found that not to be true. On the replacement phone, we restored from iCloud as before and this phone is working perfectly."

66.     Similarly, on November 22, 2014, a user posted a thread with the title "6+ Grey Bar at top of screen, screen un-responsive," with the below message:

> Two weeks ago I noticed that a small grey flickering bar would appear at the top of my screen when unlocking my phone. Sometimes it would just go away and other times it would linger and my screen either: would not accept any touches, or the touches would register incorrectly and open un-wanted apps or type wrong things.

---

[10] http://appleinsider.com/articles/16/08/26/sources-iphone-6-series-touch-disease-now-accounting-for-about-11-of-apple-store-repairs (last visited Mar. 31, 2017).

[11] https://discussions.apple.com/thread/6542262?start=0&tstart=0 (last visited Apr. 3, 2017).

> Took it to the Apple store last Saturday, Genius's looked at it and saw the issue, did a screen replacement. It is now one week later and the issue just re-surfaced. I am about to do a full restore on the phone to see if that helps.
>
> Anyone else with this issue???? I will post an update after the restore. None of the people at my store had seen this issue before.[12]

In response to this post, 1,502 users clicked the "I have this question too" button on the November 22, 2014, post and the post itself contains 8 pages worth of other posters complaining of similar issues.

67. From September 18, 2014, through the filing of this Complaint, a plethora of owners of the iPhones have complained on Apple's own website regarding the Touchscreen Defect.[13] Not only do the original posters complain of the Touchscreen Defect, but users in the comments section of the post often state they are experiencing the same issue as the original poster.

68. There are hundreds, if not more, complaints regarding the Touchscreen Defect on Apple's website. Moreover, upon speaking with various members of the class, Apple appears to be deleting posts about the Touchscreen Defect. Indeed, one of the posts in Plaintiffs' original Complaint has since been deleted by Apple.[14] Another user complained in October 2014 that Apple was deleting every post the user tried to make regarding his iPhone 6 Plus bending.[15] Apple's support community also appears to be actively removing any posts that discuss the underlying cause of the Touchscreen Defect from Apple's website.[16]

---

[12] https://discussions.apple.com/thread/6686660?tstart=0 (last visited Sept. 9, 2016).

[13] *See, e.g.*, https://discussions.apple.com/thread/6744233?start=0&tstart=0 (last visited Sept. 14, 2016) (post dated Dec. 26, 2014); https://discussions.apple.com/thread/7028290?start=120&tstart=0 (last visited Aug. 26, 2016) (post dated May 5, 2015); https://discussions.apple.com/thread/7047257?tstart=0 (last visited Sept. 14, 2016) (post dated May 18, 2015); https://discussions.apple.com/thread/7156699?tstart=0 (last visited Sept. 14, 2016) (post dated Aug. 2, 2015); https://discussions.apple.com/thread/7066879?tstart=0 (last visited Sept. 14, 2016) (post dated June 1, 2015).

[14] https://discussions.apple.com/thread/7647480?start=0&tstart=0 (last visited Aug. 26, 2016). Apple's data retention policies do not explain the removal of this post because it was dated sometime after the November 22, 2014, post, which is the earliest that is publicly available on Apple's website.

[15] https://discussions.apple.com/thread/6561392?tstart=0 (last visited Apr. 3, 2017).

[16] http://mendonipadrehab.com/entries/general/the-epidemic-of-iphone-6-6-touch-ic-failure-explained-apples-continues-to-pull-the-wool-over-the-consumer-s-eyes (last visited Mar. 28, 2017).

69.     There are also numerous complaints on third-party websites detailing consumers' experience with the Touchscreen Defect and Apple's failure to remedy the Touchscreen Defect:

> "I had this exact issue and it's very frustrating. It started out happening only once and awhile until it got so bad that I couldn't even use my phone. I took my first one back to Apple and got it replaced under the 1 year warranty, but now only 9 months later the phone is doing the exact same thing and I can't even use it . . . ."

> "This is a joke my phone was out of warranty for like 2 months and Apple wanted me to pay $350 to fix it. It's not like the will go broke doing the right thing."

> "This happened to me and from searching around online and talking to Apple employees – it is indeed a wide spread issue."

> "I am on my 3rd 6Plus. I have been given a "new phone twice, but now I am over the warranty (which is only the original phone's first year! Each time, they told me there was nothing they could do but replace it. Mine has only lasted an average of 4 months each time, and now I have almost given up but for this article. They want me to pay 329.00 for a 4the replacement. Not only is that unacceptable, but I don't want a 6 plus anymore. It will do the same thing in 4-6 months."

> "I'm on my third 6+ in 18 months. Sounds like it's only a matter time before I'm on my fourth! I'm not sure I'd be happy to take my phone to an unauthorised repairer but let's face it these phone aren't cheap to replace if you don't have any warrantee left. People dismissing this issue or expressing skepticism obviously have no idea how often this is occurring."

> "I'm on my 5 th IPhone 6plus. Lucky to have Apple Care Plus. The Apple Genius mentioned an internal company memo that addressed this problem, originating in one of four factories that manufacture the motherboard , so assuming it's true probably 25% of all 6 plus models might experience this problem. The Apple Genius said they've been trying to weed out all the defective phones as customers brought them in . Not sure what happens if your warranty expired. Doesn't seem right if they make you pay over $300 for a replacement. And even with the Apple Care Plus it's been an inconvenience having to go through all the replacements."

*See* http://ifixit.org/blog/8309/iphone-6-plus-gray-flicker-touch-death/ (last visited Oct. 4, 2016).

70.     Independent repair shops are also reporting the Touchscreen Defect as "the single biggest defect we've ever seen" and have noted approximately 50% of the iPhones they inspect suffer from the

-23-

Touchscreen Defect, including phones that were in maximum protection cases from the time of purchase to the time of the touchscreen malfunctions.[17]

71.     Apple conducts extensive pre-release durability testing on all of its products, including the iPhones. Indeed, Apple has widely publicized its five methods of testing the iPhones before they were released to the public.

72.     First, Apple uses a "three-point bending test" to test the iPhone's ability to handle reasonable force. Apple applies pressure to three different points along the iPhone's frame, and then evaluates the iPhone's performance at the test's conclusion.

73.     Second, Apple uses a "pressure-point cycling test" that expends substantial force on the iPhones' display and casing. This test reportedly ensures that the iPhones can be bent and pushed many times over during their lifespan.

74.     Third, Apple uses "torsion testing," whereby the iPhones are twisted and torqued in various situations. This test is reportedly to ensure the iPhones can handle actual use scenarios, such as sitting on an iPhone unevenly.

75.     Fourth, Apple uses "sit tests" whereby an Apple engineer takes an iPhone and sits down thousands of times. This test is reportedly to ensure the iPhones will remain functional no matter how individuals place the iPhones in their pockets. Apple's senior vice president of hardware engineering, Dan Riccio, stated that this test has three parts: (1) a simulation of a typical user sitting down on a hard surface; (2) a simulation of a typical user sinking into something softer like a couch; and (3) "worst-case" tests where a user sits down on a hard surface at an angle.

76.     Fifth, Apple uses real-life user studies. Apple provides hundreds of company employees with actual iPhones and asks them to use the iPhones throughout the day in various situations to test for both durability and performance.

77.     Through this extensive pre-release testing that specifically evaluated the iPhones durability, Apple knew or should have known of the Touchscreen Defect. The Touchscreen Defect is a manufacturing defect that results from the reasonable, foreseeable use by consumers that is part of the

---

[17] *See* http://motherboard.vice.com/read/iphone-6-plus-touch-disease-touch-ic-engineering-flaw (last visited Oct. 4, 2016).

testing methodology above. Put simply, Apple's pre-release testing should have alerted it to the fact that the external casing suffers from a manufacturing defect causing significant stress on the logic board and touch IC chips. Moreover, Apple's decision to forego protective casings and underfills on the iPhones would have immediately alerted it to the failure of the internal components of the iPhones, including the touch IC chips.

78.     In the first few days after the release of the iPhone 6 and iPhone 6 Plus, every major media outlet in the United States published and aired stories about the iPhones' external casing bending while being used by consumers. While the specific content of each story varied, each article cited to a variety of reports of the iPhones bending and each article discussed whether the iPhones suffered from one or more defects that caused the iPhones to bend. These widespread reports of the iPhones bending were referred to as "BendGate." For example, CNN and Forbes ran stories on BendGate on September 24, 2014.

79.     On September 25, 2014, Apple issued a press release regarding the durability and performance of the iPhones in response to "BendGate." Apple stated:

> Our iPhones are designed, engineered and manufactured to be both beautiful and sturdy. iPhone 6 and iPhone 6 Plus feature a precision engineered unibody enclosure constructed from machining a custom grade of 6000 series anodized aluminum, which is tempered for extra strength. They also feature stainless steel and titanium inserts to reinforce high stress locations and use the strongest glass in the smartphone industry. We chose these high-quality materials and construction very carefully for their strength and durability. We also perform rigorous tests throughout the entire development cycle including 3-point bending, pressure point cycling, sit, torsion, and user studies. iPhone 6 and iPhone 6 Plus meet or exceed all of our high quality standards to endure everyday, real life use.
>
> With normal use a bend in iPhone is extremely rare and through our first six days of sale, a total of nine customers have contacted Apple with a bent iPhone 6 Plus. As with any Apple product, if you have questions please contact Apple.[18]

80.     Apple posted this statement to its support website (but has since deleted it[19]) and users reposted the contents of the statement throughout Apple's forums. This statement was also reported by

---

[18] http://www.theverge.com/2014/9/25/6844943/apple-says-iphone-bending-extremely-rare (last visited Oct. 4, 2016).
[19] https://support.apple.com/en-us/HT201394 (last visited Apr. 4, 2017).

Fourth Amended Class Action Complaint
Case No.:  5:16-cv-4942-LHK

every major media outlet, including the Wall Street Journal, CNN, CNET, CNBC, Washington Post, Time, Fortune, as well as on specialized tech websites such as Ars Technica, 9to5Mac, PC Magazine, AppleInsider, Computerworld, Cult of Mac, Engadget, and others.

81.    This statement is demonstrably false because the iPhones suffer from the Touchscreen Defect described herein and the iPhones bending and flexing is not "extremely rare" because all of the iPhones bend and flex, including those owned by Plaintiffs and the 16,617 consumers who have contacted Plaintiffs' counsel.

82.    This statement is also demonstrably false because Apple's "stainless steel and titanium inserts [used] to reinforce high stress locations" failed to reinforce the high stress location near the soldering on the touch IC chips and failed to prevent the Touchscreen Defect alleged herein.

