1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

THOMAS DAVIDSON, et al.,

          Plaintiffs,

   v.

APPLE, INC.,

          Defendant.

Case No. 16-CV-04942-LHK

**ORDER DENYING MOTION FOR
CLASS CERTIFICATION**

Re: Dkt. No. 174

Plaintiffs bring this putative class action against Defendant Apple, Inc. ("Apple"), based on Apple's alleged failure to disclose defects with the iPhone 6 and iPhone 6 Plus. Before the Court is Plaintiffs' motion for class certification. Having considered the submissions of the parties, the relevant law, and the record in this case, the Court DENIES Plaintiffs' motion for class certification.

## I.      BACKGROUND

### A. Factual Background

Apple is the designer, manufacturer, marketer, and seller of the iPhone smartphone. ECF No. 172 ¶ 25 (Fourth Amended Class Action Complaint, or "FACC"). The iPhone utilizes a touchscreen for users to interact with the device, and use of the touchscreen is required to send text

messages, capture video, browse the internet, and access applications, among other functions. *Id.* ¶¶ 26, 28. Apple released the iPhone 6 and iPhone 6 Plus on September 19, 2014. *Id.* ¶ 25. The iPhone 6 and 6 Plus both have a larger touchscreen than Apple's prior iPhone models. *Id.* ¶ 30. Purchasers of the iPhone 6 and iPhone 6 Plus had 14 days after purchase to return their iPhones for a full refund. ECF No. 54-2.

According to Plaintiffs, the iPhone 6 and 6 Plus "suffer from a material manufacturing defect that causes the touchscreen to become unresponsive to users' touch inputs" (hereinafter, the "touchscreen defect"). *Id.* ¶ 43. Plaintiffs allege that the touchscreen defect is caused by a defect in the iPhone's external casing. *Id.* ¶ 45. Specifically, "the touchscreen function fails because the phones' external aluminum casing, whose primary purpose is to protect the sensitive internal components from strain, is insufficient to prevent the phones from bending during normal use." Mot. at 4. This bending causes two main forms of damage to the iPhone's circuits: "trace cracks … and/or solder ball cracks, both of which negatively affect the flow of electricity." *Id.* Specifically, the damage interrupts the flow of electricity within circuits, thereby preventing the iPhone from recognizing when a user is touching the screen. *Id.* The problem is at first intermittent, but becomes permanent as time passes and the trace and solder ball cracks worsen. Eventually, the touchscreen defect "causes the touchscreen to completely fail to respond to user inputs." *Id.* at 7.

Plaintiffs allege that Apple knew about the touchscreen defect before releasing the iPhone 6 and iPhone 6 Plus on September 19, 2014. A consumer posted on Apple's website about "iPhone 6 touchscreen problems" on September 18, 2014, which is the day before the iPhone 6 and 6 Plus were released to the public. *Id.* ¶ 54; *see also id.* ¶¶ 66–69 (other consumer complaints from shortly after the release date). Moreover, Apple's internal testing "determined that the iPhone 6 was 3.3 times more likely to bend than the iPhone 5s (the model immediately prior to the subject iPhones) and that the iPhone 6 Plus was 7.2 times more likely to bend than the iPhone 5s." Mot. at 8. Underscoring the point, one of the major concerns Apple identified prior to launching the iPhones was that they were "likely to bend more easily when compared to previous generations,"

something that Apple described as "expected behavior." ECF No. 173-18 at 15.

Plaintiffs allege that within days of the iPhones' release on September 19, 2014, "there were widespread consumer complaints about the iPhones bending." Mot. at 8. Plaintiffs state that Apple then publicly denied that there was a bending problem, an incident the media termed "BendGate." FACC ¶ 54; Mot. at 8. Specifically, Apple stated:

> Our iPhones are designed, engineered, and manufactured to be both beautiful and sturdy. iPhone 6 and iPhone 6 Plus feature a precision engineered unibody enclosure constructed from machining a custom grade of 6000 series anodized aluminum, which is tempered for extra strength. They also feature stainless steel and titanium inserts to reinforce high stress locations and use the strongest glass in the smartphone industry. We chose these high-quality materials and construction very carefully for their strength and durability. We also perform rigorous tests throughout the entire development cycle including 3-point bending, pressure point cycling, sit, torsion, and user studies. iPhone 6 and 6 Plus meet or exceed all of our high quality standards to endure everyday, real life use.

> With normal use a bend in iPhone [*sic*] is extremely rare and through our first six days of sale, a total of nine customers have contacted Apple with a bent iPhone 6 Plus. As with any Apple product, if you have questions please contact Apple.

FACC ¶ 79.

After internal investigation, Apple determined underfill was necessary to resolve the problems caused by the touchscreen defect. As Plaintiffs explain, "[u]nderfill is a bead of epoxy encapsulant that is placed on a circuit chip to reinforce its attachment to the board substrate and to stiffen the surrounding assembly. … Underfill is used to prevent the manifestation of chip defects induced by bending because it reinforces the connections and prevents them from bending away from the substrate." Mot. at 11 (internal citations omitted). Apple had used underfill on the preceding iPhone generation but did not start using it on the Meson (U2402) chip in the iPhone 6 and iPhone 6 Plus until May 2016. *Id.*

On November 18, 2016, Apple announced a customer service program related to the touchscreen defect called the "Multi-Touch Repair Program." *Id.* ¶ 119. Prior to the Multi-Touch Repair Program, Apple charged approximately $349 for a refurbished iPhone when a consumer complained of the touchscreen defect outside of Apple's warranty. *Id.* Through Apple's Multi-

United States District Court
Northern District of California

Touch Repair Program, Apple has offered to repair consumers' devices for $149 if the consumers' iPhone is otherwise working, and the screen is not broken. *Id.* Through the program, Apple also offers to reimburse consumers for amounts previously paid over $149. *Id.* ¶ 120.

Plaintiffs allege that Apple did not disclose the existence of the defect despite having exposing consumers to a number of materials in which Apple could have disclosed the defect. Plaintiffs note that each new iPhone 6 and iPhone 6 Plus came in an identical box designed by Apple that contained various disclosures and advertisements about the iPhones' capabilities. *See* ECF No. 173-22 at 4–7. Inside the iPhone box, Apple included two documents that made additional representations about the iPhone. Mot. at 10. Apple also requires users to navigate through an iPhone setup process before the iPhone can be used, and periodically releases updates to the iPhones' software. ECF No. 174-4; Mot. at 10, 22. However, Apple did not disclose the defect in any of these materials.

Each named Plaintiff experienced the touchscreen defect after purchasing their iPhone. Below is a chart summarizing the relevant details of the six named Plaintiffs whose claims are at issue in the instant motion for class certification. Mot. at 16–17.

| Name | State | Date of Purchase | Defect Presented to Apple |
|---|---|---|---|
| Eric Siegal | Illinois | December 18, 2015 | September 2016 |
| John Borzymowski | Florida | September 25, 2014 | May 2016 |
| Taylor Brown | Texas | November 11, 2014 | April 2016 |
| Justin Bauer | Colorado | March 11, 2015 | November 2015 |
| Matt Muilenberg | Washington | February 28, 2015 | October 2016 |
| William Bon | Washington | January 13, 2015 | August 2016 |

**B. Procedural History**

On August 27, 2016, Plaintiffs Thomas Davison, Jun Bai, and Todd Cleary filed a putative class action complaint against Apple that alleged causes of action under (1) California's Consumer

Legal Remedies Act, Cal. Civ. Code § 1750; (2) Unfair Competition Law, Cal Bus. & Prof. Code § 17200; (3) False Advertisement Law ("FAL"), Cal. Bus. & Prof. Code § 17500; (4) common law fraud; (5) negligent misrepresentation; (6) unjust enrichment; (7) breach of implied warranty; (8) violation of the Magnusson-Moss Warranty Act ("Magnusson-Moss Act"), 15 U.S.C. § 2301; and (9) violation of the Song-Beverly Consumer Warranty Act ("Song-Beverly Act"), Cal. Civ. Code § 17290. *See* ECF No. 1.

On October 7, 2016, Plaintiffs filed a First Amended Class Action Complaint that added several named Plaintiffs and added causes of action under the consumer fraud statutes of Illinois, New Jersey, Florida, Connecticut, Texas, Colorado, Michigan, New York, and Washington. *See* ECF No. 20. On December 2, 2016, Plaintiffs filed a Second Amended Class Action Complaint ("SACC"), which added a Utah Plaintiff and a cause of action under Utah's consumer fraud statute. Plaintiffs sought to represent a Nationwide Class of "All persons or entities in the United States that purchased an Apple iPhone 6 or 6 Plus." Alternatively, Plaintiffs sought to represent state sub-classes. *Id.*

Given the breadth of the Plaintiffs' action, the parties agreed at the November 30, 2016 initial case management conference to each select 5 causes of action—for a total of 10 causes of action—to litigate through summary judgment. *See* ECF No. 44. On December 5, 2016, the parties selected (1) New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. § 56:8-1; (2) Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201; (3) Washington Consumer Protection Act ("WCPA"), Wash. Rev. Code § 19.86.010; (4) Illinois Consumer Fraud and Deceptive Trade Practices Act ("ICFDTPA"), Ill. Comp. Stat ¶ 505; (5) Texas Deceptive Trade Practices Act ("TDTPA"), Tex. Bus. & Com. Code ¶ 17.41; (6) Colorado Consumer Protection Act ("CCPA"), Colo. Rev. Stat. § 6-1-105; (7) common law fraud; (8) breach of express warranty; (9) breach of implied warranty; (10) Magnusson-Moss Act. *See* ECF No. 44, at 1–2. The parties did not select any California statutory claims. *See id.*

On January 6, 2017, Apple filed a motion to dismiss the SACC. ECF No. 54. On February 3, 2017, Plaintiffs filed an opposition. ECF No. 58. On February 17, 2017, Apple filed a reply.

ECF No. 64.

On March 14, 2017, the Court dismissed all 10 of the selected claims with leave to amend. *See* ECF No. 84; *Davidson v. Apple, Inc.*, 2017 WL 976048 (N.D. Cal. Mar. 14, 2017) ("*Davidson I*"). The Court found that Plaintiffs had adequately alleged Article III standing to bring fraud claims. *Id.* at *5. However, the Court concluded Plaintiffs had not adequately alleged standing to seek an injunction. *Id.* at *6–7. The Court thus granted Apple's motion to dismiss to the extent that Plaintiffs sought injunctive relief.

The Court next dismissed Plaintiffs' fraud claims because Plaintiffs failed to satisfy Rule 9(b)'s heightened pleading requirements. First, Plaintiffs' fraud claims premised on an affirmative misrepresentation theory were not pleaded with sufficient particularity because Plaintiffs did not allege any affirmative statement to which Plaintiffs were exposed or reviewed. *Id.* at *8. Second, with regards to Plaintiffs' claims premised on a fraudulent omission theory, the Court held that Plaintiffs had failed to plead with particularity any fraud claim premised on fraudulent omissions because Plaintiffs had failed to plead "that they reviewed or were exposed to *any* information, advertisements, labeling, or packaging by Defendant," and thus Plaintiffs had failed to plead that they encountered or were exposed to any material through which Apple could have made a fraudulent omission. *Id.* Accordingly, the Court granted Apple's motion to dismiss Plaintiffs' claims for fraud under the NJCFA, FDUTPA, WCPA, ICFDTPA, TDTPA, CCPA, and common law. *Id.* at *10.

