# LARSON · O'BRIEN LLP

Stephen G. Larson
Direct: 213.436.4864
Email: slarson@larsonobrienlaw.com

November 9, 2018

**VIA ECF**

The Honorable Virginia K. Demarchi
United States Magistrate Judge
Northern District of California
San Jose Courthouse
280 South 1st Street, Courtroom 2
San Jose, CA 95113

Re:   *Davidson, et al. v. Apple Inc.,* No.: 5:16-cv-4942-LHK

Dear Judge Demarchi:

    In accordance with the Court's Standing Order No. 4(c), the following is the Parties' joint letter regarding their discovery dispute in this matter.

    **i.**    **Dispute Requiring Resolution**

    Apple produced emails to Plaintiffs through the discovery process. Plaintiffs believe a portion of such emails appear to have been produced without their corresponding attachments or imbedded images. Plaintiffs seek the production of the missing attachments and imbedded images. Apple asserts that Apple properly produced emails, including attachments and images, as those documents were kept in the ordinary course of business. After investigating a number of the examples Plaintiff identified, Apple discovered that Plaintiffs' list of "missing" attachments included documents Apple had already produced and documents discussing irrelevant products and issues.

    **ii.**    **Parties' Positions**

        **a.**    **Plaintiffs' Position**

    Apple should be compelled to search for, and produce, all non-produced email attachments and images corresponding to produced emails.

*Apple Produced Emails without Their Attachments or Imbedded Images:*

    Apple has produced nearly 48,000 documents in this matter, including numerous emails. Apple generally produced the emails as threads or chains. Where an email occurred lower on a produced email chain, Apple did not separately produce the individual emails within the chain.

**LARSON · O'BRIEN** LLP

Apple represents that it did so because it reflects how the emails are stored in the ordinary course of business. Plaintiffs do not take issue with the production of emails as they are stored in the ordinary course of business, nor do Plaintiffs contend that Apple should be required to produce every email in its possession separately.

In the course of prosecuting this case, however, Plaintiffs discovered that Apple failed to produce certain email attachments and imbedded images that corresponded to the emails that Apple did produce. For example, a November 21, 2016, email, Bates Numbered APL-DAVIDSON 02432079, is part of a produced email chain. The most recent email in that chain, dated November 24, 2016, appears on APL-DAVIDSON 02432078. The November 21, 2016, email indicates that it originally included the attachment "<PastedGraphic-9.pdf>." However, the document named PastedGraphic-9.pdf does not appear to be one of the nearly 48,000 documents Apple produced.

In 2017, in an effort to informally resolve the matter, Plaintiffs wrote to Apple and raised the missing attachments issue. In response, Apple stated, among other things, that it would "endeavor" to locate missing attachments to the extent Plaintiffs identified a "reasonable number[.]"

Although it was not Plaintiffs burden to do so, in the interest of cooperation, Plaintiffs provided Apple an exemplar list of 1,400 documents and emails that were produced without their corresponding attachments or imbedded images. Apple, however, refused to review the documents, contending that the list "exceed[ed] the bounds of reasonableness." In the same vein, Apple faulted Plaintiffs for not specifically identifying "what portions" of the documents included missing images or attachments, and asserted that it was "unreasonable to ask Apple to comb through each of these 1400 documents" to determine whether the attachments had been produced and produce the non-produced attachments.

In a further effort to resolve this issue, Plaintiffs provided a revised list of only 248 documents—essentially 0.5% of the documents Apple produced—that appeared to be missing attachments or images. Apple, however, rejected this offer as well. And despite Apple's representations below, they did not "agree" to produce the missing attachments and images in these 248 documents until the day this letter was filed. Prior to that, they flatly rejected Plaintiffs' offer to compromise multiple times. Further, Apple added that (1) to the extent the non-produced attachments had been deleted, the deletion occurred prior to the institution of its litigation hold (which Plaintiffs understand Apple instituted in December 2016), and (2) in any event, the non-produced attachments were irrelevant. Neither of these excuses is sufficient.

