United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

12

13

14

15

16

17

THOMAS DAVIDSON, et al.,

        Plaintiffs,

   v.

APPLE, INC.,

        Defendant.

Case No. 16-CV-04942-LHK

**ORDER GRANTING IN PART AND DENYING IN PART APPLE'S MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 291

18

19

20

21

22

     Plaintiffs bring this putative class action against Defendant Apple, Inc. ("Apple") based on Apple's alleged failure to disclose an alleged defect with the iPhone 6 and iPhone 6 Plus. Before the Court is Apple's motion for summary judgment. ECF No. 291 ("Mot."). Having considered the submissions of the parties, the relevant law, and the record in this case, the Court GRANTS in part and DENIES in part Apple's motion for summary judgment.

23

## I.    BACKGROUND

24

### A.  Factual Background

25

26

27

     Apple is the designer, manufacturer, marketer, and seller of the iPhone smartphone. ECF No. 177 at ¶¶ 21, 25-26. The iPhone utilizes a touchscreen for users to interact with the device. *Id.* at ¶ 26. Apple released the iPhone 6 and iPhone 6 Plus on September 19, 2014. *Id.* at ¶ 25. The

28

1

iPhones have, *inter alia*, text messaging capability, a camera, music and internet access. *Id.* at ¶ 28. Two chips are responsible for the iPhones' touchscreen capabilities: the Cumulus chip and the Meson chip. Ex. 3 at 6.[1]

### 1. The Alleged Defect

According to Plaintiffs, the iPhones suffer from an alleged material manufacturing defect that causes the touchscreen to become unresponsive to users' touch inputs (hereinafter, the "touchscreen defect"). *Id.* at 13, 25. The touchscreen system is also known as the multitouch system. Ex. 16 at 101:9-12. Plaintiffs claim that the touchscreen defect is the "combination of the following: the bendy nature of the iPhones' external casing, which bend during normal use; the weakness of the logic board (for example, due to a lack of underfill[2]); and the placement of the Meson chip at the L/3 location of the iPhones which is the location where the strain is the greatest, which under normal use can result in solder ball joint fractures and cracks, rendering the touchscreen inoperabl[e] at least some of the time." *Id.* (footnote added). A logic board is the same as a circuit board. Ex. 7 at 116:2-9. Plaintiffs explain that because the iPhones' casing is susceptible to bending, the main logic board and its attached components (i.e., the Meson chip, which is bonded to the main logic board by solder balls) are also susceptible to the same bending forces. Ex. 4 at ¶¶ 28, 62. These bending forces can create the solder ball joint fractures and cracks, which create a poor connection between the Meson chip and the main logic board. Ex. 3 at 21. This poor connection results in a lack of electrical contact between the chip and the logic board, thus creating a nonresponsive touchscreen. ECF No. 172 at ¶ 53.

Apple argues that "the solder cracks . . . allegedly responsible for the 'Touchscreen Defect' will *not* arise unless the phone has been ***repeatedly dropped on a hard surface*** followed by further stress, such as thousands of torsion cycles." Mot. at 13 (emphasis in original). However, Apple has not conducted any studies to determine whether users of the iPhones were abusing their phones

---

[1] Unless otherwise specified, references to exhibits are to the exhibits to the Harlan Declaration submitted in support of Plaintiffs' opposition to Apple's motion for summary judgment.
[2] Underfill is defined as "a black liquid that is injected under the chips and then cured into a rock hard 'electronics superglue.'" Ex. 3 at 8.

2

more often or to a greater degree than users of prior iPhone models. Ex. 10 at 41:9-44:10; Ex. 14 at 88:17-21.

### 2. Apple's Pre-Release Knowledge of the Touchscreen Defect

Plaintiffs claim that Apple knew about the touchscreen defect before releasing the iPhone 6 and iPhone 6 Plus on September 19, 2014. Plaintiffs argue that "Apple has long known that strain on the logic board from bending of the phone causes precisely the type of harm Plaintiffs allege." Opp. at 5 (citing Ex. 9 at APL-DAVIDSON_02323103 ("On many projects where we see high strain in the past, we have either solder joint breakage or in this particular case trace crack.")). Moreover, in Apple's prototype carry program, one of the reported comments was "[d]evice bent after usage." Ex. 37 at APL-DAVIDSON_02383929. According to Apple's internal product testing, the iPhone 6 Plus would bend at about 65% of the force required to bend its predecessor phone. Ex. 10 at 231:13-23. In addition, the iPhone 6 Plus had the lowest yield strength of any iPhone model Apple had produced to date. *Id.* at 140:15-24.

### 3. Apple's Post-Release Knowledge of the Touchscreen Defect

Plaintiffs also claim that Apple knew of the touchscreen defect after the iPhones' release. Internal Apple emails revealed that Apple employees were aware of news stories and customer complaints about the iPhone 6 Plus bending. Ex. 5 at APL-DAVIDSON_02430568. Within the first two weeks of the iPhones' launch, Apple began to hear of issues from customers complaining about touch responsiveness. Ex. 15 at 114:12-15. It was during these few weeks after launch that Apple realized customers were experiencing multitouch functionality issues at a higher rate than predecessor models of iPhones. Ex. 14 at 79:5-80:15. Worldwide, 22 days from the first customer shipment of the iPhones, 5,793 iPhones had been returned for "Display – Image Quality" complaints; 3,221 iPhones had been returned for "Display – Multi-touch" issues; and 2,304 iPhones had been returned for "Physical Damage – Enclosure" issues. Opp. at 7; Ex. 20 at APL-DAVIDSON_02397850. Furthermore, Plaintiffs point to internal 2015 Apple emails discussing a cracked trace underneath the Meson chip. Ex. 36 at APL-DAVIDSON_02333326.

Moreover, Apple's original risk assessment projections for its iPhones' enclosure bending

United States District Court
Northern District of California

was changed from 200 to 600 defective parts per million to 3,700 defective parts per million for the iPhone 6 and 8,000 defective parts per million for the iPhones 6 Plus. Ex. 10 at 231:14-24; Ex. 13 at APL-DAVIDSON_00056491. Additionally, after the iPhones were released, Apple conducted more bend testing, which identified the area around the SIM card tray (near to where the Meson chip is located in the phone) as being the weakest part of the enclosure. Ex. 10 at 182:19-184:7. Apple also investigated changing the phone casing material to 7K aluminum, which would result in a reduction in deformation when the phone was subjected to a 95 kg load. Ex. 1 at 227:25-228:22; Ex. 12 at APL-DAVIDSON_02430365. However, Apple never changed the casing material for the iPhones. Ex. 14 at 52:8-22.

