# Exhibit A

**REDACTED VERSION OF DOCUMENT
SOUGHT TO BE SEALED**

ARTURO J. GONZÁLEZ (CA SBN 121490)
AGonzalez@mofo.com
PENELOPE A. PREOVOLOS (CA SBN 87607)
PPreovolos@mofo.com
TIFFANY CHEUNG (CA SBN 211497)
TCheung@mofo.com
ALEXIS A. AMEZCUA (SBN 247507)
AAmezcua@mofo.com
CHRISTOPHER L. ROBINSON (SBN 260778)
ChristopherRobinson@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:     (415) 268-7000
Facsimile:     (415) 268-7522

ANNE M. CAPPELLA (SBN 181402)
anne.cappella@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA  94065
Telephone:     (650) 802-3000
Facsimile:     (650) 802-3100

Attorneys for Defendant
APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THOMAS DAVIDSON, TODD CLEARY, ERIC SIEGAL, MICHAEL PAJARO, JOHN BORZYMOWSKI, BROOKE CORBETT, TAYLOR BROWN, JUSTIN BAUER, HEIRLOOM ESTATE SERVICES, INC., KATHLEEN BAKER, MATT MUILENBURG, WILLIAM BON, and JASON PETTY, on behalf of themselves and all others similarly situated, | Case No. 5:16-cv-04942-LHK<br><br>**APPLE'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date:        TBD<br>Time:        TBD<br>Dept.:       Courtroom 8 – 4th Floor<br>Judge:       Honorable Lucy H. Koh |
| Plaintiffs, | |
| v. | **SUBMITTED UNDER SEAL**<br>**PUBLIC VERSION** |
| APPLE INC., | |
| Defendant. | |

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ................................................................................................. 2

II.  PROCEDURAL HISTORY .................................................................................. 2

III.  STATEMENT OF UNDISPUTED FACTS ......................................................... 4

  A.  Plaintiffs Allege the iPhone 6 and 6 Plus Have a "Touchscreen Defect" ............... 4

  B.  Discovery Has Shown That Repeatedly Dropping the iPhones—Not "Normal, Everyday Use"—Is the Cause of the Alleged Touchscreen Issue ......... 6

  C.  Plaintiffs Admit That They Dropped Their iPhones Multiple Times ..................... 9

  D.  Apple Disclosed to Plaintiffs That Dropping the iPhones Can Damage Their Sensitive Electronic Components ..................................................... 9

  E.  Apple Added Underfill to the Meson Chip in the iPhone 6 Plus, and Launched an iPhone 6 Plus Repair Extension Program ..................................... 10

  F.  Plaintiffs Cannot Support Their Injunctive Relief and Damages Claims ............. 11

IV.  LEGAL STANDARD .......................................................................................... 12

V.  ARGUMENT ....................................................................................................... 12

  A.  The iPhone 6 and 6 Plus Do Not Suffer from any "Touchscreen Defect" That Supposedly Arises from Bending Due to "Normal, Everyday Use" ........... 13

  B.  Apple Did Not Intentionally Conceal any Alleged "Touchscreen Defect" from Customers ............................................................................. 15

    1.  Apple Had No Knowledge of The Alleged "Touchscreen Defect" at any Time ............................................................................ 16

    2.  Apple Affirmatively Disclosed That Dropping the iPhones Could Damage Them ......................................................................... 18

  C.  Apple's Alleged Omission on the iPhone Box Did Not Affect Plaintiffs' Purchase Decisions ..................................................................... 19

    1.  Plaintiff Brown Did Not Rely on Apple's Alleged Omissions on the iPhone Box ............................................................................ 20

    2.  The Remaining Plaintiffs Would Have Purchased the iPhone Despite any Alleged Omission on the iPhone Box ................................... 20

  D.  Plaintiffs Cannot Support Their Injunctive Relief and Damages Claims ............. 21

    1.  Plaintiffs Brown, Bauer, and Siegal Cannot Support Their Injunctive Relief Claims ....................................................................... 21

    2.  Plaintiffs Borzymowski and Siegal Did Not Sustain any Actual Damages ........................................................................... 22

VI.  CONCLUSION .................................................................................................... 23

# TABLE OF AUTHORITIES

**Page**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ............................................................................................12

*Avdeef v. Rockline Indus., Inc.*,
    No. 3:08-CV-2157-L, 2010 U.S. Dist. LEXIS 7957 (N.D. Tex. Jan. 29, 2010) .......................14

*Avery v. State Farm Mut. Auto. Ins. Co.*,
    835 N.E.2d 801 (Ill. 2005) ..................................................................................22

*Brazil v. Dell Inc.*,
    No. C-07-01700 RMW, 2010 U.S. Dist. LEXIS 42877
    (N.D. Cal. Mar. 29, 2010) ....................................................................................20

*Camden Mach. & Tool v. Cascade Co.*,
    870 S.W.2d 304 (Tex. App. 1993) .........................................................................20

*Crowe v. Tull*,
    126 P.3d 196 (Colo. 2006) ..............................................................................16, 17

*David v. Volkswagen Grp. of Am., Inc.*,
    No. 17-11301-SDW-CLW, 2018 U.S. Dist. LEXIS 70284
    (D.N.J. Apr. 26, 2018) .......................................................................................16

*First Nat'l Bank v. Cities Serv. Co.*,
    391 U.S. 253 (1968) ...........................................................................................12

*Friedman v. Dollar Thrifty Auto. Grp., Inc.*,
    227 F. Supp. 3d 1192 (D. Colo. 2017) ...................................................................21

*Green v. McNeil Nutritionals, LLC*,
    No. 2004-0379-CA, 2005 WL 3388158 (Fla. Cir. Ct. Nov. 16, 2005) ...................................18

*Jensen v. Bayer AG*,
    862 N.E.2d 1091 (Ill. App. Ct. 2007) ...............................................................16, 18

*K.R. Smith Trucking, LLC v. Paccar, Inc.*,
    No. 08-1351-WEB, 2011 U.S. Dist. LEXIS 81908 (D. Kan. July 27, 2011) ...............14, 16, 18

*Marcus v. Apple Inc.*,
    No. C 14-03824 WHA, 2015 U.S. Dist. LEXIS 50399 (N.D. Cal. Apr. 16,
    2015) ..............................................................................................................18

*Matthews v. Am. Honda Motor Co.*,
    No. 12-60630-CIV-WILLIAMS, 2012  U.S. Dist. LEXIS 90802
    (S.D. Fla. June 6, 2012) .................................................................................13, 16

**TABLE OF AUTHORITIES**
(continued)

Page

*Montgomery v. New Piper Aircraft, Inc.*,
209 F.R.D. 221 (S.D. Fla. 2002) ......................................................................21

*Mullen v. Allstate Ins. Co.*,
232 P.3d 168 (Colo. App. 2009) .......................................................................18

*Oliveira v. Amoco Oil Co.*,
776 N.E.2d 151 (Ill. 2002) ...............................................................................19

*Perona v. Volkswagen of Am., Inc.*,
24 N.E.3d 806 (Ill. App. Ct. 2014) .............................................................13, 14

*Pertile v. Gen. Motors, Ltd. Liab. Co.*,
No. 15-cv-0518-WJM-NYW, 2017 U.S. Dist. LEXIS 150463 (D. Colo.
Sept. 15, 2017), *vacated on other grounds*, 849 F.3d 1313 (11th Cir. 2017) ...........................13

*Reilly v. Chipotle Mexican Grill, Inc.*,
711 F. App'x 525 (11th Cir. 2017) ...................................................................22

*Resnick v. Hyundai Motor Am., Inc.*,
No. CV 16-00593-BRO, 2017 U.S. Dist. LEXIS 67525
(C.D. Cal. Apr. 13, 2017) ...........................................................................16, 17

*Robinson v. Avis Rent a Car Sys.*,
22 P.3d 818 (Wash. Ct. App. 2001) ............................................................19, 21

*Terry v. Mercedes-Benz, USA, LLC*,
No. 05-06-00118-CV, 2007 Tex. App. LEXIS 5601 (Tex. App. July 18, 2007) ...................19

