ARTURO J. GONZÁLEZ (CA SBN 121490)
AGonzalez@mofo.com
PENELOPE A. PREOVOLOS (CA SBN 87607)
PPreovolos@mofo.com
TIFFANY CHEUNG (CA SBN 211497)
TCheung@mofo.com
ALEXIS A. AMEZCUA (SBN 247507)
AAmezcua@mofo.com
CHRISTOPHER L. ROBINSON (SBN 260778)
ChristopherRobinson@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:    (415) 268-7000
Facsimile:     (415) 268-7522

ANNE M. CAPPELLA (SBN 181402)
anne.cappella@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA  94065
Telephone:    (650) 802-3000
Facsimile:     (650) 802-3100

Attorneys for Defendant
APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THOMAS DAVIDSON, TODD CLEARY, ERIC SIEGAL, MICHAEL PAJARO, JOHN BORZYMOWSKI, BROOKE CORBETT, TAYLOR BROWN, JUSTIN BAUER, HEIRLOOM ESTATE SERVICES, INC., KATHLEEN BAKER, MATT MUILENBURG, WILLIAM BON, and JASON PETTY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | Case No. 5:16-cv-04942-LHK<br><br>**DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTION TO DENY CLASS CERTIFICATION**<br><br>Date:         November 14, 2019<br>Time:         1:30 p.m.<br>Dept.:        Courtroom 8 – 4th Floor<br>Judge:       Honorable Lucy H. Koh |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ........................................................................... 1

I.     INTRODUCTION ........................................................................................... 2

II.    STATEMENT OF ISSUES ............................................................................ 2

III.   BACKGROUND ............................................................................................ 2

    A.     The Parked Claims Structure ............................................................. 2

    B.     Class Certification Denial and Plaintiffs' Seriatim Damages Surveys ................... 4

    C.     Plaintiffs' Renewed Request for a Fourth Attempt to Produce a *Comcast*-Complaint Damages Model.................................................................... 5

IV.   LEGAL STANDARD .................................................................................... 7

V.    ARGUMENT .................................................................................................. 8

    A.     Issue Preclusion Bars Class Certification of the Parked Claims............................ 8

         1.     The Parked Claims Plaintiffs Exerted Control Over This Litigation.......... 9

         2.     The Parked Claims Plaintiffs Seek to Relitigate the Same Issues That Were Previously Resolved by the Court........................................... 11

         3.     No Exception Applies .............................................................. 13

    B.     The Court's Prior *Comcast* Decision Applies to the Parked Claims Plaintiffs as Law of the Case..................................................... 13

    C.     Principles of Comity Require Denial of Class Certification of the Parked Claims ............................................................................. 15

VI.   CONCLUSION ............................................................................................ 17

# TABLE OF AUTHORITIES

Page

**Cases**

*Air Transp. Ass'n of Am. v. City & Cty. of S.F.*,
   No. C 97-01763 CW, 1999 U.S. Dist. LEXIS 8747 (N.D. Cal. May 27, 1999)................14, 15

*Baker v. Home Depot USA, Inc.*,
   No. 11 C 6768, 2013 U.S. Dist. LEXIS 9377 (N.D. Ill. Jan. 24, 2013)....................................16

*Baker v. Microsoft Corp.*,
   851 F. Supp. 2d 1274 (W.D. Wash. 2012),
   *rev'd on other grounds*, 797 F.3d 607 (9th Cir. 2015),
   *rev'd on other grounds*, 137 S. Ct. 1702 (2017) ......................................................................16

*Comcast v. Behrend*,
   569 U.S. 27 (2013)........................................................................................................................7

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993)......................................................................................................................8

*Disimone v. Browner*,
   121 F.3d 1262 (9th Cir. 1997)....................................................................................................14

*Edwards v. Zenimax Media Inc.*,
   No. 12-cv-00411-WYD-KLM, 2012 WL 4378219 (D. Colo. Sept. 25, 2012).........................16

*Gomez v. St. Vincent Health, Inc.*,
   No. 1:08-cv-0153-DFH-DML, 2009 U.S. Dist. LEXIS 53546
   (S.D. Ind. June 25, 2009) ...........................................................................................................16

*Hadley v. Kellogg Sales Co.*,
   No. 16-CV-04955-LHK, 2019 U.S. Dist. LEXIS 136791
   (N.D. Cal. Aug. 13, 2019)...........................................................................................................14

*In re Arris Cable Modem Consumer Litig.*,
   327 F.R.D. 334 (N.D. Cal. 2018)..................................................................................................8

*In re Dial Complete Mktg. & Sales Practices Litig.*,
   312 F.R.D. 36 (D.N.H. 2015).......................................................................................................7

*Ingle v. Circuit City*,
   408 F.3d 592 (9th Cir. 2005).......................................................................................................14

*Kamilche Co. v. United States*,
   53 F.3d 1059 (9th Cir. 1995)................................................................................................11, 12

# TABLE OF AUTHORITIES
## (continued)

Page

*Luben Indus., Inc. v. United States*,
    707 F.2d 1037 (9th Cir. 1983)..............................................................................8 n.4

*McCabe v. Lifetime Entm't Servs., LLC*,
    No. 17-CV-908-ERK-SJB, 2018 U.S. Dist. LEXIS 3212
    (E.D.N.Y. Jan. 4, 2018)........................................................................................16

*Montana v. United States*,
    440 U.S. 147 (1979).......................................................................................... *passim*

*Murray v. Sears, Roebuck & Co.*,
    No. 09-05744 CW, 2010 U.S. Dist. LEXIS 83284 (N.D. Cal. July 21, 2010) ....................8 n.4

*Nguyen v. Nissan N. Am., Inc.*, No. 18-16344, 2019 U.S. App. LEXIS 22296
    (9th Cir. July 26, 2019) ......................................................................................13 n.5

