United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THOMAS DAVIDSON, et al., | Case No. 16-CV-04942-LHK |
| Plaintiffs, | **ORDER DENYING DEFENDANT'S MOTION TO DENY CLASS CERTIFICATION** |
| v. | |
| APPLE, INC., | Re: Dkt. No. 409 |
| Defendant. | |

Plaintiffs bring this putative class action against Defendant Apple, Inc. based on Defendant's alleged failure to disclose an alleged defect in the iPhone 6 and the iPhone 6 Plus. Before the Court is Defendant's motion to deny class certification. ECF No. 409. Having considered the submissions of the parties, the relevant law, and the record in this case, the Court DENIES Defendant's motion to deny class certification.

## I. BACKGROUND

### A. Factual Background

Defendant is the designer, manufacturer, marketer, and seller of the iPhone smartphone. ECF No. 172 ¶ 25 (Fourth Amended Class Action Complaint, or "FACC"). The iPhone utilizes a touchscreen for users to interact with the device, and use of the touchscreen is required to send text

messages, capture video, browse the internet, and access applications, among other functions. *Id.* ¶¶ 26, 28. Defendant released the iPhone 6 and iPhone 6 Plus on September 19, 2014. *Id.* ¶ 25. The iPhone 6 and 6 Plus both have a larger touchscreen than Defendant's prior iPhone models. *Id.* ¶ 30. Purchasers of the iPhone 6 and 6 Plus had 14 days after purchase to return their iPhones for a full refund. ECF No. 54-2.

According to Plaintiffs, the iPhone 6 and 6 Plus "suffer from a material manufacturing defect that causes the touchscreen to become unresponsive to users' touch inputs" (hereinafter, the "touchscreen defect"). *Id.* ¶ 43. Plaintiffs allege that the touchscreen defect is caused by a defect in the iPhone's external casing. *Id.* ¶ 45. Specifically, "the touchscreen function fails because the phones' external aluminum casing, whose primary purpose is to protect the sensitive internal components from strain, is insufficient to prevent the phones from bending during normal use." ECF No. 174 at 4. This bending causes two main forms of damage to the iPhone's circuits: "trace cracks . . . and/or solder ball cracks, both of which negatively affect the flow of electricity." *Id.* at 6. Specifically, the damage interrupts the flow of electricity within circuits, thereby preventing the iPhone from recognizing when a user is touching the screen. *Id.* The problem is at first intermittent, but becomes permanent as time passes and the trace and solder ball cracks worsen. Eventually, the touchscreen defect "causes the touchscreen to completely fail to respond to user inputs." *Id.* at 7.

Plaintiffs allege that Defendant knew about the touchscreen defect before releasing the iPhone 6 and 6 Plus on September 19, 2014. A consumer posted on Defendant's website about "iPhone 6 touchscreen problems" on September 18, 2014, the day before the iPhone 6 and 6 Plus were released to the public. FACC ¶ 54; *see also id.* ¶¶ 66–69 (other consumer complaints from shortly after the release date). Moreover, Defendant's internal testing "determined that the iPhone 6 was 3.3 times more likely to bend than the iPhone 5s (the model immediately prior to the subject iPhones) and that the iPhone 6 Plus was 7.2 times more likely to bend than the iPhone 5s." ECF No. 174 at 8. Underscoring the point, one of the major concerns Defendant identified prior to launching the iPhones was that they were "likely to bend more easily when compared to previous

2

generations," something that Defendant described as "expected behavior." ECF No. 173-18 at 15.

Plaintiffs allege that within days of the iPhones' release on September 19, 2014, "there were widespread consumer complaints about the iPhones bending." ECF No. 174 at 8. Plaintiffs state that Defendant then publicly denied that there was a bending problem, an incident the media termed "BendGate." FACC ¶ 54; ECF No. 174 at 8. Specifically, Defendant stated:

> Our iPhones are designed, engineered, and manufactured to be both beautiful and sturdy. iPhone 6 and iPhone 6 Plus feature a precision engineered unibody enclosure constructed from machining a custom grade of 6000 series anodized aluminum, which is tempered for extra strength. They also feature stainless steel and titanium inserts to reinforce high stress locations and use the strongest glass in the smartphone industry. We chose these high-quality materials and construction very carefully for their strength and durability. We also perform rigorous tests throughout the entire development cycle including 3-point bending, pressure point cycling, sit, torsion, and user studies. iPhone 6 and 6 Plus meet or exceed all of our high quality standards to endure everyday, real life use.

> With normal use a bend in iPhone [*sic*] is extremely rare and through our first six days of sale, a total of nine customers have contacted Apple with a bent iPhone 6 Plus. As with any Apple product, if you have questions please contact Apple.

FACC ¶ 79.

After internal investigation, Defendant determined that underfill was necessary to resolve the problems caused by the touchscreen defect. As Plaintiffs explain, "[u]nderfill is a bead of epoxy encapsulant that is placed on a circuit chip to reinforce its attachment to the board substrate and to stiffen the surrounding assembly. . . . Underfill is used to prevent the manifestation of chip defects induced by bending because it reinforces the connections and prevents them from bending away from the substrate." ECF No. 174 at 11 (internal citations omitted). Defendant had used underfill on the preceding iPhone generation but did not start using it on the Meson (U2402) chip in the iPhone 6 and iPhone 6 Plus until May 2016. *Id.*

On November 18, 2016, Defendant announced a customer service program related to the touchscreen defect called the "Multi-Touch Repair Program." FACC ¶ 119. Prior to the Multi-Touch Repair Program, Defendant charged approximately $349 for a refurbished iPhone when a consumer complained of the touchscreen defect outside of Defendant's warranty. *Id.* Through the Repair Program, Defendant has offered to repair consumers' devices for $149 if the iPhone is

3

otherwise working, and the screen is not broken. *Id.* Defendant also offers to reimburse consumers for amounts previously paid over $149. *Id.* ¶ 120.

Plaintiffs allege that Defendant did not disclose the existence of the touchscreen defect despite having exposed consumers to materials in which Defendant could have disclosed the defect. Each new iPhone 6 and 6 Plus came in an identical box designed by Defendant that contained various disclosures and advertisements about the iPhones' capabilities. *See* ECF No. 173-22 at 4–7. Inside the iPhone box, Defendant included two documents that made additional representations about the iPhone. ECF No. 174 at 10. Defendant also requires users to navigate an iPhone setup process before the iPhone can be used, and periodically releases updates to the iPhones' software. ECF No. 174-4; ECF No. 174 at 10, 22. However, Defendant did not disclose the defect in any of these materials.

**B. Procedural History**

On August 27, 2016, Plaintiffs Thomas Davidson, Jun Bai, and Todd Cleary filed a putative class action complaint against Defendant that alleged claims under (1) California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750; (2) Unfair Competition Law, Cal Bus. & Prof. Code § 17200; (3) False Advertisement Law, Cal. Bus. & Prof. Code § 17500; (4) common law fraud; (5) negligent misrepresentation; (6) unjust enrichment; (7) breach of implied warranty; (8) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301; and (9) violation of the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 17290. ECF No. 1.

On October 7, 2016, Plaintiffs filed a First Amended Class Action Complaint that added several Plaintiffs and added claims under the consumer fraud statutes of Illinois, New Jersey, Florida, Connecticut, Texas, Colorado, Michigan, New York, and Washington. ECF No. 20. On December 2, 2016, Plaintiffs filed a Second Amended Class Action Complaint ("SACC"), which added a Utah Plaintiff and a claim under Utah's consumer fraud statute. ECF No. 43. Plaintiffs therefore alleged twenty-two claims against Defendant in total. *Id.* Plaintiffs' references in their opposition to only twenty-one claims are therefore incorrect. ECF No. 413 at 2. Plaintiffs sought to represent a Nationwide Class of "[a]ll persons or entities in the United States that purchased an

United States District Court
Northern District of California

Apple iPhone 6 or 6 Plus." ECF No. 43. Alternatively, Plaintiffs sought to represent state sub-classes. *Id.*

Given the breadth of the Plaintiffs' action, the Court ordered the parties at the November 30, 2016 initial case management conference to each select five claims—for a total of ten claims—to litigate through trial. ECF No. 44. The Court initially scheduled trial on October 12, 2018.[1] ECF No. 57. On December 5, 2016, the parties selected (1) New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1; (2) Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201; (3) Washington Consumer Protection Act, Wash. Rev. Code § 19.86.010; (4) Illinois Consumer Fraud and Deceptive Trade Practices Act, Ill. Comp. Stat ¶ 505; (5) Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code ¶ 17.41; (6) Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-105; (7) common law fraud; (8) breach of express warranty; (9) breach of implied warranty; and (10) Magnuson-Moss Act. ECF No. 44 at 1–2.

In the instant order, the Court will refer to the foregoing claims as the "Selected Claims." By contrast, the Court will refer to the other claims alleged in the Fourth Amended Class Action Complaint ("FACC") as the "Parked Claims."

### 1. Labeling of Groups of Plaintiffs

For the purposes of ruling on the instant motion, the Court also finds it necessary to discuss the labeling of the various groups of Plaintiffs in the instant case. The parties attempt to distinguish between the "Selected Claims Plaintiffs" and the "Parked Claims Plaintiffs." However, this distinction is unhelpful. There is overlap between the Plaintiffs who alleged the Selected Claims and the Plaintiffs who alleged the Parked Claims. Indeed, pursuant to the pleadings, "[a]ll Plaintiffs" alleged three of the Selected Claims: common law fraud, breach of express warranty, and violation of the Magnuson-Moss Warranty Act. ECF No. 43 ¶¶ 211–214, 226–236, 242–252; FACC ¶¶ 268–272, 284–294, 300–310. "All Plaintiffs" also allege two of the Parked Claims: negligent misrepresentation and unjust enrichment. ECF No. 43 ¶¶ 220–236;

---

[1] As discussed *infra*, this trial date was eventually continued to August 12, 2019. ECF No. 268.