83.    This statement is also demonstrably false because the iPhones are unable "to endure everyday, real life use" because they are defective and become useless as smartphones after the defect manifests itself.

84.    This statement is also demonstrably false because the iPhones are not "sturdy" because they bend and flex and because the soldering connecting the touch IC chips to the logic board fails under normal and foreseeable use by consumers.

85.    This statement is also demonstrably false because Apple stated it "chose these high-quality materials and construction very carefully for their strength and durability" but the materials were not high quality, were not constructed carefully, and were not strong or durable, because the iPhones bend and flex and suffer from the Touchscreen Defect.

86.    Finally, this statement is also demonstrably false because the "precision engineered unibody enclosure constructed from machining a custom grade of 60000 series anodized aluminum, which is tempered for extra strength" is not actually tempered for extra strength because the iPhones' casing bends and flexes under normal and foreseeable use by consumers, and even occurs when the iPhones are kept in protective cases.

87.    As a result of Apple's tests, Apple knew or should have known that the iPhones were not durable, not fit for their intended use as smartphones, and would fail under normal and foreseeable use

by consumers. Apple chose both to issue the above misrepresentation and also to conceal the true nature of the Touchscreen Defect instead of disclosing it to consumers.

88.     This affirmative misrepresentation was issued while *all* of the iPhones were still able to be returned pursuant to Apple's fourteen day return policy. As a result of this affirmative misrepresentation, Plaintiffs who had already purchased their iPhones were falsely led to believe that their iPhones were not defective and thus did not return their iPhones within the fourteen day window, in reliance on Apple's statement. For Plaintiffs who did not purchase their iPhones until after Apple issued its statement, those Plaintiffs were falsely led to believe the iPhones were not defective and relied on Apple's statement when deciding to purchase their iPhones.

89.     This affirmative misrepresentation was also issued while all of the iPhones were still under Apple's one-year limited warranty. By issuing this affirmative misrepresentation, Apple prevented purchasers from making warranty claims to Apple during the period of the limited warranty. As alleged above, the iPhones' soldering begins failing on the first day of use. Apple's decision to conceal the Touchscreen Defect prevented customers from making warranty claims because the Touchscreen Defect is a latent defect and one that Plaintiffs and the Class could not have discovered on their own.

90.     Although the Touchscreen Defect was present at the time of sale, and the soldering balls progressively fail whenever the iPhones are used, the ultimate consequences of the defect do not manifest until the soldering balls are completely severed from the touch IC chips.

91.     Apple's attempt to limit the warranty to one-year is unconscionable here as it falsely represented that the iPhones were strong and durable, sturdy, tempered for extra strength, properly tested and determined to not be defective, and suitable for everyday, real life use.

92.     Immediately after releasing this statement, technology insiders expressed serious doubts about Apple's claims. For example, Forbes wrote that "[b]ugs and errors sometimes get through the testing procedure, such as the iPhone 4 antenna and the issues around the iOS 8.0.1 update. If there is an issue, it needs to be acknowledged. And there needs to be a sense of Apple taking care of its customers. I don't get that from this statement. If I were to paraphrase 'with normal use', 'everyday', and 'real life

use', how could I not come back with "'you're using your iPhone 6 Plus the wrong way.'"[20] The article also pointed out that not everyone reports a fault the second it happens to their device and "[n]ine customers reporting the issue to Apple does not mean that only nine people are affected (I think there are more than nine YouTube videos on this issue already)." Forbes also criticized Apple's secrecy when it stated: "Keeping everything a secret before a product launch is part of what makes Apple special, but after the big reveal the cloak of secrecy should be removed."

93.     Further, Apple clarified that same day only around 15,000 iPhone 6 and iPhone 6 Plus review units (each) were put through the above testing process before launch.[21] Apple sold an estimated 13 million iPhones during the opening weekend. Thus, Apple only tested 0.11% of iPhones before releasing them to the public.[22]

94.     Upon information and belief, Apple, through (1) their own records of customers' complaints, (2) Apple Store repair records, (3) its own pre-release testing, (4) warranty and post-warranty claims, and (5) other various sources, were well aware of the Touchscreen Defect but failed to notify consumers of the nature and extent of the problems with the iPhones or provide any adequate remedy.

95.     Apple failed to adequately research, test, and/or manufacture the iPhones before warranting, advertising, promoting, marketing, and selling the iPhones.

96.     In many instances, consumers have incurred and will continue to incur expenses for the diagnosis of the Touchscreen Defect and repair and replacement of their iPhones, despite such defect having been contained in the iPhones when manufactured by Apple.

97.     Consumers were without access to the information concealed by Apple as described herein, and therefore reasonably relied on Apple's representations and warranties regarding the quality, durability, and other material characteristics of the iPhones. Had consumers known of the defect, they

---

[20] https://www.forbes.com/sites/ewanspence/2014/09/25/apple-does-not-say-sorry-over-bendgate/#594acee75329 (last visited Mar. 27, 2017).
[21] https://www.recode.net/2014/9/25/11631290/inside-apples-secret-testing-labs-where-phones-are-bent-all-day-long (last visited Mar. 31, 2017).
[22] https://www.recode.net/2015/9/28/11618952/apples-reports-record-sales-of-iphone-6s-and-6s-plus (last visited Mar. 31, 2017).

would have paid less for the iPhones than the amounts they actually paid, or would not have purchased the iPhones at all.

98.     Apple regularly issues updates to its iOS software that contain communications to the consumer. iOS version number 8.0 was released on September 17, 2014, and the iPhones were shipped with this version. For example, iOS 8.0 disclosed a number of new software features, including the addition of new pre-installed apps such as iBooks.

99.     Apple issued iOS version 8.01 on September 24, 2014, 8.0.2 on September 25, 2014, 8.1. on October 20, 2104, and has generally issued a software update approximately every month since the iPhones were released.

100.     Apple could have communicated its knowledge of the Touchscreen Defect through the communications in the iOS version updates to consumers, but failed to do so.

101.     Apple also has the ability to communicate to consumers through email because all, or nearly all, iPhone users have "Apple IDs" which are tied to email accounts and are required to download apps from the App Store or use iCloud, among other features. Plaintiffs all have Apple IDs. Apple could have communicated its knowledge of the Touchscreen Defect through email, but failed to do so.

102.     Apple can also issue notifications and alerts to those with iPhones using the iOS software. Apple could have communicated its knowledge of the Touchscreen Defect through these notifications and alerts, but failed to do so.

103.     Apple could have issued an accurate press release on September 25, 2014, instead of issuing one that was false, misleading, and omitted material information regarding the Touchscreen Defect, but failed to do so.

104.     Apple could have issued a subsequent press release after its September 25, 2014, press release that disclosed the existence and nature of the Touchscreen Defect, but Apple failed to do so.

105.     Even for the earliest adopters who purchased and received their iPhones on September 19, 2014, Apple had until October 3, 2014 before the fourteen day return period expired on the iPhones to issue a statement to owners of the iPhones that described the existence and nature of the Touchscreen Defect, but Apple failed to do so.

-29-

1

### E.        Apple's Express Warranty Is Unconscionable

2        106.    Apple offers the following one-year warranty when a consumer purchases an iPhone 6 or

3   iPhone 6 Plus:

> Apple Inc. of One Infinite Loop, Cupertino, California, U.S.A. 95014
> ("Apple") warrants the Apple-branded iPhone, iPad, iPod or Apple TV
> hardware product and the Apple-branded accessories contained in the
> original packaging ("Apple Product") against defects in materials and
> workmanship when used normally in accordance with Apple's published
> guidelines for a period of ONE (1) YEAR from the date of original retail
> purchase by the end-user purchaser ("Warranty Period"). Apple's
> published guidelines include but are not limited to information contained
> in technical specifications, user manuals and service communications.[23]

9

10       107.    The above express warranty is not provided inside the iPhones' box. Consumers are

11  instead provided with a link to this warranty which consumers must type into an internet-enabled device

12  to access.

13       108.    Plaintiffs were all surprised to learn that Apple is using the terms of the express warranty

14  to deny warranty claims related to the Touchscreen Defect.

15       109.    As stated above, there is ample evidence that Apple has been aware of the Touchscreen

16  Defect from complaints on its website dating back to September 18, 2014, and from media coverage

17  surrounding BendGate since September 25, 2014; just weeks after Apple began selling the iPhones.

18       110.    In addition, journalists have released articles recounting information, provided by Apple

19  Store employees, that Apple was both aware of the Touchscreen Defect and actively concealing it from

20  consumers at the same time that all or nearly all of the iPhones Apple sold were still under the express

21  warranty period.

22       111.    One such article published by Vice outlines Apple's standard operating procedure

23  ("SOP") when consumers presented the Touchscreen Defect to repair at Apple Stores. The employees

24  discuss Apple's "Mobile Genius" software used at Apple Stores that tracks broken devices.

25       112.    Apple's SOP for consumers presenting an iPhone with the Touchscreen Defect is as

26  follows:

27  _____

28  [23] http://www.apple.com/legal/warranty/products/ios-warranty-document-us.html (last visited Oct. 3,
     2016).

Fourth Amended Class Action Complaint
Case No.:  5:16-cv-4942-LHK

"Standard operating procedure was, at first, to replace the display," he said. "Most units were under warranty, so there was no real problem for the customer. Soon after, this practice was banned within Mobile Genius and the only option we were left with was a full unit replacement—an in-system pop up told us to not even ATTEMPT a screen replacement. Right then it was obvious that Apple knew that there was a problem and, having eliminated the possibility of the display being the issue, they knew it was the logic board chipset."

"Apple engineers were keenly aware of this trending issue, as Apple was very anal about making sure repairs were categorized correctly," he added. "Furthermore, Apple has an in-house newsletter called RetailMe that they used to disseminate information. We were specifically instructed via this portal to replace devices exhibiting symptoms of Touch Disease."

113.    Moreover, Apple knew or should have known of the Touchscreen Defect during its extensive internal, pre-release testing (and shortly after the BendGate scandal when it expressly reaffirmed the alleged durability of the iPhones to all purchasers of the iPhones).

114.    Consumers also reasonably expect that smartphones will remain operable for at least two years when not subject to abuse or neglect because the overwhelming majority of smartphone users are required to sign service contracts with cellular carriers for two-year periods. This means that consumers must select and use one smartphone for the duration of the two-year contract.