Finally, the Court applied California law to Plaintiffs' warranty claims because the parties briefed only California law. *Id.* The Court held that, with regards to Plaintiffs' breach of express warranty claim, Plaintiffs had failed to state a claim because Plaintiffs alleged only a defect in the iPhone's design, and Apple's express warranty did not cover defects in design. *Id.* Moreover, the Court held that all but two Plaintiffs had failed to allege that the touchscreen defect manifested within Apple's one-year warranty period. *Id.* at *12. The Court rejected Plaintiffs' argument that Apple's one-year duration provision was unconscionable. *Id.* The Court also rejected Plaintiffs' limited warranty claim under California law because Apple had properly disclaimed limited

1    warranties and the disclaimer was not unconscionable. *Id.* The Court also dismissed Plaintiffs'

2    Magnusson-Moss Act claim, which was dependent on Plaintiffs' other warranty claims. *Id.*

3         Thus, the Court dismissed all 10 selected causes of action with leave to amend and ordered

4    the parties to specify which states' law applied to the common law causes of action. *Id.* On March

5    21, 2017, in response to this Court's order, Plaintiffs elected to litigate their common law breach

6    of warranty claims under Illinois law and Apple elected to litigate its common law fraud claim

7    under Pennsylvania law. ECF No. 85.

8         On April 4, 2017, Plaintiffs filed the Third Amended Class Action Complaint ("TACC").

9    ECF No. 86. Plaintiffs alleged in the TACC that, prior to their iPhone purchases, Plaintiffs viewed

10   a variety of information from Apple, such as Apple's press releases about the iPhone, Apple's

11   keynote address about the iPhone, and television commercials about the iPhone. *See id.* ¶¶ 8–20.

12   Immediately after their purchase—and within the time window for returning their iPhone free of

13   charge—Plaintiffs reviewed the iPhone box and information within the box. *See id.* ¶¶ 8–20.

14   Further, either prior to their purchase or within the time window in which they could have returned

15   their iPhones free of charge, all Plaintiffs viewed Apple's September 25, 2014 "BendGate"

16   statement. *See id.*

17        On April 18, 2017, Apple moved to dismiss the TACC. *See* ECF No. 87. On May 16,

18   2017, Plaintiffs filed an opposition. ECF No. 93. On June 6, 2017, Apple filed a reply. ECF No.

19   97.

20        On July 25, 2017, the Court granted in part and denied in part Apple's motion to dismiss.

21   *See* ECF No. 103; *Davidson v. Apple, Inc.*, 2017 WL 3149305 (N.D. Cal. July 25, 2017)

22   ("*Davidson II*"). To start, the Court found that some Plaintiffs lacked standing to seek injunctive

23   relief enjoining Apple's allegedly fraudulent misrepresentations and omissions about the iPhones

24   because they did not intend to buy a new phone or participate in Apple's Multi-Touch Repair

25   Program. *Id.* at *7–8. Conversely, other Plaintiffs did have standing to seek injunctive relief

26   because they intended to participate in the Multi-Touch Repair Program, or were at least willing to

27   consider doing so. *Id.* at *8–9.

28

7

The Court then turned to Plaintiffs' fraud claims. First, the Court dismissed Plaintiffs' fraud claims based on affirmative misrepresentations "because Plaintiffs have failed to identify an actionable misrepresentation in the September 25, 2014 statement—and because this statement is the only statement that forms the basis of Plaintiffs' affirmative misrepresentation claims." *Id.* at *13. Second, the Court declined to dismiss Plaintiffs' fraud claims based on an omission theory because "Plaintiffs have sufficiently alleged the information about the iPhone to which Plaintiffs were exposed either prior to their purchase or immediately after their purchase and within the time window in which they could have returned their iPhone for a full refund." *Id.* at *14. The Court also found that Plaintiffs had adequately alleged that Apple knew of the touchscreen defect at the time of the Plaintiffs' purchases. *See id.* at *14–15.

The Court next dismissed Plaintiffs' claims under the NJCFA and Pennsylvania common law fraud with prejudice. Plaintiffs' NJCFA claim failed because the only New Jersey Plaintiff experienced the touchscreen defect after the expiration of Apple's one year limited warranty period, and New Jersey law provides that "[a] defendant cannot be found to have violated the CFA when it provided a part—alleged to be substandard—that outperforms the warranty provided." *Perkins v. DaimlerChrysler Corp.*, 890 A.2d 997, 1004 (N.J. App. Div. 2006). The Court dismissed Plaintiffs' claim for common law fraud under Pennsylvania because it was barred by the economic loss doctrine, which bars a plaintiff "from recovering in tort economic losses to which their entitlement flows only from a contract." *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 670 (3d Cir. 2002).

Finally, the Court dismissed Plaintiffs' breach of express and implied warranty claims under Illinois law with prejudice. After finding that the limited warranty was not unconscionable, the Court dismissed the breach of express warranty claim because the limited warranty excluded design defects, and Plaintiffs alleged only a design defect. *Davidson II*, 2017 WL 3149305 at *24. Similarly, the Court dismissed the breach of implied warranty claim because the limited warranty was not unconscionable and it expressly disclaimed an implied warranty. *Id.* at *26. The Court also dismissed Plaintiffs' claim under California's Magnusson-Moss Act because the parties did

8

not dispute that the claim rose or fell with Plaintiffs' express and implied warranty claims under

state law. *Id.*

Thus, five causes of action (all premised on a fraudulent omissions theory) survived

Apple's motion to dismiss the TACC: (1) a Colorado Consumer Protection Act ("CCPA") claim;

(2) a Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") claim; (2) an Illinois

Consumer Fraud and Deceptive Trade Practices Act ("ICFDTPA") claim; (3) Texas Deceptive

Trade Practices Act ("TDTPA") claim; and (4) a Washington Consumer Protection Act

("WCPA") claim. These claims are now at issue in the instant motion for class certification.

On December 21, 2017, the Court granted the parties' stipulation to file a Fourth Amended

Class Action Complaint ("FACC"). ECF No. 169. The FACC was materially identical to the Third

Amended Class Complaint save for the substitution of Plaintiff Eric Siegal, an Illinois resident, for

Adam Benelhachem, the previous Illinois Plaintiff. *See* FACC. On January 3, 2018, Plaintiffs filed

the FACC. ECF No. 172. On January 17, 2018, Apple filed its Answer to the FACC. ECF No.

177.

On January 5, 2018, Plaintiffs filed the instant motion for class certification. ECF No. 174

("Mot."). Plaintiffs seek to certify the following proposed class:

- Any person residing in Colorado, Florida, Illinois, Washington, or Texas who purchased an Apple iPhone 6 or iPhone 6 Plus from Apple or an Apple Authorized Service Provider (listed on https://locate.apple.com/) that was manufactured without underfill under the U2402 (Meson) integrated circuit chip.

*Id.* at 3.[1] Plaintiffs argue in the alternative that the Court should certify subclasses to account for

differences between the states' laws. *Id.* at 23 n. 13; TACC ¶ 129 ("In the alternative, Plaintiffs

seek to represent the following state sub-classes."). On February 10, 2018, Apple filed its

opposition. ECF No. 183 ("Opp."). On March 2, 2018, Plaintiffs filed their reply. ECF No. 199

("Reply").[2]

---

[1] Plaintiff excludes from the class "governmental entities, Apple and its affiliates, subsidiaries, employees, current and former officers, director, agents, representatives, and members of this Court and its staff." Mot. at 3.

[2] Apple has also filed a motion to exclude Plaintiffs' expert reports and testimony. ECF No. 187. That motion is set for hearing on July 26, 2018.

United States District Court
Northern District of California

## II.    LEGAL STANDARD

Class actions are governed by Rule 23 of the Federal Rules of Civil Procedure. Rule 23 does not set forth a mere pleading standard. To obtain class certification, plaintiffs bear the burden of showing that they have met each of the four requirements of Rule 23(a) and at least one subsection of Rule 23(b). *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186, *amended by* 273 F.3d 1266 (9th Cir. 2001). "A party seeking class certification must affirmatively demonstrate . . . compliance with the Rule[.]" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Rule 23(a) provides that a district court may certify a class only if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). That is, the class must satisfy the requirements of numerosity, commonality, typicality, and adequacy of representation to maintain a class action. *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012).

If all four prerequisites of Rule 23(a) are satisfied, the Court must also find that the plaintiff "satisf[ies] through evidentiary proof" at least one of the three subsections of Rule 23(b). *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). The Court can certify a Rule 23(b)(1) class when plaintiffs make a showing that there would be a risk of substantial prejudice or inconsistent adjudications if there were separate adjudications. Fed. R. Civ. P. 23(b)(1). The Court can certify a Rule 23(b)(2) class if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Finally, the Court can certify a Rule 23(b)(3) class if the Court finds that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"[A] court's class-certification analysis must be 'rigorous' and may 'entail some overlap

Case No. 16-CV-04942-LHK
ORDER DENYING MOTION FOR CLASS CERTIFICATION

with the merits of the plaintiff's underlying claim[.]" *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 465–66 (2013) (quoting *Dukes*, 564 U.S. at 351); *see also Mazza*, 666 F.3d at 588 ("'Before certifying a class, the trial court must conduct a 'rigorous analysis' to determine whether the party seeking certification has met the prerequisites of Rule 23.'" (quoting *Zinser*, 253 F.3d at 1186)). This "rigorous" analysis applies to both Rule 23(a) and Rule 23(b). *Comcast*, 569 U.S. at 34 (stating that Congress included "addition[al] . . . procedural safeguards for (b)(3) class members beyond those provided for (b)(1) or (b)(2) class members (e.g., an opportunity to opt out)" and that a court has a "duty to take a 'close look' at whether common questions predominate over individual ones").

Nevertheless, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen*, 568 U.S. at 466. "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id*. If a court concludes that the moving party has met its burden of proof, then the court has broad discretion to certify the class. *Zinser*, 253 F.3d at 1186.

## III.    DISCUSSION

Apple opposes Plaintiffs' motion for class certification on nearly every front. Apple first advances a threshold argument that Plaintiffs lack standing, and then challenges whether Plaintiffs have satisfied the typicality, adequacy, and commonality requirements of Rule 23(a). Apple then contends that Plaintiffs have failed to establish Rule 23(b)(3) predominance and superiority, focusing in particular on class members' exposure to the alleged omissions, reliance on them, and flaws in Plaintiffs' damages model. Finally, Apple argues that Plaintiffs have waived their request for injunctive relief, and that the Court should deny Plaintiffs' attempt to certify a class under Rule 23(c)(4).

The Court rejects Apple's standing argument. The Court then explains why Plaintiffs' Colorado claim is categorically barred. The Court then finds that Plaintiffs' remaining claims under Florida, Illinois, Washington, and Texas law satisfy Rule 23(a), but that Plaintiffs' claims

United States District Court
Northern District of California

fail to satisfy Rule 23(b)(3). The Court subsequently denies Plaintiffs' request for injunctive relief, and denies certification under Rule 23(c)(4).[3] The Court begins with standing.

### A. Standing

"[A] suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit." *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004). In order to have standing under Article III, "a plaintiff must show (1) it has suffered an "injury in fact" that is [ ] concrete and particularized and [ ] actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000); *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (same). In class actions, "standing is satisfied if at least one named plaintiff meets the requirements." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (citation omitted); *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013 (9th Cir. 2011) ("[O]ur law keys on the representative party, not all of the class members, and has done so for many years.").

Apple challenges Plaintiffs' standing on three grounds. First, Apple contends that Plaintiffs lack standing to assert claims based on the iPhone 6 because no class representative purchased an iPhone 6. Second, Apple contends that class representative Eric Siegal lacks standing to represent the Illinois class because Siegal did not buy his iPhone. Third, Apple argues that class certification is prohibited because the class would contain members who lack standing. The Court examines each of Apple's arguments in turn, and finds that none are persuasive.

#### 1. Class Representative Standing

"[T]here is no controlling authority in the Ninth Circuit on the issue of whether a named plaintiff in a class action has standing to assert claims based on products he or she did not

---

[3] Although the Court previously indicated it would conduct a choice-of-law analysis, doing so has since become unnecessary. *Davidson I*, 2017 WL 976048, at *10 n.3; *Davidson II*, 2017 WL 3149305, at *3 n.1. Plaintiff neither seeks to certify a nationwide class nor contends that California law should be applied classwide.