*Apple's Duty to Produce the Missing Attachments/Images:*

Rule 26(e)(1) of the Federal Rules of Civil Procedure requires *Apple* to supplement its discovery responses once it learns that the responses are incomplete. Apple is "expected to supplement and/or correct their disclosures promptly when required under that Rule, without the

555 SOUTH FLOWER STREET · SUITE 4400 · LOS ANGELES, CA 90071 · TEL:213.436.4888 · FAX:213.623.2000
440 FIRST STREET NW · SUITE 450 · WASHINGTON, DC 20001 · TEL: 202.795.4900 · FAX: 202.795.4888
LARSONOBRIENLAW.COM

need for a request from opposing counsel or an order from the Court." *Jones v. Travelers Cas. Ins. Co. of Am.*, 304 F.R.D. 677, 679 (N.D. Cal. 2015) (Koh, J.).

Furthermore, Apple's insistence that Plaintiffs identify the missing attachments is not a creditworthy solution. As courts have recognized, such proposals are "unfair and impractical." *Nguyen v. Roth & Rau AG*, No. CCB-06-1290, 2009 WL 10682036, at *3 (D. Md. July 28, 2009); *Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, No. 08 CIV. 7508 SAS, 2011 WL 3738979, at *7 (S.D.N.Y. Aug. 18, 2011), *report and recommendation adopted*, No. 08 CIV. 7508 SAS, 2011 WL 3734236 (S.D.N.Y. Aug. 24, 2011) ("[I]t would be not only inefficient, but also patently unfair, to place the burden on . . . [the non-producing party] to identify all of the emails that are missing attachments and to identify those emails to . . . [the producing party] for the purpose of further productions."). That is especially so here where it appears that there are potentially thousands of documents that were produced that do not contain the attachments or imbedded images.

*Relevancy*:

Apple has repeatedly refused to locate and produce non-produced email attachments or imbedded images on the basis that such attachments are either irrelevant or that determining whether the attachments are relevant would be burdensome. Apple's objection, however, rests on two flawed premises.

First, Rule 26 makes clear that "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Thus, to the extent Apple's objection is premised on Fed. R. Evid. 401 and 402, such concerns are misplaced and improper.

Second, email attachments are relevant if the parent email is relevant. *See, e.g.*, *Nguyen*, 2009 WL 10682036, at *2 ("Since e-mails are ordinarily stored with their attachments, and since an e-mail typically needs to be paired with its attachment in order for either to be fully comprehensible, those courts that have addressed this issue have held that e-mails and their attachments must be produced together"); *CP Solutions PTE, Ltd. v. Gen. Elec. Co.*, No. 3:04-cv-2150, 2006 WL 1272615, at *4 (D. Conn. Feb. 6, 2006) ("Attachments should have been produced with their corresponding e-mails."). Moreover, imbedded images within relevant emails are also, by definition, relevant. Apple's suggestion that in order to prove the relevance of the attachments and images, Plaintiffs should perform a google search of the titles of the attachments and imbedded images to determine if they relate to the components of the phones at issue in this case is the height of absurdity and arrogance. If Apple has determined that the email—and the discussion contained in the email—should be produced, it must also produce the attachments and images contained in the email.

555 SOUTH FLOWER STREET • SUITE 4400 • LOS ANGELES, CA 90071 • TEL:213.436.4888 • FAX:213.623.2000
440 FIRST STREET NW • SUITE 450 • WASHINGTON, DC 20001 • TEL: 202.795.4900 • FAX: 202.795.4888
LARSONOBRIENLAW.COM

*The Deletion of Relevant Documents After the Commencement of Litigation Is not an Acceptable Excuse:*

Apple had a duty to preserve relevant evidence once the complaint was filed. *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 990 (N.D. Cal. 2012) ("[T]here is no question that the duty to preserve relevant evidence may arise even before litigation is formally commenced."). Here, the subject line and body of the November 2016 email chain referenced above makes clear that it pertains to Plaintiffs' core allegations: "Re: N56 Multi touch/flickering web reporting update (Nov 20th/full)".   Because the emails were sent after August 27, 2016—the date this action was filed—it and all its attachments should have been preserved. *See Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003).  If any attachments to the November 2016 email were destroyed it would be a violation of Apple's discovery obligations.  Indeed, it would be particularly concerning here, given that Apple is one of the world's leading technology companies, guided by sophisticated counsel, and has repeatedly litigated document preservation issues, including before this very Court.  *See*, *e.g.*, *Apple Inc.*, 888 F. Supp. 2d at 990 (Koh, J.).