In May or June of 2015, Apple's quality team concluded that the root cause of the touchscreen issues was trace cracks on the circuit board at the location where the Meson chip was attached. Ex. 10 at 102:19-25. Apple changed the shape of the circuit board traces to try and fix the touchscreen issues, but despite the fix, the touchscreen failure rates were still high compared to previous iPhone models. *Id.* at 103:14-20. At the time, Apple emails show an acknowledgement that the "trace won't crack [without] any external force applied." Ex. 21 at APL-DAVIDSON_02360390. In fact, even after the fix, Apple saw an increase in the failure rate of the touchscreens on the iPhone 6 Plus. Ex. 14 at 210:3-17.

On June 22, 2015, Apple's senior manager of iPhone quality stated in an email that "[e]nclosure bending likely contributed to the stress causing trace-crack in addition to mechanical shock (drop) events, based on field data correlation, case not mining, and physical units measurement." Ex. 23 at APL-DAVIDSON_02367881.

### 4. Multi-Touch Repair Program

On November 18, 2016, Apple announced a customer service program related to the touchscreen defect called the "Multi-Touch Repair Program." ECF No. 177 at ¶ 119. Prior to the Multi-Touch Repair Program, Apple charged approximately $349 for a refurbished iPhone when a consumer complained of the touchscreen defect outside of Apple's warranty. ECF No. 172 at ¶ 119. Through Apple's Multi-Touch Repair Program, Apple has offered to repair consumers'

devices for $149 if the consumers' iPhone is otherwise working, and the screen is not broken. *Id.* Through the program, Apple also offers to reimburse consumers for amounts previously paid over $149. *Id.* at ¶ 120.

### 5. The Plaintiffs

Each named Plaintiff experienced the touchscreen defect after purchasing their iPhone. Below is a chart summarizing the relevant details of the six named Plaintiffs whose claims are at issue in the instant motion for summary judgment. ECF No. 172 at ¶¶ 10, 12, 14-15, 18, 19.

| Name | State | Date of Purchase | Alleged Date of Onset of Defect |
|------|-------|------------------|----------------------------------|
| Justin Bauer | Colorado | March 11, 2015 | July 2015 |
| John Borzymowski | Florida | September 19, 2014 | February 2016 |
| Taylor Brown | Texas | November 11, 2014 | January 2016 |
| William Bon | Washington | January 10, 2015 | August 2016 |
| Matt Muilenberg | Washington | February 28, 2015 | May 2016 |
| Eric Siegal | Illinois | December 18, 2015 | September 2016 |

### B. Procedural History

On August 27, 2016, Plaintiffs Thomas Davison, Jun Bai, and Todd Cleary filed a putative class action complaint against Apple that alleged causes of action under (1) California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750; (2) Unfair Competition Law, Cal Bus. & Prof. Code § 17200; (3) False Advertisement Law ("FAL"), Cal. Bus. & Prof. Code § 17500; (4) common law fraud; (5) negligent misrepresentation; (6) unjust enrichment; (7) breach of implied warranty; (8) violation of the Magnusson-Moss Warranty Act ("Magnusson-Moss Act"), 15 U.S.C. § 2301; and (9) violation of the Song-Beverly Consumer Warranty Act ("Song-Beverly Act"), Cal. Civ. Code § 17290. *See* ECF No. 1.

On October 7, 2016, Plaintiffs filed a First Amended Class Action Complaint that added several named Plaintiffs and added causes of action under the consumer fraud statutes of Illinois, New Jersey, Florida, Connecticut, Texas, Colorado, Michigan, New York, and Washington. *See*

United States District Court
Northern District of California

ECF No. 20. On December 2, 2016, Plaintiffs filed a Second Amended Class Action Complaint

("SACC"), which added a Utah Plaintiff and a cause of action under Utah's consumer fraud

statute. Plaintiffs sought to represent a Nationwide Class of "[a]ll persons or entities in the United

States that purchased an Apple iPhone 6 or 6 Plus." Alternatively, Plaintiffs sought to represent

state sub-classes. *Id.*

Given the breadth of the Plaintiffs' action, the Court ordered the parties at the November

30, 2016 initial case management conference to each select 5 causes of action—for a total of 10

causes of action—to litigate through summary judgment. *See* ECF No. 44. On December 5, 2016,

the parties selected (1) New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. § 56:8-1; (2)

Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201; (3)

Washington Consumer Protection Act ("WCPA"), Wash. Rev. Code § 19.86.010; (4) Illinois

Consumer Fraud and Deceptive Trade Practices Act ("ICFDTPA"), Ill. Comp. Stat ¶ 505; (5)

Texas Deceptive Trade Practices Act ("TDTPA"), Tex. Bus. & Com. Code ¶ 17.41; (6) Colorado

Consumer Protection Act ("CCPA"), Colo. Rev. Stat. § 6-1-105; (7) common law fraud; (8)

breach of express warranty; (9) breach of implied warranty; (10) Magnusson-Moss Act. *See* ECF

No. 44, at 1-2. The parties did not select any California statutory claims. *See id.*

On January 6, 2017, Apple filed a motion to dismiss the SACC. ECF No. 54. On March

14, 2017, the Court dismissed all 10 of the selected claims with leave to amend. *See* ECF No. 84;

*Davidson v. Apple, Inc.*, 2017 WL 976048 (N.D. Cal. Mar. 14, 2017) ("*Davidson I*"). The Court

found that Plaintiffs had adequately alleged Article III standing to bring fraud claims. *Id.* at *5.

However, the Court concluded Plaintiffs had not adequately alleged standing to seek an injunction.

*Id.* at *6-7. The Court thus granted Apple's motion to dismiss with leave to amend to the extent

that Plaintiffs sought injunctive relief.

The Court next dismissed Plaintiffs' fraud claims because Plaintiffs failed to satisfy Rule

9(b)'s heightened pleading requirements. First, Plaintiffs' fraud claims premised on an affirmative

misrepresentation theory were not pleaded with sufficient particularity because Plaintiffs did not

allege any affirmative statement to which Plaintiffs were exposed or reviewed. *Id.* at *8. Second,

with regards to Plaintiffs' claims premised on a fraudulent omission theory, the Court held that Plaintiffs had failed to plead with particularity any fraud claim premised on fraudulent omissions because Plaintiffs had failed to plead "that they reviewed or were exposed to *any* information, advertisements, labeling, or packaging by Defendant," and thus Plaintiffs had failed to plead that they encountered or were exposed to any material through which Apple could have made a fraudulent omission. *Id.* Accordingly, the Court granted Apple's motion to dismiss Plaintiffs' claims for fraud under the NJCFA, FDUTPA, WCPA, ICFDTPA, TDTPA, CCPA, and common law. *Id.* at *10.