*Thermoset Corp. v. Bldg. Materials Corp. of Am.*,
No. 14-60268-CIV-COHN/SELTZER, 2015 U.S. Dist. LEXIS 181015
(S.D. Fla. Apr. 9, 2015) ...............................................................................13, 14

*Washburn v. Sterling McCall Ford*,
521 S.W.3d 871 (Tex. App. 2017) ..............................................................16, 18

*Zekman v. Direct Am. Marketers*,
695 N.E.2d 853 (Ill. 1998) .........................................................................19, 21

**Statutes**

Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-105 .......................... *passim*

Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 ............... *passim*

**TABLE OF AUTHORITIES**
(continued)

Page

llinois Consumer Fraud and Deceptive Trade Practices Act,
815 Ill. Comp. Stat. § 505 ................................................................................. *passim*

Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code § 17.41 ............................ 1, 3, 4, 20

Washington Consumer Protection Act, Wash. Rev. Code § 19.86.010 .............................. 1, 3, 4, 16

**Other Authorities**

Fed. R. Civ. P. 56 ................................................................................................ 1, 12

Fed. R. Evid. 702 ................................................................................................ 6

**NOTICE OF MOTION AND MOTION**

TO PLAINTIFFS AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that, on a date to be determined by the Court, as appropriate and convenient for the Court, Apple shall and hereby does move for an order granting Apple summary judgment and dismissing Plaintiffs' claims arising under:  (1) Colorado Consumer Protection Act ("CCPA"), Colo. Rev. Stat. § 6-1-105; (2) Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201; (3) Illinois Consumer Fraud and Deceptive Trade Practices Act ("ICFDTPA"), 815 Ill. Comp. Stat. § 505; (4) Texas Deceptive Trade Practices Act ("TDTPA"), Tex. Bus. & Com. Code § 17.41; and (5) Washington Consumer Protection Act ("WCPA"), Wash. Rev. Code § 19.86.010.

Apple's motion is based on the absence of any genuine dispute with respect to multiple required elements of Plaintiffs' claims, including the required elements of (1) the existence of a defect; (2) Apple's knowledge of that defect; (3) the required causal connection between the alleged omission and alleged harm; and (4) each Plaintiff's entitlement to injunctive relief and damages.

This motion is based on this notice of motion, the accompanying memorandum of points and authorities, the court records submitted in this matter, the Declaration of Tiffany Cheung in Support of Apple's Summary Judgment Motion and exhibits attached to it, and such other written or oral argument as may be presented at or before the time this motion is taken under submission by the Court.

**RELIEF REQUESTED**

Pursuant to Federal Rule of Civil Procedure 56, Apple seeks entry of summary judgment dismissing Plaintiffs' claims under the consumer fraud statutes of Colorado (CCPA), Florida (FDUTPA), Illinois (ICFDTPA), Texas (TDTPA), and Washington (WCPA).

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

After 10 months of discovery, including the production of millions of pages of documents, depositions of ten Apple witnesses, and five expert reports, the evidence establishes that Plaintiffs cannot prove their fraudulent omission claims.  Although Plaintiffs *allege* that Apple intentionally hid a "defect" in the aluminum enclosure of the iPhone 6 and 6 Plus that caused the phones' touchscreens to fail, the record directly refutes Plaintiffs' theory.

Apple's internal documents—including information obtained from testing *tens of thousands* of iPhones—conclusively show that the iPhones have no "defect" and that the touchscreen issues observed in some iPhone 6 Plus devices were caused by multiple *drops* of the phones on a hard surface followed by further stress.  Plaintiffs' own experts conceded that dropping the iPhone can cause the alleged touchscreen issues, and that they have no evidence to support Plaintiffs' allegations that enclosure bending due to "normal, everyday use"—and not dropping—caused Plaintiffs' touchscreen issues.  Further, given that the evidence shows that the alleged "Touchscreen Defect" does not exist, Apple had no knowledge of it.  After performing extensive bending tests on the iPhones, Apple observed no functional failures, even after subjecting the phones to *abusive* bending forces.

Plaintiffs cannot establish the required elements of (1) the existence of a defect; (2) Apple's knowledge of that defect; (3) the required causal connection between the alleged omission and alleged harm; and (4) each Plaintiff's entitlement to injunctive relief and damages. Because Plaintiffs have the burden of establishing each of these elements to prove liability under the Selected Claims, the failure to establish any of these elements constitutes a separate and independent ground for summary judgment.  The undisputed facts demonstrate that Plaintiffs cannot prove their omission claims.  The Court should therefore grant summary judgment in favor of Apple.

## II.     PROCEDURAL HISTORY

The Court previously directed the parties to each select five causes of action—for a total of ten causes of action—to litigate through motions to dismiss, summary judgment, and trial.

1  (ECF No. 118 at 1.)  The parties chose the following Selected Claims:  (1) New Jersey Consumer

2  Fraud Act ("NJCFA"), N.J. Stat. Ann. § 56:8-1; (2) Florida Deceptive and Unfair Trade Practices

3  Act ("FDUTPA"), Fla. Stat. § 501.201; (3) Washington Consumer Protection Act ("WCPA"),

4  Wash. Rev. Code § 19.86.010; (4) Illinois Consumer Fraud and Deceptive Trade Practices Act

5  ("ICFDTPA"), 815 Ill. Comp. Stat. § 505; (5) Texas Deceptive Trade Practices Act ("TDTPA"),

6  Tex. Bus. & Com. Code § 17.41; (6) Colorado Consumer Protection Act ("CCPA"), Colo. Rev.

7  Stat. § 6-1-105; (7) Common Law Fraud; (8) Breach of Express Warranty; (9) Breach of Implied

8  Warranty; and (10) Magnusson-Moss Act.  (ECF No. 44 at 1.)

9      Following two rounds of motions to dismiss, the Court dismissed with prejudice

10  Plaintiffs' affirmative misrepresentation theories under the Selected Claims.  (ECF No. 103 at 20-

11  24.)  Plaintiffs had previously tried to plead a fraud theory based on Apple's supposedly false

12  representations about the strength and durability of the iPhone's enclosure in response to reports

13  the media referred to as "Bendgate."  As the Court held, however, Apple's September 25, 2014

14  statement addressing the issue "was not addressing the circumstance alleged by Plaintiffs that all

15  iPhones bend in subtle and *non-visible* ways that cause the touchscreen defect."  (*Id*. at 23.)  The

16  Court therefore held that Apple's statements about the strength and durability of the iPhone's

17  enclosure "***are, as a matter of law, not actionable misrepresentations***" in the context of this case

18  because Apple's statements contained "no representations about the touchscreen or the touch IC

19  chips" and "no reasonable consumer reading Apple's September 25, 2014 statement would have

20  had any expectations or assumptions about the iPhone's touchscreen."  (*Id*. at 23-24 (emphasis

21  added).)

22      The Court also dismissed with prejudice Plaintiffs' (1) fraud claims under the New Jersey

23  Consumer Fraud Act and Pennsylvania common law, (2) express and implied warranty claims

24  under Illinois law, (3) Magnusson-Moss Act claims, and (4) injunctive relief claims as to

25  Plaintiffs Borzymowski, Muilenburg, and Bon.  (*Id*. at 51-52.)  The Court later entered a

26  stipulated order dismissing with prejudice Plaintiffs' remaining affirmative misrepresentation

27  claims, California warranty claims, and Song-Beverly Consumer Warranty Act claims.  (ECF

28  No. 117 at 1-2.)

1     Shortly before Plaintiffs filed their first class certification motion, Plaintiffs substituted

2  Plaintiff Benelhachemi (from Illinois) with Plaintiff Siegal on the purported ground that "Interim

3  Lead Counsel has determined that Plaintiff Benelhachemi will not serve as an adequate class

4  representative . . . ."  (ECF No. 169 at 1.)  Plaintiff Siegal represented in a stipulation allowing the

5  substitution that he would "provide complete responses to all of Apple's written discovery

6  requests, and to provide a complete document production, including all relevant documents

7  related to his alleged transactions with Verizon Communications, Inc. . . . ."  (*Id.* at 2.)