*Ott v. Mortg. Inv'rs Corp. of Ohio*,
    65 F. Supp. 3d 1046 (D. Or. 2014) .........................................................................16

*Smith v. Bayer Corp.*,
    564 U.S. 299 (2011)...............................................................................11, 15, 16

*Smyth v. China Agritech, Inc.*,
    No. CV 13-03008-RGK, 2013 U.S. Dist. LEXIS 195196
    (C.D. Cal. Sept. 26, 2013).......................................................................................9

*Taylor v. Sturgell*,
    553 U.S. 880 (2008)................................................................................................8

*Williams v. Winco Foods*,
    No. CV 13-00146 CRB, 2013 U.S. Dist. LEXIS 108928
    (N.D. Cal. Aug. 1, 2013).......................................................................................15

**Other Authorities**

Restatement (Second) of Judgments § 27 cmt. 3c (Am. Law Inst. 1982) ......................................12

1

**NOTICE OF MOTION AND MOTION**

2

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

3

PLEASE TAKE NOTICE THAT on November 14, 2019, at 1:30 p.m., or as soon

4

thereafter as the matter may be heard, in the United States District Court, Northern District of

5

California, San Jose Division, located at 280 South 1st Street, San Jose, CA 95113, Courtroom 8,

6

before the Honorable Lucy H. Koh, Defendant Apple Inc. ("Apple") will and hereby does move

7

for an order denying class certification for the remaining putative subclasses (the "Parked Claims

8

Subclasses").  This motion is based upon this Notice of Motion and Motion, the accompanying

9

Memorandum of Points and Authorities, the Declaration of Tiffany Cheung in support thereof, all

10

other pleadings and papers on file herewith, and such other argument and evidence as may be

11

presented to the Court before this matter is taken under submission.

12

**RELIEF REQUESTED**

13

Apple seeks an order denying class certification for all putative subclasses arising out of

14

or relating to the following causes of action: Claim 1 (California Consumer Legal Remedies Act);

15

Claim  2 (California Unfair Competition Laws); Claim 3 (California False Advertising Law);

16

Claim 8 (Connecticut Unfair Trade Practices Act); Claim 11 (Michigan Consumer Protection

17

Act); Claim 12 (New York General Business Law § 349); Claim 13 (New York General Business

18

Law § 350); Claim 16 (Negligent Misrepresentation under New York law); Claim 17 (Unjust

19

Enrichment under New York law); and Claim 22 (Utah Consumer Sales Practices Act).

20

Dated:  August 21, 2019                    Respectfully submitted,

21

MORRISON & FOERSTER LLP

22

23

By: */s/ Arturo González*
Arturo J. González

24

25

Attorneys for Defendant
APPLE INC.

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      INTRODUCTION

No matter the underlying causes of action before the Court—whether they are the prior Selected Claims or the Parked Claims—class certification requires that Plaintiffs satisfy the requirements of Rule 23 and *Comcast*.  Because the Court has already decided that issue against Plaintiffs, class certification of the Parked Claims should be denied.  The Court has denied certification on Plaintiffs' damages theory three times, and twice rejected Plaintiffs' belated attempts to correct errors identified by Apple in their expert's second damages survey ("Boedeker 2") by submitting a putative third survey ("Boedeker 3").  By representing to the Court that they intend to rely solely on Boedeker 3 to satisfy the requirements of *Comcast* for the Parked Claims, Plaintiffs concede that they seek to relitigate the Court's prior class certification, prejudice, and untimeliness findings, using the Parked Claims as a pretext for a do-over that the Court has already denied.  Settled principles of issue preclusion, law of the case, and comity warrant denial of another round of duplicative, wasteful, and prejudicial litigation.  Class certification of the Parked Claims should therefore be denied on preclusion grounds.

### II.     STATEMENT OF ISSUES

Whether class certification of the Parked Claims should be denied because principles of issue preclusion, law of the case, or comity preclude the Parked Claims Plaintiffs from relitigating the Court's prior orders denying class certification under *Comcast* and striking Boedeker's putative third survey as severely prejudicial and untimely.

### III.    BACKGROUND

#### A.      The Parked Claims Structure

The Court directed the parties at the November 30, 2016 Initial Case Management Conference to each select five causes of action to litigate in a motion to dismiss—creating the present Parked Claims structure.  (ECF No. 41 at 1 ("The parties shall litigate a total of ten causes of action in the motion to dismiss.").)  To the extent any claims survived, the Court was "inclined to have those surviving claims litigated through summary judgment."  (*Id*. at 2.)

In response to Apple's objections at the Initial Case Management Conference that the

Parked Claims structure may result in duplicative and burdensome discovery (among other reasons), the Court clarified that the Parked Claims would not be stayed as the litigation progressed.  (ECF No. 47 at 32:11-14, 40:1-4.)  The Court added that, if the parties reached the Parked Claims, "there will be so much law of the case developed at that point" that "it'll be much more efficient."  (*Id*. at 44:2-3.)

The next month, at the Court's direction, the parties filed a joint list of ten causes of action to litigate on a motion to dismiss.  (ECF No. 44.)  At the next Case Management Conference on January 12, 2017, the parties confirmed their agreement that discovery would proceed on all 22 claims—not just the Selected Claims.[1]  (ECF No. 69 at 27:13-28:18.)  The Court memorialized this agreement in its Case Management Order, stating "[w]hen the discovery stay is lifted, there will be no bifurcation of discovery."  (ECF No. 57 at 1.)  The Court then set a case management schedule that included deadlines for both fact and expert discovery.  (*Id*. at 2.)