Case No. 16-CV-04942-LHK
ORDER DENYING DEFENDANT'S MOTION TO DENY CLASS CERTIFICATION

FACC ¶¶ 273–283. Accordingly, to the extent Plaintiffs assert that "the Parked Claims Plaintiffs" are "individuals who did not bring any of the Selected Claims," and that there is "zero overlap between the two groups," these assertions are incorrect. ECF No. 413 at 1, 2.

By contrast, as outlined below, only a small subset of Plaintiffs filed the third motion for class certification as to the Selected Claims. These Plaintiffs were John Borzymowski of Florida, William Bon of Washington, and Matt Muilenburg of Washington. ECF No. 341. These Plaintiffs have since voluntarily dismissed all of their claims with prejudice. ECF No. 412. Accordingly, in the instant order, the Court will refer to John Borzymowski of Florida, William Bon of Washington, and Matt Muilenburg of Washington as the "Former Plaintiffs." The instant motion focuses on the impact of the Court's ruling on the third motion for class certification as to the Selected Claims. ECF No. 409. Thus, the Court believes the distinction between the Former Plaintiffs and the current Plaintiffs to be a more helpful categorization than the one deployed by the parties.

**2. Discovery Structure and Defendant's Motions to Dismiss as to the Selected Claims**

In their November 23, 2016 joint case management statement, the parties expressed an "agreement not to propound discovery until after a ruling on [Defendant's] motion to dismiss." ECF No. 35 at 15. The Court then confirmed that the parties "agreed to stay discovery until the ruling on the motion to dismiss" at the November 30, 2016 case management conference. ECF No. 47 at 31:5–7.

Upon adopting the Parked Claims structure, at the January 12, 2017 case management conference, the Court specifically asked whether the parties wanted to proceed with discovery on all twenty-two claims alleged in the SACC when the stay was lifted. ECF No. 69 at 27:13–15. Both parties agreed that discovery should indeed proceed across all twenty-two claims at once. *Id.* at 27:13–25, 28:1–18 (The Court: "Are we anticipating that if and when the discovery stay is lifted, is that on all 22 claims, or is it only on this narrow set of ten claims?" // Mr. Singh: "I think everything." // Mr. Wright: "I agree that we don't want to bifurcate discovery so we're in agreement with that."). In the Court's January 12, 2017 case management order, the Court

memorialized this agreement and held that "there will be no bifurcation of discovery" in the instant case. ECF No. 57. The sole exception that the Court contemplated was for "transactional discovery, such as sales information and customer names," in states that correspond to the Parked Claims. *Id.* at 1. The Court instructed the parties to "meet and confer" regarding that discovery, and the parties agreed that Defendant would not be required to produce that discovery by the fact discovery deadline. *Id.*; ECF No. 406 at 5:4 – 16. Aside from this exception, discovery in the instant case therefore proceeded simultaneously across all twenty-two claims. Consistent with this decision, the Court scheduled the close of fact and expert discovery with no distinction between any of the Plaintiffs, and with no distinction between the Selected Claims and the Parked Claims. ECF Nos. 57, 109, 145, 268.

On January 6, 2017, Defendant filed a motion to dismiss the SACC as to the Selected Claims. ECF No. 54. On March 14, 2017, the Court dismissed all ten of the Selected Claims with leave to amend. *See* ECF No. 84; *Davidson v. Apple, Inc.*, 2017 WL 976048 (N.D. Cal. Mar. 14, 2017) ("*Davidson I*"). The Court noted that "neither party specified which state's common law applied to the[] selected common law claims," *id.* at 8, but that the parties generally cited California law in their briefing, *id.* at 19. In its order, the Court therefore also directed the parties to "select one state's common law for purposes of litigating Plaintiffs' selected breach of express and implied warranty claims," and to "select one state's common law for purposes of litigating Defendant's selected common law fraud claim." ECF No. 84 at 8. On March 21, 2017, the parties selected Illinois law for the purposes of the breach of express and implied warranty claims, and Pennsylvania law for the purposes of the common law fraud claim. ECF No. 85.

On April 4, 2017, Plaintiffs filed the Third Amended Class Action Complaint ("TACC"). ECF No. 86. On April 18, 2017, Defendant moved to dismiss the TACC as to the Selected Claims. *See* ECF No. 87.

On July 25, 2017, the Court granted in part and denied in part Defendant's motion to dismiss the TACC as to the Selected Claims. *See* ECF No. 103; *Davidson v. Apple, Inc.*, 2017 WL 3149305 (N.D. Cal. July 25, 2017) ("*Davidson II*"). To start, the Court found that some Plaintiffs

United States District Court
Northern District of California

lacked standing to seek injunctive relief enjoining Defendant's allegedly fraudulent misrepresentations and omissions about the iPhones because they did not intend to buy a new phone or participate in Defendant's Multi-Touch Repair Program. *Id.* at *7-8. Conversely, other Plaintiffs did have standing to seek injunctive relief because they intended to participate in the Multi-Touch Repair Program, or were at least willing to consider doing so. *Id.* at *8-9.

The Court then turned to Plaintiffs' fraud claims. First, the Court dismissed Plaintiffs' fraud claims based on affirmative misrepresentations "because Plaintiffs have failed to identify an actionable misrepresentation in the September 25, 2014 statement—and because this statement is the only statement that forms the basis of Plaintiffs' affirmative misrepresentation claims." *Id.* at *13. Second, the Court declined to dismiss Plaintiffs' fraud claims based on an omission theory because "Plaintiffs have sufficiently alleged the information about the iPhone to which Plaintiffs were exposed either prior to their purchase or immediately after their purchase and within the time window in which they could have returned their iPhone for a full refund." *Id.* at *14. The Court also found that Plaintiffs had adequately alleged that Defendant knew of the touchscreen defect at the time of the Plaintiffs' purchases. *See id.* at *14-15.

The Court next dismissed Plaintiffs' claims under the NJCFA and Pennsylvania common law fraud with prejudice. Plaintiffs' NJCFA claim failed because the only New Jersey Plaintiff experienced the touchscreen defect after the expiration of Defendant's one-year limited warranty period, and New Jersey law provides that "[a] defendant cannot be found to have violated the CFA when it provided a part—alleged to be substandard—that outperforms the warranty provided." *Perkins v. DaimlerChrysler Corp.*, 890 A.2d 997, 1004 (N.J. App. Div. 2006). The Court dismissed Plaintiffs' claim for Pennsylvania common law fraud as barred by the economic loss doctrine, which bars a plaintiff "from recovering in tort economic losses to which their entitlement flows only from a contract." *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 670 (3d Cir. 2002).

Finally, the Court dismissed Plaintiffs' breach of express and implied warranty claims under Illinois law with prejudice. After finding that the limited warranty was not unconscionable, the Court dismissed the breach of express warranty claim because the limited warranty excluded

8

design defects, and Plaintiffs alleged only a design defect. *Davidson II*, 2017 WL 3149305, at *24. Similarly, the Court dismissed the breach of implied warranty claim because the limited warranty was not unconscionable and expressly disclaimed an implied warranty. *Id.* at *26. The Court also dismissed Plaintiffs' Magnuson-Moss Act claim because the parties did not dispute that the claim rose or fell with Plaintiffs' express and implied warranty claims under state law. *Id.*

Thus, of the Selected Claims, five claims (all premised on a fraudulent omissions theory) survived Defendant's motion to dismiss the TACC: (1) a Colorado Consumer Protection Act claim; (2) a Florida Deceptive and Unfair Trade Practices Act claim; (3) an Illinois Consumer Fraud and Deceptive Trade Practices Act claim; (4) a Texas Deceptive Trade Practices Act claim; and (5) a Washington Consumer Protection Act claim. Upon resolving Defendant's motion to dismiss the TACC, the Court lifted the stay of discovery on August 2, 2017. ECF No. 109.

On December 21, 2017, the Court granted the parties' stipulation to file a Fourth Amended Class Action Complaint ("FACC"). ECF No. 169. The FACC was materially identical to the TACC save for the substitution of Plaintiff Eric Siegal, an Illinois resident, for Adam Benelhachem, the previous Illinois Plaintiff. *See* FACC. On January 3, 2018, Plaintiffs filed the FACC. ECF No. 172. On January 17, 2018, Defendant filed its Answer to the FACC. ECF No. 177.

### 3. The Court Denies Plaintiffs' First Motion for Class Certification as to the Selected Claims Because Plaintiffs' First Damages Expert Report Failed to Satisfy *Comcast*

On January 5, 2018, Plaintiffs filed their first motion for class certification as to the Selected Claims. ECF No. 174. The Plaintiffs who filed the first motion for class certification as to the Selected Claims were Justin Bauer of Colorado, John Borzymowski of Florida, Eric Siegal of Illinois, Taylor Brown of Texas, William Bon of Washington, and Matt Muilenburg of Washington. *Id.* at 1. Plaintiffs sought to certify the following proposed class under Rule 23(b)(3) or Rule 23(c)(4): "Any person residing in Colorado, Florida, Illinois, Washington, or Texas who purchased an Apple iPhone 6 or iPhone 6 Plus from Apple or an Apple Authorized Service Provider (listed on https://locate.apple.com/) that was manufactured without underfill under the

U2402 (Meson) integrated circuit chip." *Id.* at 3. Plaintiffs argued in the alternative that the Court should certify subclasses to account for differences among the states' laws. *Id.* at 23 n.13; TACC ¶ 129 ("In the alternative, Plaintiffs seek to represent the following state sub-classes."). On February 10, 2018, Defendant filed its opposition, ECF No. 183, and on March 2, 2018, Plaintiffs filed their reply. ECF No. 199.