115.    Consumers also reasonably expect that the iPhones will remain operable for at least two years because all of the major cellular carriers in the United States offered financing plans whereby the consumer finances the costs of the iPhones over a 24 month period. In the first quarter of 2014, approximately 25% of consumers purchased their smartphones with financing plans.[24]

116.    Consumers also reasonably expect that the iPhones will remain operable for at least two years when not subject to abuse or neglect because consumers are able to resell their used iPhones at the end of their contractual period. Every major cellular carrier offers a "buy-back" option whereby customers can trade in their current device when signing a new contract with the carrier and receive a credit toward the purchase of a new phone or accessories. In order to trade in a smartphone to a cellular carrier at the end of contract, the consumer is required to allow the carrier to inspect the device to

---

[24] https://www.aol.com/article/2014/07/08/iphone6-best-way-to-pay/20926080/ (last visited Apr. 4, 2017).

-31-

determine if it is operational. If it is not operational, the carrier will not accept the trade in.[25] Third party resellers such as Gazelle.com also are in the business of purchasing used, but operational, iPhones.

117.     Apple also warrants the iPhones for two years in Europe. The hardware sold in European iPhones and American iPhones is identical.

118.     As such, Apple's one-year express warranty is both substantively and procedurally unconscionable. Consumers did not have the ability to negotiate the terms or length of the express warranty and Apple concealed the Touchscreen Defect from the Plaintiffs and the Class members in response to BendGate, by at least November 2014, when the first publicly available consumer complaint of the Touchscreen Defect became available, and continually after the Mobile Genius software showed the large number of Touchscreen Defect complaints both during and shortly after Apple's express warranty, a fact confirmed by Apple's own employees. Upon information and belief, Apple knew of and concealed the Touchscreen Defect before these events, including at the time of sale.

## F.     Apple's Multi-Touch Repair Program

119.     On November 18, 2016, Apple announced a customer service program related to the Touchscreen Defect.[26] Prior to this program, Apple charged approximately $349 for a refurbished device when a consumer complained of the Touchscreen Defect outside of Apple's warranty. Apple states the following about the program:

> Apple has determined that some iPhone 6 Plus devices may exhibit display flickering or Multi-Touch issues after being dropped multiple times on a hard surface and then incurring further stress on the device.
>
> If your iPhone 6 Plus is exhibiting the symptoms noted above, is in working order, and the screen is not cracked or broken, Apple will repair your device for a service price of $149.
>
> Apple will contact customers who may have paid for a service repair related to this issue either through Apple or an Apple Authorized Service Provider to arrange reimbursement. If you have not been contacted but paid for a repair that you believe was related to this issue, please contact Apple.

---

[25] https://www.verizonwireless.com/archive/mobile-living/network-and-plans/phone-trade-in-faq/ (last visited Mar. 29, 2017) ("Verizon won't accept devices that are damaged or not working . . . .").

[26] A copy of Apple's press release is available at http://www.apple.com/support/iphone6plus-multitouch/ (last visited Mar. 28, 2016).

1

2

The reimbursement amount will equal the difference between the price
you paid for the original service to your iPhone 6 Plus and the $149
service price.

3          120.    The program does not identify what repair is being offered, and offers to reimburse

4    consumers for amounts previously paid over $149.00, without providing any details on the terms of such

5    reimbursement. The program also explicitly excludes the iPhone 6.

6          121.    The program also explicitly blames owners of the iPhones for the Touchscreen Defect by

7    stating the issue is caused by "being dropped multiple times on a hard surface and then incurring further

8    stress on the device."

9          122.    Apple employees have also confirmed that Apple is not repairing any iPhone 6 Plus

10   devices under this program and instead is simply swapping them out for refurbished phones.[27] Many

11   consumers have reported their allegedly repaired devices have experienced the same Touchscreen

12   Defect.[28]

13         123.    iFixit, an independent repair service, stated that "Apple's statement confirms what the

14   independent repair industry has been saying for a long time: the problem is failed solder joints beneath

15   the touch IC components."[29] iFixit also stated that Apple's explanation for the origin of the issue is

16   flawed because it has seen the Touchscreen Defect on iPhones that have never been dropped and that

17   have "lived their entire lives in protected cases."

18         124.    Protective iPhone cases reduce the degree to which the iPhones bend and flex, but do not

19   eliminate bending and flexing entirely.[30]

20         125.    The warranty offered on Apple's refurbished, yet still defective, devices under the Multi-

21   Touch Repair Program is limited to 90 days.

22

23

24   [27] https://www.engadget.com/2016/11/17/apple-will-fix-iphone-6-plus-touch-disease-for-149/ (last
     visited Mar. 28, 2017); http://ifixit.org/blog/8576/apple-responds-touch-disease/ (last visited Mar. 28,
25   2017); http://mendonipadrehab.com/entries/general/the-epidemic-of-iphone-6-6-touch-ic-failure-
     explained-apples-continues-to-pull-the-wool-over-the-consumer-s-eyes (last visited Mar. 28, 2017).
26   [28] http://mendonipadrehab.com/entries/general/the-epidemic-of-iphone-6-6-touch-ic-failure-explained-
     apples-continues-to-pull-the-wool-over-the-consumer-s-eyes (last visited Mar. 28, 2017).
27   [29] http://ifixit.org/blog/8576/apple-responds-touch-disease/ (last visited Apr. 4, 2017).
     [30] https://discussions.apple.com/thread/6561392?start=0 (discussing iPhone 6 Plus bending in a
28   protective case) (last visited Apr. 3, 2017).

Fourth Amended Class Action Complaint
Case No.:  5:16-cv-4942-LHK

126.     Many consumers, including Plaintiff Corbett, are essentially forced to participate in the program because the $149 fee is substantially cheaper than purchasing a new smartphone. Many consumers, including Plaintiff Corbett, rely on smartphones for their jobs and other daily necessities, and thus cannot operate without a functional smartphone for an extended period of time. Thus, out of necessity and financial constraint, consumers are required to roll the dice and hope that the manufacturing defect present in their original device is not also present in their refurbished device.

## CLASS ACTION ALLEGATIONS

127.     Plaintiffs bring this suit as a class action on behalf of themselves and on behalf of all others similarly situated pursuant to Federal Rule of Civil Procedure 23. This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of the provisions of Rule 23.

128.     Plaintiff seeks to represent the following "Nationwide Class":

> All persons or entities in the United States that purchased an Apple iPhone 6 or 6 Plus.

129.     In the alternative, Plaintiffs seek to represent the following state sub-classes:

> All persons or entities in California that purchased an Apple iPhone 6 or 6 Plus for primarily personal, family or household purposes, as defined by California Civil Code § 1791(a) (the "California Class").

> All persons or entities in Pennsylvania that purchased an Apple iPhone 6 or 6 Plus (the "Pennsylvania Class").

> All persons or entities in Illinois that purchased an Apple iPhone 6 or 6 Plus (the "Illinois Class").

> All persons or entities in New Jersey that purchased an Apple iPhone 6 or 6 Plus (the "New Jersey Class").

> All persons or entities in Florida that purchased an Apple iPhone 6 or 6 Plus (the "Florida Class")

> All persons or entities in Connecticut that purchased an Apple iPhone 6 or 6 Plus (the "Connecticut Class").

> All persons or entities in Texas that purchased an Apple iPhone 6 or 6 Plus (the "Texas Class")

> All persons or entities in Colorado that purchased an Apple iPhone 6 or 6 Plus (the "Colorado Class").

-34-

1

All persons or entities in Michigan that purchased an Apple iPhone 6 or 6 Plus (the "Michigan Class").

2

3

All persons or entities in New York that purchased an Apple iPhone 6 or 6 Plus (the "New York Class").

4

All persons or entities in Washington that purchased an Apple iPhone 6 or 6 Plus (the "Washington Class").

5

6

All persons or entities in Utah that purchased an Apple iPhone 6 or 6 Plus (the "Utah Class").

7

130.    The Nationwide Class, California Class, Pennsylvania Class, Illinois Class, New Jersey

8

Class, Florida Class, Connecticut Class, Texas Class, Colorado Class, Michigan Class, New York Class,

9

Washington Class, and Utah Class will be referred to collectively as the "Class." The California Class,

10

Pennsylvania Class, Illinois Class, New Jersey Class, Florida Class, Connecticut Class, Texas Class,

11

Colorado Class, Michigan Class, New York Class, Washington Class, and Utah Class will be referred to

12

collectively as the "State Sub-Classes" for purposes of Plaintiffs' claims.

13

131.    ***Numerosity:*** Members of the Class are so numerous that joinder of all members is

14

impracticable. While the exact number of Class members remains unknown at this time, upon

15

information and belief, there are hundreds of thousands of putative Class members throughout the

16

United States who are generally ascertainable by appropriate discovery.

17

132.    ***Commonality***: This action involves common questions of law and fact, which

18

predominate over any questions affecting individual Class members. These common legal and factual

19

questions include, but are not limited to, the following:

20

     a.  Whether the iPhones suffer from the Touchscreen Defect;

21

     b.  Whether Apple engaged in the conduct alleged herein;

22

     c.  Whether Apple designed, manufactured, marketed, distributed, sold or otherwise placed

23

        the iPhones into the stream of commerce in the United States knowing that the iPhones

24

        suffered from the Touchscreen Defect;

25

     d.  When Apple first learned of the existence of the Touchscreen Defect;

26

     e.  Whether Apple intentionally concealed the Touchscreen Defect in the iPhones from

27

        consumers;

28

-35-

      f.   Whether Apple breached the terms of its contracts with purchasers when it marketed and sold the iPhones containing the Touchscreen Defect;

      g.   Whether Plaintiffs and the other Class members have been harmed by the fraud alleged herein;

      h.   Whether Apple was unjustly enriched by its deceptive practices; and

      i.   Whether Plaintiffs and the Class are entitled to equitable or injunctive relief.

133. **Typicality**: Plaintiffs' claims are typical of those of the other Class members because, *inter alia*, all members of the Class were injured through the common misconduct described above and were subject to Apple's unfair and unlawful conduct. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the Class.

134. **Adequacy of Representation:** Plaintiffs will fairly and adequately represent and protect the interests of the Class in that they have no disabling conflicts of interest that would be antagonistic to those of the other members of the Class. Plaintiffs seek no relief that is antagonistic or adverse to the members of the Class and the infringement of the rights and the damages they have suffered are typical of other Class members. Plaintiffs have retained counsel experienced in complex consumer class action litigation, and Plaintiffs intend to prosecute this action vigorously.

135. **Superiority:** The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class members, who could not individually afford to litigate a complex claim against large corporate defendants. Further, even for those Class members who could afford to litigate such a claim, it would still be economically impractical.

136. The nature of this action and the nature of laws available to Plaintiffs and the Class make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiffs and the Class for the wrongs alleged because Apple would necessarily gain an unconscionable

-36-

advantage since they would be able to exploit and overwhelm the limited resources of each individual Class member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiffs were exposed is representative of that experienced by the Class and will establish the right of each member of the Class to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

137.   Plaintiffs reserve the right to modify or amend the definition of the proposed class and subclasses before the Court determines whether certification is appropriate and as the parties engage in discovery.