Case No. 16-CV-04942-LHK
ORDER DENYING MOTION FOR CLASS CERTIFICATION

purchase." *Shank v. Presidio Brands, Inc.*, 2018 WL 510169, at *6 (N.D. Cal. Jan. 23, 2018). However, "[t]he majority of the courts in this district and elsewhere in California reject the proposition that a plaintiff can not suffer injury in fact based on products that the plaintiff did not buy." *Coleman-Anacleto v. Samsung Elecs. Am., Inc.*, 2016 WL 4729302, at *9 (N.D. Cal. Sept. 12, 2016). Instead, "a Plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar." *Young v. Cree, Inc.*, 2018 WL 1710181, at *9 (N.D. Cal. Apr. 9, 2018) (quoting *Brown v. Hain Celestial Grp., Inc.*, 913 F. Supp. 2d 881, 890 (N.D. Cal. 2012)); *see also Astiana v. Dreyer's Grand Ice Cream, Inc.*, 2012 WL 2990766, at *11 (N.D. Cal. 2012) ("[T]he critical inquiry seems to be whether there is sufficient similarity between the products purchased and not purchased."). Both parties agree this is the correct standard. Opp. at 10; Reply at 10–11.

This Court has consistently applied the "substantially similar" approach when analyzing standing challenges. *See, e.g.*, *Coleman-Anacleto*, 2016 WL 4729302, at *10; *Philips v. Ford Motor Co.*, 2015 WL 4111448, at *6–7 (N.D. Cal. July 7, 2015) ("*Philips I*"); *Bruton v. Gerber Prods. Co.*, 2014 WL 172111, at *8 (N.D. Cal. Jan. 15, 2014); *Kane v. Chobani*, 2013 WL 5289253, at *10–11 (N.D. Cal. Sept. 19, 2013); *Brazil v. Dole Food Co.*, 2013 WL 5312418, at *7–8 (N.D. Cal. Sept. 23, 2013). As explained in the Court's prior orders, "in asserting claims based on products a plaintiff did not purchase, but which are nevertheless substantially similar to products a plaintiff did purchase, a plaintiff is not suing over an injury she did not suffer. Rather, a plaintiff in that scenario is suing over an injury she personally suffered and asserting that others who purchased similar products suffered substantially the same injury, even if the products that caused the injury were not identical in every respect." *Bruton*, 2014 WL 172111, at *8.

It is undisputed that the proposed class representatives all purchased an iPhone 6 Plus and that none purchased an iPhone 6. It follows that the class representatives can only assert claims based on the iPhone 6 if the iPhone 6 is substantially similar to the iPhone 6 Plus. Apple argues the two iPhones are not substantially similar because (1) the iPhone 6 Plus is larger (2) the iPhone

13

6 Plus has a slightly different internal configuration; (3) the iPhone 6 Plus has a higher defect rate. Opp. at 10.

The Court is unpersuaded. At bottom, Apple argues that small differences between the iPhones' size, configuration, and response to physical stress mean iPhone 6 and iPhone 6 Plus are not substantially similar. This Court rejected a similar argument less than a year ago, finding that "the iPhone 4 and iPhone 4S are 'substantially similar' products for purposes of the Article III standing analysis." *Grace v. Apple Inc.*, 2017 WL 3232464, at *9 (N.D. Cal. July 28, 2017); *see also Giuliano v. SanDisk Corp.*, 2014 WL 4685012, at *3 (N.D. Cal. Sept. 19, 2014) (finding plaintiff had standing to bring claims based on the purchase of different memory cards because the relevant "flash memory products are related" and because "the asserted injury to purchasers of both [products] is predicated on the same alleged wrongful conduct").

Strikingly similar arguments have also been raised and rejected in class actions alleging vehicle defects. Specifically, automakers have claimed that configuration differences between models (*e.g.* Ford Fusion and Ford Focus) mean that the different models are not substantially similar, even though the defect at issue is present across all the models. Courts, including this one, have rejected those claims and concluded that the different models are substantially similar. *See, e.g., Philips I*, 2015 WL 4111448, at *6–7; *Glenn v. Hyundai Motor Am.*, 2016 WL 3621280, at *15–16 (C.D. Cal. June 24, 2016); *Lohr v. Nissan N. Am., Inc.*, 2017 WL 1037555, at *4 (W.D. Wash. Mar. 17, 2017).

In sum, Plaintiffs have made a strong case as to why the iPhone 6 and iPhone 6 Plus are substantially similar, and the allegedly distinguishing features are little more than minor configuration and size differences. The Court therefore finds that the iPhone 6 and iPhone 6 Plus are substantially similar.

### 2. Eric Siegal

Apple next contends putative Illinois class representative Eric Siegal lacks standing because Siegal's employer—not Siegal—bought Siegal's iPhone 6 Plus. Mot. at 11. Put otherwise, because the injury alleged is overpayment for iPhones, Siegal lacks an injury because Siegal did

14

not actually pay for an iPhone. In turn, no Illinois class can be certified because the proposed class representative lacks standing. *Cornett v. Donovan*, 51 F.3d 894, 897 n.2 (9th Cir. 1995) ("[I]f the representative parties do not have standing, the class does not have standing."). Apple is correct on the law, but wrong on the facts. As Plaintiffs point out, the iPhone 6 Plus purchased by Siegal's employer failed due to the touchscreen defect, so Siegal personally purchased a second iPhone 6 Plus which immediately exhibited the touchscreen defect. ECF No. 199-8 at 9–11. Thus, Siegal has suffered the same harm as the Illinois class members he seeks to represent.

### 3. Class Member Standing

Finally, Apple argues that no class can be certified because the class would include members who lack standing. Apple's argument rests on the Ninth Circuit's statement in *Mazza* that "[n]o class may be certified that contains members lacking Article III standing." 666 F.3d at 594. Like many others, this Court has long noted that *Mazza*'s statement "appears to contradict the Ninth Circuit's prior decisions" in *Bates* and *Stearns*. *Moore v. Apple Inc.*, 309 F.R.D. 532, 541 (N.D. Cal. 2015); *see id.* (collecting cases). More precisely, "the *Bates* and *Stearns* courts' holdings that a single named plaintiff's standing can satisfy Article III standing for the class is at odds with a reading of *Mazza* that requires even absent class members to demonstrate Article III standing for jurisdictional purposes." *Id.*; *accord Ehret v. Uber Techs., Inc.*, 148 F. Supp. 3d 884, 903–04 (N.D. Cal. 2015) (discussing *Mazza* and reaching same conclusion).

Fortunately, the Ninth Circuit has since clarified that *Mazza*'s "statement taken in context signifies only that it must be possible that class members have suffered injury, not that they did suffer injury, or that they must prove such injury at the certification phase." *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1137 n.6 (9th Cir. 2016). Significantly, *Torres* cited both *Stearns* and *Bates*, underscoring the cases' continued vitality. *Id.* (citing *Stearns*, 655 F.3d at 1021; *Bates*, 511 F.3d at 985); *see also Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 865 (9th Cir. 2014) (post-*Mazza* decision citing *Bates* as good law).

Thus, "to the extent Defendant relies on *Mazza*'s statement as overruling the Ninth Circuit's prior decisions in *Bates* and *Stearns*, the Court concludes that Defendant's interpretation

Case No. 16-CV-04942-LHK
ORDER DENYING MOTION FOR CLASS CERTIFICATION

of *Mazza* is incorrect." *Moore*, 309 F.R.D. at 541. Instead, in line with *Bates*, *Stearns*, and *Mazza*, it is sufficient for jurisdictional purposes that "at least one named plaintiff must satisfy Article III standing." *Id.* at 542; *accord Ramirez v. Trans Union, LLC*, 2016 WL 6070490, at *5 (N.D. Cal. Oct. 17, 2016) (discussing *Mazza* and concluding that it did not overturn *Bates* and *Stearns*); *In re: Lenovo Adware Litig.*, 2016 WL 6277245, at *15 (N.D. Cal. Oct. 27, 2016) (citing *Torres* and finding the *Mazza* statement merely means that it must be possible that class members have suffered injury).[4] The Court has already concluded that all six named plaintiffs have standing. Thus, Apple's challenge fails.

### 4. Summary

In sum, the Court finds that (1) the iPhone 6 and iPhone 6 Plus are substantially similar, and hence that the class representatives may assert claims based on the iPhone 6; (2) Siegal has standing because he personally bought an iPhone 6 Plus that exhibited the touchscreen defect; and (3) the named plaintiffs' standing is enough to satisfy Article III.

### B. Colorado Consumer Protection Act

Apple contends that Plaintiffs' claim under the Colorado Consumer Protection Act ("CCPA") is barred because the CCPA bars class claims for money damages. Colo. Rev. Stat. § 6-1-113(2) (noting defendants are liable for damages "[e]xcept in a class action"); *In re Myford Touch Consumer Litig.*, 2016 WL 7734558, at *26 (N.D. Cal. Sept. 14, 2016) ("*Myford Touch I*") ("Colorado law prohibits class actions for monetary damages based on the Consumer Protection Act").

The United States Supreme Court has held that federal procedural rules trump state procedural rules in some circumstances. *See Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010). Federal courts engage in a two-step process to decide if they are facing such a circumstance. First, courts ask "whether the federal and state rules can be reconciled

---

[4] Indeed, the facts of *Mazza* underscore that the class has standing. The Ninth Circuit found that "[t]o the extent that class members were relieved of their money by Honda's deceptive conduct— as Plaintiffs allege—they have suffered an 'injury in fact.'" 666 F.3d at 595 (quoting *Stearns*, 655 at 1021).

16

(because they answer different questions) … ." *Id.* at 410. If the two rules cannot be reconciled, courts are to proceed to the second step. Unfortunately, the *Shady Grove* Court fractured over what the second inquiry should be. Subsequent decisions have determined that Justice Stevens's concurrence controls because it provides the narrowest ground for the holding. *See, e.g., Myford Touch I*, 2016 WL 7734558, at *26–27 (explaining why in further detail and providing examples); *Garman v. Campbell Cty. Sch. Dist. No. 1*, 630 F.3d 977, 983 n.6 (10th Cir. 2010) (finding Justice Stevens's concurrence controlling). The second step is therefore to determine whether the state statute (here, Colorado's CCPA class action bar) is "procedural in the ordinary use of the term but is so intertwined with a state right or remedy that it functions to define the scope of the state-created right." *Shady Grove*, 559 U.S. at 423 (Stevens, J., concurring).

The first step is relatively straightforward in this case. The CCPA class action bar "cannot be reconciled with Federal Rule of Civil Procedure 23. The former forbid[s] class actions, and the latter permits them." *Myford Touch I*, 2016 WL 7734558, at *26. The second step is more complex, but the Court is persuaded by the *Myford Touch I* analysis of the CCPA class action bar:

> Colorado's limitation on class actions is intertwined with the state right. First, Colorado's limitation on class actions appears in the substantive section of the code, rather than in court rules. *See In re Cty. of Orange*, 784 F.3d 520, 532 (9th Cir. 2015) (where rule regarding the right to a jury trial was contained in the California Constitution, it was substantive rather than procedural and not trumped by the Federal Rules); *United Food & Commercial Workers Local 1776 & Participating Employers Health & Welfare Fund v. Teikoku Pharma USA, Inc.*, 74 F. Supp. 3d 1052, 1084 (N.D. Cal. 2014) (where limitation on class actions was part of state substantive law, FRCP did not trump). Second, the limitation is part of the same paragraph which would otherwise make it possible for Plaintiffs to sue for damages. *See* Colo. Rev. Stat. Ann. § 6-1-113(2) ("Except in a class action ... any person who, in a private civil action, is found to have engaged in or caused another to engage in any deceptive trade practice listed in this article shall be liable...."). Where the limitation is "incorporated in the same statutory provision as the underlying right," courts find it substantive rather than procedural. *Local 1776*, 74 F. Supp. 3d at 1084. Finally, the limitation applies only to Colorado's Consumer Protection Act, suggesting it reflects a substantive policy judgment as to the area of the law by the legislature, not a rule of general procedure. *See id.*

*Id.* at *27; *accord Friedman v. Dollar Thrifty Auto. Grp., Inc.*, 2015 WL 8479746, at *2–5 (D. Colo. Dec. 10, 2015) (applying Justice Stevens's *Shady Grove* analysis and concluding "the class

action restriction in the CCPA is substantive … [and] [a]ccordingly the state statute controls rather than Fed. R. Civ. P. 23, and the class action restriction is enforceable").