*Apple's Burdensomeness Objection Should Not Be Credited:*

Apple's objections that complying with its preservation and supplementation duties are "overbroad," "burdensome," and "not proportional," fail to consider Rule 26(b)'s explicit factors in reviewing the proportionality of discovery requests.  In fact, rule 26(b)'s factors weigh in favor of the requests' proportionality and compelling Apple's responses:

- **Factor 1:**  The issues at stake in this action are considerably important and may affect millions of people who have purchased the defective phones.  (Compl., ¶ 93 (Apple sold 13 million iPhone 6 and 6 Plus devices in the opening weekend alone).)

- **Factor 2:**  The amount in controversy is also significant as the potential class may include tens of millions of individual plaintiffs.

- **Factor 3:**  The Parties' relative access to the information is completely one-sided in Apple's favor. To the extent the attachments have not been destroyed, they exist entirely within Apple's possession, custody, and control.

- **Factor 4:**  The contention that producing material that should have already been produced is burdensome or not proportional is nonsensical; the notion that Apple lacks sufficient resources to do so is absurd.  To the contrary, the availability of resources in this case does not favor the putative class members, but instead favors the first public company to achieve a trillion dollar valuation.

- **Factor 5:**  The importance of the discovery in resolving the issue also favors compelling discovery.  Plaintiffs expect that a significant part of their case will be

supported by Apple's internal emails, and their meaning. Depriving Plaintiffs of the attachments and images contained in those emails deeply prejudices Plaintiffs' ability to prove their case.

In sum, Apple's objections to producing email attachments and images are wholly without merit. The Court should grant Plaintiffs' request to compel.

b. **Defendant's Position**

**A. Overview**. Plaintiffs concede that Apple properly produced documents as they are stored in the ordinary course, but seek to compel Apple to do more. Plaintiffs do not dispute that Apple is required only to conduct a reasonably diligent search for responsive documents, and that it may produce documents as they are stored in the ordinary course. That is exactly what Apple did. After Plaintiffs asked about embedded images and attachments that appeared "lower down" in email chains, Apple investigated samples of the images Plaintiffs identified and determined that many images *related to irrelevant products* or were *cumulative or already produced*. Plaintiffs have nevertheless demanded that Apple comb through every record in its production database—spanning over 2.8 million pages—and search for and produce *all* embedded files, even if they have no relevance whatsoever to the products and issues in this lawsuit.

To avoid unnecessary motion practice and to conserve the resources of this Court, Apple offered to search for and produce all embedded files contained in the documents identified on Plaintiffs' "compromise" list of 248 records (even if those embedded files are irrelevant). Plaintiffs rejected Apple's offer, insisting that Apple must produce *all* embedded files contained in *all* 48,000 of its produced records. Because Plaintiffs failed to meet their burden to show that all such embedded files are relevant and proportional to the needs of the case, the Court should deny Plaintiffs' motion.

**B. Background**. Plaintiffs admit that Apple produced records in the form it maintains them in the ordinary course of business. Apple did not remove any embedded images and attachments when it produced emails. Rather, when an email recipient "replies" to an email that has images or files attached to it, those images and files do not appear in the original sender's email in the ordinary course, but a filename is embedded in the text of the email chain going forward.

As Plaintiffs further admit, Apple has no obligation to produce every single, original email in its possession separately. Because Apple employees may work on multiple projects and multiple different issues, Apple's production includes many emails that are part of long chains, and only a portion of those chains relate to relevant issues. Apple produced emails that contained any relevant information in their entirety and with the entire email chain—including discussions "lower in the chain" that often involved different products (*e.g.*, iPads) or unrelated issues (*e.g.*, camera issues).

# LARSON·O'BRIEN LLP

Plaintiffs first raised the issue of supposedly "missing" images and attachments in December 2017. Apple offered to search for a reasonable number of relevant images and files that Plaintiffs believed to be "missing." In response, Plaintiffs provided Apple with a list of almost 1400 documents that Plaintiffs claimed referred to "missing" embedded images and files. Apple reasonably investigated a sample of the documents on Plaintiffs' list—only to determine that Plaintiffs' list included PDF and Excel files with no "embedded" images, and emails referring to potentially thousands of embedded filenames that Apple produced in its production in original form, or that related to irrelevant products or issues. Plaintiffs admitted that they had generated their list through automated searching, without undertaking to determine whether any of the requested images and files were relevant or already produced.