Finally, the Court applied California law to Plaintiffs' warranty claims because the parties briefed only California law. *Id.* The Court held that, with regards to Plaintiffs' breach of express warranty claim, Plaintiffs had failed to state a claim because Plaintiffs alleged only a defect in the iPhone's design, and Apple's express warranty did not cover defects in design. *Id.* Moreover, the Court held that all but two Plaintiffs had failed to allege that the touchscreen defect manifested within Apple's one-year warranty period. *Id.* at *12. The Court rejected Plaintiffs' argument that Apple's one-year duration provision was unconscionable. *Id.* The Court also rejected Plaintiffs' limited warranty claim under California law because Apple had properly disclaimed limited warranties and the disclaimer was not unconscionable. *Id.* The Court also dismissed Plaintiffs' Magnusson-Moss Act claim, which was dependent on Plaintiffs' other warranty claims. *Id.*

Thus, the Court dismissed all 10 selected causes of action with leave to amend and ordered the parties to specify which states' law applied to the common law causes of action. *Id.* On March 21, 2017, in response to this Court's order, Plaintiffs elected to litigate their common law breach of warranty claims under Illinois law and Apple elected to litigate its common law fraud claim under Pennsylvania law. ECF No. 85.

On April 4, 2017, Plaintiffs filed the Third Amended Class Action Complaint ("TACC"). ECF No. 86. Plaintiffs alleged in the TACC that, prior to their iPhone purchases, Plaintiffs viewed a variety of information from Apple, such as Apple's press releases about the iPhone, Apple's keynote address about the iPhone, and television commercials about the iPhone. *See id.* at ¶¶ 8-20.

United States District Court
Northern District of California

Immediately after their purchase—and within the time window for returning their iPhone free of charge—Plaintiffs reviewed the iPhone box and information within the box. *See id.* Further, either prior to their purchase or within the time window in which they could have returned their iPhones free of charge, all Plaintiffs viewed Apple's September 25, 2014 "BendGate" statement. *See id.*

On April 18, 2017, Apple moved to dismiss the TACC. *See* ECF No. 87.

On July 25, 2017, the Court granted in part and denied in part Apple's motion to dismiss. *See* ECF No. 103; *Davidson v. Apple, Inc.*, 2017 WL 3149305 (N.D. Cal. July 25, 2017) ("*Davidson II*"). To start, the Court found that some Plaintiffs lacked standing to seek injunctive relief enjoining Apple's allegedly fraudulent misrepresentations and omissions about the iPhones because they did not intend to buy a new phone or participate in Apple's Multi-Touch Repair Program. *Id.* at *7-8. Conversely, other Plaintiffs did have standing to seek injunctive relief because they intended to participate in the Multi-Touch Repair Program, or were at least willing to consider doing so. *Id.* at *8-9.

The Court then turned to Plaintiffs' fraud claims. First, the Court dismissed Plaintiffs' fraud claims based on affirmative misrepresentations "because Plaintiffs have failed to identify an actionable misrepresentation in the September 25, 2014 statement—and because this statement is the only statement that forms the basis of Plaintiffs' affirmative misrepresentation claims." *Id.* at *13. Second, the Court declined to dismiss Plaintiffs' fraud claims based on an omission theory because "Plaintiffs have sufficiently alleged the information about the iPhone to which Plaintiffs were exposed either prior to their purchase or immediately after their purchase and within the time window in which they could have returned their iPhone for a full refund." *Id.* at *14. The Court also found that Plaintiffs had adequately alleged that Apple knew of the touchscreen defect at the time of the Plaintiffs' purchases. *See id.* at *14-15.

The Court next dismissed Plaintiffs' claims under the NJCFA and Pennsylvania common law fraud with prejudice. Plaintiffs' NJCFA claim failed because the only New Jersey Plaintiff experienced the touchscreen defect after the expiration of Apple's one year limited warranty period, and New Jersey law provides that "[a] defendant cannot be found to have violated the CFA

when it provided a part—alleged to be substandard—that outperforms the warranty provided." *Perkins v. DaimlerChrysler Corp.*, 890 A.2d 997, 1004 (N.J. App. Div. 2006). The Court dismissed Plaintiffs' claim for common law fraud under Pennsylvania because it was barred by the economic loss doctrine, which bars a plaintiff "from recovering in tort economic losses to which their entitlement flows only from a contract." *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 670 (3d Cir. 2002).

Finally, the Court dismissed Plaintiffs' breach of express and implied warranty claims under Illinois law with prejudice. After finding that the limited warranty was not unconscionable, the Court dismissed the breach of express warranty claim because the limited warranty excluded design defects, and Plaintiffs alleged only a design defect. *Davidson II*, 2017 WL 3149305 at *24. Similarly, the Court dismissed the breach of implied warranty claim because the limited warranty was not unconscionable and expressly disclaimed an implied warranty. *Id.* at *26. The Court also dismissed Plaintiffs' claim under California's Magnusson-Moss Act because the parties did not dispute that the claim rose or fell with Plaintiffs' express and implied warranty claims under state law. *Id.*

Thus, five causes of action (all premised on a fraudulent omissions theory) survived Apple's motion to dismiss the TACC: (1) a Colorado Consumer Protection Act ("CCPA") claim; (2) a Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") claim; (3) an Illinois Consumer Fraud and Deceptive Trade Practices Act ("ICFDTPA") claim; (4) Texas Deceptive Trade Practices Act ("TDTPA") claim; and (5) a Washington Consumer Protection Act ("WCPA") claim. These claims are now at issue in the instant motion for summary judgment.

On December 21, 2017, the Court granted the parties' stipulation to file a Fourth Amended Class Action Complaint ("FACC"). ECF No. 169. The FACC was materially identical to the Third Amended Class Complaint save for the substitution of Plaintiff Eric Siegal, an Illinois resident, for Adam Benelhachem, the previous Illinois Plaintiff. *See* FACC. On January 3, 2018, Plaintiffs filed the FACC. ECF No. 172. On January 17, 2018, Apple filed its Answer to the FACC. ECF No. 177.

On December 21, 2018, Apple filed the instant motion for summary judgment. ECF No. 291. On January 17, 2019, Plaintiffs filed their opposition to Apple's motion for summary judgment. ECF No. 302 ("Opp."). On February 1, 2019, Apple filed its reply. ECF No. 305 ("Reply").