8     Fact discovery closed on November 2, 2018.  (ECF No. 268 at 2.)

9     Apple's present motion addresses all remaining Selected Claims that survived Apple's

10  motions to dismiss—*i.e.*, Plaintiffs' omission claims under the consumer fraud statutes of

11  Colorado (CCPA), Florida (FDUTPA), Illinois (ICFDTPA), Texas (TDTPA), and Washington

12  (WCPA).

13  **III.    STATEMENT OF UNDISPUTED FACTS**

14     **A.     Plaintiffs Allege the iPhone 6 and 6 Plus Have a "Touchscreen Defect"**

15     1.     Apple Inc. is a California corporation headquartered in Cupertino, California.

16  (Fourth Am. Compl. ("Compl.") ¶ 21, ECF No. 172; Answer to Compl. ("Answer") ¶ 21, ECF

17  No. 177.)  Apple makes mobile communication and media devices, including the iPhone.

18  (Compl. ¶ 25; Answer ¶ 25.)  Apple released the iPhone 6 and 6 Plus on September 19, 2014.

19  (Compl. ¶ 25; Answer ¶ 25.)

20     2.     Plaintiffs are individual customers from Colorado, Florida, Illinois, Texas, and

21  Washington who allege that the touchscreens on their iPhone 6 Plus devices became unresponsive

22  to touch input through "normal, everyday use" (the "Touchscreen Defect").[1]  (Compl. ¶¶ 10, 12,

23  14-15, 18-19, 55; *see also* ECF No. 270 at 1 ("the defect in question is the touchscreen, which is

24  prone to and does prematurely malfunction, rendering the phones inoperable for at least some

---

[1] The governing complaint asserts identical claims regarding the iPhone 6, but none of the
Selected Claims involve Plaintiffs who owned an iPhone 6.  Only two of the thirteen Plaintiffs
who filed the governing complaint owned an iPhone 6.  Indeed, the record demonstrates that the
reports of any touchscreen issues with the iPhone 6 were even more infrequent than the iPhone 6
Plus.

1 period of time").)

2       3.      Specifically, Plaintiffs allege that a "weakness" in the iPhones' enclosure "causes

3 the iPhones to bend and flex under normal, everyday use that places severe stress on the soldering

4 that adheres the touch IC chips to the logic board, which then causes the soldering to fail."

5 (Compl. ¶¶ 54, 55.)  Plaintiffs also allege that the touch IC chips "fail as a result of the defect in

6 the external casing."  (*Id.* ¶ 56.)

7       4.      Plaintiffs further allege that Apple "knew or should have known" about the alleged

8 "Touchscreen Defect" (*id.* ¶¶ 64-77, 94), and "knowingly" and/or "intentionally" concealed it

9 from Plaintiffs (*see id.* ¶¶ 180, 200, 224, 236, 263).  Although Plaintiffs have never said what

10 specific disclosures Apple should have made to Plaintiffs, Plaintiffs allege that Apple omitted

11 material information from the iPhone box.[2]  Because Apple and its authorized resellers generally

12 display iPhone devices in stores outside their boxes, however, many purchasers end up

13 purchasing or deciding to purchase an iPhone before ever seeing the box.  (*See* ECF No. 184-22

14 ¶¶ 2-9.)  Plaintiffs Siegal, Muilenburg, and Bon did not even see the box until *after* purchase.

15 (Ex. A at 75:21-76:7, 81:17-20; Ex. B at 79:11-19; Ex. C at 125:7-21.)[3]  Plaintiff Bauer recalled

16 seeing a box around the time of purchase, but never reviewed it because he regarded it "as

17 small print that people don't normally read."  (Ex. D at 225:12-226:14.)  Plaintiff Borzymowski

18 decided to purchase his iPhone before seeing the box.  (Ex. E at 138:12-139:22.)  And Plaintiff

19 Brown purchased his iPhone because it was time to upgrade and he liked the camera—not

20 because of any statements on the box.  (Ex. F at 59:6-60:6.)

21       5.      The dates of Plaintiffs' alleged purchase and alleged onset of a touchscreen issue

22 are set forth below.  (Compl. ¶¶ 10, 12, 14, 15, 18, 19.)[4]

23

24       [2] In the Court's class certification ruling, the Court limited Plaintiffs' alleged omissions to
those allegedly omitted from the iPhone box, holding that Plaintiffs had failed to establish a legal

25 basis for any actionable omission on any other alleged materials.  (*See* ECF No. 226 at 28-29.)

26       [3] All cited exhibits ("Ex."), unless otherwise noted, are attached to the accompanying
Declaration of Tiffany Cheung in Support of Apple's Summary Judgment Motion.

27       [4] For purposes of this summary judgment motion only, Apple accepts the dates Plaintiffs

28 allege they purchased their phones and the dates they allege for the onset of a touchscreen issue.

| Name | State | Date of Purchase | Alleged Date of Onset of Issue |
|---|---|---|---|
| Justin Bauer | Colorado | March 11, 2015 | July 2015 |
| John Borzymowski | Florida | September 19, 2014 | February 2016 |
| Eric Siegal | Illinois | December 18, 2015 | September 2016 |
| Taylor Brown | Texas | November 2014 | January 2016 |
| Matt Muilenburg | Washington | February 28, 2015 | May 2016 |
| William Bon | Washington | January 10, 2015 | August 2016 |

**B.** **Discovery Has Shown That Repeatedly Dropping the iPhones—Not "Normal, Everyday Use"—Is the Cause of the Alleged Touchscreen Issue**

6.      In the complaint, Plaintiffs characterize the touch IC chips in the iPhones as "delicate circuits" that contain "a number of small solder balls" that can "crack and start to lose contact with the logic board" as the iPhones "flex and bend during normal use." (Compl. ¶¶ 49, 51, 52.) Plaintiffs allege that once a crack forms, "there is no electrical contact between the touch IC chips and the logic board," thus causing a nonresponsive touchscreen. (*Id*. ¶ 53.)

7.      Both of Plaintiffs' proffered technical experts have admitted, however, that dropping the iPhones can cause the alleged touch IC solder cracks alleged in the complaint. Mr. Curley, Plaintiffs' proffered expert in the field of electromechanical engineering (*see* ECF No. 173-10 ¶ 1), testified that "the Meson M1 chip is the responsible culprit for touch disease," explaining that the term "M1" refers to a specific "pin" (or solder ball) on the "Meson" touch IC chip. (Ex. G at 79:18-80:6.) Mr. Curley admitted that "dropping the iPhone 6 or 6 Plus can cause sufficient localized bending of the circuit board to damage the M1 location at the Meson chip." (*Id*. at 139:19-23, 166:12-17.) Dr. Jones, Plaintiff's proffered expert in the field of iPhone repairs (*see* ECF No. 174-38 at 2), similarly admitted that dropping the iPhone 6 or 6 Plus can cause "a fracture between the solder balls and the pads that they have to sit on under these chips," thus causing the alleged "touch defect."[5] (Ex. H at 98:18-99:5, 108:23-109:1.)

---

[5] Apple does not agree that Mr. Curley and Dr. Jones have the necessary qualifications to provide certain expert testimony under Federal Rule of Evidence 702, for the reasons stated in Apple's February 10, 2018 *Daubert* motion. (*See* ECF No. 187.)

8.      Plaintiffs have no evidence that enclosure bending on an iPhone that has not been previously dropped will result in a solder crack or similar issue with the touch IC chips. Plaintiffs' own expert, Mr. Curley—who reviewed hundreds of Apple internal documents— candidly admitted he had no evidence linking bent iPhones with the alleged "Touchscreen Defect." (Ex. G at 123:22-124:2.) He testified: "I have no specific evidence to say that Touch Disease is caused by dropped iPhones nor do I have any evidence that Touch Disease is caused by normal wear and tear, bending of the iPhones." (*Id.* at 239:18-240:11.)

9.      Mr. Curley's experimental tests on the iPhones showed that he could not induce the alleged "Touchscreen Defect" even by ***intentionally*** bending the enclosure past the point of permanent deformation. In one test, Mr. Curley took an iPhone 6 Plus with a functioning touchscreen, placed it in Instron machine, applied a focused 30 kilogram (66 pound) load to the aluminum enclosure over the Meson chip area, and permanently deformed the enclosure. (Ex. G at 15:12-16:14, 19:7-17.) Yet, Mr. Curley admitted, the "touchscreen still continued to work perfectly." (*Id.* at 20:1-13.) Mr. Curley could not identify any test data showing that enclosure bending can cause the alleged Touchscreen Issue. (*Id.* at 236:7-23.)