The Court appointed McCune Wright Arevalo, LLP ("McCune Wright LLP") as interim lead class counsel on December 23, 2016, to represent the interests of the class members "in which overlapping, duplicative, or competing class suits are pending before a court."  (ECF No. 48 at 2:3-7.)  McCune Wright LLP has since litigated every aspect of this litigation, through four complaints (ECF Nos. 1, 43, 86, 172), two motions to dismiss (ECF Nos. 54, 87), voluminous fact and expert discovery (*e.g.*, ECF Nos. 129, 151-4, 179, 272, 273, 352), a motion for summary judgment (ECF No. 291), and three motions for class certification (ECF Nos. 174, 270, 341).

---

[1] "THE COURT:  All right. Now, let's talk about the discovery, are we anticipating that if and when the discovery stay is lifted, is that on all 22 claims, or is it only on this narrow set of ten claims?

MR. SINGH:  So we don't want to have to go through the process multiple times should there be a later revisiting of what we call the park[ed] claims at a later point in the case.

THE COURT:  So you want it to be everything?

MR. SINGH:  I think everything. . . .

MR. WRIGHT:   I agree that we don't want to bifurcate the discovery so we're in agreement with that."  (ECF No. 69 at 27:13-28:11.)

Consistent with the Court's non-bifurcation order, the parties engaged in fact and expert discovery simultaneously on *all* 22 claims.  Apple took the depositions of all named Plaintiffs in the action, including the Parked Claims Plaintiffs.  (*See* Declaration of Tiffany Cheung in Support of Apple's Motion to Deny Class Certification ("Cheung Decl.") ¶¶ 2-9, Exs. A-G.)[2]  All Parked Claims Plaintiffs testified to their ongoing involvement and participation in the litigation.  (*Id.*)

While Plaintiffs submitted separate declarations from their experts in support of class certification motions on the Selected Claims, respectively (ECF Nos. 174-6, 174-38, 174-46, 199-9, 199-10, 270-1, 341-3, 366-1), Plaintiffs also submitted expert reports for all claims on the expert discovery timetable set by the Court.  Those expert reports encompassed all named Plaintiffs, including the Parked Claims Plaintiffs.  Plaintiffs' technical expert reports from Charles M. Curley were not limited to the Selected Claims Plaintiffs and provided opinions about both the iPhone 6 and 6 Plus (even though the Selected Claims Plaintiffs owned only iPhone 6 Plus devices).  Curley's report also analyzed the touchscreens of all named Plaintiffs (ECF No. 378-11 at 60-61) and provided opinions about the alleged cause of all of their touchscreen issues (*id.* ¶¶ 181-83).

Likewise, Plaintiffs' damages survey and damages expert report from Stephan Boedeker was not limited to the Selected Claims Plaintiffs.  Boedeker's survey included participants from all states—not just the Selected States.  (ECF No. 341-3 at 14.)  The iPhone test attributes included in his survey were based on the allegations of all named Plaintiffs, including the inoperability percentages alleged by Parked Claims Plaintiffs Pajaro, Baker, Corbett, and Maxim. (*Id.* ¶ 22 n.2.)  Like Curley's expert report, Boedeker's survey addressed both iPhone 6 and iPhone 6 Plus purchasers.  In addition, the damages model he proposed purportedly could "be used to expand the results of the conjoint study to a complete model to calculate class-wide damages."  (*Id.* ¶ 83.)

---

[2] All cited exhibits ("Ex."), unless otherwise noted, are attached to the accompanying Declaration of Tiffany Cheung in Support of Apple's Motion to Deny Class Certification.

**B.      Class Certification Denial and Plaintiffs' Seriatim Damages Surveys**

As the Court recounted in detail in its June 20, 2019 Order, Plaintiffs have already filed three motions for class certification in this case, and Boedeker has submitted three declarations and numerous other supporting materials that have all failed to provide a damages model satisfying *Comcast's* requirements.  (ECF No. 392.)  In the first motion for class certification, Plaintiffs failed to provide a *Comcast*-compliant damages model because Boedeker's conjoint analysis ("Boedeker 1") did not match plaintiffs' damages theory.  (*See* ECF No. 226.)  Following denial of their first class certification motion, Plaintiffs filed a Rule 23(f) petition in the Ninth Circuit (ECF No. 235-1), which they withdrew after completion of briefing and before the Ninth Circuit had ruled on the petition.  (ECF No. 251.)  Meanwhile, the Court had stayed all discovery pending resolution of Plaintiffs' Rule 23(f) petition.  (ECF No. 236.)

Six months after the Court's denial of class certification (ECF No. 268), rather than address the issues with Boedeker's survey identified by Apple and the Court, Plaintiffs filed a second motion for class certification based on a hypothetical survey.  (ECF No. 270.)  The Court denied the motion without prejudice "[b]ecause analysis of whether Boedeker's new survey satisfies *Comcast* is essential to a class certification determination; because Plaintiffs did not complete this survey before filing their renewed motion for class certification despite having 6 months to do so; and because briefing on class certification should address Boedeker's new survey."  (ECF No. 314 at 3.)

On their third attempt to certify a class and comply with *Comcast*, Plaintiffs submitted a second Boedeker survey—the same one submitted on the deadline for opening expert reports— that they later admitted had various errors.  (ECF Nos. 335 at 2, 341-3.)  Plaintiffs requested leave to redo their second survey and submit a putative third survey.  (ECF No. 335.)  The Court denied the motion "[b]ecause Plaintiffs had notice of Boedeker's transposition error almost a month in advance of their administrative motion; because Plaintiffs' motion comes *after* Apple already served its rebuttal expert reports in response to Boedeker's January 18, 2019 expert report and new survey; because Apple has already had to fully brief class certification twice and is required to do so a third time; and because this would be the *fourth* time Apple would need to rebut

1   Boedeker's survey or a hypothetical survey."  (ECF No. 342 at 5.)

2   In violation of the Court's Order, Plaintiffs served Apple with a "corrected" report and

3   survey ("Boedeker 3") on March 25, 2019.  (ECF No. 357.)  The Court granted Apple's motion to

4   enforce the prior order, reiterating that it had "explicitly prohibited" Plaintiffs from redoing the