On May 8, 2018, the Court denied Plaintiffs' first motion for class certification as to the Selected Claims. ECF No. 225; *Davidson v. Apple*, 2018 WL 2325426 (N.D. Cal. May 8, 2018) ("*Davidson III*"). The Court rejected Defendant's arguments that Plaintiffs lacked standing, *id.* at *7–10, and explained that Plaintiffs' Colorado claim was categorically barred because the applicable Colorado law bars class actions for damages. *Id.* at *10–11.

As relevant to this motion, the Court addressed whether the remaining state law Selected Claims satisfied Rule 23(a) and Rule 23(b)(3). The Court determined that the remaining Selected Claims under Florida, Illinois, Washington, and Texas law satisfied Rule 23(a). *Id.* at *11–13. The Court concluded that predominance was met for Illinois, Florida, and Washington Selected Claims because those statutes permit inferring reliance on a classwide basis, but denied certification of the Texas Selected Claim because Texas law does not permit inferring reliance and individualized inquiries would predominate on Plaintiffs' Texas claim. *Id.* at *15–16. The Court also rejected Defendant's arguments that Plaintiffs could not prove exposure and manifestation on a classwide basis for the Selected Claims. *Id.* at *17–20.

The Court then determined that Plaintiffs' damages model failed to satisfy the requirements set forth in *Comcast v. Behrend*, 569 U.S. 27 (2013). The Court explained that in *Comcast*, the United States Supreme Court held that "a plaintiff bears the burden of providing a damages model showing that 'damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3).'" *Davidson III*, 2018 WL 2325426, at *21 (quoting *Comcast*, 569 U.S. at 35). "The damages model 'must measure only those damages attributable to' the plaintiff's theory of liability." *Id.* (quoting *Comcast*, 569 U.S. at 35).

The Court then turned to Plaintiffs' damages model. Plaintiffs' theory of liability was that

Defendant's failure to disclose the touchscreen defect caused consumers "to pay more for those products than they otherwise would have." ECF No. 174 at 26. Plaintiffs' damages expert, Dr. Stefan Boedeker, proposed a "Choice-Based Conjoint Analysis" damages model to analyze the value consumers attach to specific product attributes ("Boedeker 1"). *Davidson III*, 2018 WL 2325426, at *21. In a survey, Boedeker asked respondents to choose between phones differing in storage capacity, screen size, talk time, price, and defectiveness (no defect, defect costing $100 to repair or replace, or defect costing $200 to repair or replace). *Id.* Then, Boedeker "isolated the (negative) value associated with defectiveness," and determined that the economic loss was $323 or 51.7% of the phone's price for the $100 defect and $432 or 69.2% of the phone's price for the $200 defect. *Id.*

Defendant argued, and the Court agreed, that Boedeker 1 failed to satisfy *Comcast* "because it assumes that the touchscreen defect will manifest in all iPhones." *Id.* at *22. By contrast, Plaintiffs' theory of liability was that Defendant "failed to disclose the existence of a touchscreen defect that manifests in approximate 5.6 percent of the iPhone 6 Plus (after two years of use) and at a somewhat lower rate for the iPhone 6." *Id.* (citing ECF No. 174, Plaintiffs' motion for class certification). Thus, the Court held that to correspond to Plaintiffs' theory of liability, Boedeker 1 should measure "how much consumers overpaid for iPhones assuming a roughly 5.6 percent or less chance that consumers would experience the touchscreen defect," rather than what Boedeker 1 actually measured: "how much consumers overpaid for a touchscreen defect that is certain to manifest in *all* iPhones." *Id.* (emphasis in original). The options in the Boedeker 1 survey failed to convey that the touchscreen defect might not manifest. *Id.* at *23. This deficiency alone meant that Boedeker 1 failed to satisfy *Comcast*.

The Court stated that Boedeker 1 failed to satisfy *Comcast* in other respects. For one, Boedeker 1 assumed that the touchscreen defect rendered iPhones "inoperable," but "none of the named Plaintiffs have experienced complete iPhone inoperability as a result of the touchscreen defect." *Id.* at *23. In addition, Boedeker 1 asked consumers "about a generic defect instead of one specifically affecting a phone's touchscreen," and thus "necessarily assumed that respondents

would value all defects equally." *Id.* The Court held that this model was inconsistent with Plaintiffs' theory of liability "because it unmoors Plaintiffs' damages from the specific touchscreen defect alleged to have harmed them." *Id.* Thus, the Court concluded that Plaintiffs failed to satisfy the Rule 23(b)(3) predominance requirement as to the Selected Claims because Boedeker 1 was inadequate under *Comcast*. *Id.* at *24.

In addition, the Court denied Plaintiffs' request for injunctive relief as waived, *id.* at *25, and denied Plaintiffs' motion to certify a Rule 23(c)(4) issues class because Plaintiffs failed to show why an issues class "would materially advance the litigation as a whole." *Id.* at *25–26.

### 4. The Court Denies Plaintiffs' Second Motion for Class Certification as to the Selected Claims Because Plaintiffs' Motion Relied on a Hypothetical Expert Report

On May 16, 2018, in the parties' joint case management statement, Plaintiffs stated that they intended to either file a motion for leave to file a motion for reconsideration of the Court's May 8, 2018 denial of class certification as to the Selected Claims or an appeal under Federal Rule of Civil Procedure 23(f), or both. ECF No. 232 at 1. Plaintiffs also asked the Court to stay the case. *Id.*

On May 22, 2018, Plaintiffs declined to file a motion for reconsideration, and instead filed in the Ninth Circuit a petition for permission to appeal the Court's denial of class certification under Federal Rule of Civil Procedure 23(f). ECF No. 235. On May 23, 2018, the Court held a case management conference, and stayed the case pending resolution of Plaintiffs' 23(f) petition. ECF No. 236.

On August 9, 2018, Plaintiffs moved to voluntarily dismiss their Rule 23(f) petition, ECF No. 248, and on August 24, 2018, the Ninth Circuit granted Plaintiffs' motion and dismissed Plaintiffs' Rule 23(f) petition. ECF No. 252.

On September 12, 2018, Plaintiffs asked to lift the stay of the case and to file a second motion for class certification by September 27, 2018. ECF No. 255 at 2–3. Plaintiffs stated that Plaintiffs had withdrawn their Rule 23(f) petition on August 9 in light of the Court's statements at the May 23, 2018 case management conference that the Court would probably certify a risk class

12

if Plaintiffs presented a compliant damages model:

> Heeding the Court's comments that that if Plaintiffs presented "a theory that had basically just what is the benefit of the bargain lost in that you are buying a phone that has X percentage possibility of having this inoperability problem . . . then I would say that the predominance issue will probably be appropriately dealt with and I would certify a risk class."

*Id.* at 2 (quoting ECF No. 238 at 8:10-16). Plaintiffs requested that the second motion for class certification as to the Selected Claims be heard as early as November 1, 2018. *Id.* at 3. The Court set the next case management conference for October 31, 2018. ECF No. 258.

On October 24, 2018, Plaintiffs proposed to file their second motion for class certification as to the Selected Claims by November 8, 2018 and that the second motion for class certification as to the Selected Claims be heard as early as December 6, 2018. ECF No. 264 at 1.

On October 31, 2018, the Court held a further case management conference, lifted the stay in the case, and adopted Plaintiffs' proposed November 8, 2018 deadline for Plaintiffs to file their second motion for class certification as to the Selected Claims. ECF No. 268. The Court also set a November 2, 2018 deadline for the close of fact discovery, a January 18, 2019 deadline for opening expert reports, a February 15, 2019 deadline for rebuttal expert reports, and a March 8, 2019 deadline for the close of expert discovery. *Id.*

At the October 31, 2018 case management conference, Plaintiffs' counsel stated that after receiving the Court's May 8, 2018 order denying Plaintiffs' first motion for class certification as to the Selected Claims, "we immediately worked with our expert following the receipt of that order and following the status conference. And the, the methodology that Your Honor talked about in her order is easily done, has been done as a matter of fact." ECF No. 276 at 6:4-8.

On November 8, 2018, Plaintiffs filed their second motion for class certification as to the Selected Claims, which included a Boedeker supplemental declaration that discussed only a hypothetical survey. ECF No. 270. The Plaintiffs who filed the second motion for class certification as to the Selected Claims were John Borzymowski of Florida, Eric Siegal of Illinois, William Bon of Washington, and Matt Muilenburg of Washington. *Id.* at 1. On December 6,

United States District Court
Northern District of California

2018, Defendant filed its opposition to Plaintiffs' second motion for class certification as to the Selected Claims, ECF No. 283, and on December 20, 2018, Plaintiffs filed their reply. ECF No. 288.

On December 6, 2018, Defendant moved to exclude Boedeker's supplemental declaration. ECF No. 284. On December 20, 2018, Plaintiffs filed their opposition to Defendant's motion to exclude Boedeker's supplemental declaration, ECF No. 289, and on December 27, 2018, Defendant filed its reply. ECF No. 295.

After Plaintiffs' second motion for class certification as to the Selected Claims was fully briefed on December 20, 2018, and after Defendant's motion to exclude Boedeker's supplemental declaration was fully briefed on December 27, 2018, Plaintiffs produced Boedeker's second completed damages survey and second expert report ("Boedeker 2") on January 18, 2019. ECF No. 314 at 3 (citing ECF No. 309).

On February 7, 2019, a week after filing its summary judgment reply brief on February 1, 2019, Defendant filed an administrative motion for leave to file a supplemental brief in opposition to Plaintiffs' second motion for class certification as to the Selected Claims and in support of Defendant's motion to exclude Boedeker's supplemental declaration. ECF No. 309. Defendant requested leave to brief how Boedeker 2 affected Plaintiffs' pending second motion for class certification as to the Selected Claims. *Id.* at 2. Defendant also stated that the survey discussed in Boedeker 2 told survey respondents the wrong risk manifestation rates: "Mr. Boedeker told respondents that the iPhone 6 suffers from a defect 5.6% of the time, which is in fact the alleged rate of touchscreen issues for the iPhone 6 Plus, and vice versa." *Id.* at 2–3. On February 11, 2019, Plaintiffs opposed Defendant's administrative motion, but did not address the erroneous risk rates in Boedeker 2. ECF No. 310.