138.   The class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Because of the number and nature of common questions of fact and law, multiple separate lawsuits would not serve the interest of judicial economy.

139.   Individual litigation of the claims of all Class members is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are likely in the millions of dollars, the individual damages incurred by each Member resulting from Apple's wrongful conduct are too small to warrant the expense of individual suits. The likelihood of individual Class members prosecuting separate claims is remote, and even if every Class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Individual Class members do not have a significant interest in individually controlling the prosecution of separate actions, and the individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action. A class action in this matter will avoid case management difficulties and provide multiple benefits, including efficiency, economy of scale, unitary adjudication with consistent results and equal protection of the rights of each Class member, all by way of the comprehensive and efficient supervision of the litigation by a single court.

140.     Notice of a certified class action and of any result or resolution of the litigation can be provided to Class members by first-class mail, email, or publication, or such other methods of notice as deemed appropriate by the Court.

141.     Plaintiffs do not anticipate any difficulty in the management of this litigation.

**FIRST CLAIM FOR RELIEF**
**VIOLATIONS OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT ("CLRA")**
**(By All Plaintiffs on Behalf of the Nationwide Class or, Alternatively, by Plaintiff Cleary on behalf of the California Class)**

142.     Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

143.     Apple is a person as that term is defined in California Civil Code § 1761(c).

144.     Plaintiffs and the Class are "consumers" as that term is defined in California Civil Code § 1761(d).

145.     Apple engaged in unfair and deceptive acts in violation of the CLRA by the practices described above, and by knowingly and intentionally concealing from Plaintiffs and Class members that the iPhones are defective. These acts and practices violate, at a minimum, the following sections of the CLRA:

> (a)(2)   Misrepresenting the source, sponsorship, approval or certification of goods or services;
>
> (a)(5) Representing that goods or services have sponsorships, characteristics, uses, benefits or quantities which they do not have, or that a person has a sponsorship, approval, status, affiliation or connection which he or she does not have;
>
> (a)(7)   Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and
>
> (a)(9)   Advertising goods and services with the intent not to sell them as advertised.

146.     Apple's unfair or deceptive acts or practices occurred repeatedly in Apple's trade or business and were capable of deceiving a substantial portion of the purchasing public.

147.     Apple knew that the iPhones were defective, prone to failing for their essential purpose as phones, and would become useless as a result of reasonable and foreseeable use by consumers.

-38-

148.     Defendant was under a duty to Plaintiffs and the Class members to disclose the defective nature of the iPhones because:

     a.    Apple was in a superior position to know the true state of facts about the Touchscreen Defect in the iPhones;

     b.    Plaintiffs and the Class members could not reasonably have been expected to learn or discover that the iPhones were defective and not in accordance with Apple's advertisements and representations;

     c.    Apple knew that Plaintiffs and the Class members could not reasonably have been expected to learn or discover the Touchscreen Defect in the iPhones; and

     d.    Defendant actively concealed and failed to disclose the Touchscreen Defect from Plaintiffs and the Class.

149.     In failing to disclose the Touchscreen Defect at the time of sale, Apple has knowingly and intentionally concealed material facts and breached its duty not to do so.

150.     The facts concealed or not disclosed by Apple to Plaintiffs and the Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase Apple's iPhones or pay a lesser price. Had Plaintiffs and the Class known about the Touchscreen Defect in the iPhones, they would not have purchased the iPhones or would have paid less for them.

151.     Plaintiffs have provided Apple with notice of its violations of the CLRA pursuant to California Civil Code § 1782(a) and seeks both monetary and injunctive relief under the CLRA.

152.     Plaintiffs and the other Class members' injuries were proximately caused by Apple's fraudulent and deceptive business practices.

153.     Therefore, Plaintiffs and the other Class members are entitled to equitable relief under the CLRA.

1
2

**SECOND CLAIM FOR RELIEF**
**VIOLATIONS OF CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200**
**(By All Plaintiffs on Behalf of the Nationwide Class or, Alternatively, by Plaintiff Cleary on behalf**
**of the California Class)**

3      154.   Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though

4  fully set forth herein.

5      155.   The California Unfair Competition Law ("UCL") prohibits acts of "unfair competition,"

6  including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or

7  misleading advertising." Cal. Bus. & Prof. Code § 17200.

8      156.   Defendant has engaged in unfair competition and unfair, unlawful or fraudulent business

9  practices by the conduct, statements, and omissions described above, and by knowingly and

10  intentionally concealing from Plaintiffs and the Class members the Touchscreen Defect (and the costs

11  and diminished value of the iPhones as a result of Defendant's conduct). Defendant should have

12  disclosed this information because it was in a superior position to know the true facts related to the

13  Touchscreen Defect, and Plaintiffs and Class members could not reasonably be expected to learn or

14  discover the true facts related to the Touchscreen Defect.

15      157.   These acts and practices have deceived Plaintiffs and are likely to deceive the public. In

16  failing to disclose the Touchscreen Defect and suppressing other material facts from Plaintiffs and the

17  Class members, Defendant breached its duties to disclose these facts, violated the UCL, and caused

18  injuries to Plaintiffs and the Class members. The omissions and acts of concealment by Defendant

19  pertained to information that was material to Plaintiffs and the Class members, as it would have been to

20  all reasonable consumers.

21      158.   The injuries suffered by Plaintiffs and the Class members are greatly outweighed by any

22  potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiffs and

23  the Class members should have reasonably avoided.

24      159.   Defendant's acts and practices are unlawful because they violate California Civil Code

25  §§ 1668, 1709, 1710, and 1750 *et seq.*, and California Commercial Code § 2313.

26      160.   Plaintiffs seek to enjoin further unlawful, unfair and/or fraudulent acts or practices by

27  Defendant, to obtain restitutionary disgorgement of all monies and revenues generated as a result of such

28  practices, and all other relief allowed under California Business & Professions Code § 17200.

**THIRD CLAIM FOR RELIEF**
**VIOLATIONS OF CALIFORNIA FALSE ADVERTISING LAW**
**(By All Plaintiffs on Behalf of the Nationwide Class or, Alternatively, by Plaintiff Cleary on behalf of the California Class)**

161.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

162.    California Business & Professions Code § 17500 states: "It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

163.    Apple caused to be made or disseminated throughout California and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Defendant, to be untrue and misleading to consumers, including Plaintiffs and the other Class members.

164.    Apple has violated section 17500 because the misrepresentations and omissions regarding the functionality of its iPhones as set forth in this Complaint were material and likely to deceive a reasonable consumer.

165.    Plaintiffs and the other Class members have suffered an injury in fact, including the loss of money or property, as a result of Defendant's unfair, unlawful, and/or deceptive practices. In purchasing their iPhones, Plaintiffs and the other Class members relied on the misrepresentations and/or omissions of Defendant with respect to the reliability of the iPhones. Defendant's representations were untrue because the iPhones were manufactured and sold with the Touchscreen Defect. Had Plaintiffs and the other Class members known this, they would not have purchased their iPhones and/or paid as much for them. Accordingly, Plaintiffs and the other Class members overpaid for their iPhones and did not receive the benefit of their bargain.

166.    All of the wrongful conduct alleged herein occurred in the conduct of Apple's business.

-41-

167.    Plaintiffs, individually and on behalf of the other Class members, request that this Court enter such orders or judgments as may be necessary to restore to Plaintiffs and the other Class members any money Defendant acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

**FOURTH CLAIM FOR RELIEF**
**VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE PRACTICES ACT**
**(By Plaintiff Siegal on Behalf of the Illinois Class)**

168.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

169.    Illinois's Consumer Fraud and Deceptive Business Practices Act prohibits unfair or deceptive acts or practices in the conduct of any trade or commerce, including among others, "the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, … whether any person has in fact been misled, deceived, or damaged thereby." 815 Ill. Comp. Stat. § 505/2. The Act also prohibits suppliers from representing that their goods are of a particular quality or grade that they are not.

170.    The iPhones are "merchandise" as defined in 815 Ill. Comp. Stat. § 505/1(b). Apple is a "person" as defined in 815 Ill. Comp. Stat. § 505/1(c). Plaintiff Siegal and the other Illinois Class members are "consumers" as defined in 815 Ill. Comp. Stat. § 505/1(e).

171.    Apple has engaged in deception, fraud, unfair practices, and concealment by the conduct, statements, and omissions described above, and by knowingly and intentionally concealing from Plaintiff Siegal and the Illinois Class Members the existence of the Touchscreen Defect (and the costs and diminished value of the iPhones as a result of Apple's conduct). Accordingly, Apple engaged in unfair or deceptive acts or practices as defined in 815 Ill. Comp. Stat. § 505/2, including representing that the iPhones have characteristics, uses, benefits, and qualities which they do not have; representing that the iPhones are of a particular standard and quality when they are not; advertising the iPhones with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.

172.    The facts concealed or not disclosed by Apple to Plaintiff Siegal and the Illinois Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase Apple's iPhones or pay a lesser price. Had Plaintiff Siegal and the Illinois

-42-

Class Members known about the Touchscreen Defect, they would not have purchased the iPhones or would have paid less for them.

173.    Plaintiff Siegal and the other Illinois Class members were injured as a result of Apple's conduct in that Plaintiff Siegal and the other Illinois Class members purchased iPhones that would become unusable as smartphones, overpaid for their iPhones and did not receive the benefit of their bargain, and their iPhones have suffered a diminution in value. These injuries are the direct and natural consequence of Apple's misrepresentations and omissions.

174.    The injuries suffered by Plaintiff Siegal and the Illinois Class Members are greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiff Siegal and the Illinois Class Members should have reasonably avoided.

175.    Plaintiff Siegal's and the other Illinois Class Members' injuries were proximately caused by Defendant's fraudulent and deceptive business practices.

176.    Apple's conduct in this regard was wanton, willful, outrageous, and in reckless indifference to the rights of Plaintiff Siegal and the other Illinois Class members and, as such, warrants the imposition of punitive damages.

**FIFTH CLAIM FOR RELIEF**
**VIOLATIONS OF THE ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT**
**(By Plaintiff Siegal on Behalf of the Illinois Class)**

177.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

178.    Illinois's Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. § 510/2, prohibits deceptive trade practices, including among others, "(2) caus[ing] likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services; . . . (5) represent[ing] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have . . .; (7) represent[ing] that goods or services are of a particular standard, quality, or grade . . . if they are of another; . . . (9) advertis[ing] goods or services with intent not to sell them as advertised; . . . [and] (12) engag[ing] in any other conduct which similarly creates a likelihood of confusion or misunderstanding."