Plaintiffs do not dispute that the CCPA contains a bar on class actions for damages. Instead, Plaintiffs note that (1) some Colorado courts have adjudicated motions for class certification without referring to the CCPA bar, and (2) at least one district court has found that the CCPA bar does not apply. *Friedman*, 2015 WL 8479746, at *5 (collecting cases that have ignored the CCPA bar); *Andren v. Alere, Inc.*, 2017 WL 6509550, at *21–22 (S.D. Cal. Dec. 20, 2017) (citing *In re Hydroxycut Mktg. & Sales Practices Litig.*, 299 F.R.D. 648, 653–54 (S.D. Cal. 2014)) (finding CCPA bar does not apply under *Shady Grove*).

This is unpersuasive. First, Plaintiffs point to no Colorado decision actually holding that the CCPA bar is inapplicable or explaining why the CCPA bar can be ignored. Absent such authority, the Court is not inclined to overlook the statute's plain language.

Second, the Court is not persuaded by *Andren*'s examination of the CCPA bar. *Myford Touch I* and *Friedman* considered the issue in more detail, and the Court finds their analyses more compelling. *Andren* also derives from the holding in *Hydroxycut* that "the only binding aspect of the splintered [*Shady Grove*] decision is its specific result." *Hydroxycut*, 299 F.R.D. at 653. Although other courts have agreed, *Hydroxycut*'s interpretation appears to be the minority view. *Wittman v. CB1, Inc.*, 2016 WL 3093427, at *5 (D. Mont. June 1, 2016) (collecting cases). *Hydroxycut* is also in tension with the Ninth Circuit's approving citation of Justice Stevens's *Shady Grove* concurrence in *Makaeff v. Trump University, LLC*, 736 F.3d 1180, 1187 n. 8 (9th Cir. 2013); *see also Garman*, 630 F.3d at 983 n.6 (expressly adopting Justice Stevens's *Shady Grove* opinion as controlling); *Godin v. Schencks*, 629 F.3d 79, 86–87 (1st Cir. 2010) (suggesting same). Given that the weight of authority seems to point towards *Myford Touch I* and *Friedman*, and given that *Andren* rests on a case adopting the minority view of Justice Stevens's concurrence, the Court will follow *Myford Touch I* and *Friedman* and hold that the CCPA bar applies here. *Cf. In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 975 (N.D. Cal. 2016) (noting when faced with two plausible interpretations of unsettled state law, federal courts generally opt for the

18

path that restricts liability rather than expands it). Thus, Plaintiffs' class claims for money

damages under the Colorado Consumer Protection Act ("CCPA") are barred.

The Court now turns to the heart of this case—whether Plaintiffs' remaining state law

claims satisfy the requirements of Rule 23(a) and Rule 23(b)(3)

## C. Rule 23(a) Requirements

Rule 23(a) provides that a district court may certify a class only if the class will satisfy the

requirements of numerosity, commonality, typicality, and adequacy of representation. *Mazza*, 666

F.3d at 588. The Court takes each requirement in turn.

### 1. Numerosity

Pursuant to Rule 23(a)(1), Plaintiffs must show that "the class is so numerous that joinder

of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Apple does not contest that the

numerosity requirement is met in the instant case. Additionally, Plaintiffs have produced evidence

that through the third quarter of 2017 Apple sales of iPhone 6 and iPhone 6 Plus units throughout

Colorado, Illinois, Washington, Texas, and Florida far exceeded 40. ECF No. 173-7; *see Twegbe*

*v. Pharmaca Integrative Pharmacy, Inc.*, 2013 WL 3802807, *3 (N.D. Cal. July 17, 2013) ("[T]he

numerosity requirement is usually satisfied where the class comprises 40 or more members.").[5]

### 2. Commonality

Rule 23(a)(2) states that "[o]ne or more members of a class may sue or be sued as

representative parties on behalf of all members only if ... there are questions of law or fact

common to the class." Fed. R. Civ. P. 23(a)(2). This requirement has "been construed

permissively, and all questions of fact and law need not be common to satisfy the rule." *Ellis v.*

*Costco Wholesale Corp.*, 657 F.3d 970, 986 (9th Cir. 2011) (internal quotation marks and

alteration omitted). Indeed, "for purposes of Rule 23(a)(2), even a single common question will

do." *Dukes*, 564 U.S. at 359 (alteration and quotation marks omitted); *Mazza*, 666 F.3d at 589

("[C]ommonality only requires a single significant question of law or fact."). Specifically,

---

[5] Even if Colorado and Texas residents are not considered, the sales in the remaining states
exceeded 40.

Case No. 16-CV-04942-LHK
ORDER DENYING MOTION FOR CLASS CERTIFICATION

Plaintiffs must demonstrate the existence of common questions and "the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Ellis*, 657 F.3d 986 (quotation marks omitted) (emphasis in original). Nevertheless, the "common contention need not be one that will be answered, on the merits, in favor of the class." *Alcantar v. Hobart Serv.*, 800 F.3d 1047, 1053 (9th Cir. 2015) (internal quotation marks omitted).

In their motion for class certification, Plaintiffs identify a number of issues that are common to the class, including whether Apple defectively designed the iPhones, whether Apple knew of the touchscreen defect, whether Apple had a duty to disclose the touchscreen defect, whether Apple concealed the defect, whether the touchscreen defect is the type of information a buyer would be expected to rely upon in deciding to purchase an iPhone, whether concealment was likely to deceive a reasonable consumer, and whether Apple is liable for punitive damages. Mot. at 15.

This Court has previously found that two of the issues Plaintiffs identify, "the existence of a defect and [Apple's] knowledge of the defect are enough to meet 'the relatively minimal showing required to establish commonality.'" *Philips v. Ford Motor Co.*, 2016 WL 7428810, at *7 (N.D. Cal. Dec. 22, 2016) (quoting *Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 537 (N.D. Cal. 2012)) ("*Philips II*"). That conclusion fully applies here, given that Apple vigorously disputes Plaintiffs' claim that the iPhones were defective and that Apple knew of the problem beforehand. Consequently, because "one or more [of these] questions yield common answers which can drive the litigation, commonality is satisfied." *Myford Touch I*, 2016 WL 7734558, at *9 (citing *Dukes*, 564 U.S. at 350).

### 3. Typicality

Under Rule 23(a)(3) a representative party must have claims or defenses that are "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendants' liability." *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010) (citations omitted). This requirement is "permissive and requires only that the

Case No. 16-CV-04942-LHK
ORDER DENYING MOTION FOR CLASS CERTIFICATION

representative's claims are reasonably co-extensive with those of the absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). "[C]lass certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citations omitted). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Id.*

Plaintiffs have established typicality. The class representatives, like the class as a whole, purchased an iPhone 6 or iPhone 6 Plus and subsequently encountered the touchscreen defect. Of course, the class representatives' touchscreen defect may not have manifested at exactly the same time as class members or in exactly the same way. However, this is unproblematic. "[D]istinctions about how the defects manifested... are irrelevant to Plaintiffs' theory of liability. … Plaintiffs' theory is that they were harmed at the point of purchase, and therefore each of the named Plaintiffs may have a valid claim 'regardless of the manifestation of the defect.'" *Philips II*, 2016 WL 7428810, at *11 (quoting *Wolin v. Jaguar Land Rover North America, LLC*, 617 F.3d 1168, 1174 (9th Cir. 2010)). Similarly, whether the defect manifested "at six months, nine months, or later goes to the extent of [class representatives'] damages and not whether [they] 'possess the same interest and suffered the same injury as the class members.'" *Wolin*, 617 F.3d at 1175 (quoting *E. Tex. Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)).

Apple's arguments to the contrary are unpersuasive. Apple contends that the class members are not typical because they bought the iPhone 6 Plus instead of the iPhone 6, and claims that Siegal did not pay for his iPhone 6 Plus at all. The Court has previously considered and rejected these claims in the standing context; they are no more persuasive here. *See Philips II*, 2016 WL 7428810, at *11 (finding that differences between Ford Focus and Ford Fusion vehicles do not defeat typicality because the Electronic Power Assisted Steering alleged to be defective was substantially similar in both vehicles). The Court therefore concludes that Plaintiffs have established typicality.

21

### 4. Adequacy

Finally, Rule 23(a)(4) requires "the representative parties [to] fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement turns upon resolution of two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

Apple does not contest adequacy. Nevertheless, the Court finds that Plaintiff Siegal, Plaintiff Borzymowski, Plaintiff Brown, Plaintiff Bauer, Plaintiff Muilenberg, and Plaintiff Bon are adequate class representatives. The class representatives have the same claims and interest in obtaining relief, and have vigorously pursued relief on behalf of the proposed class. In particular, the class representatives "share an interest with members of the proposed class in proving that the [iPhones] were defective and that the proposed class was damaged by the defects." *Philips II*, 2016 WL 7428810, at *12. Apple does not contend that the class representatives have any conflicts of interest with other class members. Thus, the Court finds that the class representatives meet the adequacy requirement.

Additionally, the Court finds that Plaintiffs' counsel has experience in prosecuting consumer protection actions involving claims similar to those in the instant case. ECF No. 48 at 3 ("McCune Wright is experienced in class action litigation, including class actions that, like the instant case, involve product defects. … Moreover, in this case, McCune Wright has investigated the potential class action claims, consulted with experts, drafted the first amended complaint, and taken a leadership role among the law firms involved in this action."); *see also* ECF No. 25-1 (McCune Wright firm resume). Plaintiffs' counsel has vigorously litigated this case from the beginning, and Apple does not contest that Plaintiffs' counsel will continue to do so. Thus, the Court finds that Plaintiffs' counsel meets the adequacy requirement.

### 5. Summary

In sum, the Court finds that Plaintiffs have satisfied the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy of representation. The Court now turns to Rule

22

1   23(b)(3), beginning with the predominance requirement.

2      **D. Rule 23(b)(3) Predominance**

3         **1. Principles Governing the Predominance Analysis**

4      Under Rule 23(b)(3), plaintiffs must show "that the questions of law or fact common to

5   class members predominate over any questions affecting only individual members." Fed. R. Civ.

6   P. 23(b)(3). "The Rule 23(b)(3) predominance inquiry" is meant to "tes[t] whether proposed

7   classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc.*

8   *v. Windsor*, 521 U.S. 591, 623 (1997). The Ninth Circuit has held that "there is clear justification

9   for handling the dispute on a representative rather than an individual basis" if "common questions

10  present a significant aspect of the case and they can be resolved for all members of the class in a

11  single adjudication." *Hanlon*, 150 F.3d at 1022. In ruling on a motion for class certification based

12  on Rule 23(b)(3), a district court must conduct a rigorous analysis to determine whether the class

13  representatives have satisfied both the predominance and superiority requirements. *See Zinser*, 253

14  F.3d at 1186. The predominance analysis focuses on "the legal or factual questions that qualify

15  each class member's case as a genuine controversy" to determine "whether proposed classes are

16  sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623;

17  *see also* Fed. R. Civ. P. 23(b)(3) (to certify a class, the court must find that "questions of law or

18  fact common to class members predominate over any questions affecting only individual

19  members").