Plaintiffs subsequently narrowed their request to a list of 248 documents. Among those on Plaintiffs' list, however, were documents regarding multiple different Apple products, whose embedded images and attachments did not even relate to the iPhones at issue. Apple reiterated that it was not proportional to the needs of the case for Apple to comb through each document on Plaintiffs' list to identify (1) which of the embedded images have already been produced and (2) which might actually be relevant. Nevertheless, Apple repeated its offer to conduct a reasonable search if Plaintiffs believed that certain relevant images or files had not been produced.

**C. Apple Is Not Required to Produce Irrelevant Information or Unduly Burdensome Discovery.** In Plaintiffs' renewed motion for class certification, Plaintiffs stated that the "products in question are the iPhone 6 and iPhone 6 Plus" and "the defect in question is the touchscreen." (ECF No. 270 at 1.) Plaintiffs fail to meet their burden of establishing that the requested discovery is relevant to those products and issues and proportional to the needs of the case.

Plaintiffs' motion seeks to compel Apple to search for and produce thousands—perhaps even tens of thousands—of irrelevant embedded files. Apple's sampling of documents on Plaintiffs' identified lists quickly revealed that much of the requested information was irrelevant. For example, Plaintiffs' list included a 17-page report (APL-DAVIDSON_02397919) summarizing issues across multiple different Apple products. The report contained over 30 embedded files in "lower" email chains—all of which related to irrelevant Apple products and issues, such as:

- iPhone 7-related nickel foot improvements
- iPhone 6S-related equipment maintenance, drill bits, and camera updates; and
- iPad-mini-related improvements.

When Apple asked Plaintiffs to identify what embedded files in this document they believed were relevant, Plaintiffs asserted that "*a fortiori*, images embedded in produced emails are obviously relevant." In other words, Plaintiffs took the position that all embedded files in Apple's production are relevant—even if they relate to drill bits in the iPhone 6S—merely

because Apple produced the document.  Apple prepares many summary documents in the ordinary course that involve multiple different products and issues.  During discovery, if Apple identified an email as responsive, and that email, as kept in the ordinary course, included attachments and images, all attachments and images (no matter how irrelevant) were produced to Plaintiffs.  Apple has no obligation to conduct *even more* searches for irrelevant embedded files that have nothing to do with the iPhone 6 and 6 Plus touchscreens at issue here.

Although Apple offered multiple times to search for relevant embedded files that Apple has not already produced, Plaintiffs have consistently insisted that Apple comb through all 2.8 million pages of its production and hunt down each and every irrelevant embedded file referenced.  Such a request is unreasonable and not proportional to the needs of the case.  Plaintiffs have failed to show that embedded files relating to irrelevant products and issues have any "importance . . . in resolving the issues" in dispute.  *See* Fed. R. Civ. P. 26(b); *G.P.P., Inc. v. Guardian Prot. Prods., Inc.*, No. 1:15-cv-00321-SKO, 2016 U.S. Dist. LEXIS 88926, at *2 (E.D. Cal. July 8, 2016) ("The relevance of each document in a document 'family' should be assessed separately.").

Nor have Plaintiffs shown that the "the burden or expense of the proposed discovery outweighs its likely benefit."  *See* Fed. R. Civ. P. 26(b); *Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*, No. 08 Civ. 7508 (SAS), 2011 U.S. Dist. LEXIS 95912, at *31-32 (S.D.N.Y. Aug. 18, 2011) (allowing withholding of email attachments based on undue burden), *report and recommendation adopted*, 2011 U.S. Dist. LEXIS 94727, at *6-7 (S.D.N.Y. Aug. 24, 2011).  Plaintiffs' request would pose undue burden without any showing that such burden will yield relevant and noncumulative discovery.  Consider the email discussed above with 30-embedded images.  Apple would need to track down and collect each and every original email thread (well over a dozen), conduct further searches to determine if they have already been produced, and review the attachments to each original email thread to determine responsiveness (all are irrelevant).  Apple would need to repeat that process 48,000 times, covering 2.8 million pages of records.