## II.      LEGAL STANDARD

Summary judgment is proper where the pleadings, discovery, and affidavits show that there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323.

At the summary judgment stage, the Court must view the evidence in the light most favorable to the nonmoving party: if evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999).

## III.      DISCUSSION

At issue in the instant motion for summary judgment are: (1) a Colorado Consumer Protection Act ("CCPA") claim; (2) a Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") claim; (3) a Washington Consumer Protection Act ("WCPA") claim; (4) an Illinois

Consumer Fraud and Deceptive Trade Practices Act ("ICFDTPA") claim; and (5) a Texas Deceptive Trade Practices Act ("TDTPA") claim. Apple also challenges whether Plaintiffs John Borzymowski (Florida) and Eric Siegal (Illinois) can state a claim for damages under the FDUTPA and ICFDTPA, respectively. Moreover, Apple also challenges Plaintiffs Justin Bauer (Colorado), Taylor Brown (Texas), and Eric Siegal's (Illinois) claims for injunctive relief. The Court addresses each issue in turn.

**A. Colorado Consumer Protection Act ("CCPA") Claim**

To state a claim under the CCPA, "a plaintiff must show: (1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the Plaintiff's injury." *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146-47 (Colo. 2003). A defendant engages in a deceptive trade practice when the defendant "[f]ails to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter a transaction." Colo. Rev. Stat. § 6-1-105(1)(u).

Apple moves for summary judgment on the basis that the alleged touchscreen defect does not exist and that if it did exist, Apple did not know of its existence; that Colorado Plaintiff Justin Bauer did not review the iPhone 6 Plus box before his iPhone 6 Plus purchase; and that Apple disclosed to consumers that dropping the iPhone would potentially damage the phone. Thus, Apple alleges that Apple did not engage in an unfair or deceptive trade practice, that the alleged practice did not impact the public, that Plaintiff Bauer suffered no injury, and that the alleged practice did not cause Plaintiff Bauer's injury.

In its motion, Apple presents evidence challenging the existence of the alleged touchscreen defect in the iPhone 6 and the iPhone 6 Plus. For example, prior to launch, Apple subjected the iPhone 6 and 6 Plus to sit testing, which showed that extensive repetitive bending of the enclosure

11

is insufficient to cause the alleged touchscreen defect. ECF No. 286-1 at ¶ 42. According to

Apple's expert Dr. Reinhold Dauskardt, who reviewed Apple's internal testing protocols,

"Apple's rigorous testing employed very considerable loads" that replicate real-world conditions.

*Id.* at ¶ 45. Apple also subjected the iPhone 6 and 6 Plus to squeeze and pressure tests, which

applied "incremental loads to different locations on the front and rear sides" of the iPhones. *Id.* at

¶ 56. The squeeze and pressure tests are designed to cause "localized deformation of the

[iPhones'] aluminum enclosure." *Id.* None of the squeeze and pressure tests revealed the alleged

touchscreen defect. *Id.* at ¶ 61. Additionally, Apple subjected the iPhone 6 and 6 Plus to torsion

tests, which showed that "repetitively twisting the [iPhones] is not sufficient to cause the alleged"

touchscreen defect. *Id.* at ¶ 64. The torsion tests are designed to test whether the logic board and

its components (such as the Meson chip) would be impacted by strain created by the repetitive

twisting. *Id.* Moreover, Apple's internal emails about its testing show that bending the enclosure

of the iPhone 6 and 6 Plus resulted in "no functional impact" and "minimal cosmetic impact."

Cheung Decl., Ex. K at APL-DAVIDSON_02377954. Post-release of the iPhone 6 and 6 Plus,

Apple conducted additional torsion testing while directly measuring logic board strain at the

Meson chip location. Cheung Decl., Ex. L at APL-DAVIDSON_02309387. Plaintiffs' expert

Charles Curley admitted the strain measurements were within industry standard limits, Cheung

Decl., Ex. G at 206:20-22, which Apple claims confirms that "enclosure bending is not the root

cause of the alleged touchscreen issue," Mot. at 9.

Nonetheless, the Court finds that summary judgment is not appropriate because, at a

minimum, Plaintiffs have shown that there is a genuine issue of material fact as to whether the

alleged touchscreen defect exists, whether Apple had knowledge of its existence, and whether

Apple engaged in an unfair or deceptive trade practice by failing to disclose it. For instance,

Apple's senior manager of iPhone quality Jason Fu admitted in an internal email: "[e]nclosure

bending likely contributed to the stress causing trace-crack [near the Meson chip]." Ex. 23 at APL-

DAVIDSON_02367880. In addition, as part of Apple's "Prototype Carry Program," an Apple

slide deck detailing issues encountered as part of the prototype carry program lists "[d]evice bent

after usage" as a problem classified as "[h]igh [r]isk." Ex. 37 at APL-DAVIDSON_02383929. Moreover, another Apple slide deck states that the "display flickering and multi-touch field failures have been root caused to Meson chip solder cracking." Ex. 34 at APL-DAVIDSON_02358601. Additionally, an internal Apple email by employee Kevin Lo states that "[t]here is an ongoing quality issue . . . that we are looking to combat. It is related to Meson Chip solder cracking." Ex. 33 at APL-DAVIDSON_02394761. Thus, the evidence shows that Apple may have known about the alleged touchscreen defect and omitted it from any of the commercials, print advertisements, and online advertisements reviewed by Plaintiff Bauer, who discussed these advertisements as part of his deposition testimony. *See, e.g.*, Ex. 28 at 120:9-15 ("Q. And did the commercials impact you to go in and buy the phone? A. To the extent that it was informational. I knew [Apple] had a bigger phone. Q. Is that when you first learned that they had a bigger phone? A. Yeah. Yeah."). Plaintiff Bauer was only informed of the iPhone bending issue from the news. *Id.* at 119:13-19 ("Q. When you talked about the materials that you had read or seen before you purchased your [iPhone] 6 Plus, you talked about commercials, print ads, online ads and this statement about the bending issue in the news. Do you recall that? A. Yes.").

As aforementioned, the CCPA requires a showing that "the defendant engaged in an unfair or deceptive trade practice." *Rhino Linings*, 62 P.3d at 146. In light of the internal Apple communications and slide decks describing the alleged touchscreen defect and associating it with enclosure bending despite Apple's internal testing of the iPhone 6 and 6 Plus, which indicate that enclosure bending is not a cause of the alleged touchscreen defect, Plaintiffs have sufficiently demonstrated that there is a genuine issue of material fact as to whether Apple engaged in an unfair or deceptive trade practice by withholding information about the alleged touchscreen defect. Apple disputes the timing of its knowledge of the alleged touchscreen defect. However, that dispute underscores that there are material factual disputes that preclude summary judgment.