10.     Plaintiffs' other proffered technical expert, Dr. Jones, admitted she had not even reviewed Apple's internal test records, nor had she performed any tests or failure analysis herself to investigate the root cause of the alleged "Touchscreen Defect" on iPhones that had not previously been dropped. (Ex. H at 57:17-58:7, 61:13-16, 69:8-70:8, 75:14-20.)

11.     Mr. Curley's experimental test results are consistent with Apple's extensive testing of the iPhone 6 and 6 Plus both before and after launch, which conclusively demonstrated that enclosure bending will not cause the alleged "Touchscreen Defect." Before launch, Apple subjected tens of thousands of devices to demanding reliability tests, including a "sit test" (*see* ECF No. 286-1 ¶¶ 42-55), a "squeeze and pressure test" (*see id.* ¶¶ 56-63), a "torsion test" (*see id.* ¶¶ 64-67), and a "carry program" (*see id.* ¶¶ 71-72; *see also* Exs. I-J)—all tests designed to study the effect of enclosure bending and twisting on the iPhones' functionality.

12.     Apple's pre-launch testing showed that bending, twisting, and pressing on the enclosure—even with significant forces repeated thousands of times—will not cause the alleged

1   "Touchscreen Defect." (Ex. K.) As Apple's records confirm, Apple's testing revealed "**no

2   functional impact**" and only "minimal cosmetic impact" from enclosure bending. (*Id.* at APL-

3   DAVIDSON_02377954 (emphasis added).) Mr. Curley agreed that Apple did not know at the

4   time of launch that enclosure bending could lead to a touchscreen failure. (Ex. G at 123:22-

5   124:2.)

6        13.   While Apple was able to " ████████████████████████████████

7   ████████████████████████████████████████████████

8   ████████████████████████████████████████████████

9   ████████████████████████████████████████████████

10   ████████████████████████." (Ex. K at APL-

11   DAVIDSON_02377954.) Apple characterized the "██████████████████████" as

12   "████," confirming that a "████████████████████████████████████" on

13   the devices. (*Id.* at APL-DAVIDSON_02377963.)

14        14.   After launch, when returns based on reported touchscreen issues on the iPhone 6

15   Plus appeared to be unexpectedly increasing, Apple performed even more rigorous testing to

16   investigate the root cause of solder cracks on the Meson chip observed in some customer-returned

17   phones. Apple's post-launch tests included ████████████████████████████

18   ████████████████████████████████████████████████

19   ████████████████████████████████████████████

20   ████████████████████████████████████████████████

21   ████████████████████████████████ (*See* ECF No. 286-1

22   ¶ 99; Ex. N at APL-DAVIDSON_02419403.)

23        15.   ████████████████████████████████████████

24   ████████████████████████████████████████████████

25   ████████████████████████████████████ (ECF No. 286-1

26   ¶ 100; Ex. N at APL-DAVIDSON_02419404.) Importantly, ████████████████

27   ████████████████████████████████████████████

28   ████████████████████, confirming that enclosure bending is **not** the root cause of

1    the alleged touchscreen issue.  (ECF No. 286-1 ¶ 100; ; Ex. N at APL-DAVIDSON_02419403.)

2        16.    Apple also directly measured logic board strain at the Meson chip location while

3    the iPhone was undergoing Apple's torsion test █████████████████████████████████

4    ████████████████  (Ex. L at APL-DAVIDSON_02309387), which Mr. Curley admitted were

5    within acceptable industry standard limits.  (Ex. G at 206:20-22.)  Apple's strain measurements

6    again confirm that enclosure bending is not the root cause of the alleged touchscreen issue.

7        17.    Simply put, Plaintiffs' alleged "Touchscreen Defect" does not arise from bending

8    due to "normal, everyday use," but from dropping the iPhone multiple times on a hard surface

9    followed by further stress on the device.

10       **C.    Plaintiffs Admit That They Dropped Their iPhones Multiple Times**

11       18.    Almost all Plaintiffs admit they dropped their iPhones multiple times before

12   experiencing an alleged touchscreen issue.  Plaintiff Brown dropped his iPhone multiple times,

13   ultimately shattering the screen on about the third drop.  (Ex. F at 137:2-18, 169:8-170:8.)

14   Plaintiffs Bon, Bauer, and Borzymowski also dropped their iPhones multiple times.  (Ex. C at

15   132:6-20; Ex. D at 147:19-24; Ex. E at 168:7-18.)

16       19.    Although Muilenburg and Siegal either denied dropping or could not recall

17   dropping their iPhones (Ex. B at 158:8-11; Ex. A at 72:1-2), photographs of Muilenburg's device

18   show a puncture in the bottom corner, while those of Siegal's device show multiple dents on the

19   back and nicks and scuffs on the corners, reflecting damage caused by dropping or other

20   mechanical shock events.  (ECF No. 286-1, Ex. 4 at 51-53, 63-67.)

21       **D.    Apple Disclosed to Plaintiffs That Dropping the iPhones Can Damage Their
            Sensitive Electronic Components**

22

23       20.    Since well before launch, in disclosures posted on Apple's website and

24   incorporated by reference into an "iPhone Info" sheet contained in each iPhone box (*see* ECF

25   No. 64-2 at 1), Apple informed Plaintiffs that the iPhones contain "sensitive electronic

26   components," and that "the iPhones can be damaged if dropped."  (*See* ECF No. 64-2 at 1; ECF

27   No. 54-2, Ex. D; Ex. M at 115:11-17, 121:8-15, 123:21-124:4.)

28       21.    The first paragraph of the "iPhone Info" sheet contains a header in bold font that

reads: "**iPhone User Guide**."  The first sentence states, "Review the user guide before using iPhone.  Go to help.apple.com/iphone."  (ECF No. 64-2 at 1.)  Apple then described several ways Plaintiffs could retrieve and review Apple's user guide.  (*Id.*)

22.     The second paragraph of the "iPhone Info" sheet contains a header in bold font that reads: "**Safety and Handling**."  The first (and only) sentence in that paragraph reads, "See 'Safety, handling, and support' in the *iPhone User Guide*."  (*Id.*)

23.     The first sentence of the "Safety, handling, and support" section of the iPhone User Guide reads:  "**WARNING**:  Failure to follow these safety instructions could result in fire, electric shock, injury, or damage to iPhone or other property.  Read all the safety information below before using iPhone."  (ECF No. 54-2, Ex. D.)

24.     The second sentence of the iPhone User Guide's "Safety, handling, and support" section explicitly informs customers that dropping the iPhone can damage its sensitive electronic components:  "**Handling**  Handle iPhone with care.  It is made of metal, glass, and plastic and has sensitive electronic components inside.  iPhone can be damaged if dropped . . . ."  (*Id.*)

25.     Each and every Plaintiff admitted they knew at the time of purchase that their iPhones could be damaged if dropped.  (Ex. D at 93:14-22; Ex. C at 90:14-91:4; Ex. A at 72:11-17; Ex. E at 136:21-23; Ex. B at 186:10-19; Ex. F at 101:14-17.)  Plaintiffs' technical experts admitted it was common knowledge at the time Apple released the iPhone 6 and 6 Plus that dropping an iPhone could damage it.  (Ex. G at 146:19-147:3; Ex. H at 175:17-176:4.)

**E.     Apple Added Underfill to the Meson Chip in the iPhone 6 Plus, and Launched an iPhone 6 Plus Repair Extension Program**

26.     After determining that the iPhone 6 Plus could develop a nonresponsive touchscreen after being dropped on a hard surface multiple times followed by additional stress, Apple began qualifying certain design changes to make the devices more resilient to damage caused by repeated drops of the iPhone on a hard surface.  (Ex. N at APL-DAVIDSON_02419413.)  One of Apple's design changes was to add underfill under the Meson chip in the iPhone 6 Plus.  (*Id.*)  As Apple's test data showed, the design changes allowed the iPhone 6 Plus to sustain more repeated back face drops on a granite surface before it would start

1    exhibiting a nonresponsive touchscreen.  (*Id*. at APL-DAVIDSON_02419414.)