5   second survey.  (ECF No. 359 at 2.)  The Court further found that allowing Plaintiffs to rely on a

6   third survey "would result in severe prejudice to Apple," and would also be "untimely" because

7   "Plaintiffs' last-minute change to their expert report also comes after the February 15, 2019

8   deadline for the exchange of expert reports."  (*Id.*)

9   On June 20, 2019, the Court denied Plaintiffs' motion for class certification for the third

10  time, holding:

11         Plaintiffs have repeatedly failed to produce a damages model that
           satisfies *Comcast*, despite three motions for class certification, two
12         completed Boedeker surveys, and one hypothetical Boedeker
           survey, and despite the benefit of the many filings identifying flaws
13         in Plaintiffs' damages models, including the Court's May 8, 2018
           order, Apple's three oppositions to class certification, and Apple's
14         rebuttals to two completed Boedeker surveys and one hypothetical
           Boedeker survey.  ***Allowing Plaintiffs a fourth attempt to produce***
15         ***a Comcast-compliant damages model would be severely***
           ***prejudicial to Apple.  Comcast does not require the Court or Apple***
16         ***to engage in an endless cycle of flawed attempts to produce a***
           ***satisfactory damages model.***  Thus, because Plaintiffs have failed
17         to present a damages model that measures "only those damages
           attributable" to Plaintiffs' theory of liability, *Comcast*, 569 U.S. at
18         35, class certification is not warranted.

19  (ECF No. 392 at 29-30 (emphasis added).)

20  Plaintiffs did not file a Rule 23(f) petition challenging the Court's June 20, 2019 denial of

21  class certification.  The parties subsequently participated in a settlement conference with

22  Magistrate Judge Corley, which resulted in "a binding settlement" between Apple and the

23  surviving Selected Claims Plaintiffs.  (ECF Nos. 396, 402 at 1.)

24         **C.      Plaintiffs' Renewed Request for a Fourth Attempt to Produce a**
                      ***Comcast*-Complaint Damages Model**
25

26  The parties appeared before the Court on July 24, 2019, at a Case Management

27  Conference to discuss how to proceed with the Parked Claims.  Plaintiffs proposed starting this

28  litigation—filed almost three years ago—from the very beginning with the Parked Claims, and

1   proposed setting deadlines for Apple's motion to dismiss.  (ECF No. 402 at 3.)  Plaintiffs also

2   renewed their request to relitigate the *Comcast* issue a fourth time, despite the Court's prior

3   *Comcast* rulings.  Plaintiffs did not argue that any state-law differences relating to the Parked

4   Claims required a new damages report or dictated a different result under *Comcast*.  To the

5   contrary, Plaintiffs represented to the Court that Plaintiffs would rely solely on Boedeker 3—the

6   same survey they sought to proffer for the Selected Claims—as the basis for satisfying *Comcast*

7   on any motion to certify a class on the Parked Claims:

8           Your Honor, just for clarity, so as not to run afoul again, the third
            survey is the survey that we were going to proceed on. . . . [T]he
9           Parked Claims are entitled to have us move forward on that third
            survey.
10

11  (Ex. H at 26:21-23, 27:5-6.)  At Apple's request, the Court invited briefing on whether the Parked

12  Claims structure requires re-litigation of the Court's orders denying class certification under

13  *Comcast* and striking Boedeker 3 as severely prejudicial and untimely.[3]  (*Id.* at 48:23-25.)

14          **IV.    LEGAL STANDARD**

15          The United States Supreme Court has held that a plaintiff in a class action bears the

16  burden of presenting a damages model demonstrating that "damages are susceptible of

17  measurement across the entire class for purposes of Rule 23(b)(3)."  *Comcast v. Behrend*, 569

18  U.S. 27, 35 (2013).  The damages model "must measure only those damages attributable to" the

19  plaintiff's theory of liability.  *Id.*  The Supreme Court specifically rejected the notion that "*any*

20  method of measurement is acceptable so long as it can be applied classwide, no matter how

21  arbitrary the measurements may be."  *Id.* at 35-36.  Instead, plaintiffs must come forward with a

22  workable damages model.  *In re Dial Complete Mktg. & Sales Practices Litig.*, 312 F.R.D. 36, 78

23  (D.N.H. 2015) (rejecting conjoint damages analysis where plaintiff's "efforts to identify a

24  workable model fall short").  While the precise framing of survey questions is generally an issue

25

26          [3] The present motion is limited to the issue of whether Plaintiffs are precluded from
    seeking class certification over the Parked Claims in light of the Court's prior rulings in this case
27  regarding *Comcast* and the exclusion of Boedeker 3 as unduly prejudicial and untimely.  To the
    extent any future motion for class certification is brought, Apple reserves the right to oppose that
28  motion on all other bases not addressed in the present motion.

1   of weight, rather than admissibility, this Court has recognized that "that there must be outer limits

2   to this principle.  At some point . . . the description of [an] attribute in a survey may vary so much

3   from the allegations or evidence that the survey becomes untethered from the facts of the case

4   'and, ergo, non-helpful.'"  *In re Arris Cable Modem Consumer Litig.*, 327 F.R.D. 334, 372 (N.D.

5   Cal. 2018) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591 (1993)).

6   ## V.   ARGUMENT

7   Plaintiffs have had a full and fair opportunity to put forward a *Comcast*-compliant

8   damages model.  The Court's determination that Boedeker 2—Plaintiffs' final damages survey

9   before the expert discovery cutoff—overstated damages in violation of *Comcast*, turned on a

10  Rule 23 requirement that applies to all the Selected and Parked Claims equally, and binds all

11  Plaintiffs in this lawsuit.  Plaintiffs' representation that, if given a fourth run at *Comcast*, they

12  would rely on Boedeker 3—which the Court previously struck as "severely prejudicial" to Apple

13  and "also untimely"—makes clear that Plaintiffs are trying to re-plow old ground and improperly

14  take advantage of the Parked Claims structure to relitigate settled issues decided adversely to

15  them.  Those attempts are barred by the doctrines of issue preclusion, law of the case, and comity.