On February 12, 2019, the Court denied without prejudice Plaintiffs' second motion for class certification as to the Selected Claims. ECF No. 314. The Court stated that in Plaintiffs' second motion for class certification as to the Selected Claims, Plaintiffs represented that "Plaintiffs' expert, Stefan Boedeker, has stated how he *will* update his damages model to track this

14

theory of liability and thereby satisfy *Comcast*." *Id.* at 2 (emphasis in original) (citing ECF No. 270 at 5). The Court continued:

> Thus, Plaintiffs' motion relies on a hypothetical survey that Boedeker had not yet conducted despite the fact that Plaintiffs, in their original class certification motion, relied upon a completed Boedeker survey. Plaintiffs do not explain why Boedeker did not conduct this new survey during the 6 months between the Court's May 8, 2018 denial of class certification and the filing of Plaintiffs' renewed motion for class certification on November 8, 2018.

*Id.*

Thus, the entire briefing on Plaintiffs' second motion for class certification as to the Selected Claims concerned a hypothetical survey even though a second completed survey now existed. *Id.* Accordingly, the Court denied without prejudice Plaintiffs' second motion for class certification as to the Selected Claims "[b]ecause analysis of whether Boedeker's new survey satisfies *Comcast* is essential to a class certification determination; because Plaintiffs did not complete this survey before filing their renewed motion for class certification despite having 6 months to do so; and because briefing on class certification should address Boedeker's new survey." *Id.*

The Court gave Plaintiffs yet another opportunity to file a motion for class certification. The Court set a March 5, 2019 deadline for Plaintiffs to file a third motion for class certification as to the Selected Claims that would address Boedeker 2. *Id.* The Court also denied as moot Defendant's motions to exclude Boedeker's supplemental declaration and for leave to file a supplemental brief. *Id.*

### 5. Defendant's Motion for Summary Judgment as to the Selected Claims

On December 21, 2018, while the parties were briefing class certification, Defendant filed a motion for summary judgment as to the Selected Claims. ECF No. 291. On January 17, 2019, Plaintiffs filed their opposition to Defendant's motion for summary judgment, ECF No. 302, and on February 1, 2019, Defendant filed its reply. ECF No. 305.

On February 21, 2019, the Court granted in part and denied in part Defendant's motion for summary judgment as to the Selected Claims. ECF No. 324. The Court (1) denied the motion as

15

to Plaintiffs' Colorado claim, *id.* at 11–14; (2) denied the motion as to Plaintiffs' Florida claim, *id.* at 14–15; (3) denied the motion as to Plaintiffs' Washington claim, *id.* at 15–17; (4) granted the motion as to Plaintiffs' Illinois claim; *id.* at 17–20; (5) granted the motion as to Plaintiffs' Texas claim, *id.* at 20–22; and (6) granted the motion as to Plaintiff Bauer's injunctive relief claim. *Id.* at 22–24.

On February 28, 2019, Defendant filed a motion for leave to file a motion for reconsideration of the Court's denial of Defendant's motion for summary judgment on Plaintiffs' Florida claim. ECF No. 325. On March 1, 2019, the Court filed an order reaffirming the Court's denial of Defendant's motion for summary judgment on Plaintiffs' Florida claim, ECF No. 333, and an order denying Defendant's motion for leave to file a motion for reconsideration. ECF No. 334.

### 6. The Court Denies Plaintiffs' Attempt After the Deadline for Exchanging Expert Reports to Serve a Third Damages Expert Report

On March 1, 2019, four days before Plaintiffs' March 5, 2019 deadline to file their third motion for class certification, Plaintiffs filed an administrative motion to (1) serve a corrected expert report of Stefan Boedeker; and (2) modify the briefing schedule on Plaintiffs' anticipated third motion for class certification. ECF No. 335.

In the March 1, 2019 motion, Plaintiffs stated that "[o]n February 28, 2019, Plaintiffs' counsel discovered that the consumer survey" discussed in Boedeker 2 contained errors "resulting in inaccurate data being used to calculate economic loss." *Id.* at 2. Specifically, the survey transposed the defect risk rates for the iPhone 6 and the iPhone 6 Plus. *Id.*

Plaintiffs' representation that they only discovered the error on February 28, 2019 was not credible. Plaintiffs' March 1, 2019 motion concerned the same survey errors that Defendant had identified almost a month earlier in a February 7, 2019 motion filed on the public docket. *See* ECF No. 309 at 2 ("The survey also tells respondents the wrong risk rate: Mr. Boedeker told respondents that the iPhone 6 suffers from a defect 5.6% of the time, which is the fact the alleged rate of touchscreen issues for the iPhone 6 Plus."). On February 11, 2019, Plaintiffs filed a

Case No. 16-CV-04942-LHK
ORDER DENYING DEFENDANT'S MOTION TO DENY CLASS CERTIFICATION

response to Defendant's February 7, 2019 motion. ECF No. 310. Moreover, on February 15, 2019, Defendant served two rebuttal expert reports identifying the same risk rate errors and other flaws in the second survey. ECF No. 342.

Given the errors in Boedeker 2, Plaintiffs requested leave to redo the second survey and serve a corrected, third Boedeker expert report. ECF No. 335 at 2. Plaintiffs also asked to modify the briefing schedule on Plaintiffs' third motion for class certification "because Mr. Boedeker's new survey results and corresponding corrected report will not be finalized until after the current deadline (March 5) for Plaintiffs to file their motion for class certification." *Id.* at 3.

On March 4, 2019, Defendant filed an opposition to Plaintiffs' administrative motion to redo Boedeker 2 and modify the briefing schedule on Plaintiffs' third motion for class certification. ECF No. 336.

On March 6, 2019, the Court denied Plaintiffs' administrative motion to redo Boedeker 2 and modify the briefing schedule. ECF No. 342. The Court recounted the long history of Plaintiffs' attempts to certify a class as to the Selected Claims, and stated that "[t]his Court generally does not give plaintiffs another opportunity to a file a motion for class certification after this Court has denied a class certification motion." *Id.* at 2. Rather, "[t]he Court made a singular exception" in this case to allow Plaintiffs to attempt to remedy the flaws in their first damages model via a second motion for class certification as to the Selected Claims, but then had to order briefing of a third motion for class certification to account for Plaintiffs' belated completion of Boedeker 2. *Id.* at 4.

Further, the Court observed that Plaintiffs knew about the manifestation risk rate errors in Boedeker 2 since at least February 7, 2019, when Defendant filed a motion on the public docket stating that Boedeker 2 used the wrong risk rates. *Id.* at 4–5 (citing ECF No. 309). Plaintiffs responded to Defendant's motion on February 11, 2019. ECF No. 310. Moreover, on February 15, 2019, Defendant served on Plaintiffs two rebuttal expert reports that identified the same and other flaws in Boedeker 2. ECF No. 342 at 5 (citing ECF No. 336). Thus, Plaintiffs forced Defendant to prepare multiple sets of rebuttal expert declarations, expert reports, and briefs to

17

respond to Boedeker 1, Boedeker 2, and to respond to the hypothetical survey discussed in Plaintiffs' second motion for class certification as to the Selected Claims. *Id.* Accordingly, the Court denied Plaintiffs' administrative motion to redo Boedeker 2 and modify the briefing schedule as to Plaintiffs' third motion for class certification. *Id.* at 5–6.

### 7. Plaintiffs Serve a Third Damages Expert Report in Violation of the Court's Order

On March 26, 2019, Defendant filed an administrative motion to enforce the Court's March 6, 2019 order denying Plaintiffs' administrative motion to redo Boedeker's survey and serve a third Boedeker report. ECF No. 357. Defendant stated that late on March 25, 2019—four days before Defendant's opposition to Plaintiffs' third motion for class certification as to the Selected Claims was due on March 29, 2019—Plaintiffs served Defendant with a Corrected Amended Expert Report of Stefan Boedeker, which was a putative third Boedeker report "premised on a new survey" ("Boedeker 3"). *Id.* at 1. Defendant sought to prevent Plaintiffs "from using Mr. Boedeker's latest report and survey for any purpose." *Id.* Defendant stated that Boedeker 3 "comes to entirely different conclusions of economic loss, and changes the survey instructions and attribute descriptions that [survey] respondents saw." *Id.*

On March 27, 2019, the Court granted Defendant's administrative motion to enforce the Court's March 6, 2019 order. ECF No. 359. The Court stated that Plaintiffs' service of Boedeker 3 "flies in the face" of the Court's March 6, 2019 order, which "explicitly prohibited" Plaintiffs from redoing the second survey and completing a third Boedeker report. *Id.* at 2. Further, allowing Plaintiffs to serve a third survey and third expert report would result in severe prejudice to Defendant, which had already served two expert reports addressing Boedeker 2. *Id.* Finally, Plaintiffs' last-minute service of Boedeker 3 was untimely because Plaintiffs had missed by more than a month the February 15, 2019 deadline for the exchange of expert reports. *Id.*

### 8. The Court Denies Former Plaintiffs' Third Motion for Class Certification as to the Selected Claims Because Plaintiffs' Second Damages Expert Report Failed to Satisfy *Comcast*

On March 5, 2019, Plaintiffs John Borzymowski of Florida, William Bon of Washington,

Case No. 16-CV-04942-LHK
ORDER DENYING DEFENDANT'S MOTION TO DENY CLASS CERTIFICATION

and Matt Muilenburg of Washington (collectively, "Former Plaintiffs") filed a third motion for class certification as to the Selected Claims. ECF No. 341. Former Plaintiffs sought to certify the following class: "Any person residing in Florida or Washington who purchased an Apple iPhone 6 or iPhone 6 Plus from Apple or an Apple Authorized Service Provider (listed on https://locate.apple.com/) that was manufactured without underfill under the U2402 (Meson) integrated circuit chip." *Id.* at 1. On March 29, 2019, Defendant filed its opposition, ECF No. 363, and on April 11, 2019, Former Plaintiffs filed their reply, ECF No. 366.