-43-

179.     Apple is a "person" as defined in 815 Ill. Comp. Stat. § 510/1(5).

180.     Apple has engaged in deception, fraud, unfair practices, and concealment by the conduct, statements, and omissions described above, and by knowingly and intentionally concealing from the existence of the Touchscreen Defect (and the costs and diminished value of the iPhones as a result of Apple's conduct). Accordingly, Apple engaged in unfair or deceptive acts or practices as defined in 815 Ill. Comp. Stat. § 510/2, including representing that the iPhones have characteristics, uses, benefits, and qualities which they do not have; representing the iPhones are of a particular standard and quality when they are not; advertising the iPhones with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.

181.     The facts concealed or not disclosed by Apple to Plaintiff Siegal and the Illinois Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase Apple's iPhones or pay a lesser price. Had Plaintiff Siegal and the Illinois Class Members known about the Touchscreen Defect, they would not have purchased the iPhones or would have paid less for them.

182.     Plaintiff Siegal and the other Illinois Class Members were injured as a result of Apple's conduct in that they purchased iPhones that would become unusable as smartphones, overpaid for their iPhones and did not receive the benefit of their bargain, and their iPhones have suffered a diminution in value. These injuries are the direct and natural consequence of Apple's misrepresentations and omissions.

183.     The injuries suffered by Plaintiff Siegal and the Illinois Class Members are greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiff Siegal and the Illinois Class Members should have reasonably avoided.

184.     Plaintiff Siegal's and the other Illinois Class Members' injuries were proximately caused by Defendant's fraudulent and deceptive business practices.

### SIXTH CLAIM FOR RELIEF
### VIOLATIONS OF THE NEW JERSEY CONSUMER FRAUD ACT
#### (By Plaintiff Pajaro on Behalf of the New Jersey Class)

185.     Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

-44-

186.     The New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1, *et seq.* ("NJCFA") protects consumers against "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise . . . ." N.J. Stat. Ann. § 56:8-2.

187.     Plaintiff Pajaro and the New Jersey Class Members are consumers who purchased Apple's iPhones.

188.     In the course of Apple's business, it knowingly concealed, suppressed, and omitted the fact that the iPhones are defective, with the intent that Plaintiff Pajaro and the New Jersey Class Members rely upon that concealment, suppression, and omission when purchasing iPhones. The existence of the defect, which manifests in all or substantially all iPhones, is material to a reasonable consumer in that it causes the iPhones to be unusable as smartphones, leads to hundreds of dollars in repair expenses, and causes the iPhones to be worth substantially less than they would otherwise be valued.

189.     Apple has engaged in unfair and deceptive trade practices, including representing that the iPhones have characteristics, uses, benefits, and qualities which they do not have; representing that the iPhones are of a particular standard and quality when they are not; advertising the iPhones with the intent to not sell them as advertised; and otherwise engaging in conduct likely to deceive. Further, Apple acts and practices described herein offend established public policy because of the harm they cause to consumers outweighs any benefit associated with such practices, and because Apple fraudulently concealed the defective nature of the iPhones from consumers.

190.     Apple had a duty to disclose the Touchscreen Defect to Plaintiff Pajaro and members of the New Jersey Class.

191.     Apple's actions as set forth above occurred in the conduct of trade or commerce.

192.     Apple's conduct caused Plaintiff Pajaro and the New Jersey Class Members to suffer an ascertainable loss. Plaintiff Pajaro and the other New Jersey Class Members purchased iPhones they otherwise would not have, overpaid for their iPhones, did not receive the benefit of their bargain, and

their iPhones suffered a diminution in value. Plaintiff Pajaro and the New Jersey Class Members have also incurred and will continue to incur costs for screen replacements and replacement iPhones.

193.    Plaintiff Pajaro's and other New Jersey Class Members' damages are the direct and foreseeable result of Apple's unlawful conduct. Had the defect in the iPhones been disclosed, consumers would not have purchased or would have paid less for the iPhones and would have been spared the subsequent expenses described herein.

194.    Pursuant to N.J. Stat. Ann. § 56:8-20, the New Jersey Attorney General will be served with a copy of this First Amended Complaint.

**SEVENTH CLAIM FOR RELIEF**
**VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT**
**(By Plaintiff Borzymowski on Behalf of the Florida Class)**

195.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

196.    Plaintiff Borzymowski and the Florida class members are "consumers" within the meaning of Fla. Stat. § 501.203(7).

197.    At all relevant times, Apple was engaged in trade or commerce within the meaning of Fla. Stat. § 501.203(8).

198.    The purpose of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.*, is to "protect the consuming public . . . from those who engage in unfair methods of competition, or unconscionable, deceptive or unfair acts or practice in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

199.    Florida's Deceptive and Unfair Trade Practices Act prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

200.    In the course of Apple's business, it knowingly concealed, suppressed, and omitted the fact that the iPhones are defective, with the intent that Plaintiff Borzymowski and the Florida Class Members rely upon that concealment, suppression, and omission when purchasing iPhones. The existence of the defect, which manifests in all or substantially all iPhones, is material to a reasonable consumer in that it causes the iPhones to be unusable as smartphones, leads to hundreds of dollars in

-46-

repair expenses, and causes the iPhones to be worth substantially less than they would otherwise be valued.

201.    Apple has engaged in unfair and deceptive trade practices, including representing that the iPhones have characteristics, uses, benefits, and qualities which they do not have; representing that the iPhones are of a particular standard and quality when they are not; advertising the iPhones with the intent to not sell them as advertised; and otherwise engaging in conduct likely to deceive. Further, Apple acts and practices described herein offend established public policy because of the harm they cause to consumers outweighs any benefit associated with such practices, and because Apple fraudulently concealed the defective nature of the iPhones from consumers.

202.    As a direct and proximate result of Apple's unlawful conduct, Plaintiff Borzymowski and the Florida Class Members have suffered harm in that they bought iPhones they otherwise would not have, overpaid for their iPhones, did not receive the benefit of their bargain, and their iPhones suffered a diminution in value. Meanwhile, Apple has sold more iPhones than they otherwise could have and charged inflated prices for the iPhones, unjustly enriching themselves thereby.

203.    Plaintiff Borzymowski and the other Class members have suffered an injury in fact, including the loss of money or property, as a result of Defendant's unfair, unlawful, and/or deceptive practices. In purchasing their iPhones, Plaintiffs and the other Class members relied on the misrepresentations and/or omissions of Defendant with respect to the reliability of the iPhones. Defendant's representations were untrue because the iPhones were manufactured and sold with the Touchscreen Defect. Had Plaintiffs and the other Class members known this, they would not have purchased their iPhones and/or paid as much for them. Accordingly, Plaintiffs and the other Class members overpaid for their iPhones and did not receive the benefit of their bargain.

204.    Pursuant to Fla. Stat. § 501.211, Plaintiff Borzymowski and the Florida Class Members are entitled to damages, declaratory judgment, and equitable relief, including restitutionary disgorgement of all profits accruing to Apple because of their deceptive practices and an order requiring Apple to adequately disclose and repair the defect.

1

2

**EIGHTH CLAIM FOR RELIEF**
**VIOLATIONS OF THE CONNECTICUT UNFAIR TRADE PRACTICES ACT**
**(By Plaintiff Corbett on Behalf of the Connecticut Class)**

3        205.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though

4   fully set forth herein.

5        206.    Plaintiff Corbett, the Connecticut Class Members, and Apple are "persons" as defined by

6   Conn. Gen. Stat. Ann. § 42-110a(3).

7        207.    The Connecticut Unfair Trade Practices Act ("CUTPA") provides that "[n]o person shall

8   engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any

9   trade or commerce. Conn. Gen. Stat. Ann. § 42-110b(a). The CUTPA further provides a private right of

10  action under Conn. Gen. Stat. Ann. § 42-110g(a).

11       208.    Apple engaged in unfair and deceptive acts or practices in violation of the CUTPA by the

12  practices described above, and by knowingly and intentionally concealing from Plaintiff Corbett and the

13  Connecticut Class Members that the iPhones suffer from defect(s) (and the costs and diminished value

14  of the iPhones that result from the Touchscreen Defect).

15       209.    Apple's unfair or deceptive acts or practices occurred repeatedly in Apple's trade or

16  business and were capable of deceiving a substantial portion of the purchasing public.

17       210.    Apple knew that its iPhones were defectively manufactured, would fail prematurely, and

18  were not suitable for their intended use.

19       211.    Defendant was under a duty to Plaintiff Corbett and the Connecticut Class Members to

20  disclose the defective nature of the iPhones because:

21              a.      Apple was in a superior position to know the true state of facts about the

22                      Touchscreen Defect in the iPhones;

23              b.      Plaintiff Corbett and the Connecticut Class Members could not reasonably have

24                      been expected to learn or discover that the iPhones were defective and not in

25                      accordance with Apple's advertisements and representations;

26              c.      Apple knew that Plaintiff Corbett and the Connecticut Class Members could not

27                      reasonably have been expected to learn or discover the Touchscreen Defect; and

28

-48-

d.    Defendant actively concealed and failed to disclose the Touchscreen Defect from Plaintiff Corbett and the Connecticut Class Members.

212.    In failing to disclose the Touchscreen Defect and the associated repair costs that result from it, Apple have knowingly and intentionally concealed material facts and breached its duty not to do so.

213.    The facts concealed or not disclosed by Apple to Plaintiff Corbett and the Connecticut Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase Apple's iPhones or pay a lesser price. Had Plaintiff Corbett and the Connecticut Class Members known about the defective nature of the iPhones, they would not have purchased the iPhones or would have paid substantially less for them.

214.    Plaintiff Corbett was also forced to participate in Apple's "Multi-Touch Repair Program" and paid $149 for a refurbished iPhone because she needed a working smartphone and could not afford to purchase a brand new smartphone. Apple failed to disclose at the time of sale of this refurbished iPhone whether the refurbished iPhone also suffered from the Touchscreen Defect.

215.    Plaintiff Corbett's and the other Connecticut Class Members' injuries were proximately caused by Apple's fraudulent and deceptive business practices.

216.    Plaintiff Corbett also seeks court costs and attorneys' fees as a result of Defendant's violation of the CUTPA as provided in Conn. Gen. Stat. Ann. § 42-110g(d).

217.    A copy of this First Amended Complaint has been mailed to the Attorney General and the Commissioner of Consumer Protection of the State of Connecticut in accordance with Conn. Gen. Stat. Ann. § 42-110g(c).

### NINTH CLAIM FOR RELIEF
### VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT
#### (By Plaintiff Brown on Behalf of the Texas Class)

218.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

219.    Plaintiff Brown, the Texas Class Members, and Apple are each "persons" as defined by Tex. Bus. & Com. Code § 17.45(3). The iPhones are "goods" under Tex. Bus. & Com. Code § 17.45(1).