20     This Court has previously identified five principles that guide the Court's predominance

21  inquiry:

22     First, and most importantly, the critical question that this Court must answer is
23     whether common questions predominate over individual questions. *Amgen*, 133 S.
       Ct. at 1191. In essence, this Court must determine whether common evidence and
24     common methodology could be used to prove the elements of the underlying cause
       of action. *Id.* Second, in answering this question, this Court must conduct a
25     "rigorous" analysis. *Comcast Corp.*, 133 S. Ct. at 1432. This analysis may overlap
       with the merits, but the inquiry cannot require Plaintiffs to prove elements of their
26     substantive case at the class certification stage. *Amgen*, 133 S. Ct. at 1194. Third,
       this Court must determine not only the admissibility of expert evidence that forms
27     the basis of the methodology that demonstrates whether common questions

28

23

predominate. *Ellis*, 657 F.3d at 982. Rather, this Court must also determine whether that expert evidence is persuasive, which may require the Court to resolve methodological disputes. *Id.*; *see also In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 9244, 255 (D.C. Cir. 2013). Fourth, the predominance inquiry is not a mechanical inquiry of "bean counting" to determine whether there are more individual questions than common questions. *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013). Instead, the inquiry contemplates a qualitative assessment, which includes a hard look at the soundness of statistical models. *Id.*; *In re Rail Freights Fuel Surcharge Antitrust Litig.*, 725 F.3d at 255. Fifth, Plaintiffs are not required to show that each element of the underlying cause of action is susceptible to classwide proof. *Amgen*, 133 S. Ct. at 1196. Rather, they need only show that common questions will predominate with respect to their class as a whole. *Id.*

*In re High-Tech Empl. Antitrust Litig.*, 985 F. Supp. 2d 1167, 1186–87 (N.D. Cal. 2013). With these principles in mind, the Court turns to the parties' predominance arguments.

## 2. Analysis

Plaintiffs argue that common issues predominate in their proposed class. Specifically, Plaintiffs claim that this suit turns on common questions of "whether the iPhone 6 and iPhone 6 Plus suffer from the [touchscreen] defect, whether Apple had a duty to disclose the defect, whether Apple knowingly concealed the defect, and whether this was a material omission." Mot. at 18.

Apple contends that common issues do not predominate over individual ones for several reasons. First, Apple argues that individual inquiries into whether class members relied on the alleged omissions will be required. Second, Apple argues that individual inquiries into whether class members were exposed to the alleged omissions will be required. Third, Apple argues that individual inquiries into whether a given class member's iPhone problems were caused by the touchscreen defect will be required. Fourth, Apple argues that Plaintiffs' damages model is inadequate. The Court addresses each of Apple's arguments in turn. The Court finds that common issues do not predominate for claims arising under the Texas Deceptive Trade Practices Act and therefore denies certification of Texas class members. However, the Court finds that Plaintiffs have shown that common issues do not predominate for their remaining Illinois, Florida, and Washington claims.[6]

---

[6] Apple does not meaningfully dispute that statutory requirements other than reliance and exposure

Case No. 16-CV-04942-LHK
ORDER DENYING MOTION FOR CLASS CERTIFICATION

### i. Reliance

Plaintiffs' motion for class certification contends "that reliance may be inferred classwide" if Plaintiffs prove uniform exposure to a material omission. Mot. at 22. Apple responds that the state statutes at issue prohibit such an inference, that absent such an inference individualized inquiries into class members' reliance will be necessary, and that those individualized inquiries are fatal to Rule 23(b)(3) predominance. The Court agrees that individualized inquiries would be necessary and that they would defeat predominance. *See Mazza*, 666 F.3d at 596 ("We vacate the class certification decision on this ground because common questions of fact do not predominate where an individualized case must be made for each member showing reliance."); *Philips II*, 2016 WL 7428810, at *16 (denying class certification in part because reliance on misrepresentations would vary from class member to class member). Nonetheless, the Court disagrees with Apple's contention that the state statutes prohibit inferring reliance on a classwide basis. Although Apple is correct that Texas prohibits inferring reliance, Illinois, Florida, and Washington have no such prohibition.[7]

The Illinois Consumer Fraud and Deceptive Trade Practices Act ("ICFDTPA"), does not require a plaintiff to prove reliance. *Id.* (collecting cases). On the contrary, "the Illinois Supreme Court has repeatedly held that, unlike a claim for common law fraud, reliance is not required to establish [an ICFDTPA] consumer fraud claim." *Cozzi Iron & Metal, Inc. v. U.S. Office Equip., Inc.*, 250 F.3d 570, 576 (7th Cir. 2001). Granted, the ICFDTPA does require proof of causation which in practice is similar to reliance. *See Mednick v. Precor, Inc.*, 320 F.R.D. 140, 150 (N.D. Ill. 2017) ("While it is true, as Plaintiffs argue, that the [ICFDTPA] does not require reliance, the statute does require proximate causation."). However, in ICFDTPA class actions "where the representation being challenged was made to all putative class members, Illinois courts have

---

can be established on a classwide basis, and the Court discerns nothing in the state statutes that would prove problematic. Thus, the Court's analysis centers on reliance and exposure.
[7] Apple briefly suggests that the existence of an online User Guide that discloses that iPhones may be damaged if not handled with care would require individual inquiries because class members may have seen it prior to purchase. This is unpersuasive, given that Apple concedes that the User Guide was inside the iPhone box, which was not opened until *after* purchase.

concluded that causation is susceptible of classwide proof and that individualized inquiries concerning causation do not predominate if plaintiffs are able to adduce sufficient evidence that the representation was material." *In re ConAgra*, 90 F. Supp. 3d at 997 (collecting cases). Thus, if Plaintiffs can show that Apple's omission was material, "they will be able to prove proximate cause on a classwide basis as well." *Id.* at 999.

The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") does not require proof of individual reliance. *Cold Stone Creamery, Inc. v. Lenora Foods I, LLC*, 332 F. App'x 565, 567 (11th Cir. 2009) ("[T]he FDUTPA does not require a plaintiff to prove actual reliance on the alleged conduct."). Rather, FDUTPA claims "are governed by a 'reasonable consumer' standard, obviating the need for proof of individual reliance by putative class members." *In re ConAgra*, 90 F. Supp. 3d at 996 (collecting cases). Thus, Plaintiffs can prove reliance classwide because all Plaintiffs must do is "show that [Apple's] allegedly misleading representation was 'likely to mislead a reasonable consumer acting reasonably under the circumstances, *i.e.*, the plaintiff's circumstances.'" *Id.* at 996–97 (quoting *In re Motions to Certify Classes Against Court Reporting Firms for Charges Relating to Word Indices*, 715 F.Supp.2d 1265, 1282 (S.D. Fla. 2010)). Nor is causation problematic, because "the Eleventh Circuit has said that the FDUTPA does not require a plaintiff to prove the misrepresentation caused them to do anything; rather, the causation requirement is resolved based on how an objective reasonable person would behave under the circumstances." *Fitzpatrick v. Gen. Mills, Inc.*, 263 F.R.D. 687, 694–95 (S.D. Fla. 2010), *rev'd on other grounds,* 635 F.3d 1279 (11th Cir. 2011).

The Washington Consumer Protection Act ("WCPA") presumes reliance. More precisely, although the Washington Supreme Court has not definitively held that there is a presumption of reliance in WCPA cases based on omissions, federal and state cases interpreting the WCPA have found that there is a "a rebuttable presumption of reliance for [W]CPA fraud claims." *Blough v. Shea Homes, Inc.*, 2014 WL 3694231, at *13 (W.D. Wash. July 23, 2014); *Grays Harbor Adventist Christian Sch. v. Carrier Corp.*, 242 F.R.D. 568, 573 (W.D. Wash. 2007) (employing rebuttable presumption of reliance in WCPA fraud case); *Deegan v. Windermere Real Estate/Ctr.-*

Case No. 16-CV-04942-LHK
ORDER DENYING MOTION FOR CLASS CERTIFICATION

1   *Isle, Inc.*, 391 P.3d 582, 589–90 (Wash. App. 2017) (same). This presumption also renders

2   causation unproblematic because in omissions cases the presumption of reliance resolves

3   causation problems—plaintiffs are presumed to have relied on omissions, and thus the omissions

4   are presumed to have proximately caused plaintiffs' harm. *See Deegan*, 391 P.3d at 587–88;

5   *Blough*, 2014 WL 3694231, at *13.

6           In theory, the Texas Deceptive Trade Practices Act ("TDTPA") permits a classwide

7   inference of reliance. *See In re ConAgra*, 90 F. Supp. 3d at 1016 ("[T]he Texas Supreme Court has

8   held that reliance and causation can be proved on a classwide basis when appropriate."). In

9   practice, the TDTPA does not. Both parties focus their attention on *Henry Schein, Inc. v.*

10  *Stromboe*, 102 S.W.3d 675 (Tex. 2003). *See* ECF No. 199-11 at 24–25. Plaintiffs contend that

11  *Henry Schein* permits an inference of reliance and causation. However, Plaintiffs' argument is

12  premised on a selective reading of the Texas Supreme Court's decision. In fact, *Henry Schein* held

13  that "the 20,000 class members in the present case are held to the same standards of proof of

14  reliance—and for that matter all the other elements of their claims—that they would be required to

15  meet if each sued individually." *Id.* at 693. Subsequent Texas decisions confirm that while *Henry*

16  *Schein* "did not entirely preclude class actions in which reliance was an issue, … it did make such

17  cases a near-impossibility." *Fid. & Guar. Life Ins. Co. v. Pina*, 165 S.W.3d 416, 423 (Tex. App.

18  2005); *Texas South Rentals, Inc. v. Gomez*, 267 S.W.3d 228, 237 (Tex. App. 2008) (finding

19  same).[8] This Court therefore concludes that "Texas courts require individualized proof of reliance

20  and reject the idea that reliance may be inferred from the fact that a reasonable person would find

21  the misrepresentation to be important to his decision-making process." *Brazil v. Dell Inc.*, 2010

22  WL 8816312, at *5 (N.D. Cal. Mar. 29, 2010); *accord Myford Touch I*, 2016 WL 7734558, at *23

23  n.23 ("Texas requires individualized proof of reliance. Certification would thus be inappropriate

24  even if the Court presumed classwide exposure." (internal citations omitted)). Plaintiffs' class

25

26  _____

    [8] *Henry Schein* did so by holding that "reliance upon misrepresentations made to consumers must
27  be proved with class-wide proof; class-wide proof requires the existence of class-wide evidence.
    Class-wide evidence requires that there be no differences in how individual members of the class
    relied on the misrepresentation." *Pina*, 165 S.W.3d at 423 (internal citations omitted).

28
                                              27
    Case No. 16-CV-04942-LHK
    ORDER DENYING MOTION FOR CLASS CERTIFICATION

claims under the Texas Deceptive Trade Practices Act therefore fail to satisfy Rule 23(b)(3) predominance.

In sum, the Court finds that Illinois's ICFDTPA, Florida's FDUTPA, and Washington's WCPA permit a classwide determination of reliance and causation. However, the Court finds that individual inquiries would be required to prove reliance under Texas's TDTPA and that common issues therefore do not predominate for Texas class members. Therefore, the Court denies certification of Plaintiffs' TDTPA class claims.

### ii. Exposure

All three remaining state statutes—the ICFDTPA, FDUTPA, and WCPA—require proof of exposure to the allegedly fraudulent omissions. *Barbara's Sales, Inc. v. Intel Corp.*, 879 N.E.2d 910, 927 (2007) (finding ICFDTPA class action requires plaintiffs to "prove that each and every consumer who seeks redress actually saw and was deceived by the statements in question."); *Montgomery v. New Piper Aircraft, Inc.*, 209 F.R.D. 221, 229 (S.D. Fla. 2002) (noting FDUTPA liability requires that "each putative class member was exposed to the Defendants' advertising and marketing materials alleged to constitute a deceptive trade practice"); *Helde v. Knight Transp., Inc.*, 2013 WL 5588311, at *5 (W.D. Wash. Oct. 9, 2013) (proving causation under the WCPA requires "testimony from each class member to determine what, if any, advertising he or she saw").