Plaintiffs' case authority supports Apple or is distinguishable.  In *Abu Dhabi*, for example, the court agreed that the producing party could *withhold* e-mail attachments that were either irrelevant or unduly burdensome to collect and produce.  *Id.* at *32.  Plaintiffs' citations to *Nguyen v. Roth & Rau* AG, No. CCB-06-1290, 2009 U.S. Dist. LEXIS 138187, at *5 (D. Md. July 28, 2009), and *CP Sols. PTE, Ltd. v. GE*, No. 3:04cv2150(JBA) (WIG), 2006 U.S. Dist. LEXIS 27053, at *9 (D. Conn. Feb. 6, 2006), are distinguishable.  The defendants there did not produce emails as kept in the ordinary course, and the requested discovery was not burdensome.

Plaintiffs' motion to compel Apple to undergo significant burden to find irrelevant embedded images should be denied. [1]

---

[1] Plaintiffs' attempt to justify their unreasonable requests by suggesting that Apple has not complied with its preservation obligations is meritless.  Plaintiffs mischaracterize the timing of the litigation hold, and Plaintiffs cannot identify any instance of a relevant document that was

### iii. Parties' Views Regarding the Necessity of a Hearing

#### a. Plaintiffs' Position

A hearing is warranted in this matter because Defendant's position is unclear. Defendant claims the missing attachments are irrelevant (despite being embedded in emails Defendant produced as relevant). Defendant also claims the missing images were not produced because Defendant is under no obligation to search and locate them. Moreover, Plaintiffs have identified emails with missing attachments that were created and sent after this litigation began, raising the specter that those attachments were deleted by Apple prior to production. These issues weigh in favor of a hearing before the Court.

#### b. Defendant's Position

If the Court believes a hearing would be helpful to further discuss the undue burden imposed by Plaintiffs' unreasonable requests to produce irrelevant, previously-produced, and/or cumulative documents, Apple is available for a hearing at the Court's convenience.

### iv. Discovery Cut-off Dates

Fact discovery cut-off is Friday, November 9, 2018.
Expert discovery cut-off is Friday, March 8, 2019.

### v. Compliance with Meet and Confer Requirements

Lead counsel for the parties conferred telephonically regarding this dispute on November 5, 2018. Present on the call were David C. Wright (lead counsel), R.C. Harlan, and Uri Niv on behalf of Plaintiffs, and Arturo J. González (lead counsel), Tiffany Cheung, and Christopher L. Robinson for Defendant.

///

///

///

///

---

improperly destroyed after a duty to preserve documents arose in this case. Plaintiffs never identified the "example" cited in their motion (APL-DAVIDSON_02432078) during any meet and confers. In any event, this "example" appears substantially similar to and cumulative of other documents in Apple's production (*e.g.*, APL-DAVIDSON_02395039). Consistent with Apple's repeated offers, however, Apple will search for a copy of the original November 21, 2016 email with attachments and, when located, will promptly produce it.

Dated: November 9, 2018    McCUNE WRIGHT AREVALO, LLP

By:   /s/ David C. Wright
   David C. Wright[2]
   dcw@mccunewright.com
   3281 East Guasti Road, Suite 100
   Ontario, California 91761
   Telephone: (909) 557-1250

   Stephen G. Larson
   slarson@larsonobrienlaw.com
   RC Harlan
   rcharlan@larsonobrienlaw.com
   **LARSON O'BRIEN LLP**
   555 S Flower St., Suite 4400
   Los Angeles, CA 90071
   Telephone: (213) 436-4888

   Attorneys for Plaintiffs and the
   Putative Class

Dated: November 9, 2018    MORRISON & FOERSTER LLP

By:   /s/ Arturo J. Gonzalez
   ARTURO J. GONZÁLEZ
   AGonzalez@mofo.com
   425 Market Street
   San Francisco, California 94105-2482
   Telephone: (415) 268-7000
   Facsimile: (415) 268-7522

   Attorneys for Defendant APPLE INC.

---

[2] Filer attests that all signatories listed concur in the filing's content and have authorized the filing pursuant to Local Rule 5-1(i)(3).