Furthermore, Apple argues that Apple's alleged omission on the iPhone box did not affect Plaintiff Bauer's purchase decision, and thus there is no causal nexus between the alleged deceptive practice and any damages Plaintiff Bauer suffered. Mot. at 20. However, Plaintiff Bauer

13

testified that he relied upon Apple's advertisements separate from the iPhone box.

Thus, for the reasons stated above, summary judgment is DENIED as to the CCPA claim.

**B. Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") Claim**

To state a claim under the FDUTPA, there are three elements: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Caribbean Cruise Line, Inc. v. Better Business Bureau of Palm Beach Cty., Inc.*, 169 So.3d 164, 167 (Fla. Dist. Ct. App. 2015) (quoting *Kertesz v. Net Transactions, Ltd.*, 635 F. Supp. 2d 1339, 1348 (S.D. Fla. 2009)). A deceptive act occurs "if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So.2d 773, 777 (Fla. 2003).

Apple moves for summary judgment on the basis that the alleged touchscreen defect does not exist and that if it did exist, Apple did not know of its existence; that Florida Plaintiff John Borzymowski did not review the iPhone 6 Plus box before his iPhone 6 Plus purchase; and that Apple disclosed to consumers that dropping the iPhone would potentially damage the phone. Thus, Apple alleges that Apple did not engage in a deceptive act or unfair practice, that Plaintiff Borzymowski suffered no injury, and that the alleged practice did not cause Plaintiff Borzymowski's injury.

As discussed above, Apple has cited evidence of its internal testing, both pre-release and post-release of the iPhone 6 and 6 Plus, which do not show enclosure bending as a root cause of the alleged touchscreen defect. However, the Court finds that summary judgment is not appropriate because, at a minimum, Plaintiffs have shown that there is a genuine issue of material fact as to whether the alleged touchscreen defect exists, whether Apple had knowledge of its existence, and whether Apple engaged in a deceptive act or unfair practice by failing to disclose it. As discussed above, Plaintiffs have cited documents showing that Apple may have known about the alleged touchscreen defect and concealed it from product advertising. Specifically, Plaintiffs have cited Apple employee emails and Apple slide decks confirming Apple's knowledge of a quality issue related to solder cracking near the Meson chip, and that the iPhone enclosure bending

14

likely contributed to the issue. *See, e.g.*, Ex. 23 at APL-DAVIDSON_02367880 ("Enclosure bending likely contributed to the stress causing trace-crack [near the Meson chip] . . . .").

Moreover, Plaintiff Borzymowski was exposed to Apple's keynote address unveiling the iPhones and Apple's website advertising the iPhones, but neither mentioned the alleged touchscreen defect. *See* Ex. 30 at 315:10-16 ("Q. If the information on Apple's website, the day of the keynote address in September 2014, related to the iPhone 6 Plus had said that the phone could suffer from the [touchscreen defect], would you still have purchased the phone? . . . . The Witness: No.").

As aforementioned, the FDUTPA requires "a deceptive act or unfair practice." *Caribbean Cruise Line, Inc.*, 169 So.3d at 167. Plaintiffs have raised a genuine issue of material fact as to whether Apple committed a deceptive act or unfair practice under the FDUTPA by concealing Apple's alleged knowledge of the alleged touchscreen defect from consumers.

Furthermore, Apple argues that Apple's alleged omission on the iPhone box did not affect Plaintiff Borzymowski's purchase decision, and thus there is no causal nexus between the deceptive practice and any damages Plaintiff Borzymowski suffered. Mot. at 20. However, Plaintiff Borzymowski testified that he relied upon Apple's September 2014 keynote address and Apple's website separate from the iPhone box.

Thus, for the reasons stated above, summary judgment is DENIED as to the FDUTPA claim.

### C. Washington Consumer Protection Act ("WCPA") Claim

To state a claim under the WCPA, a "plaintiff must prove (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation." *Panag v. Farmers Ins. Co. of Washington*, 166 Wash.2d 27, 37 (2009). Causation under the WCPA "for omission of material facts includes a rebuttal presumption of reliance." *Deegan v. Windermere Real Estate/center-Isle, Inc.*, 197 Wash. App. 875, 890 (2017).

Apple moves for summary judgment on the basis that the alleged touchscreen defect does

15

not exist and that if it did exist, Apple did not know of its existence; that Washington Plaintiffs William Bon and Matt Muilenberg did not review the iPhone boxes before their iPhone purchases; and that Apple disclosed to consumers that dropping the iPhone would potentially damage the phone. Thus, Apple alleges that Apple did not engage in an unfair or deceptive act or practice, that the alleged practice did not impact the public, that Plaintiffs Bon and Muilenberg suffered no injury, and that the alleged practice did not cause Plaintiffs Bon and Muilenberg injury.

As discussed above, Apple has cited evidence of its internal testing, both pre-release and post-release of the iPhone 6 and 6 Plus, which do not show enclosure bending as a root cause of the alleged touchscreen defect. However, the Court finds that summary judgment is not appropriate because, at a minimum, Plaintiffs have shown that there is a genuine issue of material fact as to whether the alleged touchscreen defect exists, whether Apple had knowledge of its existence, and whether Apple engaged in an unfair or deceptive act or practice by failing to disclose it. As discussed above, Plaintiffs have cited documents showing that Apple may have known about the alleged touchscreen defect and concealed it from product advertising. Specifically, Plaintiffs have cited Apple employee emails and Apple slide decks confirming Apple's knowledge of a quality issue related to solder cracking near the Meson chip, and that the iPhone enclosure bending likely contributed to the issue. *See, e.g.*, Ex. 23 at APL-DAVIDSON_02367880 ("Enclosure bending likely contributed to the stress causing trace-crack [near the Meson chip] . . . .").

Nevertheless, in Apple's advertising seen by Plaintiffs Bon and Muilenberg, Apple did not mention the alleged touchscreen defect. Plaintiff Bon watched the Apple keynote about the iPhones, which made no mention of any alleged touchscreen defect. *See* Ex. 29 at 108:21-109:5 ("Q. Looking back in time, is there anything that you recall in the keynote that you think relates to the issues you've experienced with your phone? A. No, I don't – I don't think so. I mean, I don't – I definitely don't remember there being any sort of mention of – you know, especially at that time, like, anything about bending or anything about there could be issues because it's a bigger phone."). Plaintiff Muilenberg also watched the Apple keynote as well as various commercials,

which did not disclose the alleged touchscreen defect. *See* Ex. 32 at 251:8-13 ("Q. And so when you are referring to the commercials, what about the commercials made any representations about the touchscreen? A. Well, they show the touchscreen scrolling, they show you opening apps, they show interaction through the device.").