2         27.    To further its customer-friendly objectives, Apple also decided to launch a "repair

3    extension program" (REP) for the iPhone 6 Plus.  Through this REP, Apple provided an

4    additional benefit to customers who had experienced a nonresponsive touchscreen by offering a

5    replacement iPhone 6 Plus device for $149, or a refund on repairs made in excess of that amount,

6    without inquiry into the scope of any nonresponsive touchscreen issues or whether the issue was

7    caused by repeated drops of the phone.  (Ex. O.)

8         28.    Apple made the decision to offer an REP program for the iPhone 6 Plus in July

9    2016 (Ex. P at 213:24-214:25); however, due to a shortage in memory chips, Apple was required

10   to defer public announcement of the program.  (*Id*. at 235:3-11.)  Apple announced the program

11   on its website on November 17, 2016.  (Ex. O.)

12        **F.    Plaintiffs Cannot Support Their Injunctive Relief and Damages Claims**

13        29.    None of the Plaintiffs asserting a Selected Claim can establish that they can or

14   would participate in the REP program.  The Court previously dismissed with prejudice the

15   injunctive relief claims brought by Borzymowski, Muilenburg, and Bon.  (ECF No. 103 at 15.)

16   As to Plaintiffs Bauer, Brown, and Siegal, in support of their injunctive relief claims, they relied

17   on their allegations that they intended to participate in Apple's Multi-Touch Repair Program.  But

18   each Plaintiff admitted at deposition that those allegations were incorrect.  Plaintiffs Bauer,

19   Brown, and Siegal do not, in fact, intend to participate in that program.  (Ex. D at 185:25-186:16;

20   Ex. F at 195:24-196:5; Ex. A at 160:18-161:11.)

21        30.    Plaintiffs Siegal and Borzymowski cannot establish any damages.  Plaintiff Siegal

22   did not pay for his iPhone, but rather his employer did.  (Ex. A at 54:24-55:1.)  Although Siegal

23   ***alleged*** he paid $150 for a subsequent replacement device, the evidence indicates otherwise.

24   Siegal testified that he purchased insurance from Verizon and requested this replacement device

25   pursuant to that insurance agreement (*id*. at 56:19-57:14), but his Verizon records show a $0

26   charge for the replacement iPhone he received on or about September 26, 2016.  (Ex. S at APL-

27   DAVIDSON_02434328.)  Verizon's records further indicate that Siegal contacted Verizon on

28   December 13, 2017—one week before his deposition—because "he wanted to know what the bill

1   bal[ance] was during that time bec[ause] he thought he was billed for the warranty replacement,"

2   and that Verizon advised him there was "no charge."  (Ex. S at APL-DAVIDSON_02434312.)

3   Siegal conceded at his deposition that he had no receipt of any kind showing he paid the alleged

4   $150 charge for his replacement iPhone.  (Ex. A at 104:9-105:1.)

5          31.     Plaintiff Borzymowski sold his iPhone 6 Plus to a third party, Gazelle.com, for full

6   value.  Although Borzymowski alleged in the complaint that Gazelle would have paid him $275 if

7   not for the touchscreen defect, he admitted at deposition that this allegation was incorrect.  (Ex. E

8   at 275:13-18.)  Borzymowski did not disclose to Gazelle that his iPhone had an alleged

9   touchscreen issue when he offered to sell it to Gazelle.  To the contrary, he obtained a quote from

10  Gazelle for $100 based on his representation that his iPhone was in "good" condition.  (*Id.* at

11  245:5-15.)  Gazelle ultimately paid Borzymowski $115 for the iPhone, explaining: "Surprise!

12  You're getting even more for your Apple iPhone 6 Plus 64GB (AT&T)" because "we found it

13  was in better condition than expected."  (Ex. Q.)

14  **IV.    LEGAL STANDARD**

15         Under Federal Rule of Civil Procedure 56(a), "the court shall grant summary judgment if

16  the movant shows that there is no genuine dispute as to any material fact and the movant is

17  entitled to judgment as a matter of law."  A dispute as to a material fact is "genuine" if the

18  evidence is such that "a reasonable jury could return a verdict for the nonmoving party."

19  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  After the moving party meets its

20  initial burden to show the absence of evidence to support the non-moving party's case, the burden

21  shifts to the non-moving party to demonstrate that there are "genuine factual issues that properly

22  can be resolved only by a finder of fact because they may reasonably be resolved in favor of

23  either party."  *Id.* at 250.  The non-moving party may not merely rest on its pleadings, but must

24  instead produce substantial evidence in support of the complaint.  *First Nat'l Bank v. Cities Serv.*

25  *Co.*, 391 U.S. 253, 289-90 (1968).

26

27

28

## V.    ARGUMENT

Plaintiffs cannot show that any reasonable jury would find that: (1) the iPhones suffer from the alleged "Touchscreen Defect," (2) Apple knew about the alleged "Touchscreen Defect," and "knowingly" and/or "intentionally" concealed it from Plaintiffs, (3) these alleged omissions on the iPhone box caused Plaintiffs to purchase their iPhones, and (4) all Plaintiffs are entitled to injunctive relief and sustained actual damages  Plaintiffs' failure of proof on any one of these required elements constitutes a separate and independent ground for summary judgment.

### A.    The iPhone 6 and 6 Plus Do Not Suffer from any "Touchscreen Defect" That Supposedly Arises from Bending Due to "Normal, Everyday Use"

Plaintiffs cannot prove their theory that the iPhone 6 and 6 Plus have an alleged "Touchscreen Defect" caused by bending due to "normal, everyday use."  The record conclusively shows that solder cracks in the touch IC chips allegedly responsible for the "Touchscreen Defect" will *not* arise unless the phone has been *repeatedly dropped on a hard surface* followed by further stress, such as thousands of torsion cycles.

To assert consumer fraud claims against Apple under the surviving Selected Claims, Plaintiffs must show that the iPhone 6 and 6 Plus actually have a "defect" that diminishes the product's value.  **COLORADO:** *Pertile v. Gen. Motors, Ltd. Liab. Co.*, No. 15-cv-0518-WJM-NYW, 2017 U.S. Dist. LEXIS 150463, at *25-26 (D. Colo. Sept. 15, 2017) ("Plaintiffs have not identified evidence from which a reasonable jury could find they have met their burden of showing there was a defect . . . ."); **FLORIDA:** *Thermoset Corp. v. Bldg. Materials Corp. of Am.*, No. 14-60268-CIV-COHN/SELTZER, 2015 U.S. Dist. LEXIS 181015, at *7 (S.D. Fla. Apr. 9, 2015) ("Thermoset must also show that the H2O Adhesive was deficient—defective—to succeed on its FDUTPA claim."), *vacated on other grounds*, 849 F.3d 1313 (11th Cir. 2017); *Matthews v. Am. Honda Motor Co.*, No. 12-60630-CIV-WILLIAMS, 2012  U.S. Dist. LEXIS 90802, at *7-8 (S.D. Fla. June 6, 2012) ("Florida courts have recognized that a FDUTPA claim is stated where the defendant knowingly fails to disclose a material defect that diminishes a product's value."); **ILLINOIS:** *Perona v. Volkswagen of Am., Inc.*, 24 N.E.3d 806, 825 (Ill. App. Ct. 2014) (affirming summary judgment for defendants because "plaintiffs had presented no evidence to

1  raise a genuine issue of material fact that there was a defect in the arrangement of the gas and

2  brake pedals”); **TEXAS:** *Avdeef v. Rockline Indus., Inc.*, No. 3:08-CV-2157-L, 2010 U.S. Dist.

3  LEXIS 7957, at *18-19 (N.D. Tex. Jan. 29, 2010) (finding that the defendant did not fail to

4  disclose problems with its baby wipes because the baby wipes were not, as plaintiffs alleged,

5  contaminated or subject to a recall); **WASHINGTON:** *K.R. Smith Trucking, LLC v. Paccar, Inc.*,

6  No. 08-1351-WEB, 2011 U.S. Dist. LEXIS 81908, at *19 (D. Kan. July 27, 2011) (“A review of

7  the expert opinions submitted in the case at hand show that the experts do not conclude that there

8  was a defect in the trailer.”).