16  ### A.   Issue Preclusion Bars Class Certification of the Parked Claims

17  Issue preclusion applies across all claims in this litigation, regardless of the Parked Claims

18  structure, because it "bars 'successive litigation of an issue of fact or law actually litigated and

19  resolved in a valid court determination essential to the prior judgment,' ***even if the issue recurs in***

20  ***the context of a different claim*.**"  *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (emphasis added)

21  (citation omitted).[4]  As the Supreme Court has recognized, issue preclusion is "central to the

22

23  _____

24  [4] "A 'final judgment' for purposes of collateral estoppel can be any prior adjudication of
    an issue in another action that is determined to be 'sufficiently firm' to be accorded conclusive
    effect."  *Luben Indus., Inc. v. United States*, 707 F.2d 1037, 1040 (9th Cir. 1983).  A denial of

25  class certification is sufficiently "firm" to preclude re-litigation where a party has been given a
    full and fair opportunity to litigate the issue.  *See, e.g.*, *Murray v. Sears, Roebuck & Co.*, No. 09-

26  05744 CW, 2010 U.S. Dist. LEXIS 83284, at *13 (N.D. Cal. July 21, 2010) (order denying class
    certification was "sufficiently firm" where plaintiffs "extensively litigated" the issue and the court

27  gave it "thorough consideration").  Here, the Court's class certification denial is "sufficiently
    firm" to preclude re-litigation because Plaintiffs failed to produce a *Comcast*-compliant damages

28  model even after "three motions for class certification, two completed damages surveys, and one

1   purpose for which civil courts have been established, the conclusive resolution of disputes within

2   their jurisdictions." *Montana v. United States*, 440 U.S. 147, 153 (1979).  "To preclude parties

3   from contesting matters that they have had *a full and fair opportunity to litigate* protects their

4   adversaries from the expense and vexation attending multiple lawsuits, conserves judicial

5   resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent

6   decisions." *Id.* at 153-54 (emphasis added).

7       Issue preclusion applies here because (1) the Parked Claims Plaintiffs are seeking to

8   relitigate issues decided in earlier proceedings over which they "had a sufficient 'laboring oar,'"

9   (2) the issues presented "are in substance the same as those resolved," and (3) no "controlling

10  facts or legal principles have changed" or "other special circumstances" exist that would warrant

11  "an exception to the normal rules of preclusion." *Id.* at 154-55; *see also Smyth v. China Agritech,*

12  *Inc.*, No. CV 13-03008-RGK (PJWx), 2013 U.S. Dist. LEXIS 195196, at *12-13 (C.D. Cal.

13  Sept. 26, 2013).

14              **1.    The Parked Claims Plaintiffs Exerted Control Over This**
                        **Litigation**
15

16      Even assuming that the Parked Claims Plaintiffs were "nonparties" to this action or to the

17  prior class certification motions (and thus to whom issue preclusion would not normally apply),

18  they fall into a long-recognized exception against nonparty preclusion because they "assume[d]

19  control over litigation in which they [had] a direct financial or proprietary interest" and now "seek

20  to redetermine issues previously resolved." *Montana*, 440 U.S. at 154.

21      In *Montana*, the Supreme Court determined that the United States, while not a party to a

22  prior state litigation, had "a sufficient 'laboring oar' in the conduct of the state-court litigation to

23  actuate principles of estoppel" because it had directed the lawsuit to be filed, reviewed and

24  approved the complaint, paid attorneys' fees and costs, and directed the filing and withdrawal of

25  an appeal. *Id*. at 154-55.  Similarly, in *Smyth*, 2013 U.S. Dist. LEXIS 195196, at *12-13, the

26

27  hypothetical survey," as well as "with the benefit of a Court order and Apple's many briefs and
    expert reports identifying flaws in Plaintiffs' damages model."  (ECF No. 392 at 27-28.)
28

court denied class certification after finding a plaintiff had likely "exercised control over" an earlier, unsuccessful class action by reviewing the complaint, signing an unfiled certification that they were willing to serve as lead plaintiffs, and retained the same expert witness as the named plaintiff in the earlier class action.  Recognizing that the plaintiff in the case could "be subject to a unique preclusion defense," the court held that the plaintiff did not meet the typicality prerequisites of Rule 23(a).  *See id.* at *11-13.

Here, the Parked Claims Plaintiffs have had "a sufficient 'laboring oar'" in the proceedings to apply issue preclusion.  *Montana*, 440 U.S. at 155.  First, all of them are named plaintiffs in this lawsuit.  (ECF No. 172.)  They all reviewed and approved the complaint.  (*See* Ex. A at 234:18-22, 240:5-9 (describing role in reviewing and approving complaints); Ex. B at 219:4-6, 227:7-10, 231:1-3, 238:6-8 (same); Ex. C at 222:6-8, 224:10-12, 226:2-5 (same); Ex. D at 214:16-25, 218:18-21 (same); Ex. E at 234:23-25, 241:23-25, 246:3-5 (same); Ex. F at 204:22-24, 207:13-15 (same); Ex. G at 172:2-5, 178:17-24, 181:11-14, 185:13-15 (same).)  Some Parked Claims Plaintiffs worked with their legal counsel to correct errors in the complaints to adequately represent their positions in this litigation.  (Ex. A at 237:4-8 (describing his suggestion to correct an error in the complaint); Ex. B at 220:5-24 (same).)