On June 20, 2019, the Court denied Former Plaintiffs' third motion for class certification as to the Selected Claims. ECF No. 392. The Court concluded that Boedeker 2, like Boedeker 1, failed to satisfy *Comcast*. *Id.* at 22. As an initial matter, the Court explained that Boedeker 2 produced "elevated loss calculations" because it overstated "the cost to purchasers of addressing the touchscreen defect." *Id.* at 23. Indeed, the Court explained that the Boedeker 2 survey failed to alert respondents to the fact that Defendant provided a one-year warranty to purchasers, and that if the alleged defect manifested within the warranty period, Defendant would provide a refurbished phone at no charge. *Id.* The Boedeker 2 survey incorrectly informed respondents that "even if the defect manifested within the warranty period, a purchaser's only remedy was to pay $149 for repairs." *Id.* Thus, Boedeker 2 overstated class damages. *Id.* Additionally, the Court explained that Boedeker 2 "switched the manifestation rates for the" iPhone 6 and the iPhone 6 Plus. *Id.* at 25. Because of this error, Boedeker 2 reached "inaccurate and useless" economic loss conclusions. *Id.* Indeed, the Court explained that the "varying manifestation rates lead to vast differences in economic loss calculations." *Id.* at 26. Thus, the Court denied Former Plaintiffs' third motion for class certification as to the Selected Claims. *Id.* at 33.

### 9. Dismissal of Selected Claims and Former Plaintiffs

Fact discovery closed on November 2, 2018, and expert discovery closed on March 8, 2019. ECF No. 268. The Selected Claims were scheduled to have a final pretrial conference on July 18, 2019, and an eight-day jury trial starting on August 12, 2019. *Id.* However, on July 2, 2019, Plaintiffs John Borzymowski of Florida, William Bon of Washington, and Matt Muilenburg

United States District Court
Northern District of California

of Washington (collectively, "Former Plaintiffs") and Plaintiff Justin Bauer of Colorado dismissed all of their claims without prejudice. ECF No. 397. These Plaintiffs were the only individuals who alleged the three Selected Claims that survived summary judgment: (1) Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-105; (2) Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201; and (3) Washington Consumer Protection Act, Wash. Rev. Code § 19.86.010. ECF No. 398 at 2. Following the dismissal, on July 3, 2019, the Court explained that "[i]n effect, the voluntary dismissal eliminated the remaining three causes of action the parties elected to litigate." *Id.* The Court went on to explain that in light of the voluntary dismissal, and the previous orders on the motions to dismiss and motion for summary judgment on the Selected Claims, "none of the original ten causes of action that the parties elected to litigate remain a part of the instant suit." *Id.* at 2–3. On August 30, 2019, the Former Plaintiffs and Plaintiff Justin Bauer dismissed all of their claims with prejudice. ECF No. 412.

### 10. The Instant Motion to Deny Class Certification of Parked Claims

Only the following Plaintiffs now remain in the instant case: Todd Cleary of California; Thomas Davidson of Pennsylvania; Eric Siegal of Illinois; Michael Pajaro of New Jersey; Brooke Corbett of Connecticut; Taylor Brown of Texas; Heirloom Estate Services, Inc. of Michigan; Kathleen Baker of New York; and Jason Petty of Utah.

The FACC's claim for Violation of the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. § 510, was not one of the Selected Claims. However, the parties indicated in their July 17, 2019 joint case management statement that the Court's decision on summary judgment "render[ed] moot" the claim for Violation of the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. § 510. ECF No. 402 at 2 n.1. Thus, on July 25, 2019, the Court dismissed this claim with prejudice pursuant to the parties' agreement in the July 17, 2019 joint case management statement. ECF No. 405.

Accordingly, the following ten Parked Claims remain pending in the instant case, on behalf of representative Plaintiffs for sub-classes located in California, Connecticut, Michigan, New York, and Utah, ECF. 402:

| Claim No. (from FACC) | Claim |
|---|---|
| 1 | Violation of the California Consumer Legal Remedies Act (Cal. Civ. Code § 1750) |
| 2 | Violation of California Unfair Competition Laws (Cal. Bus. & Prof. Code § 17200) |
| 3 | Violation of California False Advertising Law (Cal. Bus. & Prof. Code § 17500) |
| 8 | Violation of the Connecticut Unfair Trade Practices Act (Conn. Gen. Stat. Ann. § 42-110b(a), *et seq.*) |
| 11 | Violation of the Michigan Consumer Protection Act (Mich. Comp. Laws § 445.901, *et seq.*) |
| 12 | Violation of New York General Business Law § 349 |
| 13 | Violation of New York General Business Law § 350 |
| 16 | Negligent Misrepresentation |
| 17 | Unjust Enrichment |
| 22 | Violation of Utah Consumer Sales Practices Act (Utah Code Ann. § 13-11-1, *et seq.*) |

At the July 25, 2019 case management conference, after setting the briefing and hearing schedule on the instant motion for August through November 2019, the Court stayed the only remaining discovery in the instant case, which constitutes "transactional discovery, such as sales information and customer names," in states that correspond to the Parked Claims. *Id.* at 2; ECF No. 406 at 53:25–54:6. The Court stated that the stay would be revisited at the January 15, 2020 case management conference. *Id.*

On August 21, 2019, Defendant filed the instant motion to deny class certification. ECF No. 409. In the instant motion, Defendant argues that the Court's order denying Plaintiffs' third motion for class certification as to the Selected Claims requires the Court to also deny class certification as to the Parked Claims. *Id.* at 8. Plaintiffs filed an opposition on September 11, 2019, ECF No. 413, and Defendant filed a reply on September 25, 2019, ECF No. 414.

## II. LEGAL STANDARD

### A. Motion for Class Certification

Class actions are governed by Rule 23 of the Federal Rules of Civil Procedure, which does

21

not set forth a mere pleading standard. To obtain class certification, plaintiffs bear the burden of showing that they have met each of the four requirements of Rule 23(a) and at least one subsection of Rule 23(b). *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186, *amended by* 273 F.3d 1266 (9th Cir. 2001). "A party seeking class certification must affirmatively demonstrate . . . compliance with the Rule[.]" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Rule 23(a) provides that a district court may certify a class only if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). That is, the class must satisfy the requirements of numerosity, commonality, typicality, and adequacy of representation to maintain a class action. *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012).

If all four prerequisites of Rule 23(a) are satisfied, the Court must also find that the plaintiff "satisf[ies] through evidentiary proof" at least one of the three subsections of Rule 23(b). *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). The Court can certify a Rule 23(b)(1) class when plaintiffs make a showing that there would be a risk of substantial prejudice or inconsistent adjudications if there were separate adjudications. Fed. R. Civ. P. 23(b)(1). The Court can certify a Rule 23(b)(2) class if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Finally, the Court can certify a Rule 23(b)(3) class if the Court finds that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"[A] court's class-certification analysis must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim[.]" *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 465–66 (2013) (quoting *Dukes*, 564 U.S. at 351); *see also Mazza*, 666 F.3d

United States District Court
Northern District of California

at 588 ("'Before certifying a class, the trial court must conduct a 'rigorous analysis' to determine whether the party seeking certification has met the prerequisites of Rule 23.'" (quoting *Zinser*, 253 F.3d at 1186)). This "rigorous" analysis applies to both Rule 23(a) and Rule 23(b). *Comcast*, 569 U.S. at 34 (stating that Congress included "addition[al] . . . procedural safeguards for (b)(3) class members beyond those provided for (b)(1) or (b)(2) class members (e.g., an opportunity to opt out)" and that a court has a "duty to take a 'close look' at whether common questions predominate over individual ones").

Nevertheless, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen*, 568 U.S. at 466. "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* If a court concludes that the moving party has met its burden of proof, then the court has broad discretion to certify the class. *Zinser*, 253 F.3d at 1186.

## III.  DISCUSSION

As discussed *supra*, Defendant claims that class certification as to the Parked Claims is barred on the basis of three different doctrines: (1) issue preclusion; (2) law of the case; and (3) comity. The Court analyzes each of these three arguments in turn.

### A. Issue Preclusion Does Not Apply in the Instant Case

Defendant asserts that issue preclusion bars class certification as to the Parked Claims. This is so because according to Defendant, the remaining Plaintiffs exercised control over the previous class certification proceeding involving the Selected Claims, and because Plaintiffs also seek to litigate the same issues as the ones that the Court considered in Former Plaintiffs' third motion for class certification as to the Selected Claims. Mot. at 8–13. However, Defendant's issue preclusion argument is fundamentally flawed. As the Court will explain, issue preclusion applies only in the context of *separate* actions.

Issue preclusion "protect[s] against the expense and vexation attending multiple lawsuits, conserve[s] judicial resources, and foster[s] reliance on judicial action by minimizing the

United States District Court
Northern District of California

possibility of inconsistent decisions." *Media Rights Techs., Inc. v. Microsoft Corp.*, 922 F.3d 1014, 1020 (quoting *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008)). For issue preclusion to apply, four conditions must be met: "(1) the issue at stake was identical in both proceedings; (2) the issue was actually litigated and decided in the prior proceedings; (3) there was a full and fair opportunity to litigate the issue; and (4) the issue was necessary to decide the merits." *Janjua v. Neufeld*, 933 F.3d 1061, 1065 (9th Cir. 2019) (quotation marks omitted); *see also Howard v. City of Coos Bay*, 871 F.3d 1032, 1041 (9th Cir. 2017) (outlining requirements of issue preclusion).