Plaintiff Brown and the other Texas Class Members are "consumers" as defined in Tex. Bus. & Com. Code § 17.45(4). Defendant has at all relevant times engaged in "trade" and "commerce" as defined in Tex. Bus. & Com. Code § 17.45(6), by advertising, offering for sale, selling, and/or distributing the iPhones in Texas, directly or indirectly affecting Texas citizens through that trade and commerce.

220.     The allegations set forth herein constitute false, misleading, or deceptive trade acts or practices in violation of Texas's Deceptive Trade Practices-Consumer Protection Act ("DTPA"), Tex. Bus. & Com. Code § 17.41, *et seq.*

221.     By failing to disclose and actively concealing the defects in iPhones, Apple engaged in deceptive business practices prohibited by the DTPA, including (1) representing that the iPhones have characteristics, uses, benefits, and qualities which they do not have, (2) representing that the iPhones are of a particular standard, quality, and grade when they are not, (3) advertising the iPhones with the intent not to sell them as advertised, and (4) engaging in acts or practices which are otherwise unfair, misleading, false or deceptive to the consumer.

222.     As alleged above, Apple made material statements about the benefits and characteristics of the iPhones that were either false or misleading. These statements contributed to the deceptive context of Apple's unlawful advertising and representations as a whole.

223.     Apple knew that the iPhones were defectively manufactured, would fail without warning, and were not suitable for its intended use. Apple nevertheless failed to warn Plaintiff Brown and the Texas Class Members about these defects despite having a duty to do so.

224.     Apple owed Plaintiff Brown and the Texas Class Members a duty to disclose the defective nature of the iPhones, because they:

     a.   Possessed exclusive knowledge of the defects rendering the iPhones more unreliable than similar smartphones;

     b.   Intentionally concealed the defects associated with the iPhones through Apple's deceptive marketing campaign and recall program that they designed to hide the defects in the iPhones; and/or

     c.    Made incomplete representations about the characteristics and performance of the iPhones generally, while purposefully withholding material facts from Plaintiff Brown and the Texas Class Members that contradicted these representations.

225.    Apple's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff Brown and the Texas Class Members, about the true performance and characteristics of the iPhones.

226.    Apple's intentional concealment of and failure to disclose the defective nature of the iPhones to Plaintiff Brown and the Texas Class Members constitutes an "unconscionable action or course of action" under Tex. Bus. & Com. Code § 17.45(5) because, to the detriment of Plaintiff Brown and the Texas Class members, that conduct took advantage of their lack of knowledge, ability, and experience to a grossly unfair degree. That "unconscionable action or course of action" was a producing cause of the economic damages sustained by Plaintiff Brown and the Texas Class Members.

227.    Apple is also liable under Tex. Bus. & Com. Code § 17.50(a) because Apple's breach of the implied warranty of merchantability set forth herein was a producing cause of economic damages sustained by Plaintiff Brown and the Texas Class Members.

228.    As a result of its violations of the DTPA detailed above, Apple caused actual damage to Plaintiff Brown and the Texas Class Members and, if not stopped, will continue to harm them. Plaintiff Brown and the Texas Class Members currently own, or within the class period have owned, an iPhone with the Touchscreen Defect. The Touchscreen Defect has caused the iPhones' value to decrease.

229.    All procedural prerequisites, including notice, have been met. The giving of notice to Apple is rendered impracticable pursuant to Tex. Bus. & Com. Code § 17.505(b) and unnecessary because Apple has notice of the claims against it through the numerous complaints filed against it. Pursuant to Tex. Bus. & Com. Code § 17.505(b), Plaintiff Brown, individually and on behalf of the Texas Class Members, will send to the Texas Consumer Protection Division a copy of this First Amended Complaint.

230.    Plaintiff Brown and the other Class members have suffered an injury in fact, including the loss of money or property, as a result of Defendant's unfair, unlawful, and/or deceptive practices. In purchasing their iPhones, Plaintiffs and the other Class members relied on the misrepresentations and/or

omissions of Defendant with respect to the reliability of the iPhones. Defendant's representations were untrue because the iPhones were manufactured and sold with the Touchscreen Defect. Had Plaintiffs and the other Class members known this, they would not have purchased their iPhones and/or paid as much for them. Accordingly, Plaintiffs and the other Class members overpaid for their iPhones and did not receive the benefit of their bargain.

231. Plaintiff Brown and the Texas Class Members sustained damages as a result of the Apple's unlawful acts and are, therefore, entitled to damages and other relief as provided under the DTPA.

232. Plaintiff Brown and the Texas Class Members should be awarded three times the amount of their economic damages because Apple intentionally concealed and failed to disclose the defective nature of the iPhones.

**TENTH CLAIM FOR RELIEF**
**VIOLATIONS OF THE COLORADO CONSUMER PROTECTION ACT**
**(On Behalf of the Colorado Class)**

233. Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

234. Colorado's Consumer Protection Act (the "CCPA") prohibits a person from engaging in a "deceptive trade practice," which includes knowingly making "a false representation as to the source, sponsorship, approval, or certification of goods," or "a false representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of goods." Colo. Rev. Stat. § 6-1-105(1)(b), (e). The CCPA further prohibits "represent[ing] that goods . . . are of a particular standard, quality, or grade . . . if he knows or should know that they are of another," and "advertis[ing] goods . . . with intent not to sell them as advertised." Colo. Rev. Stat. § 6-1-105(1)(g), (i).

235. Apple is a "person" within the meaning of Colo. Rev. Stat. § 6-1-102(6).

236. In the course of Apple's business, it willfully misrepresented and failed to disclose, and actively concealed, the defective nature of the iPhones as described above. Accordingly, Apple engaged in unlawful trade practices, including representing that the iPhones have characteristics, uses, benefits, and qualities which they do not have; representing that the iPhones are of a particular standard and

-52-

quality when they are not; advertising the iPhones with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.

237.    Apple's actions as set forth above occurred in the conduct of trade or commerce.

238.    Apple's conduct proximately caused injuries to Plaintiff Bauer and the Colorado Class Members.

239.    Plaintiff Bauer and the other Class members have suffered an injury in fact, including the loss of money or property, as a result of Defendant's unfair, unlawful, and/or deceptive practices. In purchasing their iPhones, Plaintiffs and the other Class members relied on the misrepresentations and/or omissions of Defendant with respect to the reliability of the iPhones. Defendant's representations were untrue because the iPhones were manufactured and sold with the Touchscreen Defect. Had Plaintiffs and the other Class members known this, they would not have purchased their iPhones and/or paid as much for them. Accordingly, Plaintiffs and the other Class members overpaid for their iPhones and did not receive the benefit of their bargain.

240.    Plaintiff Bauer and the Colorado Class Members were injured as a result of Apple's conduct in that they overpaid for their iPhones and did not receive the benefit of their bargain, and their iPhones have suffered a diminution in value. These injuries are the direct and natural consequence of Apple's misrepresentations and omissions.

## ELEVENTH CLAIM FOR RELIEF
### VIOLATIONS OF THE MICHIGAN CONSUMER PROTECTION ACT
#### (By Plaintiff Heirloom Estate Services on Behalf of the Michigan Class)

241.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

242.    The Michigan Consumer Protection Act ("MCPA"), Mich. Comp. Laws § 445.901, *et seq.*, is designed to provide a remedy for consumers who are injured by deceptive business practices. The MCPA expressly allows for class actions on behalf of consumers who have suffered a loss as a result of a violation of the Act. *See* Mich. Comp. Laws § 445.911(3).

243.    Plaintiff Heirloom Estate Services, the Class members, and Apple are persons under the MCPA.

-53-

244. As discussed in detail herein, by marketing and selling iPhones with the Touchscreen Defect, Apple's conduct constitutes unfair, unconscionable, and deceptive acts because Apple:

    a. Caused a probability of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services, Mich. Comp. Laws § 445.903(1)(a);

    b. Represented that the iPhones had sponsorship, approval, characteristics, uses, and quantities that they do not have, Mich. Comp. Laws § 445.903(1)(c);

    c. Represented that the iPhones are of a particular standard, quality, or grade, Mich. Comp. Laws § 445.903(1)(e);

    d. Advertised the iPhones with intent not to sell the iPhones as advertised or represented, Mich. Comp. Laws § 445.903(1)(g);

    e. Failed to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer, Mich. Comp. Laws § 445.903(1)(s);

    f. Made representations of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is, Mich. Comp. Laws § 445.903(1)(bb); and

    g. Failed to reveal facts which are material to the transaction in light of representations of fact made in a positive manner, Mich. Comp. Laws § 445.903(1)(cc)

245. Apple also concealed, omitted, and failed to disclose that the iPhones had not been adequately tested and that the iPhones were defective.

246. As shown through their purchase of the iPhones, Plaintiff Heirloom Estate Services and the Michigan Class Members reasonably relied on Apple's misrepresentations and omissions of material facts.

247. Because of Apple's violation of the MCPA, Apple caused actual damage to Plaintiff Heirloom Estate Services and the Michigan Class Members and, if not stopped, will continue to harm them. Plaintiff Heirloom Estate Services and the Michigan Class Members currently own, or within the class period have owned, an iPhone with the Touchscreen Defect. Defects associated with the iPhones have caused their value to decrease.

-54-

**TWELFTH CLAIM FOR RELIEF**
**VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349**
**(By Plaintiff Baker on Behalf of the New York Class)**

248.     Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

249.     New York's General Business Law § 349 makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce."

250.     In the course of Apple's business, it willfully failed to disclose and actively concealed the defective nature of the iPhones. Accordingly, Apple engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices as defined in N.Y. Gen. Bus. Law § 349, including representing that the iPhones have characteristics, uses, benefits, and qualities which they do not have; representing that the iPhones are of a particular standard and quality when they are not; advertising the iPhones with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.

251.     Apple's actions as set forth above occurred in the conduct of trade or commerce.

252.     Apple's conduct proximately caused injuries to Plaintiff Baker and the New York Class Members.

253.     Plaintiff Baker and the New York Class Members were injured as a result of Apple's conduct in that they overpaid for their iPhones and did not receive the benefit of their bargain, and their iPhones have suffered a diminution in value. These injuries are the direct and natural consequence of Apple's misrepresentations and omissions.

**THIRTEENTH CLAIM FOR RELIEF**
**VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 350**
**(By Plaintiff Baker on Behalf of the New York Class)**

254.     Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

255.     New York's General Business Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce[.]" False advertising includes "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect," taking into account

-55-

1    "the extent to which the advertising fails to reveal facts material in the light of . . .  representations

2    [made] with respect to the commodity . . . ." N.Y. Gen. Bus. Law § 350-a.