Plaintiffs point to four materials that allegedly omitted the touchscreen defect: (1) the iPhone box, (2) materials inside the box, (3) the iPhone setup process, and (4) subsequent software updates.[9] Apple contends that the only source of exposure is the iPhone box itself, because the iPhone box is the only source of information class members would have seen before purchasing

---

[9] Plaintiffs' description of the materials alleged to contain the omissions varies over the course of the briefing. To facilitate analysis, the Court construes the materials as consisting of the iPhone box, the materials inside the iPhone box, the setup process, and subsequent software updates. *Compare* Mot. at 16 (indicating omissions on "Box, Documents, and Set Up Software") *with id.* at 2, 22 (contending omissions on iPhone box, setup process, and subsequent software updates) *and* Reply at 2 (alleging omissions on "product packaging (including the box inserts), a setup process requiring email input, and numerous subsequent communications between Apple and consumers (via software updates, press releases, and emails).").

Case No. 16-CV-04942-LHK
ORDER DENYING MOTION FOR CLASS CERTIFICATION

the iPhone. Plaintiffs do not rebut Apple's argument on the facts. Instead, Plaintiffs contend Apple's argument is irrelevant for two reasons. First, Plaintiffs argue that class members' exposure to the omissions need not precede the iPhone purchase, but rather can occur at any time during Apple's 14 day return period for the iPhone. Second, Plaintiffs contend that all the class members saw the iPhone box before purchase, and that this is enough to establish exposure. Plaintiffs' first argument is unpersuasive, but the Court agrees with Plaintiffs' second argument.

The Court begins with Plaintiffs' first argument. If Plaintiffs are correct, they have likely established exposure because class members undoubtedly saw at least one of the four materials during the two weeks following their iPhone purchase. The problem, however, is that Plaintiffs do not provide authority establishing that exposure can occur anytime during the 14 day return period. Plaintiffs instead rely entirely on a California Court of Appeal decision and a strained reading of the last substantive order in this case. Reply at 1–2 (citing *Weinstat v. Dentsply Int'l, Inc.*, 103 Cal. Rptr. 3d 614 (Cal. Ct. App. 2010); *Davidson II*, 2017 WL 3149305). A California Court of Appeal decision is at best secondarily relevant given that the claims at issue arise under the laws of Illinois, Florida, and Washington. Moreover, *Weinstat* does not actually say that exposure can occur at any time during a return window. *See Weinstat*, 103 Cal. Rptr. 3d at 1229–30 (finding that in some cases a warranty handed over after purchase can be said to be part of the basis of the bargain). As for *Davidson II*, contrary to Plaintiffs' framing, the Court did not hold that exposure could occur any time during the return window. All the Court found was that Plaintiffs' allegations of exposure were sufficient to survive Apple's motion to dismiss where the non-moving party receives the benefit of all inferences. *Davidson II*, 2017 WL 3149305, at *14 & n.5. Consequently, Plaintiffs have not established that exposure could occur after sale.

The Court now turns to Plaintiffs' argument that class members were exposed to the iPhone box before purchase. Courts interpreting the ICFDTPA, FDUTPA, and WCPA presume class members who purchased products with misleading packaging (*i.e.* the iPhone box) were exposed to misleading statements on that packaging. *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 752–53 (7th Cir. 2014) (reversing exposure-based denial of class certification in ICFDTPA case

because alleged misrepresentations were on coffee pods' packaging); *Mednick v. Precor, Inc.*, 320 F.R.D. 140, 151 (N.D. Ill. 2017) (presuming class members were exposed to treadmills' packaging in ICFDTPA case); *Smith v. Wm. Wrigley Jr. Co.*, 2010 WL 2401149, at *4 (S.D. Fla. June 15, 2010) (FDUTPA case presuming class members were exposed to uniform misrepresentations because they were made on chewing gum packaging); *see Torres*, 835 F.3d at 1137 (9th Cir. 2016) (WCPA case noting that existence of common policy or practice is evidence class as a whole was exposed to allegedly misleading omissions); *In re: Premera Blue Cross Customer Data Sec. Breach Litig.,* 2017 WL 539578, at *4–5 (D. Or. Feb. 9, 2017) (presuming exposure in WCPA misrepresentation case where misrepresentations to class members were substantially identical).

That approach is commonplace in class actions that derive from product packaging. For instance, this Court has previously found that "all class members [who] purchased the product … were 'necessarily exposed' to the defendant's omissions [on the packaging] prior to purchase in the same way." *Butler v. Porsche Cars N. Am., Inc.*, 2017 WL 1398316, at *11 (N.D. Cal. Apr. 19, 2017); *Ehret*, 148 F. Supp. 3d at 895 ("[I]n numerous cases involving claims of false-advertising, class-wide exposure has been inferred because the alleged misrepresentation is on the packaging of the item being sold."); *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 511 (6th Cir. 2015) (agreeing misrepresentation made to all class members "[b]ecause, by definition, every member of the class must have bought one of the Products and, thus, seen the packaging." (citation omitted)); *McCrary v. Elations Co., LLC*, 2014 WL 1779243, at *13 (C.D. Cal. Jan. 13, 2014) ("[A] presumption of exposure is inferred where, as here, the alleged misrepresentations were on the outside of the packaging of every unit for an extended period."); *Johns v. Bayer Corp.*, 280 F.R.D. 551, 558 (S.D. Cal. 2012) ("[A]ll class members necessarily saw Bayer's prostate claim, since it appeared prominently on the packaging itself."). Plaintiffs seek to certify a class consisting of individuals "who purchased an Apple iPhone 6 or iPhone 6 Plus from Apple or an Apple Authorized Service Provider … ." Mot. at 3. The Court will therefore follow the prevailing interpretation of the ICFDTPA, FDUTPA, and WCPA, and infer that class members who by definition bought an iPhone also saw the box.

30

United States District Court
Northern District of California

Apple argues against this inference by contending Plaintiffs were not, in fact, uniformly exposed to the iPhone box. Apple relies on the declaration of Gershon Glezer, an Apple "Store Leader," that details the purchase process for the iPhone 6 and iPhone 6 Plus. ECF No. 184-22 (Declaration of Gershon Glezer, or "Glezer Decl."). Glezer's declaration makes three salient points. First, Glezer states online iPhone buyers paid for the iPhone before it was delivered, and thus before the purchasers had the iPhone box in their possession. *Id.* ¶ 3. Second, Glezer states the iPhone 6 and iPhone 6 Plus boxes were kept in the back of Apple Stores and were not visible until they were brought out so a customer could buy one. Glezer adds that Apple Store employees, absent a customer's request to hold the iPhone box, would then scan the iPhone box in front of customers. *Id.* ¶¶ 4–5. Third, Glezer states that Apple "did not require that third-party iPhone 6 or iPhone 6 Plus retailers follow specific procedures during online or in-store sales transactions," Glezer Decl. ¶ 9, thus there must have been variation in how class members were exposed to iPhone boxes when they purchased iPhones from third-party retailers.

These points are not persuasive. First, Apple's online argument closely resembles the one rejected by the court in *Brickman v. Fitbit, Inc.*, 2017 WL 5569827 (N.D. Cal. Nov. 20, 2017). Fitbit there argued against uniform exposure on the grounds that some of its devices were sold online, and that online purchasers may not have read the allegedly deceptive statements. *Id.* at *5. The district court rejected this theory and granted certification because "Fitbit offers no evidence to back up this theory," was "entirely vague about which channel—either its own sales or third-party retail sales—is supposedly afflicted with this online issue," and in any case "presents no evidence that its statements were in any way not visible to potential buyers." *Id.* The same holds true here. Neither Glezer nor Apple offer evidence as to what buyers may or may not have seen when buying the iPhone online.

Apple's second and third arguments fare no better. Apple does not dispute that in-store customers were present as Apple Store employees held the iPhone box to scan it and complete the sale. Thus, class members who bought their iPhones in store saw the iPhone box. Finally, the fact that Apple did not impose specific procedures on third-party iPhone retailers is irrelevant, absent

Case No. 16-CV-04942-LHK
ORDER DENYING MOTION FOR CLASS CERTIFICATION

some indication of what third-party retailers actually did or did not display online. *Cf. Suchanek*, 764 F.3d at 758 ("Often the online 'store' shows an image of the package that the customer can examine in detail; if that was done here, then the online group may be in essentially the same position as those who bought in physical stores.").

Perhaps more fundamentally, the decisions upon which Apple principally relies in arguing against common exposure are factually dissimilar from the instant case. *Mazza*, 666 F.3d 581; *In re Hyundai & Kia Fuel Economy Litigation*, 881 F.3d 679 (9th Cir. 2018). *Mazza* is inapposite because it concerned advertisements, not packaging. Reflecting this, *Mazza* reversed the district court's order granting class certification because "it is likely that many class members were never exposed to the allegedly misleading advertisements, insofar as advertising of the challenged system was very limited." 666 F.3d at 596. Similarly, *In re Hyundai* concerned advertising and disclosure stickers that may or may not have been provided to class members. 881 F.3d at 704. Here, by contrast, the omissions are alleged to be on packaging class members were directly exposed to in the course of buying their iPhones. This is sufficient to establish exposure.

### iii. Manifestation

Apple next argues that individual issues predominate because individual inquiries will be necessary in order to establish whether (1) a given class member actually encountered the touchscreen defect, and (2) whether a given class member's iPhone malfunction was the result of the touchscreen defect or some other cause (*e.g.* dropping the iPhone). The Court takes each argument in turn.

First, Apple argues that Florida and Texas law preclude certification of a class if the class includes individuals who never actually encountered the underlying defect. Significantly, Apple does not argue that classwide manifestation is required by Illinois and Washington law, and the Court has previously explained why Plaintiffs' Texas claim fails on reliance grounds. In practice then, Apple's argument only applies to Plaintiffs' claims under Florida law.

Apple relies on *Kia Motors America Corp. v. Butler*, 985 So. 2d 1133 (Fla. Dist. Ct. App. 2008), which reversed an order granting class certification because the class "seeks compensation

Case No. 16-CV-04942-LHK
ORDER DENYING MOTION FOR CLASS CERTIFICATION

not only for class members whose brakes have manifested a deficiency, but also for those whose brakes have performed satisfactorily." *Id.* at 1139. However, subsequent cases have disagreed with *Butler* and thrown its holding into question. *In re: Gen. Motors LLC Ignition Switch Litig.*, 2016 WL 3920353, at *25 (S.D.N.Y. July 15, 2016) (disagreeing with *Butler* and finding putative class had stated a claim under FDUTPA based on vehicle defect that had not manifested in all class vehicles). In particular, *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 985–87 (11th Cir. 2016), rejected the argument that a plaintiff could only recover under the FDUTPA if a defect had manifested. Instead, the Eleventh Circuit explained that FDUTPA damages should be the difference between the product as represented and the product as received, and that this "benefit of the bargain" model should be applied whether or not a class member had encountered the defect. *Id.* at 986–87. *Carriulo* is the more recent case, and so the Court adopts its interpretation of the FDUTPA and rejects Apple's claim that manifestation is necessary for recovery. *See Ignition Switch Litig.*, 2016 WL 3920353, at *25–27 (doing same).