As aforementioned, one of the requirements of a claim under the WCPA is "an unfair or deceptive act or practice." *Panag*, 166 Wash.2d at 37. Thus, Plaintiffs have raised a genuine issue of material fact as to whether Apple committed an unfair or deceptive act or practice under the WCPA by concealing Apple's alleged knowledge of the alleged touchscreen defect from consumers.

Furthermore, Apple argues that Apple's alleged omission on the iPhone box did not affect Plaintiffs Bon and Muilenberg's purchase decision, and thus there is no causal nexus between the unfair or deceptive act or practice and any damages Plaintiffs Bon and Muilenberg suffered. Mot. at 20. However, Plaintiff Bon testified that he relied upon Apple's September 2014 keynote address separate from the iPhone box, and Plaintiff Muilenberg testified that he also relied upon Apple's September 2014 keynote address and various commercials separate from the iPhone box.

Thus, for the reasons stated above, summary judgment is DENIED as to the WCPA claim.

**D. Illinois Consumer Fraud and Deceptive Trade Practices Act ("ICFDTPA") Claim**

To state a claim under the ICFDTPA, "a plaintiff must establish: (1) the defendant's deception; (2) the defendant intended [that] the plaintiff rely on that deception; (3) the deception occurred in commerce; (4) the plaintiff suffered actual damage; and (5) the deception proximately caused the damage." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill.2d 100, 180 (2005). "An omission or concealment of a material fact in the conduct of trade or commerce constitutes consumer fraud." *Connick v. Suzuki Motor Co.*, 174 Ill.2d 482, 504 (1996).

Apple moves for summary judgment on the basis that the alleged touchscreen defect does not exist and that if it did exist, Apple did not know of its existence; that Illinois Plaintiff Eric Siegal did not review the iPhone 6 Plus box before his iPhone 6 Plus purchase; and that Apple disclosed to consumers that dropping the iPhone would potentially damage the phone. Apple also

United States District Court
Northern District of California

alleges that Apple did not engage in deception, that Plaintiff Siegal suffered no injury, and that the alleged deception did not cause Plaintiff Siegal's injury.

The Court agrees with Apple that Plaintiff Siegal has not suffered actual damage, which is an element of an ICFDTPA claim. In the FACC, Plaintiff Siegal alleges that he paid $150 to replace his defective iPhone 6 Plus with another iPhone 6 Plus on September 26, 2016. FACC at ¶ 10. Plaintiffs contend that Plaintiff Siegal suffered actual damage by having to pay $150 to replace his defective iPhone 6 Plus. Opp. at 12, 25. Similarly, in his deposition, Plaintiff Siegal testified that after his phone manifested the alleged touchscreen defect, he paid $150 for a replacement phone. Ex. 39 at 36:25-37:2 ("Q. So you told me that you obtained a replacement phone for your iPhone 6 Plus the first time it manifested the touch screen issue, correct? A. Yes. Q. And you told me that you paid Verizon $150, right? A. Yes").

However, the FACC's allegation and Plaintiff Siegel's deposition testimony that he paid $150 for a replacement iPhone 6 Plus is contradicted by third-party Verizon's records, which indicate that Plaintiff Siegal was not charged anything for his replacement iPhone 6 Plus. Specifically, Plaintiffs' FACC alleged that on September 26, 2016, Plaintiff Siegal paid $150 to a Verizon store to obtain a replacement for his defective iPhone 6 Plus. FACC at ¶ 10. However, Verizon's records from September 26, 2016 show a $0.00 charge for the replacement iPhone 6 Plus that Plaintiff Siegal received. Cheung Decl., Ex. S at APL-DAVIDSON_02434328 ("TOTAL: $0.00 ORDER").

Verizon's records also show that on December 13, 2017—a week before Plaintiff Siegal's deposition on December 20, 2017—Plaintiff Siegal contacted Verizon asking "to know what the bill bal[ance] was during that time bec[ause] he thought he was billed for the warranty replacement." *Id.* at APL-DAVIDSON_02434312. Verizon advised him that there was "no charge." *Id.*

Quite tellingly, Plaintiffs do not dispute the accuracy of Verizon's records. Rather, Plaintiffs argue that "Apple is free to cross-examine [Plaintiff Siegal] on that point at trial." Opp. at 25.

Thus, Plaintiff Siegal is unable to produce anything but his own self-serving statements that he was billed $150 for his replacement iPhone 6 Plus, whereas third-party Verizon records indicate that Plaintiff Siegal was not billed anything for his replacement iPhone 6 Plus. Under Ninth Circuit precedent, courts have "refused to find a genuine issue [of material fact] where the only evidence presented is uncorroborated and self-serving testimony." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (internal quotation marks omitted).

In *Kennedy v. Applause, Inc.*, the Ninth Circuit affirmed a district court's grant of summary judgment in an Americans with Disabilities Act case. 90 F.3d 1477, 1482 (9th Cir. 1996). In *Kennedy*, the plaintiff asserted that the ailment from which she suffered did not render her totally disabled. *Id.* at 1481. In support, the plaintiff relied upon her own deposition testimony that she was not totally disabled. *Id.* However, the plaintiff's testimony was belied by her treating physician's deposition testimony that she was totally disabled, as well as her own admissions on her disability benefit claim forms. *Id.* Thus, the Ninth Circuit found that the plaintiff's "uncorroborated and self-serving" deposition testimony was not enough to raise a genuine issue of material fact. *Id.* Here, there is a similar situation in which Plaintiff Siegal's deposition testimony is uncorroborated, self-serving, and entirely contradicted by Verizon's records showing that Plaintiff Siegal paid nothing for the replacement iPhone 6 Plus. Thus, Plaintiff Siegal's deposition testimony is not enough to raise a genuine issue of material fact as to whether he suffered any damage.