9      In *Thermoset Corp.*, 2015 U.S. Dist. LEXIS 181015, at *7, for example, the court

10  dismissed on summary judgment a FDUTPA claim based on alleged defects in an adhesive

11  product because the plaintiff failed to show that the product was actually defective.  *Id*.  The court

12  held that “the mere fact of a product failure is insufficient to show that it was caused by any

13  defect” and “not some other cause,” and dismissed the claim.  *Id*. at *12.  Likewise, in *Perona*, 24

14  N.E.3d at 825, the court dismissed plaintiffs’ ICFDTPA claim on summary judgment because

15  plaintiffs failed to support their allegation that a defect existed in the arrangement of the gas and

16  brake pedals of the defendant’s vehicle.  *Id*.

17      Here, no evidence supports Plaintiffs’ alleged defect—that enclosure bending resulting

18  from “normal, everyday use” will cause solder ball failures that result in a nonresponsive

19  touchscreen.  Plaintiffs’ own technical expert, Mr. Curley, admitted that dropping the iPhone can

20  lead to the alleged “Touchscreen Defect” by creating high strain on the logic board near the

21  Meson chip.  (Facts ¶ 7.)  His own experimental tests showed that intentionally applying a

22  focused 66-pound load on the iPhone’s enclosure directly over the Meson chip will ***not*** induce the

23  alleged “Touchscreen Defect.”  (*Id*. ¶ 9.)  And Mr. Curley candidly admitted he had “no specific

24  evidence to say” that the alleged “Touchscreen Defect” “is caused by normal wear and tear,

25  bending of the iPhones.”  (*Id*. ¶ 8.)

26      Apple’s own exhaustive testing conclusively disproves Plaintiffs’ allegation that enclosure

27  bending is the root cause of solder cracks observed on the Meson chip in some customer-returned

28  units.  Before launch, Apple subjected tens of thousands of devices to demanding reliability tests

1  designed to study the effect of enclosure bending and twisting on the iPhones' functionality.

2  (*Id*. ¶ 11.)  Apple's testing showed "no functional impact" associated with enclosure bending.

3  (*Id*. ¶ 12.)  After launch, Apple revisited its reliability tests, subjecting the iPhones to even more

4  extreme test conditions.  (*Id*. ¶ 14.)  Again, these expanded tests conclusively showed that

5  enclosure bending—even in *abusive* conditions—cannot induce the alleged "Touchscreen

6  Defect."  (*Id*. ¶ 15.)  Plaintiffs' own technical expert admitted that Apple's strain measurements

7  of the logic board at the Meson chip area during torsion cycling fell within industry standard

8  limits.  (*Id*. ¶ 16.)

9       Apple's testing instead showed that dropping the iPhones multiple times on a hard surface

10  is required before the alleged touchscreen issue will arise.  Apple's post-launch testing confirmed

11  that the █████████████████████████████████████████████████

12  ████████████████████████████████████████████████████████

13  ████████████████████████████████████     (*Id*. ¶ 15.)

14       In light of this evidence, Plaintiffs cannot establish that their iPhones' touchscreens

15  prematurely stopped working as a result of "normal, everyday use."  Further, all but two Plaintiffs

16  admitted they dropped their iPhones multiple times before experiencing an alleged touchscreen

17  issue.  (Facts ¶ 18.)  The iPhones for the other two showed demonstrable signs of damage caused

18  by dropping the phones or otherwise subjecting them to severe mechanical shock, including

19  punctures, dents, and scuffs on their iPhones.  (*Id*. ¶ 19.)

20       The absence of any genuine dispute over the existence of an alleged "Touchscreen

21  Defect" that arises through "normal, everyday use" compels dismissal of all of Plaintiffs'

22  Selected Claims on summary judgment.

23                    **B.    Apple Did Not Intentionally Conceal any Alleged "Touchscreen
24                            Defect" from Customers**

25       Plaintiffs also cannot show a genuine dispute relating to their allegations that Apple

26  "knew or should have known" of the alleged "Touchscreen Defect" (Compl. ¶ 77), and

27  "intentionally" and/or "knowingly" concealed that defect from Plaintiffs (*see id*. ¶¶ 180, 200, 224,

28  236, 263).

All Selected Claims require proof that Apple had actual knowledge of an alleged product defect, and intentionally and knowingly concealed that defect from Plaintiffs.  **COLORADO:** *David v. Volkswagen Grp. of Am., Inc.*, No. 17-11301-SDW-CLW, 2018 U.S. Dist. LEXIS 70284, at *15 (D.N.J. Apr. 26, 2018) (dismissing CCPA claim where plaintiff did not "sufficiently plead that Defendant had knowledge of any alleged defect") (citing *Crowe v. Tull*, 126 P.3d 196, 204 (Colo. 2006)); **FLORIDA:** *Resnick v. Hyundai Motor Am., Inc.*, No. CV 16-00593-BRO (PJWg), 2017 U.S. Dist. LEXIS 67525, at *64 (C.D. Cal. Apr. 13, 2017) (dismissing FDUTPA claim where Plaintiffs "failed to establish that Defendants knew of the alleged defect in this case") (citing *Matthews*, 2012 U.S. Dist. LEXIS 90802, at *7-8); **ILLINOIS:** *Jensen v. Bayer AG*, 862 N.E.2d 1091, 1098 (Ill. App. Ct. 2007) ("For [ICFDTPA] liability to attach due to an alleged concealment, a plaintiff must establish that the fact concealed was known to the seller at the time of concealment."); **TEXAS:** *Washburn v. Sterling McCall Ford*, 521 S.W.3d 871, 876 (Tex. App. 2017) ("A DTPA violation for failure to disclose requires the defendant to have known material information and have failed to bring it to the plaintiff's attention."); **WASHINGTON:** *K.R. Smith Trucking, LLC*, 2011 U.S. Dist. LEXIS 81908, at *22-23 (dismissing WCPA claim on summary judgment because "there is no evidence before the court that [defendants] knew about an alleged problem" and thus "[plaintiff] cannot show defendants were deceptive in failing to disclose a defect") (citing *Griffith v. Centex Real Estate Corp.*, 969 P.2d 486, 492 (Wash. Ct. App. 1998)).

As explained below, Plaintiffs cannot establish a genuine dispute that Apple intentionally concealed an alleged defect because (1) Apple had no knowledge of the alleged "Touchscreen Defect" at any time and (2) Apple affirmatively disclosed that dropping the iPhones could damage them.

### 1. Apple Had No Knowledge of The Alleged "Touchscreen Defect" at any Time

Apple had no knowledge of the alleged Touchscreen Issue before or after launch, and did not "knowingly" and/or "intentionally" conceal the alleged "defect" from Plaintiffs.  Plaintiffs' own expert, Mr. Curley, admitted that despite reviewing hundreds of Apple internal documents, he had seen no evidence to support Plaintiffs' scienter allegations.  (Facts ¶ 12.)

1    Apple's internal records show that Apple tested tens of thousands of iPhones before

2    launch to determine whether repetitively bending, flexing, or twisting the aluminum enclosure

3    would cause a functional issue with the iPhone's touchscreen.  (Facts ¶ 11.)  Apple's laboratory

4    tests included (1) a "sit test" in which Apple simulated sitting on the iPhone; (2) a "squeeze and

5    pressure test," in which Apple simulated hard pressing on dozens of locations on the iPhone; and

6    (3) a "torsion test," in which Apple repeatedly twisted the iPhones.  (*Id.*)  Apple also ran a "carry

7    program," in which Apple distributed hundreds of iPhones to employees to test before launch.

8    (*Id.*)  None of those tests uncovered the alleged "Touchscreen Defect."  To the contrary, Apple

9    reported to management shortly before launch that its reliability testing had showed "no

10   functional impact" resulting from bending of the iPhone's enclosure.  (*Id.* ¶¶ 12-13.)