Second, they are all represented by the same interim lead class counsel—McCune Wright LLP—as the Selected Claims Plaintiffs.  (ECF No. 48; Ex. A at 23:24-24:3 (confirming McCune Wright LLP as his counsel); Ex. B at 38:23-24 (same); Ex. C at 20:4-6 (same); Ex. D at 26:25-27:3 (same); Ex. E at 27:19-22 (same); Ex. F at 16:19-21 (same); Ex. G at 176:18-19 (same).)  They are, therefore, all pursuing the same overall litigation strategy and legal theory.  All the Parked Claims Plaintiffs referred to or described contingency fee agreements with McCune Wright LLP relating to the payment of attorneys' fees and costs.  (Ex. A at 18:21-24 (describing contingency fee arrangement); Ex. B at 40:9-11 (same); Ex. C at 30:21-31:1 (same); Ex. D at 26:16-24 (same); Ex. E at 30:14-20 (same); Ex. F at 18:22-19:1 (same); Ex. G at 25:22-26:4 (same).)

Third—and importantly—because the Court did not bifurcate discovery, all the Parked Claims Plaintiffs participated in fact and expert discovery, just as the Selected Claims Plaintiffs

1   did.  The Parked Claims Plaintiffs produced documents, responded to written discovery, and sat

2   for depositions before the fact discovery cutoff.  (Cheung Decl. ¶ 2.)  They also retained the same

3   expert witnesses and submitted expert reports on the same deadlines as the Selected Claims

4   Plaintiffs.  Their reports included technical expert reports providing opinions about the nature of

5   the alleged defect in the Parked Claims Plaintiffs' phone models, as well as their individual

6   phones.  (ECF No. 378-11 at 60-61.)  They also supported a damages survey (Boedeker 2) that

7   relied on the Parked Claims Plaintiffs' alleged inoperability percentages and purported to

8   "calculate class-wide damages" that could be applied to any cause of action regardless of the

9   proposed state subclass.  (ECF No. 341-3 ¶¶ 22 n.2, 83.)

10      Finally, as discussed in the next section, the Parked Claims Plaintiffs are now asking the

11  Court to reconsider the exact same issues decided earlier in the litigation.  Because the Parked

12  Claims Plaintiffs have exerted control over the litigation and would be relying on the same expert

13  and damages model proffered with respect to the Selected Claims, issue preclusion applies and is

14  dispositive of any class certification motion on the Parked Claims.

15          **2.      The Parked Claims Plaintiffs Seek to Relitigate the Same Issues
                       That Were Previously Resolved by the Court**

16

17      The issues that the Parked Claims Plaintiffs seek to reopen—whether they meet the

18  requirements of *Comcast* under Rule 23—"are in substance the same as those resolved" by the

19  Selected Claims Plaintiffs.  *Montana*, 440 U.S. at 155.  The Court need look no further than the

20  Parked Claims Plaintiffs' representation that, if given a fourth chance to certify a class, they

21  would rely on Boedeker 3—the same damages survey offered by the Selected Claims Plaintiffs—

22  to determine that the two "issues" are the same.

23      The Ninth Circuit construes the "same issue" requirement broadly as precluding re-

24  litigation of an issue based on arguments that were raised or could have been raised in the earlier

25  action.  "[O]nce an issue is raised and determined, ***it is the entire issue that is precluded***, not just

26  the particular arguments raised in support of it in the first case."  *Kamilche Co. v. United States*,

27  53 F.3d 1059, 1063 (9th Cir. 1995) (emphasis added) (citation omitted); *see also Smith v. Bayer*

28  *Corp.*, 564 U.S. 299, 310 (2011) (recognizing that class certification decisions in state and federal

1    court would present the "same issue" if the state court "follow[s] the same approach as the federal

2    court"); Restatement (Second) of Judgments § 27 cmt. 3c (Am. Law Inst. 1982) ("If the party

3    against whom preclusion is sought did in fact litigate an issue . . . and suffered an adverse

4    determination, . . . new arguments may not be presented to obtain a different determination of that

5    issue.").

6        Here, the Court decided the *Comcast* issue adversely to the Selected Claims Plaintiffs by

7    ruling that Boedeker 2 did not meet the requirements of *Comcast* and precluding their reliance on

8    Boedeker 3 as "severely prejudicial" to Apple and "also untimely."  The Parked Claims Plaintiffs

9    make no argument that they require a different damages model to satisfy their burden under

10   *Comcast* in any motion to certify the Parked Claims.  Nor could they.  *Comcast* is a requirement

11   that cuts across all the Selected Claims and Parked Claims equally.  Plaintiffs' express

12   representation that they intend to rely on Boedeker 3—which the Selected Claims Plaintiffs also

13   sought to rely on to meet *Comcast*—only proves that the "issue" is the same.

14       Because the Court adversely determined the *Comcast* issue against the Selected Claims

15   Plaintiffs, **the entire issue is precluded** as to the Parked Claims Plaintiffs.  *Kamilche*, 53 F.3d at

16   1063.  Plaintiffs therefore cannot rely on Boedeker 3 to satisfy *Comcast* any more than the

17   Selected Claims Plaintiffs could.  Allowing parties (including nonparties who assume control of

18   the litigation) to make new arguments in pursuit of a different outcome on the same issue would

19   undermine the "central [] purpose for which civil courts have been established, the conclusive

20   resolution of disputes within their jurisdictions."  *Montana*, 440 U.S. at 153-54.

21       Nor may the Parked Claims Plaintiffs relitigate the Court's multiple orders precluding

22   reliance on Boedeker 3.  As the Court previously held, "Plaintiffs' service of the putative Third

23   Boedeker Report 'flies in the face' of the Court's March 6, 2019 order, which 'explicitly

24   prohibited' Plaintiffs from redoing the second survey and completing a third Boedeker report."