Plaintiffs cite *Currier v. Virginia* for the proposition that issue preclusion only arises in the context of separate actions. Opp'n at 13. In *Currier v. Virginia*, 138 S. Ct. 2144 (2018), the United States Supreme Court noted that "[i]ssue preclusion addresses the effect in a current case of a prior adjudication in *another case*. So it doesn't often have much to say about the preclusive effects of rulings within the framework of a continuing action." *Id.* at 2154 (internal quotation marks and citation omitted). In *Currier*, the United States Supreme Court only examined issue preclusion principles in the context of a double jeopardy challenge. *Id.* at 2148. Further, only a plurality of the Justices joined the portion of the opinion in which Plaintiffs' cited statement appears. *Id.* Thus, Defendant asserts that *Currier*'s statements about issue preclusion should be disregarded as dicta. Reply at 7.

However, a vast swath of authority supports the proposition that issue preclusion cannot apply within the framework of a single case. To take just one example, in *Robinson v. City of Harvey*, 617 F.3d 915 (7th Cir. 2010), the Seventh Circuit considered the question of whether an appellant's request for a supplemental award for attorney's fees was barred by issue preclusion. *Id.* at 916. The Seventh Circuit answered the question in the negative, and in doing so, the Seventh Circuit specifically explained that "issue and claim preclusion concern the effect of one suit on a later suit *and have nothing to do with how issues are resolved within a single case*." *Id.* (emphasis added). Other courts confronted with the question of issue preclusion's availability within a single case have reached precisely the same conclusion. *See, e.g.*, *In re Freeman*, 489 F.3d 966, 968 n.1 (9th Cir. 2007) (holding that "res judicata principles" do not apply within the

24

context of a single case); *Rezzonico v. H&R Block, Inc.*, 182 F.3d 144, 148 (2d Cir. 1999) ("*Res judicata* does not speak to direct attacks in the same case, but rather has application in subsequent actions."); *Rodriguez v. Tilton*, 2013 U.S. Dist. LEXIS 50196, at *22 (E.D. Cal. Apr. 4, 2013) ("The doctrine of res judicata is inapplicable here because there does not exist a final judgment on the merits in a *separate* action. Rather, the order that defendant relies on is an order issued in *this* case." (emphasis in original)); *see also* 18B C. Wright & A. Miller, Fed. Prac. & Proc. Juris. § 4478 n.9 (2019) (discussing case law).

Against the great weight of this authority, Defendant cites no case law to demonstrate that issue preclusion may indeed apply in the context of a single, continuing case. Instead, Defendant's sole argument on this subject, which Defendant asserts in a footnote, is that "[i]f issue preclusion binds *nonparties* who actively participated in an earlier proceeding, then by the same rationale, *parties* who actively participated in an earlier proceeding will be equally bound." Reply at 7 n.7. However, the primary case that Defendant cites in support of Defendant's position, *Montana v. United States*, 440 U.S. 147 (1979), illustrates the principle that issue preclusion only applies in separate proceedings. In *Montana*, the United States Supreme Court applied issue preclusion across *separate state and federal proceedings*. *Id.* at 151. In doing so, the *Montana* Court explained that issue preclusion dictates that a "right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction cannot be disputed in a subsequent suit between the same parties or their privies." *Id.* at 153 (internal quotation marks and alterations omitted). Here, there is no "subsequent suit" before the Court. Issue preclusion therefore has no application in the instant case.

Thus, the Court DENIES Defendant's motion to deny class certification to the extent that Defendant argues that issue preclusion applies in the instant case. The Court proceeds to consider Defendant's argument that law of the case bars class certification of the Parked Claims.

### B. Law of the Case Does Not Bar Class Certification as to the Parked Claims

Defendant argues that the doctrine of law of the case requires the Court to deny class certification as to the Parked Claims. The law of the case doctrine is a judicial invention that

25

"generally precludes a court from reconsidering an issue decided previously by the same court or by a higher court in the identical case." *Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012). For the doctrine to apply, the "issue in question must have been decided explicitly or by necessary implication in the previous disposition." *Id.* Application of the law of the case doctrine is discretionary. *Id.*

As an initial matter, the Ninth Circuit has indicated that the Ninth Circuit's "case law leaves some doubt concerning whether the law of the case doctrine constrains a district court's discretion to reconsider its own rulings prior to final judgment." *Mark H. v. Lemahieu*, 513 F.3d 922, 932 n.8 (9th Cir. 2008). To the extent that law of the case doctrine does not in fact "constrain[] a district court's discretion to reconsider its own rulings prior to final judgment," Defendant obviously may not rely on the law of the case doctrine to argue that denial of class certification is required in the instant case. However, Plaintiffs do not advance this argument, and the Court therefore assumes that the law of the case doctrine does indeed apply to situations in which a district court reconsiders a previous decision within the same case. *See also Hall*, 697 F.3d at 1067 (describing the law of the case doctrine as applying with respect to an issue "decided previously by the *same court* or by a higher court in the identical case" (emphasis added)).

Instead, Plaintiffs argue that the law of the case doctrine does not preclude class certification as to the Parked Claims for two independent reasons. First, Plaintiffs were not parties to Former Plaintiffs' third motion for class certification as to the Selected Claims. Second, the issue of Plaintiffs' class certification as to the Parked Claims is not the same as the issue of Former Plaintiffs' class certification as to the Selected Claims. The Court considers these two arguments in turn.

### 1. The Law of the Case Doctrine Does Not Apply to Different Parties

The first question the Court must resolve is whether the law of the case doctrine may be applied across rulings that involve different parties. Defendant argues that "the law of the case doctrine does not require 'complete identity of the parties,'" and that the doctrine may therefore apply to the Plaintiffs as to the Parked Claims. Mot. at 14. On the other hand, Plaintiffs assert

that the law of the case doctrine only applies if "two rulings 'involve the same parties.'" Opp'n at 10 (citation omitted). The Court agrees with Plaintiffs.

In the Ninth Circuit, the general rule is that law of the case requires an identity of parties. *See United States v. Maybusher*, 735 F.2d 366, 370 (9th Cir. 1984) (explaining that law of the case "typically applies to the same case when the parties in the subsequent proceeding were also the parties to the former appellate decision"); *see also United States v. Canamari*, 1992 U.S. App. LEXIS 29573, at *3–4 (9th Cir. Nov. 4, 1992) ("It is axiomatic that law of the case requires an identity of the parties to be bound."); *AHO Enters. v. State Farm Mut. Auto. Ins. Co.*, 2009 U.S. Dist. LEXIS 14373, at *7 (N.D. Cal. Feb. 10, 2009) ("[A] district court's decision is only binding on itself if it establishes the law of the case as it pertains to rulings for *same parties* based on same patterns of facts or events." (emphasis added)); *In re W.R. Grace & Co.*, 591 F.3d 164, 174 (3d Cir. 2009) (explaining that application of the law of the case doctrine requires "the same parties and issues").

Defendant seeks to rely on the Court's order denying Former Plaintiffs' third motion for class certification as to the Selected Claims as law of the case. ECF No. 392. However, none of the remaining Plaintiffs in the instant case were party to the third motion for class certification as to the Selected Claims. *See* ECF No. 341. Only Former Plaintiffs John Borzymowski, William Bon, and Matt Muilenburg filed the third motion for class certification as to the Selected Claims. *Id.* at 1. All three of Former Plaintiffs dismissed all of their claims with prejudice on August 30, 2019. ECF No. 412 at 2. Thus, Defendant must show that law of the case doctrine binds parties who did not join the previous motion.

Defendant cites *Air Transport Ass'n of America* to argue that the "fact that the Selected and Parked Claims Plaintiffs are not the 'same parties' does not preclude application of law of the case" to the current Plaintiffs. Reply at 8. However, *Air Transport Ass'n of America* is distinguishable. In *Air Transport Ass'n of America*, the district court issued a summary judgment decision against two airline industry trade organizations. 1999 U.S. Dist. LEXIS 8747, at *6, *9. In the wake of that decision, two members of the airline industry trade organizations, United and

27

FedEx, filed their own motions for summary judgment on the same issues.  *Id.* at *9.  The *Air Transport Ass'n of America* court noted that the law of the case doctrine "typically applies to decisions involving the same parties."  *Id.* at *16 n.3.  However, the *Air Transport Ass'n of America* court nevertheless determined that because United and FedEx were members of the two airline industry trade organizations, and because the trade organizations "brought this case on behalf of their members," United and FedEx were bound by the court's previous decisions in the case.  *Id.* at *13–18.

In the instant case, the Court concludes that it would be improper to deviate from the Ninth Circuit's general rule that law of the case requires an identity of parties.  *Maybusher*, 735 F.2d at 370.  Defendant argues that the current Plaintiffs should be bound by the law of the case doctrine because the Plaintiffs "have participated in this litigation as class representatives from the onset, represented by the same counsel as the Selected Claims Plaintiffs, in pursuit of the same *Comcast*-compliant damages survey."  Mot. at 15.  However, unlike *Air Transport Ass'n of America*, the identity of the current Plaintiffs does not overlap with that of the Former Plaintiffs who filed the third motion for class certification as to the Selected Claims and dismissed all of their claims with prejudice.  As Plaintiffs note, with respect to these two groups, "there is no overlap between the individual plaintiffs, there is no overlap between the states in which they reside, there is no overlap between the claims they bring, and there is no overlap between the putative classes they seek to represent."  Opp'n at 18.  Accordingly, it is impossible for the Court to say that Former Plaintiffs John Borzymowski, William Bon, and Matt Muilenburg sought class certification "on behalf of" the current Plaintiffs in a way that would render the law of the case doctrine applicable as to class certification of the Parked Claims.  1999 U.S. Dist. LEXIS 8747, at *13.