3        256.    Apple caused to be made or disseminated through New York, through advertising,

4    marketing, and other publications, statements that were untrue or misleading, and which were known, or

5    which by the exercise of reasonable care should have been known to Apple, to be untrue and misleading

6    to consumers, including Plaintiff Baker and the New York Class Members.

7        257.    Plaintiff Baker and the New York Class Members have suffered injury, including the loss

8    of money or property, as a result of Apple's false advertising. In purchasing or leasing the iPhones,

9    Plaintiff Baker and the New York Class Members relied on the misrepresentations and/or omissions of

10   including representing that the iPhones have characteristics, uses, benefits, and qualities which they do

11   not have; representing that the iPhones are of a particular standard and quality when they are not;

12   advertising the iPhones with the intent not to sell them as advertised; and otherwise engaging in conduct

13   likely to deceive. Had Plaintiff Baker and the New York Class members known this, they would not

14   have purchased or leased the iPhones and/or paid as much for them

15       258.    Accordingly, Plaintiff Baker and the New York Class Members overpaid for their

16   iPhones and did not receive the benefit of the bargain for their iPhones, which have also suffered

17   diminution in value

18       259.    Plaintiff Baker, individually and on behalf of the New York Class Members, request that

19   this Court enter such orders or judgments as may be necessary to enjoin Apple from continuing its

20   unfair, unlawful and/or deceptive practices. Plaintiff Baker and the New York Class Members are also

21   entitled to recover their actual damages or $500, whichever is greater. Because Apple acted willfully or

22   knowingly, Plaintiff Baker and the New York Class Members are entitled to recover three times actual

23   damages, up to $10,000.

24                          **FOURTEENTH CLAIM FOR RELIEF**
                  **VIOLATIONS OF THE WASHINGTON CONSUMER PROTECTION ACT**
25                 **(By Plaintiffs Muilenburg and Bon on Behalf of the Washington Class)**

26       260.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though

27   fully set forth herein.

28

Fourth Amended Class Action Complaint
Case No.:  5:16-cv-4942-LHK

261.     Apple is a "person" within the meaning of the Washington Consumer Protection Act ("WCPA"), Wash. Rev. Code § 19.86.010(1), and conducts "trade" and "commerce" within the meaning of the WCPA, WRC § 19.86.010(2).

262.     Plaintiffs Muilenburg and Bon and members of the Washington Class are "persons" within the meaning of the WCPA, Wash. Rev. Code § 19.86.010(1).

263.     Apple's actions are unfair and/or deceptive within the meaning of the WCPA in that Apple has engaged in deception, fraud, unfair practices, and concealment by the conduct, statements, and omissions described above, and by knowingly and intentionally concealing from Plaintiffs Muilenburg and Bon and the Washington Class Members the existence of the Touchscreen Defect (and the costs and diminished value of the iPhones as a result of Apple's conduct) and, as such, the iPhones were not suitable for their intended use, as described throughout this First Amended Complaint. Such false advertisements were material to Plaintiffs Muilenburg and Bon and the Washington Class Members in purchasing their iPhones.

264.     Apple's unfair or deceptive acts or practices have occurred in their trade or business, and Apple was and is capable of deceiving a substantial portion of the public.

265.     The facts concealed or not disclosed by Apple to Plaintiffs Muilenburg and Bon and the Washington Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase Apple's iPhones or pay a lesser price. Had Plaintiffs Muilenburg and Bon and the Washington Class Members known about the Touchscreen Defect, they would not have purchased the iPhones or would have paid less for them.

266.     Apple's general course of conduct has an impact on the public interest, and the acts complained of herein are ongoing and/or have a substantial likelihood of being repeated.

267.     As a direct and proximate result of Apple's actions described above, the Washington Plaintiffs and the Washington Class members have been injured in fact and suffered damages, and seek relief in the form of actual damages, treble damages, and reasonable attorneys' fees, pursuant to Wash. Rev. Code § 19.86.090.

-57-

1

2

## FIFTEENTH CLAIM FOR RELIEF
### FRAUD
**(By All Plaintiffs On Behalf of the Nationwide Class or, Alternatively, the State Sub-Classes)**

3

4

268.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

5

6

7

8

269.    The misrepresentations, nondisclosure, and/or concealment of material facts made by Apple to Plaintiffs and the Class Members, as set forth above, were known, or through reasonable care should have been known, by Apple to be false and material and were intended to mislead Plaintiffs and the Class Members.

9

10

11

270.    Plaintiffs and the Class Members were actually misled and deceived and were induced by Defendant to purchase the iPhones which they would not otherwise have purchased, or would have paid substantially less for.

12

13

14

15

16

17

18

19

271.    Plaintiffs and the other Class members have suffered an injury in fact, including the loss of money or property, as a result of Defendant's unfair, unlawful, and/or deceptive practices. In purchasing their iPhones, Plaintiffs and the other Class members relied on the misrepresentations and/or omissions of Defendant with respect to the reliability of the iPhones. Defendant's representations were untrue because the iPhones were manufactured and sold with the Touchscreen Defect. Had Plaintiffs and the other Class members known this, they would not have purchased their iPhones and/or paid as much for them. Accordingly, Plaintiffs and the other Class members overpaid for their iPhones and did not receive the benefit of their bargain.

20

21

272.    As a result of the conduct of Apple, Plaintiffs and the Class Members have been damaged in an amount to be determined at trial.

22

23

## SIXTEENTH CLAIM FOR RELIEF
### NEGLIGENT MISREPRESENTATION
**(By All Plaintiffs on Behalf of the Nationwide Class or, Alternatively, the State Sub-Classes)**

24

25

273.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

26

27

274.    Apple had a duty to provide honest and accurate information to its customers so that customers could make informed decisions on the substantial purchase of a smartphone.

28

-58-

275.     Apple specifically and expressly misrepresented material facts to Plaintiffs and Class Members, as discussed above.

276.     Apple knew, or in the exercise of reasonable diligence, should have known, that the ordinary and reasonable consumer would be misled by Apple's misleading and deceptive advertisements.

277.     Plaintiffs and the Class Members justifiably relied on Apple's misrepresentations and have been damaged thereby in an amount to be determined at trial.

## SEVENTEENTH CLAIM FOR RELIEF
### UNJUST ENRICHMENT
**(By All Plaintiffs on Behalf of the Nationwide Class or, Alternatively, the State Sub-Classes)**

278.     Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

279.     Plaintiffs and the Class Members conferred a benefit on Apple by purchasing the iPhones.

280.     Apple had knowledge that this benefit was conferred upon it.

281.     Because of its wrongful acts and omissions, Apple charged a higher price for the iPhones than the iPhones' true value and Apple obtained money which rightfully belongs to Plaintiffs and the Class Members.

282.     Defendant has been unjustly enriched at the expense of Plaintiffs and the Class and its retention of this benefit under the circumstances would be inequitable.

283.     Plaintiffs seek an order requiring Defendant to make restitution to them and the other members of the Class.

## EIGHTEENTH CLAIM FOR RELIEF
### BREACH OF EXPRESS WARRANTY
**(By All Plaintiffs on Behalf of the Nationwide Class or, Alternatively, the State Sub-Classes)**

284.     Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

285.     Apple provided Plaintiffs and the Class Members with the following express warranty: "Apple Inc. of One Infinite Loop, Cupertino, California, U.S.A. 95014 ("Apple") warrants the Apple-branded iPhone, iPad, iPod or Apple TV hardware product and the Apple-branded accessories contained

-59-

in the original packaging ("Apple Product") against defects in materials and workmanship when used normally in accordance with Apple's published guidelines for a period of ONE (1) YEAR from the date of original retail purchase by the end-user purchaser ("Warranty Period"). Apple's published guidelines include but are not limited to information contained in technical specifications, user manuals and service communications."

286.   The above express warranty became part of the basis of the bargain between Plaintiffs and the Class Members and Apple.

287.   Plaintiffs and the Class Members presented their iPhones for repairs after the Touchscreen Defect manifested. Apple, however, declined to remedy the Touchscreen Defects in Plaintiffs' and the Class Members' iPhones and thereby breached its express warranties with Plaintiffs and the Class Members.

288.   Plaintiffs and the Class Members notified Apple of the breaches within a reasonable time, and/or were not required to do so because affording Apple a reasonable opportunity to cure its breach of written warranty would have been futile. Apple also knew of the defect and yet has chosen to conceal it and fail to comply with its warranty obligations.

289.   The Touchscreen Defect is a defect as defined by Apple's express warranty.

290.   As a direct and proximate cause of Apple's breach, Plaintiffs and the Class Members bought iPhones that they otherwise would not have, overpaid for their iPhones, did not receive the benefit of their bargain, and their iPhones suffered a diminution in value. Plaintiffs and the Class Members have also incurred and will continue to incur costs for replacement iPhones and unnecessary iPhone screen replacements.

291.   As alleged above, the terms of Apple's express warranty are both substantively and procedurally unconscionable. Apple's attempt to disclaim or limit these express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, Apple's warranty limitation is unenforceable because it knowingly sold a defective product without informing consumers about the defect.

292.   The time limits contained in Apple's warranty period were also unconscionable and inadequate to protect Plaintiffs and the Class Members. Among other things, Plaintiffs and Class

Members had no meaningful choice in determining these time limitations the terms of which unreasonably favored Apple. A gross disparity in bargaining power existed between Apple and Plaintiffs and the Class Members, and Apple knew or should have known that the iPhones were defective at the time of sale and would fail well before their useful lives.

293.     Plaintiffs and Class Members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Apple's conduct described herein.

294.     Plaintiffs and the Class Members are entitled to legal and equitable relief against Apple, including damages, consequential damages, specific performance, attorney fees, costs of suit, and other relief as appropriate.

## NINETEENTH CLAIM FOR RELIEF
### BREACH OF IMPLIED WARRANTY
**(On Behalf of the Nationwide Class or, Alternatively, the State Sub-Classes)**

295.     Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

296.     Apple provided Plaintiffs and the Class Members with an implied warranty that the iPhones and any parts thereof are merchantable and fit for the ordinary purposes for which they were sold. However, the iPhones are not fit for their ordinary purpose as smartphones because they suffer from the Touchscreen Defect described herein. As such, the iPhones were incapable of making and receiving phone calls, text messages, facilitating internet usage, and allowing the usage of apps.

297.     Apple impliedly warranted that the iPhones were of merchantable quality and fit for such use. This implied warranty included, among other things, a warranty that the iPhones and their touchscreens manufactured, supplied, distributed, and/or sold by Apple were reliable and would not experience premature failure when consumers used them in a reasonable and foreseeable manner.