This conclusion is in line with the Ninth Circuit's decision in *Wolin*, which held "that proof of the manifestation of a defect is not a prerequisite to class certification." 617 F.3d at 1173; *see Philips II*, 2016 WL 7428810, at *18 (noting same). Apple's argument is therefore at odds with both Florida law and the Ninth Circuit's approach to manifestation. *See also Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 529 (C.D. Cal. 2012) ("While it is true that *Wolin* addressed the substantive law of Michigan and Florida[,] the Ninth Circuit's application of Rule 23(b) did not turn on the substantive law at issue. Indeed, the court's discussion of predominance and superiority makes almost no reference to the substantive law underlying plaintiffs' claims; it is mentioned only in connection with the court's description of the allegations in the complaint."). The Court therefore rejects Apple's argument that individualized inquiries into whether the defect has manifested will be necessary because manifestation is not required under the law of Illinois, Washington, or Florida.

Second, Apple argues that individualized inquiries will be necessary to determine whether a given class member's iPhone malfunction was the result of the touchscreen defect or some other

cause (*e.g.* dropping the iPhone). *Wolin* rebuts this claim. The plaintiffs in *Wolin* alleged certain Land Rover vehicles were defective because the vehicles had a "defective alignment geometry" that caused the tires to wear more quickly than usual. *Wolin*, 617 F.3d at 1170. Land Rover argued that common issues did not predominate for the purposes of class certification because "the evidence w[ould] demonstrate that the prospective class members' vehicles do not suffer from a common defect, but rather, from tire wear due to individual factors such as driving habits and weather." *Id.* at 1173. The Ninth Circuit rejected this argument, noting that the plaintiffs "assert[ed] that the defect exists in the alignment geometry, not in the tires, [and] that Land Rover failed to reveal material facts in violation of consumer protection laws." *Id. Wolin* therefore held that "[a]lthough individual factors may affect premature tire wear, they do not affect whether the vehicles were sold with an alignment defect" and thus that "all of [the plaintiffs'] allegations are susceptible to proof by generalized evidence." *Id.*

The same is true in the instant case. Individual factors may affect class members' iPhones' performance, but these individual factors do not affect the ultimate question whether the iPhones were sold with a defective touchscreen. Like Land Rover in *Wolin*, what Apple argues in the instant case "is whether class members can win on the merits." *Id.* Plaintiffs argue that class members' iPhones are defective because the iPhones' "external aluminum casing, whose primary purpose is to protect the sensitive internal components from strain, is insufficient to prevent the phones from bending during normal use, thereby causing the touchscreen to fail. Mot. at 4. Apple responds that there is no defect in the iPhone 6 or iPhone 6 Plus and that the true cause of any touchscreen issues is users dropping their iPhones. Opp. at 2; *see also Philips II*, 2016 WL 7428810, at *14 (similar argument raised by defendant that alleged defect was due to individual factors).

The Court need not decide at this stage which party is correct. *See Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 133 S. Ct. 1184, 1194–95 (2013) ("Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."). In order to

34

determine whether Rule 23(b)(3)'s predominance requirement is met, the Court needs only to consider Plaintiffs' theory of the case and the type of evidence that Plaintiffs will use to prove this theory. Plaintiffs allege that the iPhone 6 and iPhone 6 Plus suffer from a single design defect, and as in *Wolin*, whether this allegation is true can be determined on a common basis. Thus, Apple's argument that there was no common defect does not defeat predominance for Plaintiffs' claims under Illinois, Washington, or Florida law. *See Philips II*, 2016 WL 7428810, at *14 (reaching same conclusion in response to similar argument). The Court now turns to Plaintiffs' damages theories.

### iv. Damages Model

Apple's final predominance argument is that Plaintiffs' damages model fails to satisfy the requirements set forth in *Comcast*. The Court concludes that Apple is correct.[10]

Although individual damages calculations alone do not make class certification inappropriate under Rule 23(b)(3), *see Leyva v. Medline Indus., Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) ("[T]he amount of damages is invariably an individual question and does not defeat class action treatment."), the United States Supreme Court has held a plaintiff bears the burden of providing a damages model showing that "damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)." *Comcast*, 569 U.S. at 35. The damages model "must measure only those damages attributable to" the plaintiff's theory of liability. *Id.* If the plaintiff does not offer a plausible damages model that matches her theory of liability, "the problem is not just that the Court will have to look into individual situations to determine the appropriate measure of damages; it is that Plaintiffs have not even told the Court what data it should look for." *Myford Touch I*, 2016 WL 7734558, at *15.

Plaintiffs' theory of liability is that "Apple failed to disclose the [touchscreen defect] in the

---

[10] Plaintiffs argue in a footnote that the Court should also certify the class based on the damages theory advanced in the expert report of Jessa Jones. ECF No. 174-38. This argument is not well taken. Jones's report states that she was hired "to offer expert opinion on the history and mechanism of the iPhone 6/6+ touch system fault from my extensive experience." *Id.* at 2. There is no reference to a damages model in the report.

iPhone 6 and 6 Plus, causing consumers to pay more for those products than they otherwise would have." Mot. at 26 (citing FACC ¶¶ 5, 188, 200, 213, 270). Accordingly, Plaintiffs' damages expert, Dr. Stefan Boedeker, proposes a "Choice-Based Conjoint Analysis" damages model. ECF No. 174-46 (Declaration of Stefan Boedeker, or "Boedeker Decl."). As Boedeker notes, "[t]he general idea behind Conjoint Analysis is that consumers' preferences for a particular product are driven by features or descriptions of features associated with that product." *Id.* at 20. Survey respondents are therefore asked to choose between different sets of product attributes, the responses are aggregated, and statistical methods are then used to determine the value (often termed "part-worth") that consumers attach to each specific attribute. *Id.* at 20–21; *In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1073 (C.D. Cal. 2015) (discussing conjoint analysis).

In this case, Boedeker asked survey respondents to choose between hypothetical phones that differed in storage capacity (32, 64, or 128 gigabytes), screen size (4.7, 5.5, or 5.8 inches), talk time (10 or 14 hours), price ($400, $550, $700, or $850), and defectiveness (no defect, defect costing $100 to repair or replace, or defect costing $200 to repair or replace). Boedeker Decl. at 38–40. Boedeker then isolated the (negative) value associated with defectiveness and found that the economic loss was $323 for the $100 defect, and $432 for the $200 defect. *Id.* at 50–51.[11] Economic loss could also be expressed in terms of the phone's overall price, in which case the loss was 51.7 percent of the phone's price for the $100 defect, and 69.2 percent of the phone's price for the $200 defect. *Id.*

Apple advances three arguments as to why Boedeker's methodology fails to satisfy *Comcast*. First, Apple criticizes Boedeker's analysis for failing to include as phone attributes "brand" and "operating system" when those are two of the most important reasons that consumers buy iPhones. Opp. at 25. The Court is unpersuaded. Boedeker expressly recognized the

---

[11] It is unclear why this estimate diverges so dramatically from the cost to repair the hypothetical phones. Indeed, Plaintiffs' own technical expert, Jessa Jones, estimates that repair costs should be around $150, including parts and labor. ECF No. 174-38 at 25.

importance of brand and operating system, and held them constant by limiting survey participation to "iPhone users, which all purchased the same brand and operating system. Therefore, I do not include brand and operating system as attributes." Boedeker Decl. at 33. Apple does not explain why deciding to control for the two factors in this way is problematic. Thus, the Court rejects Apple's argument.

Second, Apple argues Boedeker based his analysis solely on survey respondents' subjective willingness to pay, or demand, without considering the supply side of the equation. Apple contends that this merely measures consumers' subjective valuation of a defective iPhone, whereas the "[t]he ultimate price of a product is a combination of market demand and market supply." *Apple, Inc. v. Samsung Elecs. Co.*, 2014 WL 976898, at *2 (N.D. Cal. Mar. 6, 2014); *see In re NJOY*, 120 F. Supp. 3d at 1119 (discussing same issue).

Apple's premise is flawed; Boedeker accounts for the supply side of the equation. Boedeker's report discusses the role of supply in conjoint analysis at length. Underscoring the point, this section of Boedeker's report is actually titled "Note on the Consideration of the Supply Side in the Economic Damages Model." Boedeker Decl. at 9. Boedeker explains that he assumes that "[t]he supply curve in the damages model is identical" whether Apple did or did not disclose the defect to consumers, because disclosure "has no impact on the marginal costs of the supplier, and therefore, the supply curve remains unchanged." *Id.* at 18. A supplier's marginal cost is "the cost the manufacturer incurred when producing an additional unit of the product." *Id.* at 9. As another court in this district explains, Boedeker is thus "measur[ing] the difference in value by assuming that the supply—the quantity—was fixed. In terms of economic theory, the portion of the supply curve that concerns Mr. Boedeker's analysis is effectively vertical—supply is fixed regardless of price in this region of the graph." *In re MyFord Touch Consumer Litig.*, 291 F. Supp. 3d 936 (N.D. Cal. 2018) ("*MyFord Touch II*"). Assuming Apple would have sold the same number of iPhones despite the drop in what consumers were willing to pay is not especially farfetched because the marginal cost of producing an iPhone could still have been below consumers' willingness to pay.

United States District Court
Northern District of California

This examination of the supply side of the market distinguishes Plaintiffs' expert from the cases on which Apple relies. *See, e.g., Saavedra v. Eli Lilly & Co*., 2014 WL 7338930, at *5 (C.D. Cal. Dec. 18, 2014) (rejecting conjoint analysis model because it failed to consider "willingness to sell"); *In re NJOY*, 120 F. Supp. 3d at 1119 (rejecting conjoint analysis damages model because it "completely ignores the price for which NJOY is willing to sell its products"). Nor is the Court persuaded by Apple's contention that Boedeker's model fails to incorporate the actual prices paid by iPhone 6 or iPhone 6 Plus buyers. Opp. at 26–27. As Plaintiffs note, Boedeker also expressed economic loss as a percentage of a phone's cost, and Apple does not explain why this could not easily be applied to the actual price a given consumer paid for an iPhone. Boedeker Decl. at 50–51.

Third, Apple contends that Boedeker's methodology is fatally flawed because it assumes that the touchscreen defect will manifest in all iPhones. Here, the Court agrees. Plaintiffs' theory of liability is that "Apple failed to disclose [touchscreen defect] in the iPhone 6 and 6 Plus, causing consumers to pay more for those products than they otherwise would have." Mot. at 26 (citing FACC ¶¶ 5, 188, 200, 213, 270). More precisely, Plaintiffs contend Apple failed to disclose the existence of a touchscreen defect that manifests in approximately 5.6 percent of the iPhone 6 Plus (after two years of use) and at a somewhat lower rate for the iPhone 6. Mot. at 7.[12] In line with *Comcast*'s requirement that damages models "must measure only those damages attributable to" the plaintiff's theory of liability, Boedeker's damages model should measure how much consumers overpaid for iPhones assuming a roughly 5.6 percent or less chance that consumers would experience the touchscreen defect. Instead, Boedeker's model measures how much consumers overpaid for a touchscreen defect that is certain to manifest in *all* iPhones. Boedeker Decl. at 40. Specifically, Boedeker asked survey respondents to place a value on a hypothetical smartphone containing the following attributes:

---

[12] Plaintiffs subsequently attempt to distance themselves from these figures. Reply at 14 n.29. However, Plaintiffs nowhere suggest that the touchscreen defect occurs in all or most iPhones, and Plaintiffs nowhere provide an alternative estimate of the manifestation rate.

Case No. 16-CV-04942-LHK
ORDER DENYING MOTION FOR CLASS CERTIFICATION

a. "The smartphone operates without any defects while you own it."

b. "The smartphone becomes inoperable due to a defect that manifests while you own it. This requires you to find a repair shop or have the smartphone replaced at the store. The repair or replacement will cost an additional $100."

c. "The smartphone becomes inoperable due to a defect that manifests while you own it. This requires you to find a repair shop or have the smartphone replaced at the store. The repair or replacement will cost an additional $200."

*Id.* Missing from these options is any suggestion that defect might not manifest. This absence puts Boedeker's damages model at odds with Plaintiffs' theory of liability because Plaintiffs' theory of liability rests on the risk that the defect might manifest, not that the defect is certain to manifest. Thus, the model fails to satisfy *Comcast*.