Moreover, in *Thornhill Pub'g Co. v. Gen. Tel. & Electronics Corp.*, the Ninth Circuit rejected a plaintiff's affidavits that were conclusory and speculative, and held that the affidavits were not enough to raise a genuine issue of material fact. 594 F.2d 730, 738 (9th Cir. 1979). The *Thornhill* plaintiff needed to prove that the defendant's acts substantially affected interstate commerce, so the *Thornhill* plaintiff, in an effort to avoid summary judgment, submitted an affidavit stating that "it was common knowledge throughout the directory industry that local dealers in many instances received advertising subsidies from national manufacturers." *Id.* The Ninth Circuit rejected the plaintiff's attempt to avoid summary judgment and wrote that "[i]f,

1    indeed, evidence was available to underpin (the) conclusory statement, Rule 56 required (the party

2    opposing summary judgment) to come forward with it." *Id.* (quoting *Donnelly v. Guion*, 467 F.2d

3    290, 293 (2d Cir. 1972)). Here, Plaintiff Siegal has not come forward with any support for his

4    statement that he paid $150 for his replacement iPhone 6 Plus. In fact, despite an effort to come up

5    with evidence of his purported $150 payment by contacting Verizon, Verizon advised Plaintiff

6    Siegal that he paid *nothing* for the replacement iPhone 6 Plus. Cheung Decl., Ex. S at APL-

7    DAVIDSON_02434312.

8        Aside from the replacement iPhone 6 Plus, Plaintiff Siegal does not and cannot claim that

9    he was damaged by paying for his iPhone 6 Plus in the first instance. During his deposition,

10   Plaintiff Siegal conceded that he did not pay for his iPhone 6 Plus; rather, his employer did.

11   Cheung Decl., Ex. A at 54:24-55:1 ("Q. Did your company pay for the phone or did you pay for

12   the phone? A. The company paid for the phone."). Thus, Plaintiff Siegal could not have been

13   harmed at the point of sale of the iPhone 6 Plus because he was not the one who purchased it.

14       As aforementioned, one of the required elements of an ICFDTPA claim is actual damage

15   to the Plaintiff. *Avery*, 216 Ill.2d at 180. Plaintiffs have failed to raise a genuine issue of material

16   fact as to whether Plaintiff Siegal suffered actual damage resulting from Apple's alleged omission

17   of the touchscreen defect because Plaintiff Siegal concedes that he paid nothing for his iPhone 6

18   Plus and Verizon's records show that Plaintiff Siegal paid nothing for his replacement iPhone 6

19   Plus. Thus, Apple's motion for summary judgment as to the ICFDTPA claim is GRANTED.

20       **E.  Texas Deceptive Trade Practices Act ("TDTPA") Claim**

21       To state a nondisclosure claim under the TDTPA, a plaintiff must prove: "(1) the defendant

22   knew information regarding the goods or services, (2) the information was not disclosed, (3) there

23   was an intent to induce the consumer to enter into the transaction through the failure to disclose,

24   and (4) the consumer would not have entered into the transaction had the information been

25   disclosed." *Patterson v. McMickle*, 191 S.W.3d 819, 827 (Tex. App. 2006).

26       Apple moves for summary judgment on the basis that the alleged touchscreen defect does

27   not exist and that if it did exist, Apple did not know of its existence; that Texas Plaintiff Taylor

28
     Case No. 16-CV-04942-LHK
     ORDER GRANTING IN PART AND DENYING IN PART APPLE'S MOTION FOR SUMMARY JUDGMENT

Brown did not review the iPhone 6 Plus box before his iPhone 6 Plus purchase; and that Apple disclosed to consumers that dropping the iPhone would potentially damage the phone. Also, Apple alleges that Apple did not have any information to disclose regarding the alleged touchscreen defect, that Plaintiff Brown suffered no injury, and that Plaintiff Brown's decision to purchase the iPhone 6 Plus was independent of any omission of information about the alleged touchscreen defect by Apple.

The Court agrees with Apple that Plaintiffs have failed to satisfy prong (4) of a TDTPA claim because Plaintiffs have failed to show that Plaintiff Brown would not have purchased his iPhone 6 Plus had the alleged touchscreen defect been disclosed. Plaintiff Brown's deposition testimony fails to mention what Plaintiff Brown would have done had the omitted information been disclosed. *See generally* Ex. 31. In fact, Exhibit 31 is the only document Plaintiffs cite that relates directly to Plaintiff Brown's claims. But Exhibit 31 merely excerpts 5 pages of Plaintiff Brown's deposition testimony in which the only topic Plaintiff Brown discusses are statements from Apple that he reviewed prior to his iPhone 6 Plus purchase. *See, e.g.*, *id.* at 242:3-7 ("Q. So your testimony now is that you reviewed the September 9, 2014 keynote delivered by Tim Cook before you purchased the iPhone 6 Plus? A. Yes"); *id.* at 244:6-8 ("Q. You reviewed the press release issued by Apple? A. That's fair to say, yes."). Again, other than Exhibit 31, Plaintiffs fail to cite any other document, including a declaration or affidavit from Plaintiff Brown. Thus, Plaintiffs fail to show that Plaintiff Brown would not have purchased his iPhone 6 Plus if the alleged touchscreen defect had been disclosed.

Courts have dismissed TDTPA causes of action for failure to show that the consumer would not have entered into the disputed transaction had the omitted information been disclosed. For instance, in *Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 993 (N.D. Cal. 2016), the court dismissed a TDTPA omission claim because the complaint failed "to allege that Plaintiff would not have entered into the transactions absent the failure to disclose." *Cf. Webb v. UnumProvident Corp.*, 507 F. Supp. 2d 668, 680 (W.D. Tex. 2005) (finding that a plaintiff's affidavit stating that she would not have purchased insurance from an insurance company had she

United States District Court
Northern District of California

known of the insurance company's historically poor claim practices was enough to show that the plaintiff would not have entered the transaction had the omitted information been disclosed). In the instant case, Plaintiff Brown has failed to provide an affidavit stating that he would not have bought the iPhone 6 Plus had the alleged touchscreen defect been disclosed.

Plaintiff Brown's predicament is analogous to the situation in *Corcoran*. In *Corcoran*, the plaintiff alleged that a pharmacy failed to disclose accurate generic drug prices. 169 F. Supp. 3d at 975, 993. However, the *Corcoran* plaintiff did not allege in her complaint that she would not have purchased the generic drugs absent the pharmacy's failure to disclose accurate generic drug prices. *Id.* at 993. Thus, there was no evidence that the *Corcoran* plaintiff would not have entered the transaction had the omitted information been disclosed. *Id.* Therefore, the *Corcoran* court dismissed the TDTPA claim. *Id.* In the instant case, there is also no evidence indicating that Plaintiff Brown would not have purchased his iPhone 6 Plus had Apple disclosed the alleged touchscreen defect.