11   Plaintiffs' interrogatory answers confirm that Plaintiffs cannot raise a genuine dispute

12   about Apple's pre-launch knowledge of the alleged "Touchscreen Defect."  Plaintiffs responded

13   to a contention interrogatory asking them to state all evidence supporting their allegation that

14   Apple knew about the alleged "Touchscreen Defect" before launch.  The only pre-launch

15   evidence Plaintiffs cited was a generic reference to Apple's "extensive pre-release durability

16   testing" (Ex. R)—which Plaintiffs' own expert admitted did not give Apple knowledge of the

17   alleged "Touchscreen Defect."  (Facts ¶ 12.)  Plaintiffs' only other cited evidence derived from

18   Apple Support Community postings made ***after*** launch, including a September 23, 2014 posting

19   that Plaintiffs' own experts admitted described an unrelated touchscreen issue, such as a

20   firmware/software issue or a "bad screen." (Ex. G at 135:13-18; Ex. H at 141:19-143:15.)

21   Although Plaintiffs have attempted to argue that Apple "should have known" about the

22   alleged "Touchscreen Defect" before launch, this argument mischaracterizes the relevant legal

23   standard.  All Selected Claims require that Apple knew about an alleged product defect, and

24   ***intentionally and knowingly*** concealed that alleged defect from Plaintiffs.  Plaintiffs cannot

25   support their fraudulent omission theories based on a negligence standard.  **FLORIDA:** *Resnick*,

26   2017 U.S. Dist. LEXIS 67525, at *64 ("Defendants could not have *knowingly* concealed a defect"

27   because "Plaintiffs have failed to establish that Defendants knew of the alleged defect");

28   **COLORADO:** *Crowe*, 126 P.3d at 204 ("The CCPA 'provides an absolute defense' to a

1    misrepresentation caused by negligence or an honest mistake.") (citation omitted); **ILLINOIS:**

2    *Jensen*, 862 N.E.2d at 1098 ("a plaintiff must establish that the fact concealed was known to the

3    seller"); **TEXAS:** *Washburn*, 521 S.W.3d at 876 ("a defendant has no duty to disclose material

4    facts that it should have known but does not"); *Marcus v. Apple Inc.*, No. C 14-03824 WHA,

5    2015 U.S. Dist. LEXIS 50399, at *9 (N.D. Cal. Apr. 16, 2015) ("Demonstrating that the

6    defendant should have known the material information is insufficient."); **WASHINGTON:** *K.R.*

7    *Smith Trucking, LLC*, 2011 U.S. Dist. LEXIS 81908, at *22-23 ("[plaintiff] cannot show

8    defendants were deceptive in failing to disclose a defect" because "there is no evidence before the

9    court that [defendants] knew about an alleged problem").

10    Because all Selected Claims require knowledge of the defect and fraudulent intent,

11    Plaintiffs' concession that Apple did not know about the alleged "Touchscreen Defect" before

12    launch (or at any time) requires summary judgment in favor of Apple on this ground alone.

13    Even looking beyond this legal defect, as a factual matter, Plaintiffs cannot show that

14    Apple "should have" known that bending due to normal, everyday use would cause the alleged

15    "Touchscreen Defect."  Apple's extensive testing before and after launch directly refutes

16    Plaintiffs' theory.  Apple performed extensive internal testing on tens of thousands of iPhone 6

17    and 6 Plus devices, looking for evidence that bending would cause unresponsive touchscreens.

18    Apple's internal records conclusively show that even ***abusive*** enclosure bending will ***not*** induce

19    the alleged Touchscreen Issue; rather, repeatedly dropping the iPhone on a hard surface is

20    required to induce the alleged solder failures on Plaintiffs' iPhones.

21              **2.**       **Apple Affirmatively Disclosed That Dropping the iPhones**
22                          **Could Damage Them**

23    To the extent that Plaintiffs now argue that Apple should have disclosed that its testing

24    showed that dropping the iPhones could damage the phones, Apple made that exact disclosure.

25    Apple cannot be held liable for failing to disclose a fact already known to Plaintiffs.

26    **COLORADO:** *Mullen v. Allstate Ins. Co.*, 232 P.3d 168, 175 (Colo. App. 2009) ("There is no

27    material information Allstate failed to disclose."); **FLORIDA:** *Green v. McNeil Nutritionals,*

28    *LLC*, No. 2004-0379-CA, 2005 WL 3388158, at *8 (Fla. Cir. Ct. Nov. 16, 2005) ("Some

1   consumers, depending on their subjective reasons for purchasing the product, received exactly

2   what they bargained for, as did those consumers with actual knowledge of Splenda's true

3   ingredients listed on the packaging."); **ILLINOIS:** *Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151,

4   164 (Ill. 2002) ("*Zekman* makes clear that, to properly plead the element of proximate causation

5   in a private cause of action for deceptive advertising brought under the Act, a plaintiff must allege

6   that he was, in some manner, deceived."); **TEXAS:** *Terry v. Mercedes-Benz, USA, LLC*, No. 05-

7   06-00118-CV, 2007 Tex. App. LEXIS 5601, at *10 (Tex. App. July 18, 2007) ("appellants had no

8   right to be informed of information they knew"); **WASHINGTON:** *Robinson v. Avis Rent a Car*

9   *Sys*., 22 P.3d 818, 826 (Wash. Ct. App. 2001) ("there was no unfair or deceptive act here because

10  the car rental companies disclosed the concession fee to the consumers in its telephone quotations").

11       Here, Apple informed Plaintiffs in the "Safety, handling, and support" section of its

12  iPhone User Guide that the iPhones have "sensitive electronic components inside" and "can be

13  damaged if dropped." (Facts ¶¶ 20, 24.)  All Plaintiffs admitted knowing at the time of purchase

14  that dropping their iPhones could damage them.  (*Id*. ¶ 25.)  Plaintiffs' own experts admitted that

15  it was common knowledge at the time Apple released the iPhone 6 and 6 Plus that dropping the

16  phones could damage them.  (*Id*.)  Therefore, to the extent Apple learned after launch that the

17  soldering connections on the iPhones' touch IC chips could be damaged from repeatedly dropping

18  the iPhones on a hard surface, Apple had already disclosed that risk to Plaintiffs.

19       Plaintiffs also cannot purport to premise liability on Apple's alleged failure to disclose

20  that the iPhone 6 or 6 Plus could be "bent more easily" than prior iPhones in a three-point bend

21  test—as Plaintiffs have repeatedly argued in the class certification context.  As the Court

22  recognized when it dismissed Plaintiffs' affirmative misrepresentation claims, statements about

23  the iPhones' strength and durability address a separate issue—and one that creates no

24  expectations about touchscreen functionality in the iPhones.  (*See* ECF No. 103 at 20-24.)

25  Merely because an iPhones' enclosure will "yield" (or become permanently deformed) in

26  response to a certain amount of force does not mean that the iPhone has a defect—let alone the

27  alleged "Touchscreen Defect"—and Apple's alleged failure to disclose any facts relating to the

28  iPhones' yield strength are irrelevant to the purported "Touchscreen Defect."

**C.    Apple's Alleged Omission on the iPhone Box Did Not Affect Plaintiffs' Purchase Decisions**

Under the legal standards governing Plaintiffs' claims, Plaintiffs cannot establish one or more essential elements relating to reliance, exposure, or causation of harm.  Although Plaintiffs have never said what specific statements Apple should have included on the iPhone box, Plaintiffs cannot show that anything Apple should have stated on the box would have had a material impact on Plaintiffs' purchase decisions.

**1.    Plaintiff Brown Did Not Rely on Apple's Alleged Omissions on the iPhone Box**

Plaintiff Brown (from Texas) alleges that Apple should have disclosed the alleged "Touchscreen Issue" on the iPhone's box—the only alleged omission before or at the time of sale. But there is no genuine dispute that Brown did not rely on Apple's alleged omission on the iPhone's box in making his purchase decision.

As the Court previously determined, a TDTPA plaintiff must establish that he or she actually relied on the alleged omission.  (ECF No. 226 at 27.)  "If the misrepresentation did not induce the consumer to enter into the contract, there can be no recovery."  *Camden Mach. & Tool v. Cascade Co.*, 870 S.W.2d 304, 311 (Tex. App. 1993); *see also Brazil v. Dell Inc.*, No. C-07-01700 RMW, 2010 U.S. Dist. LEXIS 42877, at *13 (N.D. Cal. Mar. 29, 2010) ("Texas courts require individualized proof of reliance and reject the idea that reliance may be inferred from the fact that a reasonable person would find the misrepresentation to be important to his decision-making process.").