25   (ECF No. 392 at 16.)  The Court also found that "allowing Plaintiffs to serve a third survey and

26   third expert report would result in severe prejudice to Apple, which had already served two expert

27   reports addressing Plaintiffs' second survey."  (*Id.*)  The Court further held that "Plaintiffs' last-

28   minute service of the putative Third Boedeker Report was untimely because Plaintiffs had missed

by more than a month the February 15, 2019 deadline for the exchange of expert reports." (*Id.*)

These issues, too, bind the Parked Claims Plaintiffs under issue preclusion principles.  They

participated in fact and expert discovery, and proffered Boedeker 2 on the expert report deadline

to serve as a purported class-wide damages model for all causes of action.  Plaintiffs should not

be permitted to misuse the Parked Claims structure as a vehicle to avoid the Court's orders

expressly prohibiting a fourth re-do of Plaintiffs' damages report and to escape the Court's expert

report deadlines, to Apple's severe prejudice.

Because the Parked Claims Plaintiffs had a "full and fair opportunity" to litigate *Comcast*

by joining this lawsuit as class representatives, approving the complaints, participating in fact and

expert discovery, and submitting a damages survey attempting to comply with *Comcast*, issue

preclusion bars the Parked Claims Plaintiffs from revisiting the Court's prior, adverse ruling.

### 3.     No Exception Applies

No "controlling facts or legal principles have changed" or "other special circumstances"

exist that would warrant "an exception to the normal rules of preclusion." *Montana*, 440 U.S. at

155.  To the contrary, Plaintiffs have expressly represented that they seek to relitigate *Comcast*

using Boedeker 3—the same damages survey offered by the Selected Claims Plaintiffs that the

Court twice struck.  Plaintiffs therefore concede that no new facts or legal principles would

require departing from the normal rules of preclusion here.[5]

### B.     The Court's Prior *Comcast* Decision Applies to the Parked Claims Plaintiffs as Law of the Case

The Court has already determined that Boedeker 2 does not satisfy *Comcast* and that

Plaintiffs may not try again to correct the repeated errors in Boedeker's model.  (ECF No. 392 at

29-30.)  Those rulings apply equally to Plaintiffs as law of the case.

Courts have broad discretion to refuse to reconsider prior rulings under the law of the case

---

[5] To the extent that Plaintiffs attempt to argue that the opinion in *Nguyen v. Nissan N. Am., Inc.*, No. 18-16344, 2019 U.S. App. LEXIS 22296 (9th Cir. July 26, 2019) somehow supports their position, that case has no impact on the reasoning of the Court's latest class certification denial evaluating a different damages model based on a conjoint survey.

doctrine.  "Under the law of the case doctrine, 'a court is generally precluded from reconsidering an issue previously decided by the same court, or a higher court in the identical case.'"  *Ingle v. Circuit City*, 408 F.3d 592, 594 (9th Cir. 2005) (citation omitted).  "This doctrine has developed to 'maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit.'"  *Id*. (citation omitted); *see also Hadley v. Kellogg Sales Co*., No. 16-CV-04955-LHK, 2019 U.S. Dist. LEXIS 136791, at *44 (N.D. Cal. Aug. 13, 2019) (refusing to reconsider prior ruling under law of the case).

Like issue preclusion, the law of the case doctrine does not require "complete identity of the parties," and may be applied to preclude ***different plaintiffs*** in the same action from relitigating a previously decided issue—just as the Parked Claims Plaintiffs seek to do here.  *See Air Transp. Ass'n of Am. v. City & Cty. of S.F*., No. C 97-01763 CW, 1999 U.S. Dist. LEXIS 8747, at *16 n.3 (N.D. Cal. May 27, 1999) (citing *Disimone v. Browner*, 121 F.3d 1262, 1266 (9th Cir. 1997)).  In *Air Transportation*, Plaintiffs ATA and AIRCON filed a motion for summary judgment seeking a determination that federal law preempted a San Francisco Ordinance.  *Id*. at *8.  The Court ruled against ATA and AIRCON on two bases.  *Id*.  Two different plaintiffs— FedEx and United—later joined the action and sought to bring their own motions for summary judgment seeking to relitigate the two bases decided adversely to ATA and AIRCON.  *Id*. at *12-13.  But the Court declined to revisit its prior ruling, holding that "United and FedEx are bound by the Court's prior decisions in this action" as law of the case, absent a "compelling reason for reconsideration."  *Id*. at *13-14.  The Court reasoned that "principles of issue preclusion" supported applying law of the case to United and FedEx because both were "members of ATA and AIRCON," "chose to join as Plaintiffs in this action," and "neither United nor FedEx has argued that its interests were not adequately represented in the earlier proceedings in this case."  *Id*.  The Court also recognized that "[a]lthough the doctrine [of law of the case] typically applies to decisions involving the same parties, the fact that different parties, or different lawsuits, are involved is not necessarily determinative."  *Id*. at *16 n.3.

Here, too, the law of the case precludes the Parked Claims Plaintiffs from relitigating the Court's prior rulings on *Comcast* and Boedeker 3, even assuming that the Parked Claims

1    Plaintiffs are "different parties" to this litigation for the purposes of the Court's prior class

2    certification rulings.  The Parked Claims Plaintiffs have participated in this litigation as class

3    representatives from the onset, represented by the same counsel as the Selected Claims Plaintiffs,

4    in pursuit of the same *Comcast*-compliant damages survey.  (*See infra* Section V.A.1.)  All named

5    plaintiffs conducted themselves as though Boedeker 2 applied equally to all claims—Boedeker

6    himself referenced both the Selected Claims and Parked Claims plaintiffs in his report.  (ECF

7    No. 341-3 ¶¶ 22 n.2, 83.)  Likewise, all named plaintiffs seek to rely on Boedeker 3, effectively

8    conceding that Boedeker 2 and Boedeker 3 apply equally regardless of the plaintiff or underlying

9    cause of action.  The identity of interests among the plaintiffs here is therefore much stronger than

10   it was in *Air Transportation*.  *See* 1999 U.S. Dist. LEXIS 8747, at *13-14.