The Court concludes that the law of the case doctrine is inapplicable to Plaintiffs because Plaintiffs were not party to Former Plaintiffs' third motion for class certification as to the Selected Claims.  For the sake of completeness, the Court further proceeds to analyze the question of whether the issue of the Plaintiffs' class certification as to the Parked Claims has already been "decided explicitly or by necessary implication" in the instant case.

Case No. 16-CV-04942-LHK
ORDER DENYING DEFENDANT'S MOTION TO DENY CLASS CERTIFICATION

## 2. Law of the Case Only Applies to "Issues Previously Decided" by the Court

In order for the law of the case doctrine to bar the Plaintiffs' class certification as to the Parked Claims, the issue of Plaintiffs' class certification must have been either explicitly decided or decided by implication by the Court's earlier decision. According to Defendant, the Court resolved the issue of Plaintiffs' class certification as to the Parked Claims by "ruling that Boedeker 2 did not meet the requirements of *Comcast* and by precluding their reliance on Boedeker 3 as 'severely prejudicial' to [Defendant] and 'also untimely.'" Mot. at 12. These rulings, Defendant argues, necessarily demonstrate that Plaintiffs will be unable to satisfy Federal Rule of Civil Procedure 23(b)(3). Plaintiffs, on the other hand, maintain that Plaintiffs are "not seeking to relitigate any issue already addressed by the Court," and that law of the case is therefore inapposite. Opp'n at 16. The Court agrees with Plaintiffs. The issue of whether Plaintiffs' class certification as to the Parked Claims should be denied has not yet been decided.

In the Ninth Circuit, "[t]he law of the case acts as a bar only when the issue in question was actually considered and decided by the first court." *United Steel Workers of Am. v. Retirement Income Plan for Hourly-Rated Employees of ASARCO, Inc.*, 512 F.3d 555, 564 (9th Cir. 2008) (internal quotation marks and citation omitted). "The law of the case doctrine applies only when the issue was 'decided explicitly or by necessary implication in the previous disposition.'" *United States v. Lummi Nation*, 763 F.3d 1180, 1187 (9th Cir. 2014) (quoting *Lower Elwha Band of S'Klallams v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000)).

In the order denying Former Plaintiffs' third motion for class certification as to the Selected Claims, the Court did not *explicitly* decide whether Plaintiffs would be entitled to class certification as to the Parked Claims. Thus, in order for the law of the case doctrine to apply, Defendant must argue that the Court reached the issue of Plaintiffs' class certification as to the Parked Claims "by necessary implication." *Lummi Nation*, 763 F.3d at 1187. Defendant points to the facts that the Court rejected Boedeker 2 as inadequate to satisfy Federal Rule of Civil Procedure 23(b)(3) under *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013). Defendant also notes that the Court held that Boedeker 3 was untimely and could not be utilized to satisfy *Comcast*.

29

According to Defendant, these holdings implicitly resolve the issue of the Plaintiffs' class certification as to the Parked Claims as well. Mot. at 12.

This is not so. The crux of Defendant's argument is that Plaintiffs have conceded that Plaintiffs will rely on Boedeker 3 in order to satisfy Federal Rule of Civil Procedure 23(b)(3). *Id.* At the July 29, 2019 case management conference in the instant case, Plaintiffs represented as follows: "Your Honor, just for clarity, so as not to run afoul again, [Boedeker 3] is the survey that we were going to proceed on. That is something which, of course, has been disclosed, they have it. . . . I think the due process rights of the putative class members of the Parked Claims are entitled to have us move forward on that third survey." ECF No. 406 at 26:21–27:6. Plaintiffs further represented: "We are not planning to do another survey. . . . We are planning to move forward at this point on that—with [Boedeker 3] as our expert [report]." *Id.* at 27:7–15.

It is also true that Plaintiffs have repeatedly litigated in the instant case in a way that suggests Plaintiffs' belief that legal and factual rulings on the Selected Claims could dispose of the Parked Claims. *See, e.g.*, ECF No. 402 at 2 n.1 (explaining that Parked Claim was "render[ed] moot" by Court's order on summary judgment as to the Selected Claims); ECF No. 117 at 3 (stipulating to dismissal with prejudice of claim under Song-Beverly Consumer Warranty Act, a Parked Claim, on the basis of the Court's order on motion to dismiss on Selected Claims).

However, in briefing the instant motion, Plaintiffs change course and now suggest that the Plaintiffs "are fully within their rights to bring a wholly different damages model that is supported by their legal claims and the evidence adduced in this action." Opp'n at 16. Plaintiffs' representations at the July 29, 2019 case management conference suggests that this latest change in tack may be gamesmanship. However, for the purposes of the application of the law of the case doctrine, Plaintiffs' argument has the effect that Plaintiffs desire. In light of Plaintiffs' new representation, the Court cannot determine as a matter of law that Plaintiffs will *necessarily* be unable to satisfy Federal Rule of Civil Procedure 23(b)(3), as would be required for the law of the case doctrine to bar class certification as to the Parked Claims.

In sum, because Plaintiffs were not party to the third motion for class certification as to the

Selected Claims, and because the Court did not decide the question of class certification as to the Parked Claims by "necessary implication" in the instant case, the Court DENIES Defendant's motion to deny class certification to the extent that Defendant argues that the law of the case doctrine bars class certification in the instant case.

### C. Comity Does Not Bar Class Certification of the Parked Claims

Finally, Defendant argues that the Court should deny class certification as to the Parked Claims on the basis of principles of comity. Mot. at 15–17. Plaintiffs argue that comity has no application in the instant case because "comity applies across different courts, not across different parties prosecuting different claims . . . in a single litigation." Opp'n at 19. The Court agrees with Plaintiffs. Principles of comity have no application in the instant case.

Defendant cites *Smith v. Bayer Corp.*, 564 U.S. 299 (2011), to argue that comity requires denial of class certification as to the Parked Claims. In *Smith*, the United States Supreme Court examined the relitigation exception to the Anti-Injunction Act. *Id.* at 302. The formal holding of *Smith* is irrelevant to the instant case. In the course of delivering that holding, however, the United States Supreme Court explained that "our legal system generally relies on principles of *stare decisis* and comity among courts to mitigate the sometimes substantial costs of similar litigation brought by different plaintiffs." *Id.* at 317. Defendant urges the Court to rely on this statement to deny class certification as to the Parked Claims.

As the United States Supreme Court's statement makes clear however, in *Smith*, the United States Supreme Court was concerned with the possibility of repeated proceedings *across different state and federal courts. Id.* at 317. The principle of comity makes little sense when applied within the framework of a single action before a single court. After all, it would be incoherent for the Court to have comity with *itself. See, e.g., Darr v. Burford*, 339 U.S. 200, 204 (1950), *overruled in part by Fay v. Noia*, 372 U.S. 391 (1963) (explaining that "the doctrine of comity between courts . . . teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter"); *McCabe v. Lifetime Entm't*

Case No. 16-CV-04942-LHK
ORDER DENYING DEFENDANT'S MOTION TO DENY CLASS CERTIFICATION

*Servs., LLC*, 2018 U.S. Dist. LEXIS 3212, at *46 (E.D.N.Y. Jan. 4, 2018) (explaining that decision on class certification "would be entitled to comity, *since it is from a District Judge in the same circuit* resolving the same class issues" (emphasis added)); *Comity*, Black's Law Dictionary (11th ed. 2019) ("A principle or practice among political entities (as countries, states, *or courts of different jurisdictions*) . . . .").

For the foregoing reasons, the Court DENIES Defendant's motion to deny class certification to the extent that Defendant argues that principles of comity bar class certification as to the Selected Claims. In sum, because the Court has concluded that class certification as to the Parked Claims cannot be denied based on issue preclusion, law of the case, or principles of comity, the Court DENIES Defendant's motion to deny class certification.

### D. Boedeker 3 and Any Other New Expert Report Would Be Untimely and Result in Severe Prejudice to Defendant

Notwithstanding the foregoing, the Court finds that several additional observations are in order. The Court never bifurcated discovery in the instant case. In fact, at the January 12, 2017 case management conference, the Court specifically asked whether the parties wanted to proceed on discovery on all twenty-two claims of the FACC. ECF No. 69 at 27:13–15. With the sole exception of "transactional discovery, such as sales information and customer names," in states that correspond to the Parked Claims, both parties agreed that discovery should indeed proceed across all twenty-two claims at once. ECF No. 57; ECF No. 69 at 27:13–21, 28:10–11 (The Court: "Are we anticipating that if and when the discovery stay is lifted, is that on all 22 claims, or is it only on this narrow set of ten claims?" // Mr. Singh: "I think everything." // Mr. Wright: "I agree that we don't want to bifurcate discovery so we're in agreement with that."). In the Court's January 12, 2017 case management order, the Court memorialized this agreement and held that "there will be no bifurcation of discovery" in the instant case. ECF No. 57. When the Court lifted the stay of discovery on August 2, 2017, ECF No. 109, discovery in the instant case therefore proceeded simultaneously across all twenty-two claims. Consistent with this decision, the Court scheduled the close of fact and expert discovery with no distinction between any of the Plaintiffs,

Case No. 16-CV-04942-LHK
ORDER DENYING DEFENDANT'S MOTION TO DENY CLASS CERTIFICATION

1 and with no distinction between the Selected Claims and the Parked Claims. ECF Nos. 57, 109,

2 145, 268.