298.     Contrary to the applicable implied warranties, the iPhones at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and the Class Members with reliable smartphones.

299.     Apple's actions, as complained of herein, breached the implied warranty that the iPhones were of merchantable quality and fit for such use.

1
2

**TWENTIETH CLAIM FOR RELIEF**
**VIOLATIONS OF THE MAGNUSON-MOSS WARRANTY ACT**
**(By All Plaintiffs on Behalf of the Nationwide Class or, Alternatively, the State Sub-Classes)**

3        300.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though
4    fully set forth herein.

5        301.    Congress enacted the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*., in response
6    to widespread consumer complaints regarding misleading and deceptive warranties. The Act imposes civil
7    liability on any "warrantor" for failing to comply with any obligation under written and implied warranties.
8    15 U.S.C. § 2310(d)(1).

9        302.    The iPhones are consumer products as defined by 15 U.S.C. § 2301(1).

10       303.    Plaintiffs and the Class Members are "consumers" as defined by 15 U.S.C. § 2301(3).

11       304.    Apple is a warrantor and supplier as defined by 15 U.S.C. § 2301(4) and (5).

12       305.    Apple has failed to remedy the Touchscreen Defect, despite Apple's knowledge and notice
13   of the Touchscreen Defect in the iPhones.

14       306.    Apple expressly warranted the iPhones would be free of defects.

15       307.    At the time Apple issued written warranties for the iPhones, Apple knew and had notice
16   that the iPhones had the propensity to prematurely fail due to the Touchscreen Defect. Apple's
17   continued misrepresentations and omissions concerning the Touchscreen Defect, as well as Apple's
18   failure to abide by their own written and implied warranties, are "unfair methods of competition in or
19   affecting commerce, and [are] unfair or deceptive acts or practices in or affecting commerce."
20   Accordingly, Apple's behavior is unlawful under 15 U.S.C. §§ 2310(b), 45(a)(1).

21       308.    Plaintiffs and the Class Members seek to recover damages caused as a direct result of
22   Apple's breach of their written and implied warranties and their deceitful and unlawful conduct.
23   Damages include costs associated with repairing or replacing the iPhones with non-defective iPhones or
24   other smartphones.

25       309.    The Act also provides for "other legal and equitable" relief. 15 U.S.C. § 2310(d)(1).
26   Accordingly, Plaintiffs and the Class Members seek reformulation of Apple's written warranty to
27   comport with Apple's obligations under the Act and with consumers' reasonable expectations.

28

1  Additionally, Plaintiffs seek to enjoin Apple from acting unlawfully as further alleged, including

2  discouraging Plaintiffs to seek all available remedies.

3     310.   The Act also provides for an award of costs and expenses, including attorneys' fees, to

4  prevailing consumers in the Court's discretion. 15 U.S.C. § 2310(d)(2). Plaintiffs intend to seek such an

5  award as prevailing consumers at the conclusion of the case.

6                    **TWENTY-FIRST CLAIM FOR RELIEF**
                **VIOLATIONS OF THE SONG-BEVERLY CONSUMER WARRANTY ACT**
7                  **(By Plaintiff Cleary on Behalf of the California Class)**

8     311.   Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though

9  fully set forth herein.

10    312.   Plaintiff Cleary brings this claim on behalf of himself and on behalf of the California

11 Class Members against Apple.

12    313.   At all relevant times, Apple was the manufacturer, distributor, warrantor and/or seller of

13 the iPhones. Apple knew or should have known of the specific use for which the iPhones were

14 purchased.

15    314.   Apple provided Plaintiff Cleary and the California Class Members with an implied

16 warranty that the iPhones, and any parts thereof, are merchantable and fit for the ordinary purposes for

17 which they were sold. The iPhones, however, are not fit for their ordinary purpose because, *inter alia*,

18 the iPhones and their touchscreens suffered from an inherent defect at the time of sale that causes the

19 iPhone touchscreens to stop responding to user input. As such, the iPhones were incapable of making

20 and receiving phone calls, text messages, facilitating internet usage, and allowing the usage of apps.

21    315.   The iPhones are not fit for the purpose of use as smartphones because of the Touchscreen

22 Defect.

23    316.   Apple impliedly warranted that the iPhones were of merchantable quality and fit for such

24 use. This implied warranty included, *inter alia*, a warranty that the iPhones and their touchscreens were

25 manufactured, supplied, distributed, and/or sold by Apple were reliable for use as smartphones and

26 would not prematurely and fail.

27

28

-63-

1

2

### TWENTY-SECOND CLAIM FOR RELIEF
### VIOLATIONS OF THE UTAH CONSUMER SALES PRACTICES ACT
#### (By Plaintiff Petty on Behalf of the Utah Class)

3      317.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though

4    fully set forth herein.

5      318.    Plaintiff Petty brings this claim on behalf of himself and on behalf of the Utah Class

6    Members against Apple.

7      319.    Apple engaged in unfair and deceptive acts in violation of the Utah Consumer Sales

8    Practices Act ("UCSPA") by the practices described above, and by knowingly and intentionally

9    concealing from Plaintiffs and Class Members that the iPhones are defective. These acts and practices

10   violate, at a minimum, the following sections of the UCSPA: misrepresenting the source, sponsorship,

11   approval or certification of goods or services; representing that goods or services have sponsorships,

12   characteristics, uses, benefits or quantities which they do not have, or that a person has a sponsorship,

13   approval, status, affiliation or connection which he or she does not have; representing that goods or

14   services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if

15   they are of another; and advertising goods and services with the intent not to sell them as advertised.

16     320.    Apple's unfair or deceptive acts or practices occurred repeatedly in Apple's trade or

17   business and were capable of deceiving a substantial portion of the purchasing public.

18     321.    Apple knew, or should have known, that the iPhones were defective, prone to failing for

19   their essential purpose as phones, and would become useless as a result of reasonable and foreseeable

20   use by consumers.

21     322.    Apple was under a duty to Plaintiff Petty and the Class Members to disclose the defective

22   nature of the iPhones because:

23          a. Apple was in a superior position to know the true state of facts about the Touchscreen

24             Defect in the iPhones;

25          b. Plaintiff Petty and the Class Members could not reasonably have been expected to learn

26             or discover that the iPhones were defective and not in accordance with Apple's

27             advertisements and representations;

28

-64-

c. Apple knew that Plaintiff Petty and the Class Members could not reasonably have been expected to learn or discover the Touchscreen Defect in the iPhones; and

d. Defendant actively concealed and failed to disclose the Touchscreen Defect from Plaintiff Petty and the Class Members.

323.    In failing to disclose the Touchscreen Defect at the time of sale, Apple has knowingly and intentionally concealed material facts and breached its duty not to do so.

324.    The facts concealed or not disclosed by Apple to Plaintiff Petty and the Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether or not to purchase Apple's iPhones or pay a lesser price. Had Plaintiff Petty and the Class known about the Touchscreen Defect in the iPhones, they would not have purchased the iPhones or would have paid less for them.

325.    Plaintiff Petty's and the other Class Members' injuries were proximately caused by Apple's fraudulent and deceptive business practices.

326.    Therefore, Plaintiff Petty and the other Class members are entitled to equitable relief under the Utah Consumer Sales Practices Act.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and members of the various Classes, respectfully request that this Court:

a.    determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying one or more Classes as defined above;

b.    appoint Plaintiffs as the representative of the Class or Classes and their counsel as Class counsel;

c.    award all actual, general, special, incidental, statutory, punitive, and consequential damages and restitution to which Plaintiffs and the Class Members are entitled;

d.    award pre-judgment and post-judgment interest on such monetary relief;

e.    grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Apple to repair, recall, and/or replace the iPhones and to extend the applicable

-65-

Fourth Amended Class Action Complaint
Case No.:  5:16-cv-4942-LHK

1    warranties to a reasonable period of time, or, at a minimum, to provide Plaintiffs and Class Members

2    with appropriate curative notice regarding the existence and cause of the Touchscreen Defect;

3          f.        award reasonable attorneys' fees and costs; and

4          g.        grant such further relief that this Court deems appropriate.

5    DATED:  January 3, 2018.                    MCCUNE WRIGHT AREVALO, LLP

6                                         BY:    /s/ Richard D. McCune
                                                 Richard D. McCune
7                                                State Bar No. 132124
                                                 rdm@mccunewright.com
8                                                David C. Wright
                                                 State Bar No. 177468
9                                                dcw@mccunewright.com
                                                 3281 East Guasti Road, Suite 100
10                                               Ontario, California 91761
                                                 Telephone: (909) 557-1250
11                                               Facsimile: (909) 557-1275

12                                               MCCUNE WRIGHT AREVALO, LLP
                                                 Joseph G. Sauder
13                                               Matthew D. Schelkopf
                                                 Joseph B. Kenney
14                                               555 Lancaster Avenue
                                                 Berwyn, PA 19312
15                                               Telephone: (610) 200-0580

16                                               Stephen G. Larson
                                                 slarson@larsonobrienlaw.com
17                                               Robert C. O'Brien
                                                 robrien@larsonobrienlaw.com
18                                               LARSON O'BRIEN LLP
                                                 555 S Flower St #4400
19                                               Los Angeles, CA  90071
                                                 Telephone: (213) 436-4888
20                                               Facsimile: (213) 623-2000

21                                               Mitchell M. Breit*
                                                 mbreit@simmonsfirm.com
22                                               SIMMONS HANLY CONROY
                                                 112 Madison Avenue
23                                               New York, NY 10016
                                                 Telephone: (212) 784-6400
24                                               Facsimile: (212) 213-5949

25                                               Greg Coleman*
                                                 greg@gregcolemanlaw.com
26                                               GREG COLEMAN LAW
                                                 First Tennessee Plaza
27                                               800 S. Gay Street, Suite 1100
                                                 Knoxville, TN 37929
28                                               Telephone: (865) 247-0080

-66-

Fourth Amended Class Action Complaint
Case No.:  5:16-cv-4942-LHK

Facsimile: (865) 522-0049)

Bruce D. Greenberg
**LITE DEPALMA GREENBERG LLC**
570 Broad Street, Suite 1201
Newark, NJ 07102
Phone (973) 623-3000
Email: bgreenberg@litedepalma.com


Attorneys for Plaintiffs and the Putative Class

*Pro Hac Vice Applications to be submitted*

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

DATED:  January 3, 2018.                   MCCUNE WRIGHT AREVALO, LLP

BY:     */s/ Richard D. McCune*
        Richard D. McCune
        rdm@mccunewright.com
        3281 East Guasti Road, Suite 100
        Ontario, California 91761
        Telephone: (909) 557-1250
        Facsimile: (909) 557-1275

-67-