Even leaving this aside, other flaws in Boedeker's damages model provide an independent basis for finding that Plaintiffs have failed to satisfy *Comcast*. To start, Boedeker's model assumes that the touchscreen defect renders affected iPhones inoperable. However, this assumption is at odds with the experience of the named Plaintiffs because none of the named Plaintiffs have experienced complete iPhone inoperability as a result of the touchscreen defect. Justin Bauer's iPhone experiences the touchscreen defect "over 30 percent of the time," Taylor Brown's iPhone experiences the touchscreen defect "approximately 50% of the time," William Bonn's iPhone "experiences the Touchscreen Defect about 65% of the time," Eric Siegal's iPhone was "unresponsive to user inputs approximately 75% of the time," Matt Muilenburg experiences the touchscreen defect "approximately 80% of the time," and John Borzymowski experiences the touchscreen defect "approximately 95% of the time." FACC ¶¶ 10, 12, 14, 15, 18, 19.

Moreover, Boedeker's survey questions only asked respondents about a *generic* defect instead of one specifically affecting a phone's touchscreen. That necessarily assumed that respondents would value all defects equally. That assumption is inconsistent with *Comcast*'s requirement that damages models measure "only those damages attributable" to Plaintiffs' theory of liability because it unmoors Plaintiffs' damages from the specific touchscreen defect alleged to have harmed them. *Comcast*, 569 U.S. at 35; *see Opperman v. Kong Techs., Inc.*, 2017 WL 3149295, at *12 (N.D. Cal. July 25, 2017) (rejecting conjoint analysis under *Comcast* because the

conjoint analysis measured the value of "privacy generally" instead of the specific allegedly

misrepresented security features at issue).

For the foregoing reasons, the Court finds that Plaintiffs have failed to provide a damages

model that is "consistent with [their] liability case" and that measures "only those damages

attributable" to Plaintiffs' theory of liability. *Comcast*, 569 U.S. at 35.

### v. Summary

In sum, the Court finds that Plaintiffs have not satisfied the Rule 23(b)(3) predominance

requirement for Plaintiffs' claims arising under the law of Texas, Illinois, Florida, and

Washington. Specifically, Plaintiffs' Texas claim does not satisfy Rule 23(b)(3) predominance

because Texas law does not permit a classwide inference of reliance, and Plaintiffs' Illinois,

Florida, and Washington claims all fail to satisfy Rule 23(b)(3) predominance because Plaintiffs'

damages model is inadequate. Although Plaintiffs have therefore failed to satisfy Rule 23(b)(3)

more broadly, the Court now turns to Rule 23(b)(3) superiority in the interest of thoroughness.

### E. Rule 23(b)(3) Superiority

Rule 23(b)(3) provides four factors that a court must consider in determining whether a

class action is superior to other methods of adjudication. These factors are:

> (A) the class members' interests in individually controlling the prosecution or
> defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun
> by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in
> the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). "'[T]he purpose of the superiority requirement is to assure that the class

is the most efficient and effective means of resolving the controversy.'" *Wolin*, 617 F.3d at 1175

(quoting 7AA Charles Wright, Arthur Miller & Mary Kay Kane, Federal Practice and Procedure, §

1779 at 174 (3d ed. 2005)). "In cases in which plaintiffs seek to recover relatively small sums and

the disparity between litigation costs and the recovery sought may render plaintiffs unable to

40

proceed individually, 'class actions may permit the plaintiffs to pool claims which would be uneconomical to bring individually.'" *Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 311 F.R.D. 590, 622 (C.D. Cal. 2015) (quoting *Local Joint Executive Bd. Of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001)). Apple contests only the manageability factor. Opp. at 28–29. Even so, the Court examines each of the four factors and finds that Plaintiffs have established superiority.

The first factor is each class member's interest in "individually controlling the prosecution or defense of separate actions." Fed. R. Civ. P. 23(b)(3)(A). "Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification." *Wolin*, 617 F.3d at 1175. Class members' individual damages are unlikely to exceed the $432 estimate provided by Boedeker, an amount that pales in comparison to the cost of litigation. Consequently, this factor points towards certification.

The second factor is "the extent and nature of any litigation concerning the controversy already commenced by or against members of the class." Fed .R. Civ. P. 23(b)(3)(B). Neither party suggests any other cases have been brought. Thus, this factor too weighs in favor of certification.

The third factor is "the desirability or undesirability of concentrating the litigation of the claims in the particular forum." Fed. R. Civ. P. 23(b)(3)(C). This factor likewise weighs in favor of certification because Apple is based in this district.

The fourth factor is manageability, which requires that courts consider "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(D). However, there is a "well-settled presumption that courts should not refuse to certify a class merely on the basis of manageability concerns." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128 (quoting *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 663 (7th Cir. 2015)); *see also In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 141 (2d Cir. 2001) (listing "management tools available to" district courts).

Apple argues the presumption *Briseno* identifies has been rebutted here, and that Plaintiffs

have not proven superiority because the proposed class is unmanageable. Specifically, Apple argues the proposed class is unmanageable because of (1) individual issues concerning exposure, reliance, manifestation, and causation, and (2) Plaintiffs' decision to attempt to certify a class under five different statutory schemes. The Court has already considered and rejected Apple's arguments concerning the individual issues. The Court therefore turns to Apple's argument that statutory differences preclude a finding of manageability.

"Although there are some differences in state consumer protection statutes, the factual and legal questions to be answered are substantively the same." *Saltzman v. Pella Corp.*, 257 F.R.D. 471, 485 (N.D. Ill. 2009), *aff'd*, 606 F.3d 391 (7th Cir. 2010) (certifying class under consumer fraud laws of six states, including Florida and Illinois, and creating a subclass for each state's law). In particular, each state's law will require determination of whether the iPhones were defective, whether Apple knew the iPhones were defective, whether Apple had a duty to disclose, and whether the information was material. Apple is correct that the states' laws contain some differences—Illinois, for instance, does not require proof of reliance. However, these differences are for the most part relatively minor and there is a "well-settled presumption that courts should not refuse to certify a class merely on the basis of manageability concerns." *Briseno*, 844 F.3d 1121, 1128 (quoting *Mullins*, 795 F.3d at 663).

In sum, Plaintiffs have established that a class action is superior to other methods of adjudication.

## F. Injunctive Relief

The Court now turns to Plaintiffs' request for injunctive relief. Plaintiffs' sole reference to injunctive relief in their 31-page motion for class certification is in a footnote. The Court excerpts it in full:

> The Court also ruled that Plaintiffs Brown (Texas), Baker (New York), Cleary (California), Benelhachemi (Illinois), Bauer (Colorado), and Heirloom Estate Services (Michigan) may seek injunctive relief as a remedy. ECF No. 103, at 51. Because Plaintiffs' Baker's, Cleary's, and Heirloom Estate Services' claims were not selected for the initial round of motions to dismiss, ECF 44, at 1-2, Plaintiffs do

not include New York, California, and Michigan in the classes defined in this round of class certification motions.

Mot. at 3 n.1. This footnote nowhere explains why injunctive relief is warranted, or even requests it, despite acknowledging that the Court found two of the named plaintiffs at issue here—Taylor Brown and Justin Bauer—had standing to pursue injunctive relief. Plaintiffs' failure to raise the issue in the opening brief means that they have waived it. *Bazuaye v. INS*, 79 F.3d 118, 120 (9th Cir. 1996) ("Issues raised for the first time in the reply brief are waived."); *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."); *John–Charles v. California*, 646 F.3d 1243, 1247 n.4 (9th Cir. 2011) (holding party "failed to develop any argument on this front, and thus has waived it"); *see Diacakis v. Comcast Corp.*, 2013 WL 1878921, at *9 (N.D. Cal. May 3, 2013) (finding injunctive relief request in motion for class certification "not well taken" when "request[ed] in a footnote which is devoid of any meaningful analysis").

**G. Rule 23(c)(4)**

The Court now turns to Plaintiffs' request to certify a Rule 23(c)(4) issues class. Mot. at 29. Plaintiffs request certification of a Rule 23(c)(4) class only if the Court rejects Plaintiffs' damages model. *Id.* at 27–28. Plaintiffs seek certification on the questions of "whether (1) the iPhones suffer from the Multi-Touch defect; (2) Apple was aware of the defect; (3) Apple had a duty to disclose the defect; (4) Apple's omission was material; and (5) Apple's omission had the likelihood or capacity to deceive a reasonable consumer[.]" *Id.* In other words, Plaintiffs seek certification of a liability class under Rule 23(c)(4).

Rule 23(c)(4) provides that, "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues." A Rule 23(c)(4) issues class "must still meet the requirements of Rule 23(a) and (b) (except for the predominance requirement of Rule 23(b)(3))." *Tasion Comm'ns, Inc. v. Ubiquiti Networks, Inc.*, 308 F.R.D. 630, 633 (N.D. Cal. 2015). "Certification of an issues class under Rule 23(c)(4) is 'appropriate' only if it 'materially advances the disposition of the litigation as a whole.'" *Rahman v. Mott's LLP*, 693 F. App'x 578, 579 (9th Cir. 2017) (quoting William B. Rubenstein, 2 Newberg on Class Actions 4:90 (5th ed. 2012)). In

43

particular, "[c]ourts faced with a proposed issue class should consider 'whether the adjudication of the certified issues would significantly advance the resolution of the underlying case, thereby achieving judicial economy and efficiency.'" *Kamakahi v. Am. Soc'y for Reprod. Med.*, 305 F.R.D. 164, 193 (N.D. Cal. 2015) (quoting *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1229 (9th Cir. 1996).

Here, the Court finds that adjudication of the certified issues would not advance the resolution of the underlying case. To start, certifying a liability class under the Texas Deceptive Trade Practices Act ("TDTPA") would not resolve individual issues concerning reliance. In turn, because reliance is an essential component of TDTPA liability, the ultimate question of Apple's liability under the TDTPA—in addition to damages—would still have to be resolved on an individual basis.

Nor are things different for Plaintiffs' claims under the Illinois Consumer Fraud and Deceptive Trade Practices Act ("ICFDTPA"), Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), and Washington Consumer Protection Act ("WCPA"). Although the reliance issue is absent, Plaintiffs still have not articulated "why a bifurcated proceeding would be more efficient or desirable." *Rahman v. Mott's LLP*, 2014 WL 6815779, at *9 (N.D. Cal. Dec. 3, 2014), *aff'd*, 693 F. App'x 578 (9th Cir. 2017). Indeed, the reasoning in *Rahman* is fully applicable here. The plaintiff there sought certification of a liability class under Rule 23(c)(4) after being denied certification of a damages class under Rule 23(b)(3). The district court denied the request because the plaintiff was vague as to how damages would ultimately be determined. Moreover, the plaintiff failed to explain how "allowing myriad individual damages claims to go forward … [would be] a reasonable or efficient alternative, particularly in a case such as this where the average class member is likely to have suffered less than a hundred dollars in damages." *Id.* Granted, damages in the instant case may exceed the hundred dollars in damages in *Rahman*—but given that the cost of repair in the instant case is $150 per Plaintiffs' technical expert and Plaintiffs' damages expert estimated damages at $432, the *Rahman* rationale still applies here. ECF No. 174-38 at 25. It is far from clear that resolving liability on a classwide basis would advance the underlying resolution of

the instant case. The bottom line is that Plaintiffs' perfunctory request for Rule 23(c)(4) certification fails to show why certification would materially advance the litigation as a whole. The Court therefore denies Rule 23(c)(4) certification.

## IV.    CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiffs' motion to certify a Rule 23(b)(3) class, DENIES Plaintiffs' request for injunctive relief, and DENIES certification of a Rule 23(c)(4) class.

**IT IS SO ORDERED.**

Dated: May 7, 2018

_____
LUCY H. KOH
United States District Judge