Here, Plaintiffs' Exhibit 31 merely describes the Apple's statements that Plaintiff Brown reviewed prior to purchasing his iPhone 6 Plus. Neither Exhibit 31 nor any evidence or affidavit shows that Plaintiff Brown would not have purchased his iPhone 6 Plus had Apple disclosed the alleged touchscreen defect. Thus, Plaintiffs have failed to satisfy prong (4) of a TDTPA claim. Therefore, Apple's motion for summary judgment is GRANTED as to the TDTPA claim.

### F. Injunctive Relief

Apple argues that Plaintiffs Justin Bauer (Colorado), Taylor Brown (Texas), and Eric Siegal (Illinois) have no standing to pursue injunctive relief as they do not intend on participating in Apple's Multi-Touch Repair Program.[3] The above dismissals of Plaintiffs Brown and Siegal's TDTPA and ICFDTPA claims, respectively, render the issue of injunctive relief for Brown and Siegal's claims moot. Therefore, the Court focuses on Plaintiff Bauer's injunctive relief claims.

---

[3] Through Apple's Multi-Touch Repair Program, Apple has offered to repair consumers' devices for $149 if the consumers' iPhone is otherwise working, and the screen is not broken. FACC at ¶ 119.

United States District Court
Northern District of California

Article III standing requires that "(1) the plaintiff suffered an injury in fact, i.e., one that is sufficiently 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical'; (2) the injury is 'fairly traceable' to the challenged conduct, and (3) the injury is 'likely' to be 'redressed by a favorable decision.'" *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (quoting *Lujan v. Def. of Wildlife*, 504 U.S. 555, 560-61 (1992)). "The standing formulation for a plaintiff seeking prospective injunctive relief is simply one implementation of" the general standing requirements. *Id.* at 985 (internal quotation marks omitted). To establish standing for prospective injunctive relief, a plaintiff must demonstrate that he or she "has suffered or is threatened with a concrete and particularized legal harm, coupled with a sufficient likelihood that he will again be wronged in a similar way." *Id.* (internal citations and quotations omitted). "As to the second inquiry, [a plaintiff] must establish a 'real and immediate threat of repeated injury.'" *Id.* (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)). "[P]ast wrongs do not in themselves amount to [a] real and immediate threat of injury necessary to make out a case or controversy." *City of Los Angeles v. Lyons*, 416 U.S. 95, 111 (1983).

In cases involving false or misleading product advertising, "where a plaintiff has no intention of purchasing the product in the future, a majority of district courts have held that the plaintiff has no standing to seek prospective injunctive relief." *Davidson v. Kimberly-Clark Corp.*, 76 F. Supp. 3d 964, 970 (N.D. Cal. 2014). "This Court has consistently adopted the majority position that a plaintiff must allege that he or she intends to purchase the products at issue in the future to establish standing for injunctive relief." *Romero v. HP, Inc.*, 2017 WL 386237, at *9 (N.D. Cal. Jan. 27, 2017) (internal quotations and alterations omitted); *see also Rahman v. Mott's LLP*, 2014 WL 325241, at *10 (N.D. Cal. Jan. 29, 2014) ("[T]he Court agrees with defendant that to establish standing, plaintiff must allege that he intends to purchase the products at issue in the future.").

Here, there is no indication that Plaintiff Bauer plans to purchase an iPhone 6 or iPhone 6 Plus in the future. Plaintiffs' Exhibit 28, which consists of excerpts from Plaintiff Bauer's deposition, contains no mention of Plaintiff Bauer's future intent to purchase an iPhone 6 or 6

23

Plus. *See generally* Ex. 28. Plaintiffs do not dispute that Plaintiff Bauer's deposition fails to contain this information. *See* Opp. at 24. Moreover, Plaintiff Bauer has not provided an affidavit, and Plaintiffs' FACC does not allege, that Plaintiff Bauer intends to purchase an iPhone 6 or 6 Plus in the future. Thus, there is no evidence in the record indicating that Plaintiff Bauer intends to purchase an iPhone 6 or 6 Plus in the future.

However, the Court previously determined that certain Plaintiffs who alleged that they would participate in Apple's Multi-Touch Repair Program could assert claims for injunctive relief against Apple. ECF No. 103; *Davidson II*, 2017 WL 3149305, at *8-9. Apple did not contest that an alleged intent to participate in the Multi-Touch Repair Program is enough to confer standing for prospective injunctive relief. *Id.* at *8. The Court also held that those plaintiffs who *do not* "allege an intent to participate in the Multi-Touch Repair Program . . . have not alleged a threat of future injury sufficient to confer standing. *Id.* Here, Plaintiff Bauer admitted in his deposition that he does not intend to participate in the Multi-Touch Repair Program. Plaintiff Bauer testified: "Q. Do you intend to participate in the Multi-Touch program? A. No." Cheung Decl., Ex. D at 186:14-16.

Here, there is neither evidence that Plaintiff Bauer intends to purchase an iPhone 6 or 6 Plus nor evidence that Plaintiff Bauer intends to participate in the Multi-Touch Repair Program. Per the *Kimberly-Clark Corp.* court, "where a plaintiff has no intention of purchasing the product in the future, a majority of district courts have held that the plaintiff has no standing to seek prospective injunctive relief." 76 F. Supp. 3d at 970. Thus, Plaintiff Bauer lacks standing to pursue injunctive relief. Therefore, Apple's motion for summary judgment on the injunctive relief claim of Plaintiff Bauer is GRANTED. Apple's motion for summary judgment on the injunctive relief claim of Plaintiffs Siegal of Illinois and Brown of Texas is DENIED as moot.

## IV.  CONCLUSION

For the foregoing reasons, Apple's motion for summary judgment is GRANTED as to the Illinois Consumer Fraud and Deceptive Trade Practices Act claim, Texas Deceptive Trade Practices Act claim, and Plaintiff Bauer's claim for injunctive relief. Because the Court has granted summary judgment on the Illinois and Texas claims, Apple's motion for summary

24

judgment is DENIED as moot as to the claims for injunctive relief of Illinois Plaintiff Eric Siegal and Texas Plaintiff Taylor Brown.

Apple's motion for summary judgment is DENIED as to the Colorado Consumer Protection Act claim, Florida Deceptive and Unfair Trade Practices Act claim, and Washington Consumer Protection Act claim.

**IT IS SO ORDERED.**


Dated: February 25, 2019

*Lucy H. Koh*
LUCY H. KOH
United States District Judge

Case No. 16-CV-04942-LHK
ORDER GRANTING IN PART AND DENYING IN PART APPLE'S MOTION FOR SUMMARY JUDGMENT