Brown admitted that he purchased his iPhone because it was time to upgrade and he liked the camera—not because of any statements on the iPhone's box.  (Ex. F at 59:6-60:6.)  He therefore cannot show that any alleged omissions on the iPhone box were "important to his decision-making process."  *Brazil*, 2010 U.S. Dist. LEXIS 42877, at *13.

**2.    The Remaining Plaintiffs Would Have Purchased the iPhone Despite any Alleged Omission on the iPhone Box**

All remaining Plaintiffs admitted that they would have purchased the iPhone

1    notwithstanding any allegedly omitted information on the iPhone box.

2          To prevail on the Selected Claims, Plaintiffs must prove damages *caused by* Apple's

3    alleged omissions.  **COLORADO:**  *Friedman v. Dollar Thrifty Auto. Grp., Inc.*, 227 F. Supp. 3d

4    1192, 1204 (D. Colo. 2017) ("the CCPA requires a plaintiff to establish a causal nexus between

5    the allegedly deceptive practice and the consumer harm") (quoting *Garcia v. Medved Chevrolet,*

6    *Inc.*, 263 P.3d 92, 96 (Colo. 2011)); **FLORIDA:** *Friedman*, 227 F. Supp. 3d at 1205 ("a

7    FDUTPA claim under Florida law 'must allege that the deceptive act or unfair practice *actually*

8    *caused* plaintiff's claimed damages'") (citation omitted); *see also Montgomery v. New Piper*

9    *Aircraft, Inc.*, 209 F.R.D. 221, 229 (S.D. Fla. 2002) ("Therefore, in order to prove liability under

10   FDUTPA, the Court must determine that (1) each putative class member was exposed to the

11   Defendants' advertising and marketing materials alleged to constitute a deceptive trade practice

12   and (2) if exposed, the advertising and marketing materials caused each putative class member

13   damage."); **ILLINOIS:**  *Zekman v. Direct Am. Marketers*, 695 N.E.2d 853, 861 (Ill. 1998)

14   ("plaintiff's statement in his deposition that he did not read or pay the bills himself" entitled

15   defendant to summary judgment because "plaintiff could not have been misled by the allegedly

16   deceptive nature of the bills"); **WASHINGTON:**  *Robinson*, 119, 22 P.3d at 826 ("A plaintiff

17   establishes the causation element of a CPA claim if he or she shows the trier of fact that he or she

18   relied upon a misrepresentation of fact.").

19         Here, Plaintiffs cannot establish Apple's alleged omissions caused their harm because

20   each Plaintiff made a purchasing decision independent of any information contained on the box.

21   Plaintiff Siegal (from Illinois) and Plaintiffs Muilenburg and Bon (from Washington) only looked

22   at the box **after** purchase.  (Facts ¶ 4.)  Plaintiff Bauer (from Colorado) *never* reads the "small

23   print" on iPhone boxes because "people don't normally read" that.  (*Id.*)  And Plaintiff

24   Borzymowski (from Florida) made his purchase decision before ever seeing the box.  (*Id.*)

25   Because Plaintiffs' purchase decisions were made independent of the alleged omission on the

26   iPhone box, Plaintiffs cannot show that the alleged omission caused them any harm.

27

28

### D.    Plaintiffs Cannot Support Their Injunctive Relief and Damages Claims

#### 1.    Plaintiffs Brown, Bauer, and Siegal Cannot Support Their Injunctive Relief Claims

The Court previously determined in its motion to dismiss ruling that certain plaintiffs who had alleged that they intended to participate in Apple's Multi-Touch Repair Program could assert injunctive relief claims against Apple.  (ECF No. 103 at 15-18.)  The Court dismissed injunctive relief claims against Plaintiffs who did not intend to participate in that program because they had "not alleged a threat of future injury sufficient to confer standing."  (*Id*. at 14.)

The injunctive relief claims of the three Plaintiffs (with a Selected Claim) that had survived the pleading stage must now also be dismissed.  Although Plaintiffs Bauer, Brown, and Siegal alleged in the complaint their intent to participate in Apple's Multi-Touch Repair Program, each Plaintiff admitted at deposition that they do not plan on participating in that program.  (Facts ¶ 29.)  These Plaintiffs therefore cannot raise a genuine dispute that could establish their entitlement to injunctive relief.

#### 2.    Plaintiffs Borzymowski and Siegal Did Not Sustain any Actual Damages

Finally, Plaintiffs Borzymowski and Siegal cannot show that they suffered any actual damages, as required to assert a FDUTPA and ICFDTPA claim.  *See Reilly v. Chipotle Mexican Grill, Inc.*, 711 F. App'x 525, 530 (11th Cir. 2017) ("Proof of actual damages is necessary to sustain a FDUTPA claim.") (citation omitted); *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 859 (Ill. 2005) ("A plaintiff must prove 'actual damage' before he or she can recover under the Act.  That did not occur here.  DeFrank's own testimony establishes that, when he sold his truck to his brother-in-law, he received the same value for the truck that he would have received if only OEM parts had been used in the repair.").

Plaintiff Borzymowski cannot show any actual damages because he received full value for his iPhone 6 Plus from a third-party purchaser, Gazelle.com.  Borzymowski admitted he sold his iPhone to Gazelle after telling them it was in "good" condition and did not disclose any touchscreen issue to Gazelle.  (Facts ¶ 31.)  Gazelle even increased the purchase price of his used

iPhone from $100 to $115 after "[finding] it was in better condition than expected."  (Ex. Q.)
Borzymowski admitted that he was incorrect in his allegation that Gazelle would have paid him
more for his iPhone if not for the touchscreen defect.  (Facts ¶ 31.)

Plaintiff Siegal cannot show any actual damages either because Siegal did not pay for his
iPhone—his employer did.  (*Id.* ¶ 30.)  Siegal therefore suffered no harm at the "point of sale," as
required by Plaintiffs' damages theory, because Siegal himself paid nothing for his iPhone.
Although Siegal ***alleged*** he paid $150 to Verizon to obtain a replacement phone, his Verizon
records contradict that allegation, indicating that he received his replacement device for free.
(*Id.*)  Verizon's records indicate that Siegal was not charged at the time he received a replacement
device and that when he contacted Verizon on or about December 13, 2017 to request any
documentation of such a payment, Verizon advised him there was "no charge."  (*Id.*)  Consistent
with Verizon's records, Siegal produced no receipts showing he actually incurred a $150 charge
from Verizon for a replacement device.  Because Siegal has no evidence to prove he incurred any
actual damages caused by the alleged omission, Siegal's claims must be dismissed.

## VI.    CONCLUSION

The Court should dismiss Plaintiffs' Selected Claims because no evidence supports a
finding that Plaintiffs' iPhones suffer from the alleged "Touchscreen Defect."  Indeed, Apple has
had no knowledge that "normal, everyday" bending causes the alleged "Touchscreen Defect"
because its extensive testing showed the opposite—bending does ***not*** cause the alleged
"Touchscreen Defect."  Apple cannot be liable for fraudulent concealment of any risk caused by
dropping an iPhone because Apple affirmatively disclosed that dropping an iPhone can damage
its sensitive electronic components.  The Court should also dismiss Plaintiffs' claims because the
undisputed facts show that none relied on any alleged omission contained on the iPhone box.
Moreover, the injunctive relief claims of Plaintiffs Bauer, Brown, and Siegal should be dismissed
because they cannot show any future threat of injury.  Plaintiff Borzymowski's and Siegal's
claims should also be dismissed because they suffered no damages.  The Court should therefore
grant Apple's motion for summary judgment on the Selected Claims.

1

2
 Dated:  December 21, 2018                    Respectfully submitted,

3                                             MORRISON & FOERSTER LLP

4

5
 By:  /s/ Arturo González
     Arturo J. González

6
     Attorneys for Defendant
7    APPLE INC.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28