11         Nor can Plaintiffs point to any changed circumstances that would affect the reasoning of

12   the Court's latest class certification denial or its exclusion of Boedeker 3.  The Parked Claims

13   Plaintiffs seek to rely on Boedeker 3 for exactly the same purpose as the Selected Claims

14   Plaintiffs did—to argue that their damages model satisfies the requirements of *Comcast*.  Nor can

15   Plaintiffs argue that Boedeker 3 is "new" or "different" evidence since they have conceded this is

16   the same report they repeatedly tried to submit in connection with their prior certification motion.

17   (Ex. H at 26:21-23, 27:5-6.)  The Court's determinations that Boedeker 2 did not satisfy *Comcast*

18   and that Plaintiffs could not rely on Boedeker 3 to again attempt to correct Plaintiffs' damages

19   model are therefore law of the case and preclude re-litigation of those issues in the context of the

20   Parked Claims.

21              **C.      Principles of Comity Require Denial of Class Certification of the**
                         **Parked Claims**
22

23         The Supreme Court has expressly stated that it would "***expect*** federal courts to apply

24   principles of comity" to avoid "serial relitigation of class certification" when addressing a

25   materially identical dispute.  *Smith*, 564 U.S. at 317 (emphasis added).  Courts since *Smith*,

26   including in this District, have rejected successive class certification bids when the reason for

27   denying class certification in the prior action applied equally to the successive case.  *See, e.g.*,

28   *Williams v. Winco Foods*, No. CV 13-00146 CRB, 2013 U.S. Dist. LEXIS 108928, at *1, 5-6

1    (N.D. Cal. Aug. 1, 2013) (granting defendant's motion to deny class certification of materially

2    similar subclasses where plaintiffs could not overcome the same problems that precluded

3    certification of the prior subclasses); *McCabe v. Lifetime Entm't Servs., LLC*, No. 17-CV-908-

4    ERK-SJB, 2018 U.S. Dist. LEXIS 3212, at *46 (E.D.N.Y. Jan. 4, 2018) (applying comity

5    principles and applying prior court order denying class certification); *Baker v. Home Depot USA,*

6    *Inc.*, No. 11 C 6768, 2013 U.S. Dist. LEXIS 9377, at *15-16 (N.D. Ill. Jan. 24, 2013) (relying on

7    comity principles to strike class allegations because the "same problems" that barred class

8    certification in prior cases were similarly present); *Baker v. Microsoft Corp.*, 851 F. Supp. 2d

9    1274, 1276-78 (W.D. Wash. 2012) (applying comity to deny class certification in a case that was

10   "identical in pertinent part to a putative class action previously pursued by Plaintiffs' counsel in

11   which plaintiffs asserted the same claims"), *rev'd on other grounds*, 797 F.3d 607 (9th Cir. 2015),

12   *rev'd on other grounds*, 137 S. Ct. 1702 (2017) (leaving the district court's comity decision

13   intact); *Edwards v. Zenimax Media Inc.*, No. 12-cv-00411-WYD-KLM, 2012 WL 4378219, at *4

14   (D. Colo. Sept. 25, 2012) (striking class allegations on same grounds).

15          Courts have routinely recognized that comity principles permit them to reject the same

16   duplicative, wasteful, and burdensome re-litigation tactics that Plaintiffs seek to employ here.  *See*

17   *Smith*, 564 U.S. at 317 ("our legal system generally relies on principles of . . . comity among

18   courts to mitigate the sometimes substantial costs of similar litigation brought by different

19   plaintiffs"); *McCabe*, 2018 U.S. Dist. LEXIS 3212, at *47 ("It is certainly a tremendous waste of

20   judicial resources to have this Court entertain a putative class action identical to a previously

21   rejected class . . . ."); *Ott v. Mortg. Inv'rs Corp. of Ohio*, 65 F. Supp. 3d 1046, 1063 (D. Or. 2014)

22   (applying principles of comity as a way "to save the resources of the courts and parties" where the

23   parties had expended substantial time and resources); *Microsoft*, 851 F. Supp. 2d at 1278 (comity

24   provides "substantial value" in "discouraging repeated litigation of the same question") (citation

25   omitted); *Gomez v. St. Vincent Health, Inc.*, No. 1:08-cv-0153-DFH-DML, 2009 U.S. Dist.

26   LEXIS 53946, at *5, 9 (S.D. Ind. June 25, 2009) (plaintiffs' counsel's attempt to relitigate class

27   certification showed "a lack of regard for scarce judicial resources" and "burdens a busy district

28   court with duplicative litigation").

1    Principles of comity therefore permit the Court to reject yet another bid from Plaintiffs to

2    relitigate their repeated failure to submit a damages model that satisfies *Comcast*.  Plaintiffs have

3    represented that they intend to rely solely on Boedeker 3 to satisfy *Comcast* for the Parked

4    Claims, and that Boedeker 3 merely fixes "clerical errors" with Boedeker 2.  The Court has

5    already denied certification based on Boedeker 2, and repeatedly rejected Plaintiffs' efforts to rely

6    on Boedeker 3.  Moreover, Boedeker 2 expressly addresses both the Selected and Parked Claims

7    Plaintiffs.  Plaintiffs thus concede that they will not seek to submit a new model under *Comcast*

8    for the Parked Claims.  In short, Plaintiffs' tactics would result in yet another do-over, severely

9    prejudicing Apple and imposing an extreme and unjustified burden on the Court.

10   **VI.    CONCLUSION**

11   Because Plaintiffs had a full and fair opportunity to litigate the *Comcast* issue under the

12   Parked Claims structure, class certification on the Parked Claims must be denied.

14   Dated:  August 21, 2019                    Respectfully submitted,

15                                              MORRISON & FOERSTER LLP

17                                              By:  */s/ Arturo González*
18                                                   Arturo J. González

19                                                   Attorneys for Defendant
                                                     APPLE INC.