3      Plaintiffs have well understood this discovery structure. Indeed, Plaintiffs seemingly

4 concede that discovery proceeded across all twenty-two claims simultaneously. *See* Opp'n at 12

5 (discussing the "common discovery conducted in this case" as to both the Selected Claims and the

6 Parked Claims). Over the course of the instant case, the "Plaintiffs produced documents,

7 responded to written discovery, and sat for depositions before the fact discovery cutoff" across all

8 twenty-two claims. Mot. at 11. For example, the parties conducted depositions of Plaintiffs who

9 at that point alleged only Parked Claims. *See* ECF No. 410-1 (deposition of Jason Petty of Utah);

10 ECF No. 410-2 (deposition of Todd Cleary of California); ECF No. 410-3 (deposition of Michael

11 Pajaro); ECF No. 410-4 (deposition of Brooke Corbett); ECF No. 410-5 (deposition of Kathleen

12 Baker); ECF No. 410-6 (deposition of Kyle Maxim on behalf of Heirloom Estate Services, Inc.);

13 ECF No. 410-7 (deposition of Thomas Davidson).

14      Further, Plaintiffs submitted expert reports that addressed all twenty-two of Plaintiffs'

15 claims. For example, in Plaintiffs' technical expert reports, Plaintiffs' technical expert provided

16 opinions about both the iPhone 6 and the iPhone 6 Plus, notwithstanding the fact that the Plaintiffs

17 that alleged Selected Claims only owned iPhone 6 Plus devices. ECF 378-10. Moreover,

18 Plaintiffs' technical expert tested and analyzed the touchscreens of all Plaintiffs, including

19 Plaintiffs that only alleged Parked Claims. *Id.* at 60–61, ¶¶ 181–83.

20      Similarly, Plaintiffs' damages expert reports also addressed all twenty-two of Plaintiffs'

21 claims. The Boedeker 3 survey included participants from all states, not just states that

22 corresponded to the Selected Claims. ECF No. 341-3 at 14. Moreover, Boedeker 3 addressed the

23 inoperability percentages alleged by Plaintiffs Michael Pajaro, Kathleen Baker, Brooke Corbett,

24 and Heirloom Estate Services, Inc., notwithstanding the fact that these Plaintiffs only alleged

25 Parked Claims. *Id.* ¶ 22 n.2. As with Plaintiffs' technical expert reports, Boedeker 3 also

26 discussed both the iPhone 6 and the iPhone 6 Plus, notwithstanding the fact that the Plaintiffs that

27 alleged Selected Claims only owned iPhone 6 Plus devices. *E.g.*, *id.* at 8. Further, Boedeker 3

28

United States District Court
Northern District of California

purported to provide a damages model that can be used to "calculate class-wide damages" across *all* Plaintiffs' putative classes, not just the putative classes based on the Selected Claims. *Id.* ¶ 83.

In light of the discovery structure that the Court imposed, the operative January 18, 2019 and February 15, 2019 deadlines for the exchange of expert reports *applied to the Parked Claims as well as the Selected Claims*. ECF No. 268. Thus, Plaintiffs may not rely on Boedeker 3 as to the Parked Claims because it is remains untimely and prejudicial.

The Court finds it necessary to recap why this is so. Plaintiffs have filed three motions for class certification, two completed damages surveys, and one hypothetical damages survey, but have been unable to produce a compliant damages model—even with the benefit of Defendant's many briefs and expert reports identifying flaws in Plaintiffs' multiple damages models.

After the Court denied Plaintiffs' first motion for class certification as to the Selected Claims and identified the *Comcast* flaws in Plaintiffs' damages model on May 8, 2018, the Court gave Plaintiffs an opportunity to file a second motion for class certification as to the Selected Claims on November 8, 2018 as Plaintiffs requested. ECF No. 268. At the October 31, 2018 case management conference, Plaintiffs' counsel stated that after receiving the Court's May 8, 2018 order denying Plaintiff's first motion for class certification as to the Selected Claims, "we immediately worked with our expert following the receipt of that order and following the status conference. And the, the methodology that Your Honor talked about in her order is easily done, has been done as a matter of fact." ECF No. 276 at 6:4-8.

Yet Plaintiffs' November 8, 2018 second motion for class certification as to the Selected Claims relied on a hypothetical Boedeker survey. ECF No. 314 at 2. Then, after Plaintiffs' second motion for class certification as to the Selected Claims was fully briefed on December 20, 2018 and Defendant's motion to exclude Boedeker's supplemental declaration, which discussed only a hypothetical survey, was fully briefed on December 27, 2018, Plaintiffs served Defendant with Boedeker 2, which contained a completed second survey, on January 18, 2019. *Id.* at 3. Accordingly, the Court denied without prejudice Plaintiffs' second motion for class certification as to the Selected Claims, and instructed Plaintiffs to file a third motion for class certification as to

34

the Selected Claims based on Boedeker 2. *Id.*

Then, four days before the third motion for class certification as to the Selected Claims was due, Plaintiffs asked the Court for permission to complete a *third* survey and to serve yet another Boedeker report. ECF No. 342 at 4. Plaintiffs disingenuously claimed that they discovered the manifestation rate errors in the second survey on February 28, 2019, and thus needed to conduct a third survey. *Id.* However, Plaintiffs had known about that manifestation rate errors since at least February 7, 2019, when Defendant identified the errors in a motion on the public docket. *Id.* at 4–5. Plaintiffs responded to that motion on February 11, 2019, ECF No. 310, and Defendant's two rebuttal expert reports served on February 15, 2019 identified the same errors and other flaws with the second survey.

Thus, Plaintiffs' late March 1, 2019 request to complete a third survey and yet another Boedeker report came after Defendant's two February 15, 2019 expert reports identified additional flaws in Boedeker 2. *Id.* at 5. At that point, Defendant had already had to brief Plaintiffs' first and second motions for class certification as to the Selected Claims and rebut three different surveys: Boedeker 1, Boedeker's hypothetical survey, and Boedeker 2. *Id.* Accordingly, on March 6, 2019, the Court denied Plaintiffs' late request to create yet another survey and damages expert report for the following reasons:

> Because Plaintiffs had notice of Boedeker's transposition error almost a month in advance of their administrative motion; because Plaintiffs' motion comes after Apple already served its rebuttal expert reports in response to Boedeker's January 18, 2019 expert report and new survey; because Apple has already had to fully brief class certification twice and is required to do so a third time; and because this would be the fourth time Apple would need to rebut Boedeker's survey or a hypothetical survey; the Court DENIES Plaintiffs' administrative motion to redo Boedeker's expert survey and expert report.

*Id.*

Plaintiffs flagrantly violated this Court's March 6, 2019 order and served Boedeker 3 on Defendant on March 25, 2019, only four days before the March 29, 2019 due date for Defendant's opposition to Plaintiffs' third motion for class certification as to the Selected Claims. ECF No. 359 at 1. Defendant represents that the Boedeker 3 was "substantially different than the last

35

version, and it does far more than simply correct 'transposed numbers.'" ECF No. 357 at 1. Accordingly, the Court reaffirmed its order denying Plaintiffs' request to serve Boedeker 3. ECF No. 359; *see Quevedo v. Trans-Pacific Shipping, Inc.*, 143 F.3d 1255, 1258 (9th Cir. 1998) (holding that the district court did not abuse its discretion in excluding late expert report produced after the deadline ordered by the district court).

Plaintiffs repeatedly failed to produce a damages model that satisfies *Comcast*, despite three motions for class certification as to the Selected Claims, two completed Boedeker surveys, and one hypothetical Boedeker survey, and despite the benefit of the many filings identifying flaws in Plaintiffs' damages models, including the Court's May 8, 2018 order, Defendant's three oppositions to class certification, and Defendant's rebuttals to two Boedeker surveys and one hypothetical Boedeker survey. Allowing Plaintiffs a fourth attempt to produce a *Comcast*-compliant damages model would be severely prejudicial to Defendant. *Comcast* does not require the Court or Defendant to engage in an endless cycle of flawed attempts to produce a satisfactory damages model.

The Court also observes that when Plaintiffs asked the Court for leave to complete a third survey and third Boedeker report on March 1, 2019, Plaintiffs stated that the manifestation risk rate error was the only "clerical error" in Boedeker 2. ECF No. 335 at 2. Then, on March 29, 2019, Defendant filed its opposition to the third motion for class certification as to the Selected Claims, in which Defendant pointed out Boedeker 2's failure to account for Defendant's one-year warranty, among other flaws. ECF No. 363 at 4. Only after Defendant's March 29, 2019 opposition did Plaintiffs belatedly claim on April 12, 2019 that the warranty omission *too* was a "clerical error." ECF No. 368 at 3–4. Plaintiffs continually claim that each successive flaw with their damages model is a "clerical error."

In light of all of the foregoing, to the extent that Plaintiffs now intend to rely on Boedeker 3 as to the Parked Claims, Plaintiffs will not be permitted to do so. Nor will Plaintiffs be permitted to file any other untimely expert report bearing any other name. Fact discovery has been closed since November 2, 2018, and expert discovery has been closed since March 8, 2019.

36

ECF No. 268. The sole exception that the Court contemplated was for "transactional discovery, such as sales information and customer names," in states that correspond to the Parked Claims. ECF No. 57 at 1; ECF No. 406 at 53:25–54:1; ECF No. 268 (outlining deadlines). Even if the doctrines of issue preclusion, law of the case, or comity do not bar class certification as to the Parked Claims, Defendant is indeed correct that Boedeker 3 remains untimely and that allowing Plaintiffs to rely on Boedeker 3 *or any other untimely expert discovery* would still "result in severe prejudice" to the Defendant. ECF No. 392 at 16.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's motion to deny class certification.

**IT IS SO ORDERED.**


Dated: November 22, 2019

_Lucy H. Koh_
_____
LUCY H. KOH
United States District Judge

Case No. 16-CV-04942-LHK
ORDER DENYING DEFENDANT'S MOTION TO DENY CLASS CERTIFICATION